# Exhibit 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

YEVGENIYA KHATSKEVICH,

    Plaintiff,

    -against-

ADAM VICTOR, TRANSGAS ENERGY SYSTEMS CORPORATION, TRANSGAS DEVELOPMENT SYSTEMS LLC, GAS ALTERNATIVE SYSTEMS, INC., PROJECT ORANGE ASSOCIATES LLC, GAS ORANGE DEVELOPMENT, INC., TRANSNATIONAL ENERGY LLC, TRANSNATIONAL MANAGEMENT SYSTEMS, LLC, TRANSNATIONAL MANAGEMENT SYSTEMS II, LLC, MANHATTAN PLACE CONDOMINIUM, ADAM VICTOR & SON STABLE LLC and ADAM VICTOR GRANTOR TRUST,

    Defendants.

**VERIFIED COMPLAINT**

Index No. 151658/2014

---

YEVGENIYA KHATSKEVICH ("Ms. Khatskevich" or "Plaintiff"), by and through her counsel, alleges for her complaint as follows:

## NATURE OF THIS ACTION

1. Plaintiff asserts claims for sexual harassment and related statutory and common law claims arising out of her employment by the Defendants. Defendant, Adam H. Victor ("Victor") and the other Defendants, whom he controls, directly or indirectly, have subjected Plaintiff to numerous acts of sexual assault and indignity. In doing so, Defendants have created and nurtured a hostile work environment. Specifically, and as explained in more detail below, Victor and the other Defendants have, through a pattern of acts that have isolated, intimidated and humiliated Plaintiff, terrorized her not only in the work place, but throughout her daily life.

little or no construction has actually occurred for the Adam's Fork Energy Project in the intervening years.

142. Upon information and belief, the permit they received from the West Virginia Department of Environmental Protection is subject to forfeiture upon Victor's and TGDS' failure to construct the coal to gasoline plant contemplated in the plans they submitted to the West Virginia Department of Environmental Protection.

143. Upon information and belief, Victor has used his apparent political influence in West Virginia to avoid forfeiture of the permit for construction of the Adam's Fork Energy Project.

144. Plaintiff was required to attend campaign fund raising events with Victor, Victor's wife and West Virginia Senator Joseph Manchin and his wife. A picture of this group, taken at the event is attached as Exhibit A. Plaintiff is on the far left and Victor is immediately to her left.

145. Victor has also used his apparent political influence in an attempt to coerce Plaintiff, telling her, for example, that he would arrange for Senator Manchin to have her deported if she disobeyed him.

146. Plaintiff was aware of Victor's connection to Senator Manchin and took seriously Victor's threats to use these connections to revoke her visa and have her deported.

C.  **VICTOR USES HIS SUPPOSED CONNECTIONS WITH THE FBI AND CIA TO COERCE AND THREATEN PLAINTIFF**

147. Victor also bragged about his supposed connections to the Federal Bureau of Investigation ("FBI") and the Central Intelligence Agency ("CIA").

29

148. He would imply to Plaintiff that he was working with the CIA and/or the FBI and would indicate to her that certain meetings that he had with people unknown to her were actually meetings with the FBI and/or the CIA.

149. Victor implied to Plaintiff that he had "sway" with these agencies and that he could call in favors from them if he needed to do so.

150. On one occasion, Victor met with two people, who were allegedly from the CIA and/or the FBI. Victor met with them privately in a conference room. After the two men left, Victor told Plaintiff that the "agents" had engaged him for a special mission. He showed her an envelope full of money, and told her that it was payment for his "services."

151. On one occasion, Plaintiff confronted Victor when she discovered that he had obtained metadata relating to her text messages from the past several months from her cell phone carrier. Victor first claimed that such employer snooping was standard procedure. Later, he justified his conduct by saying that the CIA and/or the FBI had demanded the information regarding Plaintiff's text messages, and he was simply complying with their instructions.

152. He also told her that the CIA and/or FBI agents were watching her and that if she, for example, went out on a date with a man and took him home, the CIA and/or the FBI would know and would inform Victor.

153. Victor also claimed that he had used the CIA and/or FBI agents to follow his wife and one of his daughters and report back to him on their activities.

154. Bolstering Victor's claim to having influence with the FBI and/or the CIA are the circumstances of his strange dealings with people Victor claimed were members of the Permanent Mission to the United Nations of the Democratic People's Republic of Korea ("North Korea").

155. Three times, Victor required Plaintiff to attend parties involving people who, he said, were members of the North Korean U.N. mission. Two of these events occurred at the Meadowlands Racetrack where Victor and the alleged North Korean representatives and their wives enjoyed a lavish buffet and the trotter races. Another time she was required to attend a lunch party at the Palm Restaurant in Manhattan, attended by the alleged North Korean men and Victor.

156. Victor told Plaintiff that he was planning a mission to North Korea, under the guise of developing either a co-generation or coal-to-gas facility.

157. He elaborated that the real purpose of the mission was to obtain a certain metal sample that he would then turn over to either the CIA and/or the FBI for analysis. Their purpose, he said, was to discern where the North Koreans were obtaining this particular metal so the U.S. government could determine who was helping the North Koreans with their nuclear weapons development program.

158. Victor also told Plaintiff that he really should not be telling her these details; however, he went on, the FBI and/or CIA knew how important she was to his "operations."

159. Following each of the events with the alleged North Koreans at the Meadowlands Racetrack and the Palm Restaurant, individuals, who, Victor claimed, worked for either the CIA and/or the FBI, debriefed Plaintiff on her impressions regarding the North Koreans. From these debriefing sessions, Plaintiff concluded that Victor, indeed, had connections with the FBI and/or the CIA.

D. **VICTOR USES THREATS TO INSULATE HIS ILLEGAL ACTIVITIES**

160. Victor's reiteration of his prowess as a martial artist, his access to guns, his threats that he had killed and "ruined" people and his boasts of his political influence and his connections with the FBI and/or the CIA grew more intense and frequent the longer that Plaintiff worked for him and the Entity Defendants.

161. His remarks regarding martial arts, guns, killing and "ruining" people who had crossed him and of his political influence and his sway with the FBI and/or the CIA particularly increased following Plaintiff's protests to Victor regarding his unwanted physical contacts, his lascivious comments, his ostentatious exhibitionism, his video voyeurism, his sexual harassment, and his other actionable conduct.

162. Plaintiff understood Victor's remarks about the FBI and/or the CIA, his political influence, martial arts, guns, killing and "ruining" people who had crossed him to be threats of force against her. That is, against the backdrop of Victor's incessant harassment of her and threats to deport her, Plaintiff perceived his boasts about killing and ruining people, his political influence, his connections with the CIA and/or the FBI, his martial arts prowess, and facility with guns to be implied threats that he could, and would, take physical action against her if she strayed from the lecherous and deviant path that he envisioned for her.

163. On or around July 30, 2013, Plaintiff informed Victor that she wanted to cease working for him.

164. In early October, 2013, while she was still employed by the Defendants, Victor warned Plaintiff that she had better change her "attitude" or he would "cancel" her visa and have her deported. Victor told Plaintiff that she had to be "friendly and respectful," or he

32

would "destroy" her. Victor menacingly explained, "one fucking phone call is all it takes, Eve, and your life is over."

165. Following numerous requests that she continue to work for him, Plaintiff began to receive messages from at least four (4) of her friends, who also knew Victor, telling her, in words or substance, that Victor would make her feel like she was "in hell" if she did not continue to work for Victor.

166. In December 2013, faced with Plaintiff's consistent and insistent rejections of his overtures and objections to his lewd and harassing behavior and statements, Victor took it upon himself to call Plaintiff's parents in Kazakhstan.

167. Plaintiff's parents do not speak English; they speak Russian.

168. Victor does not speak Russian.

169. Accordingly, Plaintiff's parents were visited with the – to say the least – unsettling experience of a phone call from New York, from a man with whom they had never spoken, during which, the only phrase they were able to discern was their daughter's name.

170. On December 15, 2013, Victor dispatched a mutual acquaintance to ring her door buzzer for twenty minutes. Later in the day the same acquaintance repeated the same harassing behavior while Victor lurked at the curb in one of his eight HUM-Vs.

171. Plaintiff felt threatened and afraid of Victor and believed that he was issuing threats of force against her and that he had the ability to follow through on those threats.

### AS FOR A FIRST CAUSE OF ACTION
### FOR ASSAULT
### (Against all Defendants)

172. Ms. Khatskevich repeats and realleges the facts outlined in ¶¶ 1 - 171 of her Complaint as if set forth fully at this point.

33

214. Defendant Victor has perpetrated against Plaintiff numerous acts constituting violations of Chapter 1 of Title 8 of the New York City Administrative Code ("NYCAC §8-100, *et seq.*"), in that he has repeatedly discriminated against Plaintiff due to her immigration status.

215. In subjecting Plaintiff to this continuous immigration status discrimination, Defendant Victor was significantly aided by the Entity Defendants.

216. As a result, the Defendants should be held jointly and severally liable for all damages suffered by Plaintiff.

### AS FOR A NINTH CAUSE OF ACTION
### RETALIATION PURSUANT TO
### NYCHRL §§ 8-107(7) & 8-502(a)
### (Against All Defendants)

217. Ms. Khatskevich repeats and realleges the facts outlined in ¶¶ 1 - 216 of her Complaint as if set forth fully at this point.

218. Defendant Victor has perpetrated against Plaintiff numerous acts constituting violations of Chapter 1 of Title 8 of the New York City Administrative Code ("NYCAC §8-100, *et seq.*").

219. Plaintiff opposed Victor's perpetration on her of these numerous acts forbidden pursuant to NYCAC §8-100, *et seq.*, by among other things, repeatedly complaining to Defendant Victor about his vile actions and statements and demanding that he cease this kind of behavior.

220. In response to Plaintiff's opposition to Defendant Victor's vile actions and statements, Defendants retaliated against Plaintiff by, among other things:

a. Continuing to subject Plaintiff to similar vile actions and statements;

b.     Failing to fulfill the oral contract that Plaintiff had with Defendants by, among other things, failing to pay her at an annual rate of $47,948.40 following the issuance of her work visa;

c.     Communicating with Plaintiff's family members in an effort to intimidate Plaintiff;

d.     Voicing threats that, among other things, he would "ruin" Plaintiff, "destroy [her] reputation" and make sure that unflattering things about Plaintiff would be published in her home town in the Republic of Kazakhstan;

e.     Threatening physical violence against Plaintiff;

f.     Continuing to monitor her movements and stalk her, lurking outside of her home at night in a hired car or one of his eight HUM-Vs;

g.     Continuing to flaunt his political connections to Plaintiff, telling her that he would get Senator Manchin to revoke her visa; and

h.     Threatening Plaintiff, and intimating to her that the FBI and/or CIA would, at Victor's behest: (1) follow her and report back to Victor on her activities; (2) assist in deporting Plaintiff; and (3) otherwise retaliate against Plaintiff.

221.     Defendant Victor's acts of retaliation directed at Plaintiff have caused her damage and injuries in an amount unknown at this time, but, nonetheless, far in excess of the jurisdictional prerequisites of this court.

**AS FOR A TENTH CAUSE OF ACTION
AIDING AND ABETTING RETALIATION
PURSUANT TO NYCHRL §§ 8-107(6) & 8-502(a)
(Against All Defendants)**

222.     Ms. Khatskevich repeats and realleges the facts outlined in ¶¶ 1 - 221 of her Complaint as if set forth fully at this point.

223.     Defendant Victor has perpetrated against Plaintiff numerous acts constituting violations of Chapter 1 of Title 8 of the New York City Administrative Code