**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TYLER ERDMAN,

          *Plaintiff,*                    Case No. 20-cv-4162

        v.                        Hon. Lorna G. Schofield

ADAM VICTOR and the BOARD
OF MANAGERS OF MANHATTAN
PLACE CONDOMINIUM

          *Defendant.*

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO STRIKE

Tyler Erdman
20 Old Farm Road
Weston, CT 06883

*Plaintiff Pro Se*

1

## Table of Contents

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 1

    A.   Plaintiff And Other Employee Actions Against Victor .............................................. 1

    B.   The Five-Point Plan ................................................................................................... 2

    C.   Defendants' Extortion Accusations ......................................................................... 3

    D.   Victor's Domination Of MPC ................................................................................... 4

    E.   MPC's Hidden Lawsuits ............................................................................................ 4

    F.   Victor's Promises Of Indemnity .............................................................................. 5

    G.   MPC Discovers It Has Been Sued ............................................................................. 6

    H.   Victor Clings To Power ............................................................................................. 6

    I.   The Letter ................................................................................................................. 8

ARGUMENT ................................................................................................................... 9

    THE STANDARD GOVERNING A MOTION TO DISMISS ........................................................ 9

    PLAINTIFF'S DEFAMATION CLAIM IS WELL PLEADED ......................................................... 11

    DEFENDANTS' DEFAMATORY STATEMENTS ARE NOT PRIVILEGED .................................... 12

        A.   Defendants' Privilege Defenses Are Premature ..................................................... 12

        B.   The Fair Reporting Privilege Does Not Apply .......................................................... 14

        1.   The Letter Is Not Reporting A Judicial Proceeding. ................................................ 14

        2.   The Letter Is Not "Fair and True" ........................................................................... 16

        3.   Defendants' Malice Renders Section 74 Inapplicable. ........................................... 17

**The Common Interest Privilege Does Not Apply** ........................................................................**18**

  1.   **Victor Lacks A Common Interest With MPC And The Unit Owners.** ................................ 18

  2.   **The Common Interest Privilege Is Voided By Malice.** ........................................................ 21

**DEFENDANTS' DEFAMATORY STATEMENTS ARE NOT MERE OPINION, EXAGGERATION OR EPITHETS** ..........................................................................................**22**

  A.   **The Defamatory Statements Were Not Mere Opinion, Hyperbole, Or Epithets** ............................. 22

**PLAINTIFF HAS PLEADED DEFAMATION *PER SE* AND HAS PLEADED SPECIAL DAMAGES** .................**24**

**DEFENDANTS' MOTION TO STRIKE SHOULD BE DENIED** .................................................................**25**

**CONCLUSION** ........................................................................................................................ **25**

## Cases

*600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130 (1992) ...................................... 23

*Accord Rescuecom Corp. v. Google Inc.*, 562 F.3d 123 (2d Cir. 2009) ......................... 9

*Armstrong v. Simon Schuster*, 85 N.Y.2d 373 (1995) .................................................. 10

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) .......................................................... 9

*Coronel v. Quanta Capital Holdings Ltd*., No. 07 Civ. 1405, 2009 WL 174656 (S.D.N.Y. Jan. 26, 2009). ................................................................................................................... 9

Davis v. Indiana State Police 541 F.3d 760 (7th Cir 2008) ........................................ 13

*Demas v. Levitsky*, 291 A.D.2d 653 (3rd Dept. 2002) .................................................. 12

*Erickson v. Pardus*, 551 U.S 89 (2007) ...................................................................... 10

*Estelle v. Gamble*, 429 U.S. 97 (1976) ....................................................................... 10

*Fanelle v. LoJack Corp.*, 79 F.Supp.2d 558 (E.D. Pa. 2000) ..................................... 14

*Fuji Photo Film U.S.A., Inv. v. McNulty*, 669 F.Supp.2d 405 (S.D.N.Y. 2009).............. 11, 21, 22

*Gillings v New York Post*, 166 A.D.3d 584 (2d Dept. 2018)..................................... 12, 14

*Gomez v. Toledo*, 446 U.S. 635 (1980)........................................................................ 13

*Good Gov't Group of Seal Beach, Inc. v. Superior Court*, 22 Cal. 3d 672 (1978)...................... 10

*Gross v. New York Times Co*., 82 N.Y.2d 146 (1993)................................................... 23

*Halperin v. Salvan*, 117 A.D.2d 544 (1st Dept. 1986) ................................................ 17

*Kleeberg v Sipser*, 265 N.Y. 87 (1934)........................................................................ 23

*Lan Sang v. Ming Hai*, 951 F.Supp.2d 504 (S.D.N.Y. 2013) ...................................... 17

*McCusker v. Hibu PLC*, 159 F.Supp.3d 341 (E.D. N.Y. 2016).................................... 13

*November v. Time, Inc.*, 13 N.Y.2d 175 (1963)............................................................ 23

*Selleck v. Globe Int'l, Inc.*, 166 Cal. App. 3d 1123 (1985)........................................... 23

*Silsdorf v. Levine*, 59 N.Y.2d 8 (1983) ............................................................................ 23

*Silverman v Clarke*, 35 A.D.3d 1 (1st Dept. 2006) ......................................................... 21

*Simms v. Seaman*, 308 Conn. 523 (Conn. 2013) ............................................................ 11

*Sweeney v. Prisoners' Legal Servs. of N.Y., Inc.*, 146 A.D.2d 1(3d Dep't 1989) ........................ 10

**Statutes**

18 U.S.C. § 1961(1)(A) .................................................................................................. 24

Fed. R. Civ. P. 12(b)(6) ........................................................................................... passim

N.Y. Penal Law § 155.05 .............................................................................................. 24

New York Civil Rights Law § 74 ............................................................................... 12, 14

Plaintiff Tyler Erdman ("Erdman") submits this memorandum of law in opposition to the motion filed by Defendants Adam Victor ("Victor") and The Board of Managers of Manhattan Place Condominium (the "Board"). This memorandum is accompanied by the December 9, 2020 Declaration (the "Erdman Dec.") of Tyler Erdman. This memorandum also refers to the November 9, 2020 Declaration of John F. Whelan (the "Whelan Dec.").

## PRELIMINARY STATEMENT

Victor, in his capacity as a Board member, defamed Erdman in a letter distributed to over 450 MPC unit owners (the "Unit Owners") by calling Erdman a liar and an extortionist. Although the defamatory meaning of Defendants' words is obvious, they seek to dismiss this action on a Rule 12(b)(6) motion based on affirmative defenses they have yet to plead and a request that the Court strain to find a non-defamatory interpretation of their words. Their motion should be denied.

## FACTUAL BACKGROUND

### A.  **Plaintiff And Other Employee Actions Against Victor**

Plaintiff worked for Defendants until August, 2013. *See Whelan Dec, Exh. 1* at ¶ 2. During Plaintiff's employment, Victor had hired two Kazakhstani immigrants, Yevgeniya Khatskevich ("Khatskevich") and Nazym Toktassynova ("Toktassynova"). Victor engaged in a vile campaign of harassment against both women, attempting to use his wealth and connections to isolate these women, make them unable to leave his employ, and to force them to give into his sexual advances. *See* Whelan Dec, Exh 1 at ¶ 28-31. Victor obtained an H1-B work visa for Khatskevich to work for Victor, but not to seek employment elsewhere. It gave Victor the ability

1

to terminate her legal presence in the US at any point. *Id at* ¶ 31. Victor used this to force Khatskevich to endure his pervasive campaign of discrimination and harassment. *Id at* ¶ 31.

Plaintiff assisted Khatskevich's efforts to get legal representation. *Id at* ¶ 37. After leaving Victor's employ, Khatskevich sued Victor, his companies, Manhattan Place Condominium ("MPC"), asserting 17 causes of action, including sexual harassment, assault, unlawful surveillance, violations of the New York City Human Rights law, and retaliation (the "Khatskevich Action"). *See* Whelan Dec, Exh. 3. Victor countered with 10 Affirmative Defenses and then sued her in a separate action alleging conversion and replevin.

When Victor learned that Plaintiff was helping Khatskevich, Victor sued Plaintiff in October 2014, asserting causes of action for unfair competition, conversion, replevin, and aiding and abetting a breach of fiduciary duty. *See* Whelan Dec, Exh. 1 at ¶ 42. Plaintiff counterclaimed against Victor, his companies and MPC, alleging retaliation (the "Erdman Action," and, together with the Khatskevich Action, the "New York Actions"). *See* Whelan Dec, Exh 5. Plaintiff successfully moved to dismiss the claims for unfair competition, conversion, and aiding and abetting breach of fiduciary duty. *See* Whelan Dec, Exh.1 at ¶ 112.

In December, 2014, Toktassynova sued Victor (the "Toktassynova Action") and his companies alleging eleven causes of action, including assault, battery, sexual harassment, and violations of the New York City Human Rights Law. All three of the Khatskevich, Toktassynova, and Erdman actions against Victor remain pending in New York Supreme Court.

### B. <u>The Five-Point Plan</u>

In February 2014, after Victor received notice of Khatskevich's action against him, and outlined a five-point plan to "ruin" her and Erdman and force her to give up her lawsuit. *See*

Whelan Dec, Exh 1 at ¶ 39. Toktassynova recorded Victor laying out his plan, explaining that he would fabricate a story that Khatskevich a prostitute: "We know she wasn't a prostitute but this is gonna be war." *Id at ¶ 43.* Victor also set forth a plan to strike back at Erdman:

> What Tyler doesn't realize is that I'm gonna sue him for aiding and abetting, for breaking into my computer, um, for all types of things, and so he's gonna be sued. So he's gonna have to spend, you know, a hundred thousand dollars in legal fees to defend himself. And I'm gonna sue him for my reputation- a hundred million dollars.

*Id.,* at ¶ 41.

In 2015, in accordance with the five-page, Victor sued Plaintiff in Delaware (the "Delaware Action") for defamation, alleging tens of millions of dollars in damages. The choice of venue aided that plan. After Plaintiff moved to dismiss, and submitted recordings to the Delaware court that showed Victor's action was malicious, Victor dismissed it. *Id* at ¶ 42.

### C. **Defendants' Extortion Accusations**

Defendants' statement in the May 31, 2019 letter (the "Letter") claiming Plaintiff was engaged in an "extortionate money grab" was an extension of Victor's five-point plan. *Id at ¶ 7.*

One of the 19 affirmative defenses Defendants asserted in response to Plaintiff's counterclaims in the New York action was for "unclean hands" for supposedly pursuing an "extortion scheme:" *See* Whelan Dec., Exh 6. Defendants asserted a similar affirmative defense in the Khatskevich Action: "Plaintiff engaged in a scheme to extort Defendants, assisted by her boyfriend, Tyler Erdman, and cannot complain now that Defendants finally discovered Plaintiffs' nefarious scheme." *See* Erdman Dec., Exh. 4 at ¶ 265. Similarly, Victor's complaint in the Delaware Action accused Plaintiff of participating in an "extortion scheme" and alleged that "Tyler Erdman has been an active participant in Khatskevich's and Toktassynova's extortion

attempts," and that he helped Khatskevich gather materials to "extort Mr. Victor," and "furthered his girlfriend's extortion scheme by cold calling various journalist and media outlets and trying to sell a story that portrays Mr. Victor in a negative light." *Erdman Dec, Exh* 12.

### D.  **Victor's Domination Of MPC**

During Erdman, Khatskevich and Toktassynova's employment, all of them witnessed the results of Victor's decades-long domination of MPC. In the aftermath of Hurricane Sandy, Victor saw opportunity to shift the burden of paying his companies' employees over to MPC under the guise of helping the building recover from Sandy.  *Whelan Dec, Exh. 1 at* ¶ 22

> FACT: Victor saw the opportunity to take advantage of a natural disaster and our building's distress. In recent weeks, a group of concerned unit owners, including CPA's and accountants, went to A.J. Clarke to demand to see MPC's Financial Statements. They discovered in the aftermath of Hurricane Sandy, Victor did bring his employees in, and some of them stayed and got paid from MPC for up to six years.

*See* Erdman Dec., at Exh. 4.

This allowed Victor to shift his own costs to MPC and their insurance company. At Victor's direction Plaintiff was paid by MPC. Victor also took over a vast storage room for himself, much to the distress of Unit Owners. *See* Erdman Dec., Exh. 4. The New York Actions and the Toktassynova Actions include allegations relating to his abuses of power. Victor deemed those allegations too sensitive to reveal to his fellow Board members and Unit Owners. Rather than disclose the lawsuits, Victor chose to hide them.

### E.  **MPC's Hidden Lawsuits**

Victor has had a series of attorneys representing MPC in the New York Actions for years doing their best to hide them from MPC's Unit Owners until they were found out in 2019. Even

4

Victor's counsel in this action was originally retained by Victor to represent Victor and MPC without discussing it with the Board. After Victor was deposed as President by the Board, its acting President terminated the firm: "This is to inform Eilender and [Sluka]. [Also] [Schnur] that you all do not represent Manhattan place. Adam Victor does not have the power to hire anybody without the board approval…You Eilender, [Sluka] and [Schnur] DO NOT REPRESENT MPC." *See* Erdman Dec., at Exh. 3 at ¶ 39.

From the filing of the Khatskevich Action, Victor has done his best to hide the actions against MPC from the Board and the Unit Owners. *See* Whelan Dec., Exh. 1 at ¶¶ 3, 55). Indeed, Victor claimed that the actions against MPC were brought "solely to embarrass" Victor. *See* Erdman Dec, Exh 9 at p 5-6. Between the commencement of the Khatskevich and Erdman actions in 2014 and 2015 and their eventual discovery by the Unit Owners in 2019, Victor began to use MPC's insurance funds to pay for his personal legal defense *Id* at ¶¶ 66, and 85. Each year the Board circulated financial statements to the Unit Owners which, among other things, disclosed any ongoing litigations. Once the Khatskevich Action started, however, Victor made sure that the New York Actions were omitted from the reports. *See* Erdman Dec, Exh. 4.

**F.  Victor's Promises Of Indemnity**

In order to avoid mention of the Khatskevich Action in MPC's financial statements, Victor promised indemnify MPC for any costs or expenses relating to it. In a 2015 audit letter, Defendants' then attorney summarized MPCs involvement in the Khatskevich action stating:

> Adam Victor has been paying the legal bills associated with that case and will continue to do so. There is no loss contingency for the Company since Mr. Victor has agreed to indemnify the Company for any and all legal fees or losses.

*See* Erdman Dec, Exh. 6.

Once Victor's scheme to hide the litigation fell apart, his offer of indemnity disappeared. Instead, indemnification was conditional on continuation of Victor's access to MPC's insurance and MPC's agreement that Victor control of the New York Actions. *See* Whelan Dec, Exh 1 at ¶ 91. Due to Victor's "domination" of the MPC Board it doesn't appear that Victor ever provided MPC with a written agreement to indemnify.

Now in several of the litigations that have been ongoing between the Defendants, Victor is claiming that MPC should really be indemnifying him and paying the legal fees he incurred defending actions they didn't even know they were a party to. *See* Erdman Dec, Exh. at ¶ 63 b.

Plaintiff and Khatskevich have even made settlement demands to MPC, which Victor never communicated to anyone else at MPC. *Id.* at 75. Victor's personal animus against Plaintiff led him to claim that he would never settle with Plaintiff for personal reasons. *Id.* at ¶ 74.

### G. **MPC Discovers It Has Been Sued**

Victor managed to effectively hide the New York Actions from MPC until 2019, when a few Unit Owners discovered them. *See* Whelan Dec., Exh 1 at ¶ 5. That led to an effort by certain Unit Owners and Board members to remove Victors. In an effort to figure out what was going on in the cases, the Board invited Plaintiff to meet with it and Unit Owners and answer questions they had about the cases. During that process, Plaintiff also began to have settlement discussions with the Board. *Id.*, at ¶ 69, 87.

### H. **Victor Clings To Power**

As efforts escalated to remove Victor from the Board and more allegations about his abuses came to light, Victor did his best to cling to power. Victor began to try to intimidate his

neighbors by sending them cease and desist letters and subpoenas and even bringing an action against his fellow Board members. *See* Whelan Dec., Exh. 1 at ¶ 86.

On April 1, 2019[1], MPC's acting President, Walter Brindak, appeared in Court during a hearing in a case in which Victor and MPC's former law firm sued for $637.014.98. *Id* at ¶ 79. Brindak told the Court that the lawyer representing MPC in Court had never spoken to anyone at MPC other than Victor. That attorney admitted he did not know who Brindak was and couldn't even be sure he was a Board member. *Id.,* at ¶ 88. The Judge remarked that appeared that they would end up suing each other, which came true as Victor's new lawsuit hit the docket hours later. Victor brought an action against his fellow Board members[2] seeking a declaratory judgement to prevent a Board Meeting in which they planned to reaffirm his removal as President. The next day Victor's personal attorney was moving for an order to show cause and Schlam Stone & Dolan appeared for MPC, despite the Board's objections. The lawyer hired by the other members of the Board explained (*see* Whelan Dec, Exh. 1 at ¶ 89) stating:

> Rather, for the reasons stated in Court on April 2, 2019, the day the instant Order to Show Cause was brought, the Board of Managers and Unit Owners of MPC have reason to believe that Mr. Victor has used his position as President of the MPC's Board of Managers to commit serious abuses of power beyond the scope of the authority afforded him under the By-Laws.

*See* Erdman Dec. at Exh. 5.

The case was dismissed shortly after, but Victor's efforts to do damage control continued. Victor then tried to leverage his resignation as a bargaining chip. On April 15, 2019 Schlam

---

[1] Plaintiff notes the amended complaint mistakenly states 2016 rather than 2019.

[2] *Victor v. Brindak et al.,* NY Supreme Index No. 651907-2019

7

Stone & Dolan yet again in their capacity as MPC's own attorney tried to help Victor. They presented a plan to the Board for Victor to voluntary step down if the Board agreed to his conditions. Victor wanted to control the New York Actions among other conditions, and walked back his offer of indemnification claiming it would be contingent on a new agreement and only if MPC's insurance coverage remained available to him. *Id.,* at ¶ 91. As discussions continued, the Board brought up the possibility of settlement with Plaintiff. Victor's attorneys argued that such a settlement would be "unfair" to Victor.

After negotiations broke down, on April 18, 2019 Victor's attorneys brought a motion to in the Khatskevich Action to prevent Plaintiff, Khatskevich and Toktassynova from talking to the Board and Unit Owners. The Court granted Victor's motion with respect to the Board, but denied it with respect to Unit Owners. *Id* at ¶ 92.

## I.  **The Letter**

After Victor managed to prevent Plaintiff from speaking to the Board, he distributed a letter to the over 450 Unit Owners at MPC in an attempt to mislead them about his tenure as President. On May 31, 2019, Adam Victor sent a three-page letter (the "MPC Letter") to the Unit Owners. *Id*., at ¶ 93. Included in the MPC Letter is a paragraph accusing Plaintiff of lying in the service of "an extortionate money grab:"

> Additionally, I have been accused of using building funds to defend two lawsuits against me, my companies and MPC, by two people— boyfriend and girlfriend—both falsely claiming to have been "employees" of MPC in 2012-2013. Neither were ever employees of MPC. MPC was named in these lawsuits as an extortionate money grab. Nonetheless, while I was President, I have funded 100% of the costs of defending these lawsuits. Our Independent Audits have shown that, while I have been President, MPC has never paid any legal fees for these or any other lawsuits I have been involved in.

8

*Id*. at ¶ 94.

The paragraph quoted above is the sole paragraph in the MPC Letter that references New York Actions. It makes no attempt to inform the reader as to the nature of the claims asserted in those action or what defenses, if any, MPC may have to them. Defendants' defamatory statements are part of their years long campaign to retaliate against Plaintiff and Khatskevich for his assistance and participation in a series of litigation in New York court. *Id* at ¶¶ 39, 41-45, 42.

## **ARGUMENT**

## **I.**

## **THE STANDARD GOVERNING A MOTION TO DISMISS**

It is well established that on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) a court should draw all reasonable inferences in favor of the plaintiff:

> In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ..., a court must accept all of the allegations set forth in the complaint as true, and must draw all reasonable inferences in favor of the plaintiff. … A court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient.

*Coronel v. Quanta Capital Holdings Ltd*., No. 07 Civ. 1405, 2009 WL 174656, at *10 (S.D.N.Y. Jan. 26, 2009). *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 572 (2007) (in deciding Rule 12(b)(6) motion, court must "accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in the [non-movant's] favor.") *Accord Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

The rule is particularly applicable where, as here, the Plaintiff is proceeding *pro se*: "A document filed *pro se* is 'to be liberally construed' and 'a *pro se* complaint, however inartfully

pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S 89, 94 (2007) *quoting Estelle v. Gamble*, 429 U.S. 97 (1976).

Defendants' motion seeks to nullify this rule by repeatedly asking the Court to draw inferences in their favor by ascribing a meaning to the Letter that is not supported by its words. Thus, although the Letter makes no references to any claims or defenses in the State Court Cases, Defendant ask the Court to find that it was a fair and accurate summary of those claims or defenses. Similarly, the Defendants ask to Court to find that the defamatory passage in the Letter discusses defenses to the State Court Cases in which Victor and the Unit Owners supposedly have a common interest, instead of Victor's deceptive claim to the Unit Owners that he funded his defense to the lawsuits himself, rather than rely on MPC funds. Likewise, the Defendants invite the Court to draw favorable inferences to them in construing the Letter's assertion that Erdman is a liar and extortionist as opinion, hyperbole or mere epithet rather than as the false factual statements that they are. The Court should reject the Defendants' invitation and deny their motion to dismiss.

In considering a motion to dismiss a defamation case, the inquiry is whether the allegedly defamatory words, in their ordinary meaning and in context, are susceptible to a defamatory connotation. If so, the issue of the statement's meaning to the average reader must go to the jury. *Sweeney v. Prisoners' Legal Servs. of N.Y., Inc.*, 146 A.D.2d 1, 4 (3d Dep't 1989). *See also*, *Armstrong v. Simon Schuster*, 85 N.Y.2d 373, 380 (1995); *Good Gov't Group of Seal Beach, Inc. v. Superior Court*, 22 Cal. 3d 672, 682 (1978) (jury question raised where statement is "ambiguous" as to whether it is "a fact or an opinion").

## II.

### <u>PLAINTIFF'S DEFAMATION CLAIM IS WELL PLEADED</u>

The Amended Complaint alleges causes of action for defamation under New York and Connecticut law. Under New York law, a defamation claim must allege "(1) a false statement about the [complainant]; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F.Supp.2d 405, 411 (S.D.N.Y. 2009) (alternations in original).

Under Connecticut law in order to "establish a *prima facie* case of defamation" a plaintiff "must demonstrate that: (1) [the defendant] published a defamatory statement; (2) this defamatory statement identified [the plaintiff to a third person; (3) this defamatory statement was published to a third person; and (4) [plaintiff reputation suffered injury as a result of the defamatory statement." *Simms v. Seaman*, 308 Conn. 523, 547-48 (Conn. 2013)

The allegations of the Amended Complaint satisfy the elements under both New York and Connecticut law. The MPC Letter includes the false statements that: (1) Plaintiff "falsely" claimed to be an employee of MPC; and (2) did so, as part of an "extortionate money grab." *See* Whelan Dec., Exh. 2 at 3. The MPC Letter was published to more than 450 MPC unit owners. *See* Whelan Dec., Exh. 5 (Amended Complaint) at ¶¶ 7, 96-97. Defendants' false accusations that Plaintiff engaged in criminal acts constitute defamation *per se*. Victor knew his defamatory statements were false when he made them, as he was the person responsible for employing Plaintiff and directing MPC to pay him. Further, Victor, as the person principally involved in retaliating against Erdman, was well-aware that Erdman's retaliation claims were

11

well-founded and not "an extortionate money grab." Since the statements were defamatory *per se*

and Plaintiff has alleged special damages, the allegations set forth in the Amended

Complaint satisfy all four elements of a defamation action under both New York and

Connecticut law.

III.

## <u>DEFENDANTS' DEFAMATORY STATEMENTS ARE NOT PRIVILEGED</u>

Defendants ask the Court to find that their defamatory statements are privileged either

under New York Civil Rights Law § 74 or as a statement subject to common interest. Neither

privilege applies.

### A.  <u>Defendants' Privilege Defenses Are Premature</u>

The rule of drawing all inferences in favor of the plaintiff on a motion to dismiss applies

with particular force on this motion, in which Defendants are relying on various unpleaded

privilege defenses. The Defendants' claims of privilege are affirmative defenses for which they

bear the responsibility to plead and prove. *See Gillings v New York Post*, 166 A.D.3d 584 (2d

Dept. 2018) ("Civil Rights Law § 74 is an affirmative defense to a claim of defamation.")

(*citations omitted*). Defendants' invocation of common interest privilege is also an affirmative

defense. *See Demas v. Levitsky*, 291 A.D.2d 653, (3rd Dept. 2002) ("Because the 'common

interest' privilege constitutes an affirmative defense, however, it does not lend itself to a pre-

answer motion to dismiss pursuant to CPLR 3211(a).") (citations omitted). As such, they are not

ripe for consideration.

The Defendants have improperly moved to dismiss under F.R.Civ.P. 12(b)(6) based on

affirmative defenses they have yet to even plead. The affirmative defenses they rely on do not

12

purport to establish "a failure to state a claim upon which relief can be granted," but rather a

defense to those claims:

> Moreover, this Court has never indicated that qualified immunity is relevant to the existence of the plaintiff's cause of action; instead we have described it as a defense available to the official in question. Since qualified immunity is a defense, the burden of pleading it rests with the defendant. It is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful. We see no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating it in his complaint that the defendant acted in bad faith.

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (*citations omitted*) (reversing grant of Rule 12(b)(6)

motion on qualified immunity affirmative defense in civil rights action).

As *Gomez* shows, it is generally improper to grant a motion to dismiss based on

affirmative defenses. In *Davis v. Indiana State Police*, the Seventh Circuit vacated a judgment

dismissing an ADEA action under Rule 12(b)(6), based on an affirmative defense on which the

defendant "bears the burdens of both production and persuasion:"

> Defending its judgment on appeal, the employer contends that Davis's complaint does not adequately plead that the decision was not made 'pursuant to' the plan. But a complaint need not plead this; it is enough to plead the *claim* (here, that the state held Davis's age against him, and that he was at least 40 years old and thus protected by the ADEA). Section 623(j) affords the state an affirmative defense; on this subject Indiana bears the burdens of both production and persuasion. Complaints need not anticipate, and attempt to plead around, potential affirmative defenses. When *Erickson v. Pardus*, 551 U.S. 89 (2007) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), restated the requirements of Fed.R.Civ.P. 8, the Justices did not revise the allocation of burdens concerning affirmative defenses.; neither *Erickson* nor *Bell Atlantic* mentions affirmative defenses in general or *Gomez* in particular.

541 F.3d 760, 763-64 (7th Cir. 2008) (*citations omitted*). *See McCusker v. Hibu PLC*, 159

F.Supp.3d 341 (E.D. N.Y. 2016) ("The question on a motion to dismiss is whether the Plaintiff

has stated a claim for defamation, which the Court finds he has. 'Any affirmative defenses not

appearing on the face of the complaint, including the defense of truth in a defamation claim, are

properly brought at another stage of the case.'") *quoting Fanelle v. LoJack Corp.*, 79 F.Supp.2d

558, 563 (E.D. Pa. 2000).[3]

**B.   The Fair Reporting Privilege Does Not Apply**

Defendants contend that their statements are privileged under § 74 of the New York Civil

Rights Law, which provides:

> A civil action cannot be maintained against any person, firm or
> corporation, for the publication of a fair and true report of any
> judicial proceeding, legislative proceeding or other official
> proceeding, or for any heading of the report which is a fair and true
> headnote of the statement published.

**1.   The Letter Is Not Reporting A Judicial Proceeding.**

In order for the judicial privilege to apply, the Letter would have to have been understood

by its recipients as a report on a judicial proceeding. "As to the threshold requirement that the

publication purport to comment on a judicial, legislative, or other official proceeding, if the

context in which the statements are made makes it impossible for the ordinary viewer, listener, or

reader to determine whether the defendant was reporting on a judicial or other official

proceeding, the absolute privilege does not apply." *Gillings v New York Post*, 166 A.D.3d 584

(2d Dept. 2018) (*citations omitted*) Accordingly, the Defendants have the burden of proving that

---

[3]  Unfortunately, Defendants' Brief in support of their motion does not indicate what standard

they believe applies to this Rule 12(b)(6) motion, either generally, or with respect to motion on

their anticipated affirmative defenses.

the statements where interpreted by the recipients of the Letter as a clear reporting on the New York Actions. That is a burden they have not attempted to shoulder and will not be able to carry.

The Letter is not a "fair and true reporting of a judicial proceeding." Indeed, it is not a report on a judicial proceeding at all. The Letter, in general, focuses on rebutting accusations of Victor's ineptitude and misconduct. Contrary to Defendants' assertions, the defamatory passage of the Letter does not purport to provide "a summary of claims and defenses made in two pending lawsuits between Plaintiff and the Defendants." *See* Defendants' Brief at p. 8. Far from it, the sole paragraph referencing "the two pending lawsuits" was clearly designed to exculpate Victor from the charge that he was using MPC funds to defend himself in the Khatskevich and Erdman actions:

> Additionally, I have been accused of using building funds to defend two lawsuits against me, my companies, and MPC, by two people – boyfriend and girlfriend – both falsely claiming to have been 'employees' of MPC in 2012-2013. Neither were ever employees of MPC. MPC was named in these lawsuits as an extortionate money grab. Nevertheless, while I was President, I have funded 100% of the costs of defending these lawsuits. Our Independent Audits have shown that, while I have been President, MPC has never paid any legal fees for these or any other lawsuits I have been involved in.

*See* Whelan Dec., Exh. 2 at 3.

Victor does not even refer to, much less provide a "summary," of any of the claims and defense in either action. The defamatory references to Plaintiff's supposedly false claims and extortionate money grab are not described as purported defenses to his claims. Victor defames Plaintiff as a liar and extortionist, but nowhere asserts that it is a defense to the claims against MPC. That is defamation plain and simple.

15

2.  **The Letter Is Not "Fair and True"**

Further, it is impossible to read the defamatory passage as a fair and true report of Erdman's (or Khatskevich's) state court action. During his September 2019 deposition, Victor admitted he did not know what that action was about: "I believe Mr. Erdman filed a false malicious counter-claim against us. I don't even know what it is for, frankly. And he named Manhattan Place, and what Manhattan Place had to do with him is beyond me." *See* Erdman Dec., Exh. 10 at p. 923 12.

The Letter generated a rebuttal letter (the "Rebuttal Letter") from the then Acting President of MPC's Board, Walter Brindak. *See* Erdman Dec. at Exh. 4. The Rebuttal Letter clearly shows that the defamatory passage of the Letter was understood by its recipients to refer to Victor's claim that he paid for his defense out of his own pocket, rather than to provide summary of claims and defenses in the State Court Action:

> There are two other lawsuits Victor has involved us in which our insurance company has been paying for – as well as recent lawsuits Victor brought against fellow board members as well as a subpoena against an MPC resident. ALL incurred legal fees are paid for by Manhattan Place.

*See* Erdman Dec., Exh. 4.

Further, Victor certainly knew that the statement in the Letter that Erdman lied about being an MPC employee was itself a lie. By the time the letter was written, MPC had already move for summary judgment against Erdman twice, failing both times. *See* Erdman Dec. Exh. 8. In neither motion did MPC seek any relief on the grounds that Erdman was not an MPC employee. Victor's claim was a bald-faced fabrication.

At any rate, the disputed issue whether the statements in the Letter are true should not be determined on a motion to dismiss. *See Lan Sang v. Ming Hai*, 951 F.Supp.2d 504, 517 n.3

16

(S.D.N.Y. 2013) (denying motion to dismiss defamation action: "Plaintiff has alleged that the relevant statements were all false. Thus, the defense of truth is – at this stage of the litigation, in any event – inapplicable to this case.")

### 3. **Defendants' Malice Renders Section 74 Inapplicable**.

Defendant's invocation of privilege under Section 74 also fails because of their malice. That privilege may be "lost if abused." *Halperin v. Salvan*, 117 A.D.2d 544, 548 (1st Dept. 1986). In particular, the First Department ruled that the privilege is limited to statements which are not only pertinent to the subject matter of the lawsuit but are made "in good faith and without malice." *Id.* at 548.

Defendants assert that their reference to stealing and distributing documents is related to their state court defense of Plaintiff's unclean hands. *See* Defendants' Brief at 8. That defense is hardly "summarized" by accusing Plaintiff of "extortionate money grab." Further, the "extortion" claim itself stems from Victor's February 2014 plan to trump up false accusations against Erdman unless he stopped helping Khatskevich assert her claims under the New York City Human Rights Law:

> What Tyler doesn't realize is that I'm gonna sue him for aiding and abetting, for breaking into my computer, um, for all types of things, and so he's gonna be sued. So he's gonna have to spend, you know, a hundred thousand dollars in legal fees to defend himself. And I'm gonna sue him for my reputation – a hundred million dollars.

*See* Whelan Dec., Exh. 1 at ¶ 41.

There can hardly be a clearer example of malice and bad faith than a litigant admitting he would fabricate claims against a target to make him stop exercising his legal rights.

**The Common Interest Privilege Does Not Apply**

Defendants seek refuge in New York's recognition of a qualified common interest privilege "when the defamatory statement is made between persons who share a common interest in the subject matter." *See* Defendants' Brief at 9. The common interest privilege has no application to this case.

1. **Victor Lacks A Common Interest With MPC And The Unit Owners.**

Victor had no common interest with the Unit Owners with respect to the topic of the communication – payment of Victor's legal fees in defending the Khatskevich and Erdman actions. Indeed, even in May of 2019, it was clear that Victor and MPC were adversaries. The multitude of lawsuits between them make that perfectly clear. At the outset of the Khatskevich action, Victor had promised to indemnify MPC for any costs incurred. Later, he accessed and eroded MPC's insurance coverage to fund his defense. Currently, he is suing MPC on a claim that it is obligated to indemnify him for the sexual harassment actions against him. In Victor's Five Point plan he outlined how he would never settle with Plaintiff due to his own personal animus. This is directly at odds with MPC's best interest at settling the litigation. By not settling with Plaintiff MPC is risking being held liable for any judgment that may be applied to Victor and his entities.

Victor has also been getting the benefit of having his legal expenses paid by MPC's insurance coverage. If MPC were to settle the New York Actions, it could exhaust remaining limits of that coverage, leaving Victor the obligation to fund his defense out of his own pocket. However, from the time the State Court actions first began, Victor claimed that he would indemnify MPC for all costs associated with them. *See* Erdman Dec., Exh. 6 at 2 ("There is no

18

loss contingency for the Company since Mr. Victor has agreed to indemnify the Company for any and all legal fees or losses.").

Those promises of indemnity disappeared in the Spring of 2019 when Victor's position as President of the Board was threatened. At a Board meeting discussing Victor's removal as President, Schlam Stone & Dolan appeared (then jointly representing MPC and Victor). They proposed that Victor step down voluntarily in exchange for retaining control of the New York Actions and stated that Victor would offer to indemnify MPC only as part of this agreement if his access to MPC's insurance coverage was not voided. *See* Erdman Dec., Exh. 11. If Victor and MPC truly shared a common interest in the litigation there would be no reason for Victor to need to retain control of MPC's legal defense.

Shortly after the failure to negotiate Victor's voluntary stepping down, the Board removed him and the conflict between the Defendants became more apparent. On April 1, 2019 at a Court hearing regarding Victor and MPC's legal fees, Victor's personal attorney Conrad Jordan was present to argue on behalf of both parties. A Board member, Walter Brindak addressed the Court to state MPC was never made aware they were a party to the litigation. Jordan argued that he had never spoken to the Board and as a result couldn't be sure that Brindak was who he claimed to be. Ultimately, Jordan realized there was a conflict of interest and withdrew his representation of both Victor and MPC in that action.

A few hours after the April 1 appearance in Court, Victor filed a lawsuit against his fellow MPC Board members alleging that they were illegally trying to remove him from office. In response to that lawsuit, the Board members' attorney filed an affidavit stating:

> [T]he Board of Managers and Unit Owners of MPC have reason to
> believe that Mr. Victor has used his position as President of the

> MPC's Board of Managers to commit serious abuses of power
> beyond the scope of the authority afforded him under the ByLaws.

*See* Erdman Dec. at Exh. 5 at ¶ 13.

As the war between MPC and Victor escalated in the Spring of 2019, Victor subpoenaed a unit owner, Karen Reuben who had first notified the Board and Unit Owners about MPC's involvement in the New York Actions. The rest of the Board had been talking to Reuben to help build their case for Victor's removal. Schlam Stone & Dolan who were representing both Victor and MPC had submitted the subpoena to Reuben on behalf of MPC on Victor's orders. When the Board ordered them to withdraw it, Schlam Stone refused their request, instead telling MPC that a conflict of interest had arisen and they could no longer represent MPC. They were the second of Victor's attorneys to recognize a conflict of interest within the span of a few months.

Since April 1, 2019 and the present MPC and Victor sued each other in a series of legal actions. *Whelan Dec,* Exh. 1 at ¶ 140 Meanwhile the Board has sued to evict him from a storage room that Victor had taken for himself, and seeks to foreclose on his seven apartments due to unpaid common charges.

The common thread with Victor's slate of litigation with MPC has been over the New York Actions. Among other things, Victor is seeking: (i) reimbursement from MPC for the legal fees he incurred in the New York actions; and (ii) some sort of redress because MPC "tortiously interfered" in the New York Actions, by having Board members "meet with Plaintiff's counsel without co-counsel being present, damaging the defense in said action**."** *Erdman Dec*., Exh 13

MPC is acutely conscious of its lack of "common interest" with Victor. Amos Tamam, the current President of the Board, stated that "Defendant served as President of the Board of Managers of the Condominium for more than twenty years, until he was voted out of office in

early 2019. During his tenure as President, defendant dominated the Board of Managers and used

it benefit himself personally." *See* Erdman Dec., at Exh. 1.

The conflict between Victor, the disgruntled former Board President, and MPC and the

Unit Owners renders the common interest privilege inapplicable:

> In addition, once the Clark firm was discharged and plaintiff
> undertook representation of Garrett and the Lungers, the
> institutional relationship that ordinarily might give rise to a common
> interest or duty to speak was all but eliminated. Clark's new role of
> disgruntled former attorney fundamentally altered his relationship
> with his former clients, thus rendering any common interest
> questionable at best. In order for the privilege to apply, "the relation
> of the parties should be such as to afford reasonable ground for
> supposing an innocent motive for giving the information, and to
> deprive the act of an appearance of officious intermeddling with the
> affairs of others" (Lewis v Chapman, 16 NY 369, 375 [1857]). At
> the time of the communications in this case, the relationship
> between the parties did not suggest such an innocent motive.
> Accordingly, we hold that no qualified privilege exists as a matter
> of law.

*Silverman v Clarke*, 35 A.D.3d 1, 11-12 (1st Dept. 2006).

### 2. **The Common Interest Privilege Is Voided By Malice.**

While New York recognizes that some defamatory statements can be shielded by a

qualified common interest privilege, malicious statements cannot, as Defendants admit. *See*

Defendants' Brief at 10.

> A party alleging defamation can overcome the common interest
> privilege by showing that the defamatory statement was made with
> either common law or constitutional malice. 'Common-law
> malice mean[s] spite or ill will, and will defeat the privilege only if
> it is the one and only cause for the publication.' 'Constitutional or
> actual malice means publication with [a] high degree of awareness
> of [the publication's] probable falsity or while the defendants in fact
> entertained serious doubts as to the truth of [the] publication.'

*Fuji Photo Film U.S.A., Inv. v. McNulty*, 669 F.Supp.2d 405, 412 (S.D.N.Y. 2009).

21

Here Plaintiff alleges both forms of malice. Victor was aware of the falsity of his defamatory claims at the time he sent the Letter and he included the defamatory claims out of spite against Erdman. *See* Whelan Dec, Exh. 1 at ¶ 98, 159

Defendants contend that because Victor had non-malicious motives for sending the Letter, the defamatory statements were not motivated solely by malice. *See* Defendants Brief at 10-11. That is false. First, as explained in *Fuji Film*, that argument only applies to common law malice. It has no application where, as here, Plaintiff alleges constitutional malice. Second, while Defendants are correct that Victor had multiple motives for sending the Letter, including the desire to "avoid being held accountable for his actions" and to conceal his "theft of building funds," and mask his "mismanagement and ineptitude" (*id.*), none of those motives apply to his defamatory statements. Calling Erdman a liar and an extortionist was solely motivated by malice. It did nothing to further Victor's ulterior motives. Accordingly, Defendants' arguments fail with respect to both forms of malice.

### III.

### DEFENDANTS' DEFAMATORY STATEMENTS ARE NOT MERE OPINION, EXAGGERATION OR EPITHETS

#### A.  The Defamatory Statements Were Not Mere Opinion, Hyperbole, Or Epithets

Defendants claim that the defamatory statements were made as opinion, hyperbole, or epithets is directly at odds with the contents of the Letter. Victor clearly intended his statements to be considered factual. Immediately following the paragraph with the defamatory statements, Victor wrote: "People are entitled to their own opinions about me – but they are not entitled to their own facts. *See* Whelan Dec., Exh. 2 at 3.

Further, it is impossible to square Defendants' claim that calling Erdman a liar and an extortionist was mere opinion with New York law that "[t]he dispositive inquiry, under either Federal or New York law, is 'whether a reasonable [reader] *could have concluded* that [the articles were] conveying facts about the plaintiff." *Gross v. New York Times Co*., 82 N.Y.2d 146, 152 (1993) (*emphasis added*) *quoting 600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 139 (1992).

Courts must "'not strain' to interpret [challenged] writings 'in their mildest and most inoffensive sense to hold them nonlibelous.'" *November v. Time, Inc.*, 13 N.Y.2d 175, 178 (1963) *quoting Kleeberg v Sipser*, 265 N.Y. 87, 91-92 (1934). *See also Selleck v. Globe Int'l, Inc.*, 166 Cal. App. 3d 1123, 1131 (1985) ("[O]ur inquiry is not to determine whether the publication may have an innocent meaning but rather to determine if it reasonably conveys a defamatory meaning [by looking at] what is explicitly stated as well as what insinuation and implication can be reasonably drawn from the publication.") (emphasis added).

The test is purposefully lenient for plaintiffs and all inferences should be drawn in favor of sustaining the complaint: "If, upon any reasonable view of the stated facts, plaintiff would be entitled to recovery for defamation, the complaint must be deemed to sufficiently state a cause of action." *Silsdorf v. Levine*, 59 N.Y.2d 8, 12 (1983).

Further, Defendants' claims now that accusing Erdman of extortion is a mere opinion, hyperbole or epithet is impossible to square with their insertion of such extortion claims as an affirmative defense in multiple pleadings submitted to court. *See* Whelan Dec., Exh. 6 at p. 3, Erdman Dec., Exh. 12 at p 2,5,7,12. An affirmative defense must be proven to be sustained. It cannot be intended as "opinion," "hyperbole," or "epithet."

**IV.**

### PLAINTIFF HAS PLEADED DEFAMATION *PER SE* AND HAS PLEADED SPECIAL DAMAGES

Plaintiff has alleged that Defendants accused him of an "extortionate money grab." Indeed, the Defendants have submitted pleadings in New York and Delaware accusing Erdman of extortion. Charging a person with a serious crime constitutes defamation per se under New York law. Extortion is a felony under New York's penal code. *See* N.Y. Penal Law § 155.05. Extortion is also recognized as a serious offense under federal law, constituting a predicate act under federal RICO law. *See* 18 U.S.C. § 1961(1)(A) (defining "racketeering activity" as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical … which is chargeable under State law and punishable by imprisonment for more than one year."

Thus, Plaintiff has adequately alleged defamation *per se*.

Plaintiff has pleaded special damages as well. The Amended Complaint alleges that at the time the defamatory statements were published, "Erdman was in the process of negotiating a settlement with MPC" and that Defendants' defamation "destroyed any possibility of a settlement of Plaintiff's claims against MPC." *See* Whelan Dec. Exh. 5 at ¶¶ 153-154. The interference with the parties' settlement negotiations constitutes clear financial harm. At minimum, Defendants' interference has caused Erdman's litigation with MPC to drag on for a minimum of an extra two years.

24

**V.**

**DEFENDANTS' MOTION TO STRIKE SHOULD BE DENIED**

Defendants argue in the alternative that certain allegations of the Amended Complaint should be stricken as "redundant, immaterial, impertinent, or scandalous." *See* Defendants' Brief at 17-21. The allegations Defendants seek to strike relate to the lack of a common interest between Victor and the Unit Owners and/or the current Board's motivations for coddling Victor, even though he is a felon who consistently embezzled from MPC during his two-decade tenure as Board President.  Accordingly, they should not be stricken.

**CONCLUSION**

For the foregoing reasons, Plaintiff *pro se*, Tyler Erdman, respectfully requests that the Court deny Defendants' motion in its entirety.

Dated: December 9, 2020
      Weston, CT

/s/ Tyler I. Erdman
Tyler I. Erdman
Telephone: (917) 301-0401
Email: tyler@erdman.it
20 Old Farm Road
Weston, CT 06883
*Plaintiff Pro Se*

25