UNITED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYLER ERDMAN,

                    *Plaintiff*,              Case No. 20-cv-4162

          v.                             Hon. Lorna G. Schofield

ADAM VICTOR,

                    Defendant.

---

**<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT</u>**

**POLIZZOTTO & POLIZZOTTO LLC**

Alfred Polizzotto
69-11 18th Avenue
Brooklyn. NY 11204
Phone: (718) 232-1250
Fax: (718) 256-0966
ap3@polizzotto.com

                          *Attorney for Defendant Adam Victor*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 7
STATEMENT OF FACTS ........................................................................................................... 8
       A.     Background Of Related State Court Actions ............................................................ 8
       B.     Victor Sends A Letter Summarizing And Stating His Opinion About The Lawsuits ..................................................................................................................... 3
ARGUMENT .................................................................................................................................. 9
I.     PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION BASED ON VICTOR'S MAY 31, 2019 LETTER ............................................................................. 6
       A.     The Letter Is Absolutely Privileged Under New York Civil Rights Law Section 74 ................................................................................................................ 10
       B.     The Letter Is Also Protected By The Common Interest Privilege ......................... 11
       C.     Under New York Law, The Allegedly Defamatory Statements Are Protected Statements Of Opinion ............................................................................................ 13
       D.     Under New York Law, Otherwise Defamatory Statements Are Protected When They Are Made In The Context Of A Dispute Where Hyperbole And Epithets Are To Be Expected ..................................................................................... 14
       E.     Plaintiff Fails To Plead Defamation Per Se And Also Fails To Plead Any Compensable Damages ........................................................................................... 15
II.    IN THE ALTERNATIVE, THE COURT SHOULD STRIKE REDUNDANT, IMMATERIAL, IMPERTINENT AND SCANDALOUS MATERIAL FROM THE SECOND AMENDED COMPLAINT ..................................................................... 17
CONCLUSION ............................................................................................................................ 20

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                              **Page(s)**

*600 West 115th St. Corp. v. Von Gutfeld*,
   80 N.Y.2d 130 (1992) .................................................................................................. 14

*Alexander v. Cnty. of Onondaga*,
   2009 WL 1322311 (N.D.N.Y. May 12, 2009) ........................................................ 16-17

*Anderson v. Davis Polk & Wardwell, LLP*,
   850 F. Supp 2d 392 (SDNY 2012) ............................................................................ 18

*Arochem Intern., Inc. v. Buirkle*,
   767 F.Supp. 1243 (S.D.N.Y. 1991), aff'd, 968 F.2d 266, 270 (2d Cir.1992) .............. 6

*Beary v. W. Publ'g Co.*,
   763 F.2d 66 (2d Cir. 1985) ......................................................................................... 11

*Biro v. Condé Nast*,
   883 F.Supp.2d 441 (S.D.N.Y. 2012) .......................................................................... 10

*Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
   813 F.Supp.2d 489 (S.D.N.Y. 2011) ..................................................................... 16-17

*Cammarata v. Cammarata*,
   61 A.D.3d 912 (2d Dep't 2009) ................................................................................ 16

*Celle v. Filipino Reporter Enterprises Inc.*,
   209 F.3d 163 (2d Cir.2000) ....................................................................................... 14

*Clemente v. Impatato*,
   274 A.D.2d 771 (3d Dep't 2000) ............................................................................... 17

*Cummings v. City of New York*,
   2020 WL 882335 (S.D.N.Y. Feb. 24, 2020) ............................................................. 12

*Deaton v. Napoli*,
   2019 WL 156930, 2019 US Dist LEXIS 6607 (EDNY Jan. 10, 2019, No. 2:17-CV-04592
   (JFB) (GRB)) .............................................................................................................. 6

*Franklin v. Daily Holdings, Inc.*,
   135 A.D.3d 87 (1st Dep't 2015) ................................................................................ 16

*Front, Inc. v. Khalil*,
   24 N.Y.3d 713 (2015) ............................................................................................. n.1

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
   669 F.Supp.2d 405 (S.D.N.Y. 2009) ..................................................................... 10,12

*G-I Holdings*, Inc. v. *Baron & Budd*,
   238 F. Supp. 2d 521 (S.D.N.Y. 2002) .................................................................................. 18

*Galanova v. Safir*,
   138 AD3d 686, 687-688 (2d Dep't 2016) ............................................................................ 13

*Galasso v. Saltzman*,
   42 A.D.3d 310 (1st Dep't 2007) ...................................................................................... 12,14

*Gargiulo v. Forster & Garbus Esqs.*
   651 F.Supp.2d 188, 192 (S.D.N.Y. 2009) ............................................................................ 10

*Glazier v. Harris*,
   159 A.D.3d 581 (1st Dep't 2018) ......................................................................................... 11

*Grasso v. Matthews*,
   164 A.D.2d 476 (3rd Dep't 1991) ........................................................................................... 8

*Greenbelt Publ. Assn. v. Bresler*,
   398 U.S. 6 (1970) ................................................................................................................. 15

*Idema v. Wager*,
   120 F.Supp.2d 361, 365 (S.D.N.Y. 2000), aff'd, 29 F. App'x 676 (2d Cir. 2002) ................ 10

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941) ............................................................................................................... 5

*Kowalczyk v. McCullough*,
   55 A.D.3d 1208 (3d Dep't 2008) .......................................................................................... 16

*Kuczinski v. City of New York*,
   352 F. Supp. 3d 314 (S.D.N.Y. 2019) .................................................................................. 12

*Lacher v. Engel*,
   33 A.D.3d 10 (1st Dep't 2006) ............................................................................................. 11

*Lee v. Bankers Trust Co.*,
   166 F.3d 540 (2d Cir.1999) .................................................................................................... 6

*Liberman v. Gelstein*,
   80 N.Y.2d 429 (1992) ..................................................................................................... 12,13

*Martin v. Hayes*,
   105 A.D.3d 1291 (3d Dep't 2013) ........................................................................................ 14

*Low v. Robb*,
   2012 WL 173472, 2012 US Dist LEXIS 6836 (S.D.N.Y. Jan. 20, 2012) ............................ 20

*Mann v. Abel*,
   10 N.Y.3d 271 (2008), cert denied 555 U.S. 1170 (2009) ................................................... 14

*Matherson v. Marchello*,

4

100 A.D.2d 233 (2d Dep't 1984)......................................................................................... 16

*Melius v. Glacken*,
   94 A.D.3d 959 (2d Dep't 2012) ............................................................................... 11-12, 14

*Mobile Data Shred, Inc. v. United Bank of Switzerland*
   2000 WL 351516 (S.D.N.Y. 2000) .................................................................................. 17

*Morse v. Weingarten*,
   777 F Supp 312 (SDNY 1991) ......................................................................................... 19

*Neal v. Asta Funding, Inc.*,
   2014 WL 3887760 (S.D.N.Y. 2014).................................................................................. 17

*Oram v. SoulCycle LLC*,
   979 F. Supp. 2d 498 (S.D.N.Y. 2013) ............................................................................... 18

*Padula v. Lilarn Properties Corp.*,
   84 N.Y.2d 519 (1994)......................................................................................................... 5

*Pecile v. Titan Capital Group, LLC*,
   96 A.D.3d 543 (1st Dep't 2012) ....................................................................................... 15

*Petrello v White*,
   2018 WL 4344955, 2018 US Dist LEXIS 154796 (EDNY Sep. 11, 2018, No. 01-CV-3082
   (DRH)(AKT) ..................................................................................................................... 20

*Polish American Immigration Relief Committee v. Relax*,
   189 A.D.2d 370 (1st Dep't 1993) ..................................................................................... 14

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
   813 F.Supp.2d 489 (S.D.N.Y. 2011) ................................................................................ 16

*RSM Production Corp. v. Fridman*,
   643 F. Supp. 2d 382 (S.D.N.Y. 2009) .............................................................................. 20

*Sexter & Warmflash, P.C. v. Margrabe*,
   38 A.D.3d 163 (1st Dep't 2007) ....................................................................................... 11

*Sharrat v. Hickey*,
   20 A.D.3d 734 (3d Dep't 2005).......................................................................................... 17

*Shawe v. Kramer Levin Naftalis & Frankel LLP*,
   167 A.D.3d 481 (1st Dep't 2018)....................................................................................... 17

*Sheldon v. PHH Corp.*,
   135 F.3d 848 (2d Cir. 1998) ............................................................................................... 5

*Simms v. Marquez*,
   2008 WL 2556255 (Sup. Ct. New York Cty. 2008)......................................................... 13

*Steinhilber v. Alphonse*,
   68 N.Y.2d 283 (1986)....................................................................................................... 12

*Thai v. Cayre Group, Ltd.*,
   726 F.Supp.2d 323 (S.D.N.Y. 2010) .................................................................................. 13

*Trustco Bank* of N.Y. *v. Capital Newspaper Div. of Hearst Corp.*,
   213 A.D.2d 940, 942–943 (3d Dep't 1995) ......................................................................... 14

*Vardi v. Mut. Life Ins. Co. of New York*
   136 A.D.2d 453, 455 (1st Dep't 1988) ................................................................................ 16

*Zappin v. NYP Holdings, Inc.*,
   2018 WL 1474414 (S.D.N.Y. Mar. 26, 2018), aff'd, 769 F. App'x 5 (2d Cir. 2019) ............... 10

Statutes

N.Y. C.P.L.R. 3016 .................................................................................................................. 16
N.Y. Civ. Rights Law § 74 ......................................................................................................... 7

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................... 13, 21

Pursuant to the Court's September 8, 2021 Memorandum Order, Defendant Adam Victor ("Victor"), by his attorneys, Polizzotto & Polizzotto LLC, respectfully submits this memorandum of law, along with the Declaration of Alfred Polizzotto ("Polizzotto Decl.") in support of his motion pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) to dismiss the Second Amended Complaint ("Sec. Amen. Compl.") filed by *pro se* Plaintiff Tyler Erdman ("Plaintiff" or "Erdman"), or, in the alternative, pursuant to FRCP 12(f) to strike scandalous and impertinent statements which Erdman gratuitously inserted into the Second Amended Complaint. A copy of the Second Amended Complaint is attached as Exhibit 1 to the Polizzotto Decl.

## PRELIMINARY STATEMENT

This action is one of several lawsuits involving Plaintiff, Victor, the Board, and Plaintiff's former girlfriend, Yevgeniya Khatskevich ("Eve"). In this action, Plaintiff alleges he was defamed in a letter written by Victor summarizing and expressing a negative opinion about the two pending state court actions ("State Actions"). In the State Actions, Erdman and Eve allege employment discrimination and retaliation by Victor and various entities under his control, and by Manhattan Place Condominium ("MPC"). MPC contends they never employed Erdman or Eve, and Victor has asserted the claims against them were contrived as part of an extortion scheme.

The Board is the body charged with managing MPC's affairs and Victor is the former President of the Board. On May 31, 2019, Victor sent a letter (the "Letter") to MPC unit owners chronicling various matters affecting MPC, including a brief summary of the two lawsuits. In the Letter, Victor describes Erdman and Eve (without identifying them by name) as "falsely claiming to have been 'employees' of MPC" and describes their decision to sue MPC as "an extortionate money grab" (Sec. Amen. Compl. ¶ 64). Several weeks later, MPC held an election; an entirely new Board was elected and none of the current Board members ever served with Victor.

7

In this action, Plaintiff alleges he was defamed in the Letter and, as a result, was prevented from settling the State Actions with MPC. However, under New York law, the contents of the Letter were subject to an absolute privilege because they were reporting on pending litigation. The allegedly defamatory statements are also subject to privileges because they were made exclusively to MPC's joint owners, all of whom share a common interest in defeating the claims against MPC. Additionally, Plaintiff is complaining about statements of opinion, not fact, which are absolutely privileged under New York law. For those reasons, and the reasons that follow, Defendant's motion to dismiss should be granted in its entirety.

## STATEMENT OF FACTS

A.  Background of Related State Court Actions

Plaintiff, Victor and MPC are currently involved in two separate actions pending in New York State Supreme Court. In *Khatskevich v. Victor, et al.*, Index No. 151658/2014 (the "Khatskevich Action"), plaintiff Yevgeniya Khatskevich is suing MPC, Victor, and several of Victor's companies for, among other things, sexual harassment, immigration status discrimination, and retaliation under the New York City Human Rights Law arising out of her alleged employment by Victor and MPC (Polizzotto Dec. Ex. 3 ¶¶ 12, 172-263). Victor served as President of the Board at the time of Khatskevich's alleged employment with the Khatskevich Action Defendants. Among the defenses asserted is the doctrine of unclean hands. Specifically, the defendants pled in their Answer that Khatskevich "engaged in a scheme to extort Defendants, assisted by her boyfriend, Tyler Erdman, and cannot complain now that Defendants finally discovered Plaintiffs' [sic] nefarious scheme." (Polizzotto Decl., Ex. 4 ¶¶ 264-265). Those defendants have also denied Ms. Khatskevich was employed by any entity except Transgas Energy Systems LLC. (*Id.* at ¶ 262).

Plaintiff, Victor, MPC and Ms. Khatskevich are also parties to *Victor v. Khatskevich et al.*, New York County Supreme Court, Index No. 158981/2014 (the "Victor Action"). Erdman is a defendant in the Victor Action, and has filed counterclaims against Victor and Victor's companies, and MPC, alleging employment retaliation arising out of his alleged employment by Victor and MPC (Polizzotto Decl., Ex. 5 ¶¶ 119-129). In their reply to Erdman's counterclaims, Victor and MPC asserted a defense based on the doctrine of unclean hands. Specifically, Victor and MPC have alleged Erdman stole files and contacted media outlets in furtherance of an "extortion scheme" (Polizzotto Decl., Ex. 6 at p. 3). Victor and MPC have also denied Erdman was actually employed by either of them (*Id.*)

B. Victor Sends a Letter Summarizing and Stating His Opinion About the Lawsuits

Plaintiff alleges he was engaged in direct settlement discussions with MPC unit owners and board members (Sec. Amen. Complaint ¶ 18), On May 31, 2019, Victor send the Letter to MPC's unit owners, inter alia, summarizing the state court lawsuits and expressing his opinion of them. To the extent the Letter addresses the State Actions, it provides in its entirety, as follows:

> Additionally, I have been accused of using building funds to defend two lawsuits against me, my companies, and MPC, by two people – boyfriend and girlfriend – both falsely claiming to have been "employees" of MPC in 2012-2013. Neither were ever employees of MPC. MPC was named in these lawsuits as an extortionate money grab. Nonetheless, while I was President, I have funded 100% of the costs of defending these lawsuits. Our Independent Audits have shown that, while I have been President, MPC has never paid any legal fees for these or any other lawsuits I have been involved in.

(Sec. Amen. Compl., ¶ 64; Polizzotto Dec. Ex. 2)

Plaintiff alleges this statement was defamatory because it falsely stated Plaintiff "has been engaging in extortionate conduct against MPC…" and that Plaintiff has committed perjury by claiming to be employed by MPC (Sec. Amen. Compl. ¶ 66-67).

9

## ARGUMENT

### I. PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION BASED ON VICTOR'S MAY 31, 2019 LETTER

"Defamation is the injury to one's reputation by written expression, which is libel, or by oral expression, which is slander." *Biro v. Conde Nast*, 883 F.Supp.2d 441, 456 (S.D.N.Y. 2012, quoting *Idema v. Wager*, 120 F.Supp.2d 361, 365 (S.D.N.Y. 2000), aff'd 29 F. App'x 676 (2d Cir. 2002), Under New York law, a defamation claim must allege "(1) a false statement about the [complainant]' (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages'" *Fuji Photo Film U.S.A., Inc., v. McNulty*, 669 F.Supp.2d 405, 411 (S.D.N.Y. 2009) (alterations in original), quoting *Gargiulo v. Forster & Garbus Esqs.*, 651 F.Supp.2d 188, 192 (S.D.N.Y. 2009).

Here, Plaintiff alleges that he was defamed in a May 31, 2019 letter signed by Victor in his capacity as a Member of the Board of Managers. As detailed below, the Letter is subject to absolute and qualified privileges, and includes non-actionable statements of opinion and hyperbole. Additionally, Plaintiff's claims fail because he does not adequately plead special damages or defamation per se.

#### A.  The Letter Is Absolutely Privileged Under New York Civil Rights Law Section 74

A plaintiff cannot prevail on a defamation claim where the statements complained of are privileged under New York State law. *Zappin v. NYP Holdings, Inc.*, 2018 WL 1474414, at *5 (S.D.N.Y. Mar. 26, 2018), aff'd, 769 F. App'x 5 (2d Cir. 2019). The contents of the Letter are subject to the judicial reporting privilege codified at § 74 of the New York Civil Rights Law. It provides as follows:

> A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for

any heading of the report which is a fair and true headnote of the statement published.

N.Y. Civ. Rights Law § 74. "[T]he statute confers an absolute immunity, regardless of proof of malice or negligence, upon any person who publishes a 'fair and true report' of a judicial [proceeding]." *Beary v. W. Publ'g Co.*, 763 F.2d 66, 68 (2d Cir. 1985). Under § 74, a report of an official proceeding that is "fair and true" is protected by an "absolute privilege," and this privilege is "not defeated by the presence of malice or bad faith." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 477 (S.D.N.Y. 2012) (internal quotation marks and citations omitted).

The judicial reporting privilege is very broad in scope, as it applies to any statement "if it is at all pertinent to the litigation." *Lacher v. Engel*, 33 A.D.3d 10, 13 (1st Dep't 2006). The breadth of the privilege is examined in *Sexter & Warmflash, P.C. v. Margrabe,* 38 A.D.3d 163, 174 (1st Dep't 2007):

> "The absolute privilege is not limited to statements made on the record during oral testimony or argument, or set forth in formal litigation documents, such as pleadings, affidavits, and briefs. In the interest of 'encourag[ing] parties to litigation to communicate freely in the course of judicial proceedings' (*Grasso,* 164 A.D.2d at 480, 564 N.Y.S.2d 576), the privilege is extended to all pertinent communications among the parties, counsel, witnesses, and the court. Whether a statement was made in or out of court, was on or off the record, or was made orally or in writing, the rule is the same—the statement, if pertinent to the litigation, is absolutely privileged."[1]

The contents of the Letter are subject to the absolute privilege because the Letter is a summary of claims and defenses made in two pending lawsuits between Plaintiff and the Defendants. The references to Plaintiff stealing documents and distributing stolen documents

---

[1] In *Front, Inc. v. Khalil*, 24 N.Y.3d 713 (2015) the New York Court of Appeals limited *Sexter*, holding that pre-litigation communications were subject to a qualified privilege, not an absolute privilege. The distinction is not material to this action, as the Letter was sent while the State Court actions were pending.

11

relates to Defendants' defenses sounding in unclean hands. The reference to Plaintiff falsely claiming to be an MPC employee relates to Defendants' defense in the litigation that Plaintiff was not an employee of MPC. Thus, the statements are protected by the absolute privilege because they are "pertinent to" the pending lawsuits and "substantially accurate." *Lacher*, 33 A.D.3d at 17.

Insofar as Plaintiff's defamation claims arise out of the Letter, they should be dismissed because the contents of the Letter are subject to the judicial reporting privilege. *See Cummings v. City of New York*, 2020 WL 882335, at *16 (S.D.N.Y. Feb. 24, 2020) (dismissing defamation claim based on fair report of pending litigation).

### B. The Letter Is Also Protected By The Common Interest Privilege

"New York also recognizes a qualified common interest privilege when the defamatory statement is made between persons who share a common interest in the subject matter." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F.Supp.2d 405 (S.D.N.Y. 2009). "The rationale for applying the [common interest] privilege in these circumstances is that so long as the privilege is not abused, the flow of information between persons sharing a common interest should not be impeded." *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992). Courts will dismiss defamation claims when they are based on statements subject to the common interest privilege. *Kuczinski v. City of New York*, 352 F. Supp. 3d 314, 325 (S.D.N.Y. 2019) (granting motion brought under FRCP 12(b)(6) to dismiss defamation claim based on absolute privilege and qualified common interest privilege under New York law).

Here, Plaintiff alleges that he was defamed in a Letter which summarizes the pending lawsuits between Plaintiff, on the one side, and Victor and the Board, on the other side. Plaintiff specifically alleges that Defendants circulated the Letter to "hundreds of unit owners" (Sec. Amen. Compl., ¶14); he does not allege that Defendants sent the Letter to anyone outside the

Condominium. As such, the contents of the Letter are subject to the common interest privilege and cannot give rise to valid claims for defamation.

The unit owners to whom the Letter was sent all share an interest in defeating Plaintiff's lawsuits against the Board. Therefore, the Letter is subject to the common interest privilege. *Galanova v Safir*, 138 AD3d 686, 687-688 (2d Dep't 2016) (applying common interest privilege to "Shareholders in Arrears" flyers posted in the lobby of the Co-op building); *Liberman*, 80 N.Y.2d at 437 (common interest privilege applies to statement by members of tenant's association accusing landlord of bribery and other illegal conduct); *Simms v. Marquez*, 2008 WL 2556255 (Sup. Ct. New York Cty. 2008) ("The qualified privilege exists here where the parties are all interested in, and concerned with, the proper functioning of the Condominium, and the alleged defamatory statements were made to other residents of the Condominium, and there is no allegation of a publication to anyone outside the building").

Plaintiff attempts to overcome the common interest privilege by alleging that the Defendants defamed him maliciously. "At the pleadings stage, a plaintiff can overcome the common interest privilege by alleging that the defamatory statement was motivated solely by [common law or constitutional] malice." *Thai v. Cayre Group, Ltd.*, 726 F.Supp.2d 323, 329 (S.D.N.Y. 2010) (brackets in original). However, "[m]ere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the claim of qualified privilege." *Id*. Here, Plaintiff attempts to utilize or invoke a kind of quasi-judicial privilege by citing a number of alleged statements of opinion by the Defendant that are part of the State Actions. However, an accumulation of statements from other litigations do not establish that Defendant's opinions are actually statements of fact. Thus, even on this motion brought under FRCP 12(b)(6), Plaintiff's conclusory allegations of malice are not entitled to a presumption of truthfulness, and Plaintiff cannot overcome the common interest privilege. *Id*.

C. Under New York Law, The Allegedly Defamatory Statements Are Protected Statements of Opinion

Under New York law, "only statements alleging facts can properly be the subject of a defamation action." *600 West 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 139 (1992). "Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008), *cert denied* 555 U.S. 1170 (2009). "[T]he New York Constitution provides for absolute protection of opinions." *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 178 (2d Cir.2000).

Here, all of the statements describing Plaintiff as a criminal and describing his lawsuits against the Defendants as a form of extortion are statements of opinion. New York Courts have consistently held that statements describing a lawsuit as a form of "extortion" are not actionable as defamation because the statement conveys the speaker's opinion about the underlying lawsuit. *See Melius v. Glacken*, 94 A.D.3d 959, 959–60 (2d Dep't 2012) (dismissing action for defamation because statement that plaintiff was an "extortionist" "was conveying the defendant's opinion as to the merits of the plaintiff's lawsuit"); *Trustco Bank of N.Y. v. Capital Newspaper Div. of Hearst Corp.*, 213 A.D.2d 940, 942–943 (3d Dep't 1995) (describing lawsuit as a form of "extortion," a felony, not defamatory because "no reasonable reader could understand Flanigan's statements as saying that plaintiff committed the criminal act of extortion"). Likewise, New York Courts have consistently held that statements describing someone as a criminal are not actionable as defamation in this context. *See Galasso v. Saltzman*, 42 A.D.3d 310, 311 (1st Dep't 2007) (statement that plaintiff was "no good" and "a criminal" constituted opinion and were not actionable as a matter of law); *Polish American Immigration Relief Committee v. Relax*, 189 A.D.2d 370 (1st Dep't 1993) (calling plaintiffs "thieves" was opinion and not actionable).

D.  Under New York Law, Otherwise Defamatory Statements Are Protected When They Are Made In The Context Of a Dispute Where Hyperbole and Epithets Are To Be Expected.

Context matters in actions for defamation. "[E]ven apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an 'audience may anticipate [the use] of epithets, fiery rhetoric or hyperbole.'" *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 294 (1986), quoting *Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir.1980). Plaintiff fails to state a claim for defamation because a reasonable person reading the Letter would understand, from the context in which the Letter was sent, that it included "rhetorical hyperbole" and "vigorous epithets". *See Greenbelt Publ. Assn. v. Bresler*, 398 U.S. 6 (1970) (describing real estate developer's bargaining position as "blackmail" not actionable).

Under New York law, "loose, hyperbolic language" is not actionable as defamation. *Pecile v Titan Capital Group, LLC*, 96 A.D.3d 543, 544 (1st Dep't 2012) (dismissing defamation claim because defendant's use of term "shakedown" did not lead listeners to believe defendants were "seriously accusing plaintiffs [plaintiffs] of committing the crime of extortion"). Here, the statement that Plaintiff stole documents and distributed stolen documents relates to Victor's contention that Plaintiff misappropriated records, which is arguably criminal conduct. Therefore, the references to Plaintiff stealing documents are protected as hyperbole and vigorous epithets. *See Galasso*, 42 A.D.3d at 311 (dismissing defamation claim where defendant's "references to criminality refer to the arguable criminal trespasses on his property and on common areas of the subdivision").

E.  Plaintiff Fails to Plead Defamation Per Se and Also Fails to Plead Any Compensable Damages

Under New York law, the plaintiff in a defamation action must allege that he or she suffered "special damages" unless the defamatory statement falls into one of four "per se"

15

exceptions, including a statement charging plaintiff with a serious crime. *Liberman*, 80 N.Y.2d at 434. Where the complaint fails to allege either special damages or defamation per se, it must be dismissed. *Cammarata v. Cammarata*, 61 A.D.3d 912 (2d Dep't 2009) (dismissing defamation claim because plaintiff failed to allege special damages and statements in issue did not qualify as defamation per se); *Kowalczyk v. McCullough*, 55 A.D.3d 1208 (3d Dep't 2008) (affirming dismissal). Here, plaintiff fails to adequately allege either special damages or that he was falsely accused of committing a serious crime.

Plaintiff alleges special damages in that Defendants' statements supposedly prevented him from persuading unit owners to settle his lawsuit against the condominium. (Sec. Amen. Compl., ¶18). Speculative and unquantifiable losses do not qualify as special damages. Rather, New York law requires "the loss of something having economic or pecuniary value, which must flow directly from the injury to reputation caused by the defamation and not from the effects of the defamation." *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87 (1st Dep't 2015), quoting *Agnant v. Shakur*, 30 F.Supp.2d 420, 426 (S.D.N.Y. 1998).

Plaintiff's claimed inability to settle his lawsuit is both too speculative and too remote to qualify as special damages.[2] Defendant apparently contends that he could have persuaded the unit owners to settle his lawsuit but for the allegedly defamatory statements. However, the unit owners do not even have the authority to settle a lawsuit against the condominium. Under the New York State Condominium law and the condominium's by-laws, the Board alone has authority to settle the lawsuit. Plaintiff does not even identify a specific loss, but pleads generalized damages "in excess of $75,000" (Sec. Amen. Compl., ¶161). "Round figures" or a general allegation of a dollar amount as special damages do not suffice. *Matherson v. Marchello*, 100 A.D.2d 233, 235

---

[2] It also cannot be said that Plaintiff permanently lost the opportunity to settle the state court actions, because they are ongoing and may be settled at any time.

(2d Dep't 1984).

Since Plaintiff fails to adequately plead special damages, his claims can only survive if he pleads defamation per se. Plaintiff contends that "Defendants' statements qualify as defamation per se in that they state Erdman was involved in a crime." (Sec. Amm. Compl., ¶161). However, this allegation would fail as to Mr. Victor's statement, which merely expressed the opinion that Plaintiff's claim is an "extortionate money grab." *See Melius v. Glacken*, 94 A.D.3d at 959–60. Moreover, Plaintiff does not and cannot allege that Defendants falsely accused him of committing a "serious crime." The threshold for conduct qualifying as a "serious crime" is quite high. For example, the Court of Appeals has held that the statement "Liberman threatened to kill me and my family" was not slanderous *per se. Liberman*, 80 N.Y.2d at 436. *Likewise, in Martin v. Hayes*, 105 A.D.3d 1291 (3d Dep't 2013) the Court held that a statement accusing plaintiff of committing trespass was not defamation per se because trespass is not a serious crime. The statement that Plaintiff "stole" documents from Victor does not allege that he committed a "serious crime" but instead "constitute[s] the imputation of unlawful behavior amounting to no more than minor offenses which are not actionable without proof of damages." *Clemente v. Impatato*, 274 A.D.2d 771, 774 (3d Dep't 2000).

At most, Plaintiff is accused of misappropriating information that he sought to use for his own advantage in pending litigation. Such an allegation is not actionable because misappropriation of documents does not qualify as a serious crime under New York law. *See Sharrat v. Hickey*, 20 A.D.3d 734 (3d Dep't 2005) (plaintiff did not state cause of action for defamation based on statement by defendant accusing plaintiff of violating local ordinances).

II. **IN THE ALTERNATIVE, THE COURT SHOULD STRIKE REDUNDANT, IMMATERIAL, IMPERTINENT AND SCANDALOUS MATERIAL FROM THE AMENDED COMPLAINT**

FRCP 12(f) permits a court to strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. "Impertinent" and "immaterial" allegations are irrelevant or non-responsive to the issues in the action. *Anderson v Davis Polk & Wardwell*, LLP, 850 F. Supp 2d 392, 416 (SDNY 2012). A "scandalous" allegation " . . . unnecessarily reflects on the moral character of an individual . . . " *Id.*

"Although motions to strike are generally disfavored, allegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones." *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 511 (S.D.N.Y. 2013) (striking allegation of mistreatment of customers in action concerning breach of collective bargaining agreement) (quoting *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002).

Plaintiff's Second Amended Complaint, approximately 29 pages in length, is replete with impertinent or scandalous allegations that should be stricken.

Plaintiff's scandalous allegations similarly include various allegations of impropriety by Victor against MPC and/or its insurance company. Specifically, Plaintiff alleges that Victor directed MPC to hire his own companies' employees, and had his employees bill MPC for work that was really done for Victor's companies, without Victor's companies having to pay the employees. (*Id.* ¶ 26(a).) Plaintiff alleges that MPC then billed the amount paid to Victor's employees to MPC's insurance company. (*Id.* ¶ 26(b).) Plaintiff makes similar allegations regarding services rendered by a man named Heinrich Kirschner and business expenses incurred by one of Mr. Victor's companies. (*Id.* ¶ 26(d – e).) Victor also allegedly hired his former mistress as an interior designer for MPC, and "compelled MPC to retain his own business contacts with whom he wanted to build relationships." (*Id.* ¶ 26(f).)

Although Plaintiff alleges that he was one of the employees improperly paid by MPC (*id.* ¶ 26(a).), the aforementioned allegations go beyond merely making allegations relating to Plaintiff alone. Moreover, the aforementioned allegations do not relate to any purported theft or insurance fraud in connection with expenses borne by MPC from defending the two lawsuits referred to in Mr. Victor's May 31, 2019, letter; such allegations therefore have no real bearing on the case and should accordingly be struck.

Plaintiff also makes references to Victor's felony conviction relating to political campaign contributions, and alleges that Victor threatened witnesses to coerce them to lie in the related investigation, broke the terms of his home confinement. (*Id.* ¶¶ 97 – 100.) These allegations bear no relation to the issues here, which are whether Defendants' statements concerning the two lawsuits were defamatory. These allegations serve " . . . no purpose except to inflame the reader . . . " and should accordingly be stricken. *Morse v Weingarten*, 777 F.Supp 312, 319 (SDNY 1991) (striking reference to criminal conviction in securities class action complaint). Plaintiff also makes similarly inflammatory allegations of trying to coerce Ms. Khatskevich into a sexual relationship by acquiring an H1B visa for her so she could be threatened with deportation if she didn't comply. (*Id.* ¶¶ 125 – 143). Victor also allegedly made a comment concerning rape in front of Khatskevich (*Id.* ¶ 116). These allegations also have no bearing on this case, especially since the conduct is alleged to have occurred before the "five-point plan of retaliation" alleged to have been conducted by Victor. (*Id.* ¶ 37.).

Plaintiff's allegations also reference various litigations involving Victor and/or MPC, which do not even involve Plaintiff or Ms. Khatskevich such as an action by MPC to evict Victor from a 4th floor storage room (*Id.* ¶105).

Allegations " . . . that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the

meaning of Fed. R. Civ. P. 12(f) . . . " *See Low v. Robb*, 2012 WL 173472, 2012 US Dist LEXIS 6836, at *26-27 (SDNY Jan. 20, 2012, No. 11-CV-2321 (JPO)) (striking references to unrelated disputes and lawsuits with defendants' siblings) (quoting *RSM Production Corp. v. Fridman*, 643 F.Supp. 2d 382, 403 (S.D.N.Y. 2009) (striking exhibits to complaint that were copies of complaints in other actions that were not decided on the merits). *See also Petrello v White*, 2018 WL 4344955, 2018 US Dist LEXIS 154796, at *24 – 25 (EDNY Sep. 11, 2018, No. 01-CV-3082 (DRH)(AKT) (striking allegation concerning action against neighbor to compel sale of a home). Both the aforementioned paragraphs and related paragraphs that reference these litigations should be accordingly struck. (*See Id.* ¶ 141, 144 – 149).

Finally, the Second Amended Complaint references conduct by Victor over thirty years ago. (*Id.* ¶ 48.) Given that such conduct is stated to have occurred long before the time period relevant to Plaintiff's claim, that paragraph should be struck as impertinent. Victor also submits that ¶ 48 is included merely to sow distrust and discord between Victor and his neighbors.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss the Second Amended Complaint should be granted in its entirety. In the alternative, the Court should strike all impertinent and scandalous allegations from the Second Amended Complaint.

Dated:   September 23, 2021
         Brooklyn, NY

POLIZZOTTO & POLIZZOTTO LLC
By: /s/ Alfred Polizzotto III
69-11 18th Avenue
Brooklyn, NY 11204
Tel.: 718-232-1250
Fax: 718-256-0966
ap3@polizzotto.com
*Attorneys for Defendant Adam Victor*
