<u>**VIA ELECTRONIC FILING**</u>                                              November 23th, 2021
The Honorable Gabriel W. Gorenstein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

                Re:    Response to Wolfe's objection to subpoena
                      *Tyler Erdman v. Adam Victor, et al.*, No. 20 Civ. 4162

Dear Judge Gorenstein:

      I write in response to Nana Wolfe's objection to a subpoena issued to her in this action. The subpoena was served upon Ms. Wolfe directly on October 27th. On October 29th I was contacted by Defendant's counsel informing me that he was representing Wolfe and would be moving to quash or modify the subpoena. At that time I spoke with Mr. Rodriguez about the subpoena and our positions for approximately 20 minutes. Defendant's position was that he believed the subpoena was seeking information that was not related to the claims at issue as Wolfe did not have anything to do with the claims in the complaint. Plaintiff's position was that she was directly involved in supporting false statements made by the Defendant and his requests were narrowly defined to limit the burden on Wolfe. Plaintiff also stated that while some facts related to his requests might span several years, the conduct and its effects have been ongoing.

      The Court's November 17th order stated "...compliance with paragraph 2.A of the Court's Individual Practices is mandatory and the Court will not in the future consider letters that do not comply with that paragraph". Despite that order, the Defendant has entirely failed to detail the time and date of the Conference they had with Plaintiff, the duration, name of attorney who participated, Plaintiff's position, or that he informed Plaintiff that he would be moving. It would appear this was done because the attorney signing their Letter was not the one who attended that conference. The Defendant clearly claimed that he would be the one making this application in his communications with the Court as well as to Plaintiff. He knows the rules and the Court has made clear that they are to be followed. .

      Wolfe waited 27 days to raise her objection. While a non-party should be afforded flexibility, the Defendant's counsel certainly knew the schedule and Wolfe did not require extra time to retain Counsel. The objection was raised with the Court in the November 1st Joint Status Letter. Plaintiff on November 15 even reminded Defendant that he had not moved in a timely manner and asked if Wolfe would be appearing as noticed. Plaintiff received no response. Even when the Court issued its November 17th order, Defendant failed to act. His overdue objection seems designed to delay discovery and should not be tolerated by the Court.

      Part of the reason for the subpoena issued to Wolfe is directly related to how the Defendant previously provided counsel in order to provide false testimony to further the Defendant's interest. As alleged, the Plaintiff filed a complaint with the Federal Election

Commission that named the Defendant, Wolfe and others. That complaint detailed how Defendant asked Plaintiff and the respondents to that complaint to donate money to political candidates on his behalf which he would then reimburse them.

When preparing for the response the Defendant's lawyer appeared for all the respondents. During that time period the Defendant's daughter, Alia, outlined how that lawyer's appearance was forced upon her in an effort to submit false statements - as she explained in a series of texts::

- "So basically you put us in a position where he's gonna force us to lie for him about Manchin or he'll punish us financially (or in Alexia's case physically when she gets home). That right?"
- "I haven't seen any documents, I'm just hearing about this through Nana and fuck face [Defendent] so I need some gaps filled in"
- "More power to you for going after him, but I don't want my mom or sisters involved. Especially since he'll succeed in bullying them into committing perjury...the point is he's now put a gun to heads to lie for him"
- "JoJo [Defendant's daughter] is pressuing me to sign and says fuck face [Defendant] will stop paying half my rent if I don't...He just told JoJo if she doesn't sign she better get a lawyer 'cause he and his lawyers will come after her, and of course the same applied to me (and he'll RELALY come for me)."
- "Last I heard he told Alexia if she and I don't sign we'll "go to jail"...his lawyer who spun shit around and convinced her to sign".

Alia's concerns that Defendant would pressure witnesses to lie to the Federal Election Commission were prescient. Wolfe was one of those witnesses.  Defendant told the FEC that Plaintiff was committing extortion, trespass, "hacking" and theft because the Defendant "refused to let Complainant date his daughter" (Second Amended Complaint ¶ 97-100). In order to justify his false claims, Defendants submitted an affidavit from Wolfe falsely stating that the checks she received to reimburse her for her campaign contributions were for dental procedures and an IRA contribution.

The FEC doubted the response they received and voted to issue subpoenas, and the FBI interviewed Wolfe and others. At that point, the Defendant recanted the story supported by Wolfe's false testimony. He admitted that he instructed Wolfe to make the contributions and reimbursed her, directly contradicting her affidavit. He went on to admit guilt to the FEC and plead guilty to a felony charge brought by the Department of Justice. There is no question that Wolfe's sworn statement was false. It also would appear to be entirely consistent with Defendant's daughter's claims that he subourned that false testimony in order to benefit himself at the risk of Wolfe's legal jeopardy.

These matters are clearly pertinent to the claims at issue. The Court's November 17th ruling on the Motion to Dismiss, upheld claims relating Defendant's accusations of criminal acts including those made to the Federal Election Commission. Wolfe's false testimony was made in

furtherance of those defamatory statements and thus discovery of her knowledge and documents related to those claims is relevant. Defendant concedes as much: his own document requests ask for information regarding "Nana", "FEC" and several other witnesses who submitted false testimony to the FEC.

      Plaintiff's subpoena was narrowly drafted to obtain necessary information in the least burdensome manner possible. It seeks: "Any documents or communications related to Tyler Erdman, Yevgeniya Khatskevich, and/or Nazym Toktassynova including any litigations in which they were a party. Any documents or communications relating to the Federal Election Commission and/or money you had given to any politicians, including but not limited to any discussion with Adam Victor and his agents relating to same."

      Defendant portrays the request as broader than it is, claiming it spans 18 years and seeks documents unrelated to this matter. The actual requests are quite narrow and should not be burdensome to respond to.  As most people have had limited discussions relating to the Federal Election Commission, and Wolfe has made very few political contributions, any such search would inherently be limited to the issues in this matter

      The other aspect of the request relates to Plaintiff, Khatskevich and Toktassynova. The communications between those three individuals and Wolfe during their employment primarily took place on email accounts and systems controlled by the Defendant. Plaintiff has no expectation Wolfe would conduct such a search. The request is tailored to get materials relating to the period after those three individuals' employment ended, as that is when the Defendant had made his defamatory statements at issue in this action, and Wolfe made her statement to the FEC. That time frame is narrow and should be easily conducted with a simple search of emails and documents. Searching for "Erdman" "Khatskevich" or "Toktassynova" for instance would likely be able to be conducted with minimal effort as it would be unlikely to turn up unresponsive documents that would require review.

      Further, the Defendant has made third party discovery necessary, as he has taken efforts to avoid production. In another action, Victor was asked to produce documents relating to Wolfe "which communications concerned political contributions". He responded that "Documents are in the possession of my previous counsel," and used that as a pretext to justify his lack of production. . In this action, his counsel has stated that he will only be producing materials in the possession of his agents.

      The Defendant's counsel, Emilio Rodriguez, has made clear in multiple discussions both on the telephone and over emails on and around October 12th that he will only be producing from a single document database, and that it only includes materials in his client's "possession". Plaintiff requested that the Defendant fully produce documents in his custody and control rather than just what was in a database. Plaintiff also informed him that he would move to compel if the Defendant claimed not to be in possession of documents in his custody or control. The interrogatory responses provided on November 22nd, made clear that he was not going to comply with Plaintiff's request. If Defendant claims to not have documents, he cannot also fight

production from those with the documents. He has caused third party discovery is an unfortunate necessity.

Before Defendant even produced a single page in this action, his interrogatory responses claim that he is unaware of certain facts, or that third parties possess information he does not. When asked who has information regarding his employees, rather than claim someone like his accountant has information, he just states that Plaintiff and Khatskevich have knowledge.

The Defendant is seeking to abuse the Court's natural inclination to believe the Defendant will provide a proper production that will never come. 2014 Actions that are yet to complete discovery, attest to his efforts.

While the Defendant states objections to Wolfe's document production, no substantive objection is offered to preclude her deposition. Thus, it should proceed.

As outlined, Wolfe has knowledge that is highly relevant to false claims that are a fundamental part of this action, and the requests are narrowly tailored to those claims. Wolfe's counsel has waived any objections they may have had by not moving in a timely manner. More importantly they again failed to comply with Rule 2.A. As such their application should not even be considered, as the Court ordered. As such this application should be denied and Wolfe should be compelled to comply with the subpoena as issued.

Additionally Plaintiff requests that the Court order that the Defendant is to search and produce from all documents in his custody and control, including any that might be in the possession of former counsel or other agents. Defendant has made clear that he is not conducting a search of those documents. Since Defendant's time to produce has been extended, he should be required to use that time to conduct a proper search. Doing so would reduce the need for future motion practice as well as potentially alleviating the need for third party discovery.

In the alternative, if the Court does wish to entertain briefing on this topic, Plaintiff requests formal briefing, either at this time or after party discovery is complete.

Respectfully submitted,

/s/Tyler Erdman  
Plaintiff Pro Se  
917-301-0401  
Tyler@Erdman.it