**VIA ELECTRONIC FILING**                                              July 13, 2022
The Honorable Gabriel W. Gorenstein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

        Re:    Request to compel discovery
                  *Tyler Erdman v. Adam Victor.*, **No. 20 Civ. 4162**

Dear Judge Gorenstein:

      Plaintiff requests a conference to seek leave to move to compel production of Discovery from the Defendant, Adam Victor ("Victor"), who has decided to limit his production solely to documents in a database (the "Database") compiled for another litigation in 2019. Victor has identified various personnel under his control, including his attorneys and investigators, as custodians of documents, responsive to Plaintiff's document requests and interrogatories. Victor admittedly made no efforts to gather documents from them, while also refusing to search repositories in his custody beyond his own computer.

      The parties have discussed this matter over many emails and phone calls, most recently being a 10 minute telephone call between Plaintiff and Mr. Rodriguez on June 30th. Plaintiff has been awaiting Victor's long-promised updated privilege log and supplementary production since last year in hopes that these issues could be resolved, but Mr. Rodriguez made clear that would not occur. Plaintiff took the position that Victor must produce documents in his custody and control, while Mr. Rodriguez claimed that he had produced everything in his client's "possession" and that his client claimed to have given him "everything he has". Plaintiff explained the various deficiencies included in this application and came to an impasse. Having done so Plaintiff informed him that he will be moving for this relief.

      **Summary of Claims**
      The claims in this action stem from Victor's defamatory statements made to various law enforcement officials. These statements were part of his strategy for coping with an action brought by Plaintiff's then coworker and girlfriend, "Eve" Khatskevich, against Victor for sexual assault, discrimination and related torts she suffered during her employment by Victor. Defendant outlined on audio recordings how he planned to retaliate against Khatskevich – and against Plaintiff for supporting her – explaining that he would make false claims against them both because "this is gonna be war". He went on to describe how his plan for Plaintiff was to force him to defend against Victor's ginned-up legal actions to pressure him to abandon Khatskevich and render her homeless. Victor threatened to bring claims based on "all types of things...he's[Plaintiff] gonna have to spend, you know, a hundred thousand in legal fees to defend

himself."[1] Victor made good on his threats and brought suit against Plaintiff and Khatskevich in New York state court alleging a plot to steal documents from him and his companies that caused millions of dollars of damage. Shortly thereafter, another of Victor's employees, Nazym Toktassynova, also brought suit against him and became a target herself. These three "State Actions" have been ongoing since approximately 2014.

Plaintiff and Khastkevich's actions named the condominium (the "Condo") in which Victor was President of the Board of Managers. He viewed his position at the Condo as critical to his lifestyle, telling his staff that if he was removed from the Board he would leave his family, and abscond to Paris, leaving his wife "penniless." Correctly believing that if the Condo discovered the existence of the State Actions he would be removed as President, Victor defended the actions on their behalf without informing them. He plotted to have Plaintiff, Khatskevich and Toktassynova targeted by law enforcement with the hope that arrests would render them unable to pursue their claims, and result in Khatskevich and Toktassynova's deportation. In doing so he hoped to terminate the State Actions before the Condo became aware of them, or failing that, using his criminal allegations to frame the actions as extortion attempts.

Victor began a campaign of lobbying his many contacts in law enforcement to find someone willing to bring charges, claiming that Plaintiff had stolen "highly sensitive commercial and other information," creating a story of the great financial damage and extortion, despite his companies being little more then fronts for Victor's various activities, most prominently of which was luring in women with the promise of a career if they gave into his sexual requests. Victor even concocted ludicrous claims that Plaintiff somehow planned to build a multi-billion dollar coal gasification facility in Kazakhstan or alternatively that Plaintiff leaked information to the Chinese government to explain their increased use of similar technology.

### Discovery thus far

As the Court is aware, Plaintiff has had to make numerous applications in an attempt to compel proper discovery responses, the production is just as deficient. The most obvious deficiency is that Victor has produced no documents post-dating August 16, 2019 despite the document demands having been served over two years later. Victor stated his production was limited to the contents of the Database, which appears that it was collected for production in State Court actions around that time.

This refusal to produce documents outside of the Database appears to be tactical as it conveniently avoids production of documents within the limitations period of this action which Victor has made clear would be his primary defense in this action. The omission of documents within the limitations period from Victor's production is glaring, as Victor has testified that he has had ongoing communications with law enforcement officials, and that at least one of those officials will be called as a witness in this action. Yet nothing relating to those discussions have been produced.

---

[1] Second Amended Complaint Para 141

What was produced seems designed to show the Court a large number of documents when in reality out of the 339,342 documents produced, only 5% are from the Defendant's own documents. In comparison his privilege log with 20,000 documents listed has 5,000 entries then the total amount of documents produced.

Approximately 35% of Victor's production consists of Plaintiff's own documents that were produced in the State Actions, as well as productions from Khastkevich and Toktassynova. Of the remainder of the documents produced, around 200,000 (58% of the total) come from a hard drive with a backup copy of Victor's daughter's computer. Plaintiff conducted a thorough search of documents and nearly the entirety was what you would expect from a teenager's computer. A single page mentioned Plaintiff, listing him as "computer guy" and his contact information. Of the mass amount of documents the responsive documents consist of approximately two dozen emails that primarily detailed instances in which Victor abused his daughters, where he held a knife to her throat after being called fat, an instance in which he strangled her, and another involving "an episode of the gun and Alexia[One of Victor's other daughters]." Its contents are a far cry from anything explaining allegations of stolen documents worth many millions of dollars.

### Victor avoids producing from known Custodians

As the Court may recall Victor did not serve written document responses until being ordered to do so. What he ultimately provided used boilerplate language for the requests stating "...Defendant has produced all non-privileged documents in **his possession**, if any responsive to this request." These responses are included as Exhibit 1. In the parties conversations it was made clear that possession did not include custodians in Victor's control even while he named them as custodians elsewhere.

Plaintiff's 7th and 8th document requests seek documents relating to Victor's communications with the Government and law enforcement regarding Plaintiff, Khastkeivch and Toktassynova. In the Toktassynova action, three requests looked for similar documents, to which Defendant responded that "Such documents are in the possession of attorney Brian Kennedy," he also named him as a custodian in his interrogatory responses, attached as Exhibit 2, see response 20, 21. Victor testified that Kennedy was retained to draft a memo and petition law enforcement to pursue his allegations of theft. Victor in the State Actions has had over half a dozen different attorneys in addition to even more representing him in other matters. Regardless of how many of his attorneys have his documents, he must collect and produce them.

Defendant over the years has spent thousands conducting forensic analysis of his computers, hard drives and devices that he used to try and bolster his false claims yet it appears to have little to show for it other than a handful of spreadsheets. Plaintiff's No. 12 interrogatory asks him to identify documents and persons with knowledge related to those efforts. The Defendant's response listed his former attorneys, two forensic firms, an NYPD Detective, Pat Timlin a former Deputy NYPD Police Commissioner, a "Gil Kinderland, a former CIA person", another unnamed detective agency, the "The law firm of Louis Free, former director of the FBI"

3

as well as Plaintiff and his attorney. The Defendant seemingly names everyone but himself as custodians and that is only for this single interrogatory.

Timlin, one of the named persons, works at an investigative firm, Silver Seal, which the Defendant retained to conduct an investigation into Plaintiff and to petition law enforcement on his behalf. Plainly any documents in Timlin's possession would be in Victor's control yet he didn't even contact the custodians to request them. During conversations Defendant even suggested the Plaintiff will have to resort to third party discovery with custodians as he would not make an attempt to gather documents from them. When Plaintiff got ready to issue a subpoena to Silver Seal, he said "Upon reviewing the proposed subpoena we feel it has as little to do with the claims made in your complaint as the ones discussed previously. We are asking this one to be totally stricken". Victor simply cannot simultaneously name custodians while trying to stop Platinff from doing what he refuses to.

### Victor ignores repositories in his possession

Plaintiff was the Defendant's "computer guy" from around 2009 until 2013, during which he managed nearly anything electronic from his personal and corporate computer systems, email accounts, and cell phones. As a result Plaintiff is intimately familiar with what records Victor possessed and where they would be located. Plaintiff would even search for and gather documents for production for litigation during his employment.

Plaintiff reviewed the 5% of document production that listed Victor as the Custoidan, and found it consists of documents from Victor's own computer and email account with no apparent documents from other repositories. Victor maintained corporate email accounts for himself and for several employees, some of which are tiffany@tgds.com, sonja@tgds.com, yevgeniya@tgds.com and nazym@tgds.com. Yet only two emails were produced in which Victor wasn't listed as either a sender or recipient of the email. Conducting the same search of Plaintiff's production resulted in dozens of emails of correspondence between him and Victor's employees in which Victor was not copied.

These email accounts are vital to Plaintiff's claims, namely to the role Plaintiff played for Victor as well as the work or lack thereof that his companies undertook. Victor depended heavily on Plaintiff, but such a role is at odds with his story that Plaintiff was doing something nefarious rather than what he was assigned. Victor's story has evolved to claim that Plaintiff should not have had any access to his computers, as he was an autistic orphan to whom he gave an "allowance" as part of a charitable do-nothing job. Email records in his control will make clear that was far from the truth. He has claimed to have deleted at least Toktassynova's email account after she left his employ, but an email produced in another action details his efforts the next year to gather the contents of all four of those accounts for production in relation to a litigation in California which was ongoing as of the service of Plaintiff's document requests. This email is attached as exhibit 3.

Victor at all times instructed Platinff to ensure his computer was entirely separate from his office systems. His office systems relied heavily on what was called the "P-Drive" the main

4

repository for all of his corporate documents. It became the focus of Victor's attention and was forensically analyzed by both the NYPD and Victor's agents. Several hard drives, computers and other devices received similar scrutiny in an effort by Victor to find evidence to support his claims.Yet it appears that they were not searched, nor were any substantive documents relating to their analysis produced other than the odd invoice and brief spreadsheets. Similarly Victor had extensive text message conversations but has made no apparent effort to produce them.

**Plaintiff's motion to compel production**

Plaintiff requests leave to make a motion to compel production from Defendant. He has failed to produce documents in the two years prior to Plaintiff's document requests. He has failed to search his own repositories, and he has failed to even attempt to gather documents from custodians under his control.

1. Plaintiff requests that Victor be compelled to search and produce all responsive documents up to the present day that are in his custody and control. The Court's December 17, 2021 Order found that Victor's late interrogatory responses waived any objections raised. Similarly his belated written document responses have waived any objections raised to document requests. If he knows a custodian that has documents he should retrieve and produce them, such as those listed in his interrogatory responses.
2. Victor should also be compelled to conduct a proper search for documents in repositories under his custody and control, including his office computers and systems including the "P-Drive" and office email accounts, any devices that underwent forensic analysis, and his cell phone.
3. In order to ensure compliance with such an order, Platinff additionally asks that Victor be ordered to provide a certification detailing his efforts to make a production as ordered, detailing the custodians who provided documents, those who refused to do so and what repositories where searched.
4. If Victor forces Plaintiff to turn to third party discovery in order to retrieve documents from various custodians, he asks that the Defendant waive objections to such efforts and be ordered to reimburse Plaintiff for costs incurred.

Plaintiff thanks the Court for its kind consideration of this matter.

Respectfully submitted,

/s/Tyler Erdman
Plaintiff Pro Se
917-301-0401
Tyler@Erdman.it

5