```
                     UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                         Docket #1:20-cv-04162-
 ERDMAN,                            : LGS-GWG

                  Plaintiff,        :

   - against -                      :

 VICTOR, et al.,                    : New York, New York
                                      October 28, 2022
                  Defendants.        :
                                      TELEPHONE CONFERENCE
------------------------------------ :


                       PROCEEDINGS BEFORE
             THE HONORABLE GABRIEL W. GORENSTEIN,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:            TYLER ERDMAN, Pro Se
                          241 W 200 S Apt. 630
                          Salt Lake City, Utah 84101


For Defendants:           POLIZZOTTO & POLIZZOTTO
                          BY:  ALFRED J. POLIZZOTTO, III, ESQ.
                               EMILIO RODRIGUEZ, ESQ.
                          6911 18th Avenue
                          Brooklyn, New York 11204




Transcription Service:    Carole Ludwig, Transcription Services
                          155 East Fourth Street #3C
                          New York, New York 10009
                          Phone:  (212) 420-0771
                          Email:  Transcription420@aol.com

Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

## <u>INDEX</u>

### <u>E X A M I N A T I O N S</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

### <u>E X H I B I T S</u>

| Exhibit<br><u>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                        PROCEEDINGS                    3

 2          THE CLERK:  This is in the matter of Erdman vs.

 3   Victor et al, case number 20-cv-4162.

 4          Starting with plaintiffs, please state your

 5   appearance for the record.

 6          MR. TYLER ERDMAN:  I'm plaintiff, Tyler Erdman.

 7          MR. ALFRED J. POLIZZOTTO:  For the defendants,

 8   Alfred Polizzotto, Polizzotto & Polizzotto, 6911 18th

 9   Avenue, Brooklyn, New York.  Good afternoon, your Honor

10   and everyone.

11          MR. EMILIO RODRIGUEZ:  Also for the defendant,

12   Emilio Rodriguez, Polizzotto & Polizzotto.  Good

13   afternoon, everyone.

14          HONORABLE GABRIEL W. GORENSTEIN (THE COURT):

15   Okay, we're here based upon an application from the

16   plaintiff, Docket 161 -- it's dated September 27th.  It

17   was a responsive letter (indiscernible).

18          I'm really concerned about what's going on in

19   this case and whether the defendants are doing their job

20   and taking it seriously.  Let me just go back a little

21   bit.  I got a letter from the plaintiffs in July

22   regarding a problem with responsiveness of documents.

23   The defendants did not respond to the letter when they

24   were supposed to.  I had to issue an order in order to

25   get them to respond.  And when they responded, they
```

1                              PROCEEDINGS                        4

2    didn't even address it on the merits.  It was very

3    bizarre.  But I took it that they were not opposing the

4    letter.  I ordered the relief the plaintiff requested in

5    full.  (Indiscernible) required them -- very specific

6    searches that had to take place for documents up until

7    the present date.  It also required that the defendant

8    provide a sworn statement detailing his efforts to

9    contact any of the third parties.

10           The affidavit did not show up.  The defendant

11   never sought an extension.  Mr. Erdman pointed out that

12   the affidavit had not been filed; and in response there

13   was a bizarrely accusatory letter from the defendants,

14   acting as if it was totally normal to blow off a court-

15   ordered deadline for the filing of an affidavit --

16   obviously, it isn't.  I, nonetheless, granted the

17   extension.

18           And then an affidavit was filed.  And that's

19   what we're going to talk about today.  But I just wanted

20   everyone to have the background.  I required

21   Mr. Polizzotto to be on this call because of my grave

22   concerns about the way the defendants are litigating

23   this case and whether they're doing what they should be

24   doing in order to properly represent their client.

25   They're on very thin ice right now.  I don't know how

```
 1                            PROCEEDINGS                    5
 2    this is all going to turn out, but I'm very concerned
 3    about whether my order of July 26th has been complied
 4    with.
 5            So we're going to break this into two parts.
 6    One is the part about whether there was a search of
 7    everything that I ordered.  And then we're going to talk
 8    about the affidavit.  So in terms of the search of --
 9    whether things have been searched that I ordered, I
10    think, unless I'm misreading it, the answer is no.  They
11    decided that whatever they'd done in the past in fact
12    complied and that my order was a complete waste of time
13    and they'd already done everything they were ever going
14    to do.  So my first question is was anything additional
15    done for a search -- and anything you say here I'm
16    probably going to have people put under oath eventually,
17    so please be very careful to only say things you have
18    personal knowledge of -- was anything done in response
19    to my July 26th order in terms of the search, not in
20    terms of the custodian -- meaning the third-party
21    custodians -- but in terms of a search to comply with
22    that order?
23            MR. RODRIGUEZ:  I went to -- I spoke to my
24    client about it, and he confirmed that any documents
25    that were contained in those hard drives that we already
```

```
 1                        PROCEEDINGS                    6
 2    submitted to Mr. Erdman --
 3            THE COURT:  I actually asked a yes-or-no
 4    question.  It sounds like the answer is no, but you want
 5    to give an explanation.  Was any further search done for
 6    responsive documents since July 26th.
 7            MR. RODRIGUEZ:  There was no further search
 8    done --
 9            THE COURT:  It's a yes-or-no question --
10            MR. RODRIGUEZ:  Yeah -- no.
11            THE COURT:  -- so please try to answer it yes
12    or no; and then if you want to give an explanation, go
13    ahead.
14            MR. RODRIGUEZ:  No, because for the reason that
15    I gave.  So I'm going to have to say no; you're correct.
16            THE COURT:  Okay.  Well, I think it's rather
17    bizarre that the defendants would not have explained
18    that my order was a complete waste of time, would have
19    sought relief from it.  I don't know that a party just
20    gets to say, "I think everything I've done is okay; I'm
21    not going to search any of this other stuff because I
22    don't think there's anything responsive.  Because,
23    obviously, whatever search you did had been done years
24    ago.  I asked for things to be searched up to the
25    present day, and I asked for that because you never
```

```
 1                        PROCEEDINGS                    7
 2  bothered opposing that relief.  So I don't think you
 3  just get to say, "Well, you know, I don't think there's
 4  anything up to the present day because the events
 5  occurred in the past."  Because people talk about events
 6  that happened in the past, even in the present day.
 7  Just because it happened in the past doesn't mean there
 8  aren't responsive documents.  Your client could be
 9  talking about these alleged defamatory statements up
10  until the present.  So --
11          MR. RODRIGUEZ:  Can I make --
12          THE COURT:  -- explain this to me.
13          MR. RODRIGUEZ:  I'm sorry.  So when you're
14  saying that we didn't oppose it, I felt that we did
15  oppose it in the letter that we did submit.  And if you
16  say -- I mean, obviously, if you say that we didn't, you
17  know, that's your conclusion.  But we felt -- I felt
18  that the letter that I sent, we did oppose it.  But, you
19  know, I was surprised to hear that we didn't, because we
20  certainly did oppose it.  But, like I said, it's your
21  conclusion that we didn't, so it's -- you have to go by
22  that.
23          THE COURT:  Well, it's actually in the end not
24  relevant, but since you brought it up, let me look at
25  your letter again.  Okay, it's at Docket 152.  Tell me
```

```
 1                        PROCEEDINGS              8
 2   where you address all of the issues he raises in his
 3   letter.  I'm looking at it right now.
 4           MR. RODRIGUEZ:  Okay.  What is the date of that
 5   letter so I can find it on my --
 6           THE COURT:  July 21st.
 7           MR. RODRIGUEZ:  The one July 21st, okay.  I
 8   apologize, bear with me.  It's taking me an extra second
 9   to call it up.
10           THE COURT:  Mr. Polizzotto, are you able to
11   look at this letter?
12           MR. POLIZZOTTO:  I'm pulling it up as we're
13   speaking right now and --
14           THE COURT:  Docket 152.
15           MR. POLIZZOTTO:  -- I see it now.  I have it on
16   my screen.
17           THE COURT:  Okay.  So just to refresh your
18   recollection, Mr. Erdman sent a five-page letter saying
19   exactly what hard drives had to be searched, what the
20   problem was and why they should be searched up to the
21   present date.  So I'd like to know where you oppose
22   conducting that search for documents up to the present
23   date in this letter.
24           THE CLERK:  Emilio, I emailed you a copy in
25   case you haven't found it yet.
```

PROCEEDINGS                              9

1
2          MR. RODRIGUEZ:  What was that?  I'm sorry, I

3   didn't hear --

4          THE CLERK:  I emailed a copy of it to you, just

5   in case that helps.

6          MR. RODRIGUEZ:  Oh, okay.

7          MR. POLIZZOTTO:  And if I may, your Honor, the

8   opposition, if we're going to phrase it as such, is that

9   there may be a few hundred documents other than what had

10  already been produced.  So implicit within there is that

11  there is nothing else that can be searched and/or

12  ascertained, but it is not stated as such.

13         THE COURT:  I mean, Mr. Polizzotto, this is

14  outrageous.  I mean, I don't know if you treat all

15  judges like this or just me.  Do you have other cases?

16         MR. POLIZZOTTO:  Yes, I have other cases,

17  including those in the Southern --

18         THE COURT:  I mean, is this your conduct in

19  those other cases, too, to characterize a letter like

20  this as opposing relief?

21         MR. POLIZZOTTO:  No, your Honor.  I am merely

22  responding --

23         THE COURT:  I mean, could you see the

24  problem -- Mr. Polizzotto, do you see the problem with

25  this letter in terms of how it's failed to oppose the

```
 1                      PROCEEDINGS              10
 2  original relief?
 3           MR. POLIZZOTTO:  Yes, I do.
 4           THE COURT:  Okay.  So, you know, the idea that
 5  Mr. Rodriguez, now in response to my question about what
 6  search was conducted, goes back to essentially an
 7  irrelevant point saying that there's something infirm
 8  about my order because he in fact opposed it is really
 9  outrageous.
10           MR. POLIZZOTTO:  I understand your Honor's
11  point.
12           THE COURT:  I mean, I'm not sure what to do at
13  this point except to have a hearing about what's really
14  been going on for the last few months to put you,
15  Mr. Rodriguez and Mr. Victor on the stand to see what
16  efforts have been made to comply with my July 26th
17  order, because I believe the conduct has been
18  contemptuous.  I'm not saying I'm going to hold you in
19  contempt, but I'm running out of tools in the toolbox.
20           MR. POLIZZOTTO:  I understand, your Honor.  And
21  I understand the lack of responsiveness, as you've put
22  it; and I understand exactly what you're saying.  I can
23  say, even those it's inartfully missing -- I can't say
24  "inartfully" -- but missing there, the search that had
25  been undertaken was extensive.  At the time that it was
```

```
 1                           PROCEEDINGS                    11
 2   done, it was all of the documents we had.  Rather than
 3   cull and try to select, we turned over everything in
 4   accordance with the rules as best that we were able to.
 5   We have done searches since then.  However, in response
 6   to your most recent order, no, the conversation with the
 7   client indicated that there was nothing -- there were no
 8   further sources that he had searched.  And I understand
 9   --
10           THE COURT:  But what do you know about this
11   P-drive that's specifically mentioned?  "P-drive, office
12   email accounts, any devices or cell phones."
13           MR. POLIZZOTTO:  I'd have to ask Mr. Rodriguez;
14   he's the one who had the conversation with the client.
15           MR. RODRIGUEZ:  From what my client told me,
16   everything that would have been on that drive was
17   already on those hard drives that were already
18   submitted.  That's what he told me.  I asked him about
19   that.
20           THE COURT:  What have you done -- it's not
21   enough to just ask your client if a search was performed
22   correctly.  One needs to dig more as a lawyer.  And
23   there's certainly plenty of case law about this.
24           So I think what we have to do now is you have
25   to do a real investigation.  I'm going to try starting
```

```
 1                         PROCEEDINGS              12

 2   with an affidavit.  If I don't like what I'm reading,

 3   I'm going to have a hearing.  I want to know what has

 4   been done since July 26 specifically to comply with this

 5   order.  If the answer is nothing, which I gather it is,

 6   then I want to know -- I guess -- I think this is what I

 7   want to do.  I think I'm going to order you to show

 8   cause why you've not violated this order by doing the

 9   search that was ordered here for all documents up to the

10   present day on all these various devices.  I'll issue a

11   written order that says that.

12           Now, you're going to really help yourself if in

13   the meantime you try to do something to comply.  And if

14   you think the order is wrong, you can take a crack --

15   it's too late for reconsideration -- but I suppose you

16   could take a crack under whatever standard it is under

17   Rule 60(b).  I'm going to require a memo of law on that.

18   I'm not taking anything by letters anymore on this.

19           Go ahead.  Someone was going to say something.

20           MR. ERDMAN:  Oh, yeah, your Honor.  This is

21   plaintiff, Mr. Erdman.  You were asking if they treat

22   all cases like this, and they were --

23           THE COURT:  No, no, I'm sorry, I don't want to

24   ask you that question.

25           MR. ERDMAN:  Oh, okay.
```

```
 1                    PROCEEDINGS                13
 2            THE COURT:  I just want to ask them that
 3   question.  I --
 4            MR. ERDMAN:  Oh, I know.  This is very
 5   habitual --
 6            MR. RODRIGUEZ:  As you know, your Honor, if
 7   Mr. Erdman's going to say that, I'm going to turn around
 8   and say no.  This is very habitual in things that
 9   happened before our particular firm came in.  And so our
10   particular firm came in; that has not been habitual.  If
11   he's going to go --
12            THE COURT:  Well, I mean, the conduct in front
13   of me has been outrageous.  I mean, also just the
14   failure of the defendants to recognize that when they
15   blow off court orders and blow off deadlines, that they
16   shouldn't be responsible for it.  I just don't
17   understand that.  You know, every now and then,
18   something personal happens, but that usually happens
19   once, and then someone else takes control.  But to
20   happen literally over and over and over again, you know,
21   we've all been through personal matters.  That's why we
22   have colleagues.  We don't blow off court orders.  We
23   don't take an accusatory attitude.  The whole thing is
24   just a complete mystery to me as to why people think
25   they can get away with this.  I just don't understand
```

```
 1                        PROCEEDINGS                    14
 2    it.
 3           Let's figure out where we are now.  In terms
 4    of, you know, the search, I don't even know what this
 5    previous search was; I don't know when it occurred.
 6    What I do know is nothing has happened since then.  I
 7    don't know anything about the P-drive and office email
 8    accounts and everything else.  We need a detailed
 9    affidavit of what was searched, since nothing has
10    happened since July 26th, and when it was searched.  And
11    then -- I mean, unless someone tells me otherwise, you
12    have to comply with my order, which is you have to
13    search for documents since then up to the present day
14    that relate to the allegations in the Complaint.
15           Now, maybe that's prohibitively expensive or a
16    big problem, but you created this mess and you're going
17    to have to get yourselves out of it, which means if you
18    need to do a Rule 60(b) or some other motion or work
19    something out with Mr. Erdman, then you have to do that.
20    But, otherwise, you'd better do that search.  I don't
21    see how you can just blow off a court order.  If there's
22    some reason, you know, my order -- can someone explain
23    to me why, when the order says to do the search for
24    documents up to the present, you can just decide that
25    there are no documents up to the present without
```

```
 1                        PROCEEDINGS                    15
 2  searching for them?
 3          MR. RODRIGUEZ:  No.
 4          THE COURT:  Okay.  I mean, if you know a
 5  particular database can't have something, you know,
 6  there's ways to do it; but you can't just say, "I'm not
 7  going to do it."  You need to give an explanation.  And
 8  the explanation -- and an explanation can't be the
 9  events happened before a certain date; therefore, there
10  can't be any documents since that date.  All we know is
11  there aren't any contemporaneous documents; we don't
12  know if there are documents, discussions with other
13  people or anything else that happened after the date of
14  the search.
15          THE COURT:  All right.  We're going to have to
16  get -- and it will be in the context of the Order to
17  Show Cause -- a full explanation of what was done, an
18  explanation of why there shouldn't be a sanction for not
19  having complied with the July 26th order.  And let's at
20  the same time provide a proper affidavit as to what's
21  been going on with the third-party custodians.  And the
22  third-party custodians -- you know, I'm not going to say
23  that this was contemptuous, but it's certainly not what
24  I was looking for.  You know, I'd like to know what
25  dates happened, whether there was follow-up.  There
```

```
 1                      PROCEEDINGS                16
 2  certainly should be follow-up.  I mean, if this is --
 3  these are people who have documents that are in the
 4  control of Mr. Victor, you don't just send an email into
 5  the ether and say, "Oh, that's the end of it."  There
 6  has to be some kind of follow-up.  You have to call, you
 7  have to email, you have to find out what their response
 8  is.  And that all needs to be set out for me.  That all
 9  has to be explained.  There's no dates on this.
10          So, you know, I'm not going to find you
11  violated my order, but it was certainly not what I
12  intended, so you're going to have to do it over again.
13  That's with respect to the third-party custodians.  So
14  I'm going to give you a week to do all of this.  And
15  then we're going to have to see where we are.
16          Now, in the meantime, I think you think you
17  should start conducting a search, unless you've got a
18  really good Rule 60 motion.  Anyway, those are my
19  thoughts.  I'm ready to hear from the defendants if
20  there's anything they want to add.  And then I'll hear
21  from the plaintiffs.
22          MR. POLIZZOTTO:  Well, your Honor, I believe
23  you've made your position clear, and I don't really
24  think there's anything to add.
25          THE COURT:  Mr. Erdman, anything you want to
```

```
 1                          PROCEEDINGS                    17

 2   add?

 3             MR. ERDMAN:  Yeah.  I believe their list of

 4   custodians is still omitting people.  I believe I

 5   mentioned in my letter Brian Kennedy is one of them.  He

 6   was an attorney that appears to have been hired

 7   specifically to approach law enforcement to make

 8   accusations that I was involved in some criminal

 9   activity.  I believe Adams described that as being

10   nearly his whole purpose.  And it -- in other document

11   responses and some other actions he said he also has

12   responsive documents relating to me and law enforcement.

13   But they --

14             THE COURT:  Wait, wait, wait, wait, wait.  I'm

15   sorry, I lost you.  Who said --

16             MR. ERDMAN:  Well, Mister -- there was a

17   document request made in another action to Mr. Victor,

18   and those requests involved contacts (indiscernible) to

19   law enforcement on Mr. Victor's behavior in regards to

20   me and two other women that are suing him.  And Mr.

21   Victor answered by saying this attorney, Brian Kennedy,

22   has those documents.  And then in this case he's not

23   mentioned at all nor have they contacted him.

24             MR. RODRIGUEZ:  Well, that's easy.  That's

25   because in this case, Brian Kennedy was unmentioned in
```

PROCEEDINGS                    18

your request for -- in your interrogatory --

THE COURT:  No, don't talk to the other side.
Talk to me.  I'm not interested in the other side, just
me.

MR. RODRIGUEZ:  Well, okay, your Honor, look,
then I can say that the reason why Brian Kennedy wasn't
mentioned -- and I was actually talking to you, your
Honor.  I'm sorry if I maybe misspoke a little bit, but
the reason for that is because in his interrogatories --
neither his interrogatories nor his request for
production of document was Brian Kennedy even mentioned.
So the fact that Brian Kennedy wasn't mentioned in some
other case, that's some other case.  But Brian Kennedy
would have been mentioned in the sworn statement that we
submitted had he been part of the requests as we were
ordered to -- in the requests that were involved in this
case.

THE COURT:  All right.  Listen, Mr. Erdman, I
am relying right now on their responses as to who has
documents relevant to this.  If you obtain competent
evidence, which is not what I have in front of me in
this letter, that the documents responsive to your
requests are in fact in the possession of another
individual, you should talk to the other side first.

```
 1                          PROCEEDINGS                 19
 2   And if you don't get what you need, then you should make
 3   an application that actually has competent testimony
 4   that some other individual has possession, custody of
 5   documents that are responsive to your requests.  But I'm
 6   not going to make that ruling now.
 7             MR. ERDMAN:  Understood.  Would I be able to
 8   have permission to file that under seal?  It goes into
 9   some deposition transcripts that I don't believe we got
10   the (indiscernible) from to release publicly.  Would you
11   like me to make an application for that?
12             THE COURT:  I haven't a rule about filing
13   things under seal.  I mean, certainly, you have to serve
14   the other side; but you can make the application, and
15   I'll decide then.
16             MR. ERDMAN:  Understood.
17             THE COURT:  I mean, I would not suggest-- if
18   there's something that's sealed in another case, that
19   doesn't mean you can file it in my case  So you may
20   have to talk to the people in the other case.  There's
21   no --
22             MR. ERDMAN:  Oh, yes, I know. I mean
23   specifically --
24             THE COURT:  -- there's no blanket --
25             MR. ERDMAN:  -- deposition.
```

```
 1                       PROCEEDINGS                    20
 2              THE COURT:  I understand that.  But if there's
 3   a deposition that's subject to a protective order -- is
 4   the deposition taken in some other case or in this case?
 5              MR. ERDMAN:  No, in this case.
 6              THE COURT:  Oh, in this case.  Oh, well, then
 7   that's a different question.  But you meant another
 8   case?
 9              MR. ERDMAN:  I'll try and work it out with the
10   party that has an interest in that.
11              THE COURT:  All right.  Let's see, I think --
12   yes, so what did I say, a week?  Today is the 28th.  So
13   we're talking November 4th.  So if there's a problem,
14   Mr. Erdman, with what you get and what's going on, just,
15   you know, talk with the other side and write me
16   immediately.  Okay?
17              Anything else we need to do today on this from
18   the plaintiff's point of view?
19              MR. ERDMAN:  There are still issues with the
20   priv log.  I can make an application on that.  It's just
21   deficient with things like Mr. Victor would send
22   documents which would appear responsive to this
23   attorneys and then claim they're privileged because they
24   were attached to a privileged email.  And now he's
25   claiming those attorneys are the only ones with the
```

```
 1                        PROCEEDINGS                    21
 2  documents.  So it doesn't really seem to make much
 3  sense, among some other issues that have not been
 4  resolved with the log.
 5           THE COURT:  Yes, I meant on what's raised here.
 6           MR. ERDMAN:  Oh, okay.  No, I think this covers
 7  it.  Thank you.
 8           THE COURT:  Anything else from defendants?
 9           MR. ERDMAN:  No, thank you.
10           THE COURT:  Okay.  Thank you, everyone.  Good-
11  bye.
12           (Whereupon, the matter is adjourned.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                                                          22

2

3                          C E R T I F I C A T E

4

5          I, Carole Ludwig, certify that the foregoing

6   transcript of proceedings in the case of Erdman v.

7   Victor et al, Docket #20-cv-04162-LGS-GWG, was prepared

8   using digital transcription software and is a true and

9   accurate record of the proceedings.

10

11

12

13   Signature_____

14                        Carole Ludwig

15   Date:      October 31, 2022

16

17

18

19

20

21

22

23

24

25