

# THE LAW OFFICES OF POLIZZOTTO & POLIZZOTTO, LLC

**6911 18TH AVENUE**
**BROOKLYN, NEW YORK 11204**
**TELEPHONE (718) 232-1250**
**FAX (718) 256-0966**

ALFRED POLIZZOTTO (1935-2001)
ALFRED POLIZZOTTO III*

EMILIO RODRIGUEZ

*(ADMITTED NEW YORK, NEW JERSEY)

LONG ISLAND OFFICE
1129 Northern Boulevard, Ste 404
Manhasset, New York 11030

**VIA ELECTRONIC FILING**                                                  **February 8, 2023**
The Honorable Gabriel W. Gorenstein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

        Re:   **Response to Erdman ltr filed on 2-7-23**
              *Tyler Erdman v. Adam Victor, et al.*, **No. 20 Civ. 4162**

Dear Judge Gorenstein,

      This letter is written in response to the letter of Tyler Erdman dated February 6, 2023 and filed February 7, 2023.

      Considering the fact Plaintiff and I discussed discovery issues for 45 minutes, as he stated, it would be hard to believe my only response to his queries were an estimate of 5-8 weeks to complete a production. Plaintiff also makes reference to a comment I made in response to a denigrating comment he made towards me. During every conversation, even during court conferences in other cases, Plaintiff has shown a penchant for making such comments either about me or Mr. Victor, most often about my client. I can assure the court that what was quoted was my only response to such comments, and we proceeded to discuss other matters. Until now I have never mentioned Plaintiff's frequent use of this type of banter, but since he is quoting me out of context, I feel the need to address the subject. Whereas I certainly do not need the court to stand up for me, I recognize as an officer of the court it is not my job to engage the opposition with insults and derogatory remarks.

*PLEASE RESPOND TO BROOKLYN OFFICE*

In terms of our document production, our document vendor, TransPerfect, compiled the records stored in the email accounts detailed in previous submissions, as well as certain Dropbox accounts where Mr. Victor stored documents. This resulted in a pool of 124,370 records. I use the term "records" because many of these are ".wav files", mp3s, and other types of media files. After numerous software tools and applications were applied, such as custom hashing, Textual and duplicate scripts, a tally of 73,769 non-duplicate documents and/or records were compiled. These were pared down to a final total of 62,051 records, with 1,364 eventual additions to the privilege log. TransPerfect has engaged a team of five attorneys to review these records, along with a project manager to oversee and conduct quality control, along with myself. My original forecast of five to eight weeks to Mr. Erdman on December 28, 2022 proved prophetic as the team has whittled down the expected completion of the review from March 9, 2023 to March 3, 2023, and now the estimated completion date is March 2, 2023.

In the next couple of weeks, it is expected they will shave off even further time from the current estimate. Plaintiff mentions that it seems I am not involved with the document production. If he means actually reviewing the documents alongside the attorneys, no, I do not do that. That is what we have them for and what they are paid to do. For me to review media files that may last hours, and over 62,000 documents amounting to over 100,000 pages, would be an inefficient use of my time. Instead I oversee the review team, perform quality control of the documents reviewed, and conduct periodic meetings or conference calls with the vendor to ensure everything is running smoothly. Reviewing 62,000 documents is a six figure undertaking that we hoped to avoid utilizing various software applications, but in the end the only option remaining to us was an on-hand review alongside the further additions to be made to the privilege log. As it is, the paring down of the documents practically in half resulted in a six-figure savings of money.

Other efforts expended during the document review involved the identification of what to include in the coding panel. The coding panel is how the reviewers "mark" the documents reviewed, for want of a better term. Coding is undertaken to identify what is responsive to the document requests, what is privileged, any foreign language documents, "hot" documents to be immediately brought to the attention of the attorneys, and other such markers. Plaintiff listed thirty-nine requests in his discovery requests to the Defendant. Finalizing a coding panel that would satisfy that many requests took days in and of itself. Therefore, with all of this involved in the document production, the fact we should be able to meet my original estimate is something to be lauded. Instead, Plaintiff claims yet again Defendant is avoiding his obligation to produce documents, even after having already produced hundreds of thousands of pages with tens of thousands more to come shortly.

Regarding his allegations involving the third-party custodians such as Bozic and Timlin. Ms. Bozic's documents will be listed in the upcoming privilege log. Mr. Timlin and his office have indicated more than once they would be sending the documents in their possession but have yet to do so, despite the additional requests we have made.

Plaintiff then proceeds to address his issues with our investigation of the P-Drive that was in the possession of the NYC Police Department. This office has shown in previous submissions that, not only did we send someone to retrieve it, the person also brought back a document from them indicating it was destroyed years ago. For some reason, Plaintiff thinks Defendant has the ability to retrieve property from the police they themselves indicate was destroyed. Plaintiff needs to take the issue up with the City at the proper time and not waste the court's time arguing over something clearly within the police's purview.

In answer to a further allegation of the Plaintiff, Defendant has excluded no documents from any searches on any basis. He has already indicated his search of any records from his cell phones and it resulted in no responsive documents found.

Defendant has complied with all requirements listed in Plaintiff's Conclusion. He has indicated the extent to which a search was made for sources of documents identified in prior Orders. The latest Document production will be completed in accordance with the original estimate given to the Plaintiff on December 28, 2022. He has repeatedly indicated the circumstances surrounding the P Drive. He also searched all cell phones in his possession and found no responsive documents. Plaintiff makes reference to my alleged volunteering of the production of invoices from my ediscovery vendor. Not only is that allegation untrue, but the invoices would not show any hard data relative to the progress of the production.

We therefore request the Court deny any request for a hearing on discovery as unnecessary and direct the parties to proceed accordingly.

Yours faithfully
Polizzotto & Polizzotto, LLC

Emilio Rodriguez