**VIA ELECTRONIC FILING**                                August 10, 2023

**The Honorable Gabriel W. Gorenstein**

**Daniel Patrick Moynihan**

**United States Courthouse**

**500 Pearl Street**           Re: Request to compel Defendant to provide discovery

**New York, NY 10007**         *Tyler Erdman v. Adam Victor, et al.*, No. 20 Civ. 4162

Judge Gorenstein,

      I have reviewed the latest production from Adam Victor ("Victor" or the "Defendant"). As set forth below, he has yet again ignored the Court's serial orders on what was to be done. The Court made clear that Victor's prior behavior in discovery was contemptuous and gave him an opportunity to fix his production. In the months since, he has not searched, reviewed his repositories, and went out of his way to obscure where the documents he did produce came from. When Plaintiff tried to work through these issues, he was ignored.

      As a result, for the reasons discussed below, Plaintiff respectfully requests that Defendant be ordered to respond to Plaintiff's July 21st requests, state if he had conducted a search to the present day, and detail what he did during the months he claimed to have been working on the production. Plaintiff also seeks to compel the promised production of communications with custodians and if they do not demonstrate a good faith effort to retrieve documents, that Plaintiff be able to seek discovery from them at Victor's expense.

      **Discussions with Mr. Rodriguez:**

      Plaintiff has been trying diligently to get answers since a July 12 email detailing issues found with Defendant's production. The parties spoke on the 19th, Mr. Rodriguez had no interest in details, instead asking for another email. That was sent on the 21st (Attached as Exhibit A) and received no response until sending a followup on the 26th which Mr. Rodriguez responded to by claiming to need more time: "Gong to need some more time to provide feedback. Your requests were copious". This email appears to have been drafted to give the impression that something was being done. However as Plaintiff's request was ignored, the scope of the request would seem irrelevant. The next day, I offered to accommodate any reasonable schedule he required if he could actually show it was being put to good use. I requested that we setup a conference in a week so that he would have time to prepare for it and have details to discuss, or alternatively if he could not speak to details that it be a meet and confer for this application. Sending a follow up on the 31st, Mr. Rodriguez finally responded: "We **will** have progress. I'm just swamped right now with a couple of other things that are due. By the way, was told to ask if you will accept the latest subpoenas in the NY cases".

1

We spoke on August 3rd for 16 minutes. Mr. Rodriguez explained that he had been busy and that the delay was entirely his fault as he had not contacted his vendor regarding my questions. He offered to provide a response to Plaintiff's questions on August 8th, while also stating that it might not be one that satisfies me.

Mr. Rodriguez was adamant that he be given an extension, claiming that Plaintiff had been "stingy" with extensions in the past and Plaintiff should reciprocate for him having consented to extensions to accommodate Plaintiff's medical issues. He advised me that an application would be moot as he had promised me a substantive response on the same day that his response to a motion would be due. He also cautioned that the Court would not look fondly on an application made without him having been granted additional time. Plaintiff agreed to his request but made clear that if a detailed response was not received on time this application would be made. On the 8th he claimed to need an additional day due to vertigo, Plaintiff asked for a status update which he did not receive. On the 9th at 6 pm Plaintiff asked if Defendant would be providing anything that day, he responded saying 'That is the plan'. That plan failed as he still hasn't provided any information or even confirmed he has done anything, even after getting every extension he asked for and not even requesting a further one.

### Counsel has time to work for Victor outside of this action:

Mr. Rodriguez admitted that he did nothing between July 12th and at least August 3rd to address these issues, he had no difficulty working on discovery Victor wanted, namely depositions of Plaintiff as a non-party in two of the sexual harassment actions against him.

In March, Mr. Polizotto moved the court in Utah to issue those two non-party subpoenas, but the motion was denied, as he did not follow local rules - including the rule that the movant's attorney be admitted to practice law in Utah. There was no activity on the docket until several hours after Plaintiff raised issues on July 12th. Then, Victor filed two ex parte applications in Utah, with numerous related fillings, many of which were signed by Mr. Polizotto. Plaintiff asked Mr. Rodriguez how they found time for Utah's Courts but not this one. He explained that it is irrelevant as they are different matters in a different jurisdiction.

They also appear to have found time to work on a foreclosure action against Victor with the latest filing being on July 19th. In that action Mr. Polizotto submitted a false statement to the Court regarding the layout of Victor's apartments, without any support. The opposition papers demonstrated it was entirely false with affidavits and Victor's own testimony to the contrary. It related to whether two separate apartments were connected with others, easily provable with a picture, yet Mr. Polizotto either knowingly lied or blindly listened to Victor's lies. That false claim was successful in delaying Victor's foreclosure by at least 5 months.

### Defendant failed to search to the present day

Defendant has been ordered to conduct a search to the present day, but has not. The latest privilege log does not have a single email in it dated after 10/16/18 whereas the prior one ended on 8/14/19[1]. No entries relate to current counsel even though they claimed they would be

---
[1] Privilege logs available at: bit.ly/av-priv-logs

**2**

adding new entries and documents regarding communications with custodians. In Defendant's filing as to why he should not be sanctioned (See Dkt. 179) he stated "the great majority of documents even mentioning the parties in his document request were privileged post-2018". Yet now his log doesn't have a single email post-2018. The production reflects similar major gaps in searches. This is simply incompatible with a search to the present day occurring. Having indicated that they intend to rely on a statute of limitations defense, they are just not producing any documents within it.

### 50,000 documents and metadata have been withheld to hide what was searched

In its current form, the latest production is designed to obfuscate what repositories were searched, by omitting custodians, file information and withholding native files. As the reason for this production was because repositories were not searched, it is hard to believe it wasn't purposeful as the prior productions had at least some identifying information.

Defendant had previously claimed he needed more time to produce based on his need to "dedupe" various documents. As explained, that process seemed to be designed to hide the repositories searched and Plaintiff even raised that in February (See Dkt. 182) explaining "the result will be hiding the scope of his production by excluding duplicate documents that would reveal the sources searched." Rather than address that concern Mr. Rodriguez claimed that he had gathered a pool of 124,370 records and it was "deduped" to 73,769 with a very elaborate process. (See Dkt. 183). While such a process could make sense for internal review, it in no way justifies responsive documents being withheld. Their exclusions only serve to conceal the extent of the search. The "deduping" as explained went to extreme measures to justify non production, coupled with the removed metadata there seems to be no reason to do so other than to hide his noncompliance.

### Repositories have not been searched

The production does not reflect a thorough review of Victor's repositories, nor has he been able to provide a list of what was searched. From all appearances it seems like the bulk of the production was still from the singular database Defendant used before and the Court found inadequate. As a clear example of what has not been searched, Victor has failed to search his email accounts to the present day. Victor produced a document entitled "Passwords" that lists over two dozen email accounts that he maintains. (Attached as Exhibit B). These accounts were clearly not searched, and the few accounts that were searched have not been updated in years.

Defendant has also relied on a shell game where everyone but him has his documents while at the same time claiming his vendor has "everything" to produce from, but he is never able to substantiate that claim. As that claim was made previously and his production was found to be defective, he should have to justify that claim and describe what they actually have. This includes documents from custodians such as SETAC, his forensic experts whom he claimed to have turned "everything" over to the vendor. He had claimed to have reached out to them to confirm everything was turned over and now doesn't recall any such efforts nor a response.

Defendant cannot be permitted to blame third parties for not providing documents, when he neither can explain what exactly they have or be transparent with his attempts to retrieve

**3**

them. In many submissions to the Court, in interrogatories and otherwise, Victor has claimed a former attorney at Davidoff Hutcher & Citron ('DHC') has possession of his documents, such as when he was ordered to produce text messages. (See Dkt. 185). He blames DHC, but has also admitted that DHC turned over a hard drive to another attorney, a Mr. Silveri. They never mention any efforts to retrieve anything from him, nor does he appear to be adverse to Victor as they have been friends for decades as part of a Judo club.

Similarly, Victor claims he produced text messages to Khatskevich many years ago and seems to think that absolves him of searching them for documents responsive to my requests. The texts he produced are solely between himself and Khatskevich, and the format produced is different then the exhibit he used recently at trial, indicating he has the data and is able to export from it. Beyond those older text messages from a Blackberry, Victor also explains that he searched his own iPhone and found nothing. The Court already made clear that the attorneys have a duty to investigate their clients claims, and that seems very dubious as emails and testimony describe text conversations Victor had with law enforcement but they are not produced. Victor should turn over his devices and any data from older phones for a proper search. He cannot be trusted to complete a search himself as he is neither honest nor technically competent enough to do so.

### **Documents appear to have purposefully been omitted**

Plaintiff compared his own records to the production and found that Victor has omitted highly responsive emails. In one such instance Victor used an attachment to Plaintiff's email, which Victor used to justify a complaint to law enforcement. Victor claimed it to be proof of Plaintiff's illegal access to Victor's computer. If one reviewed the email itself which was omitted, the data he provided to law enforcement clearly reflected that Plaintiff didn't access his computer but rather Victor invented a story after downloading the attachment. The production includes other emails from the same account both the day before and after the email, with no explanation as to why the email was omitted. It seems suspect that an email that entirely undermines Victor's claims to law enforcement accidently fell through the cracks while far less relevant emails made the cut. As it seems that someone is cherry picking documents from the production, it is impossible to trust the integrity of the entire production and Defendant's ability to provide discovery in good faith.

### **Request**

At this juncture, Plaintiff cannot trust the word of Defendant, or the integrity of his document production, without verification. Mr. Rodriguez has demonstrated that he would rather send misleading emails than forward one, while also having no apparent knowledge of anything relating to the production. Mr. Polizotto seems to have entirely forgotten he is counsel of record in this action, as he has time for Victor's other matters but not this one. He has demonstrated his willingness to submit false statements on Victor's behalf to create delay as well as just blatantly flouting this Court's orders. Victor himself lacks credibility, as Plaintiff can provide dozens of examples of him providing false statements under oath, in addition to his felony conviction earned for attempting to mislead the Government. They have been given an

opportunity to fix the issues in their production and they seem to have no interest in doing so. As the cutoff of their production aligns with the statute of limitations in this action that they have indicated will be used as a defense, the plan seems rather obvious.

Plaintiff asks that the Defendant be ordered to provide answers to questions Plaintiff raised in his July 21st email within two weeks, and that any supplemental production of documents, metadata and native files be due in three weeks. During that time Defendant should file weekly sworn statements detailing their efforts to comply with any order issued. These statements should include time records, and details of each day's efforts. To ensure this action gets the proper attention, Defendant should be prohibited from seeking an extension of any deadlines ordered in response to this application, and if he fails to adhere to those deadlines that he pay daily monetary sanctions until he does so.

Plaintiff also requests that Victor, Mr. Rodriguez, and Mr. Polizotto each be required to provide sworn statements about what they did in relation to this production. They should provide extremely detailed summaries regarding their efforts, including what custodians they have contacted and the ultimate outcome of those contacts, what repositories were searched and by whom, and what repositories were provided to the vendor for production. Counsel should each separately provide details of their contribution to the production including time sheets relating to the time they devoted to discovery since the Court's October 2022 conference, and whether or not they investigated statements made by their client to them regarding searches as ordered at that conference. Plaintiff requests that these statements be submitted in a week.

Plaintiff requests that Defendant be ordered to respond yes or no if he has conducted a search to the present day. If not, he should provide an explanation as to why it was not done as well as a detailed plan to do so. If he claims that he has completed such a search, he should explain what was done, and should agree that as his privilege logs do not reflect there being any privileged emails after 8/14/19 that he will not be asserting privilege on any emails dated after that cutoff to the present.

Plaintiff also requests that Defendant produce all documents related to his efforts to contact custodians as well as details about what documents each possess. If those records do not reflect good faith to retrieve documents that Plaintiff be permitted to seek discovery from custodians directly with any such costs paid for by Victor. Doing so at this juncture would serve to speed up discovery.

**Respectfully submitted,**

**/s/Tyler Erdman**

**Plaintiff Pro Se**

**917-301-0401**

**Tyler@Erdman.it**