UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------:

TYLER ERDMAN,                    : Case No.: 20-cv-4162

                  Plaintiff,    :

     v.                          :

ADAM VICTOR, et al.,             : New York, New York

              Defendants.  : December 21, 2023

----------------------------:


TRANSCRIPT AND STATUS CONFERENCE HEARING

BEFORE THE HONORABLE GABRIEL W. GORENSTEIN

UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:       TYLER ERDMAN
                     Plaintiff Pro Se
                     241 W 200 S
                     Apartment 630
                     Salt Lake City, Utah 84101


For Defendant:       POLIZZOTTO & POLIZZOTTO
                     BY: Emilio Rodriguez, ESQ.
                     6911 18th Avenue
                     Brooklyn, New York 11204




Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              THE DEPUTY CLERK:  This is in the matter of
 2   Erdman versus Victor, et al.; Case Number:
 3   20-cv-4162.
 4              For the plaintiff, please state your name
 5   for the record.
 6              MR. ERDMAN:  Tyler Erdman.
 7              MR. RODRIGUEZ:  Emilio Rodriguez from
 8   Polizzotto & Polizzotto.
 9              THE COURT:  Okay.  Welcome, everyone.  You
10   can be seated if you're not speaking.
11              We're here based on two letters, docket
12   number 209 and 210.  I mean, we can try going
13   through some of these things, but it seems to me the
14   bigger issue is a lack of sufficient disclosure as
15   to what the process has been for searching accounts,
16   hard drives -- whatever they are -- which specific
17   accounts have been searched, what the process was.
18              And, you know, I've issued orders requiring
19   the defendant to explain this.  And the explanations
20   are so bare-boned and omit, in some instances,
21   specific information that I require, that I think
22   the only thing to do at this point, Mr. Erdman, is
23   for you to take a deposition of Mr. Victor as to
24   what he knows.  And then if he doesn't know
25   everything, I'm ready to have you take a deposition
```

1    of the attorneys.  Though I think step one might be

2    sitting down with a face-to-face discussion before I

3    get to the deposition stage, which is a little bit

4    unusual for an attorney.

5           But normally, you know, when e-vendors are

6    involved, there's a corporation involved, you just

7    do a 30(b)(6) of the corporation, and that

8    educates -- you don't know what that is, but --

9           MR. ERDMAN:  I do.

10          THE COURT:  Oh, okay.  They educate someone

11   as to everything that happened in terms of the

12   document production.  So I think that's going to

13   solve a lot of the issues.

14          Have you deposed Mr. Victor yet?

15          MR. ERDMAN:  Yeah, I deposed Mr. Victor.  I

16   also talked to him a little bit on the document

17   issues because there's been other litigations where

18   he's had similar issues, so this wasn't particularly

19   surprising.  I mean, at one point I believe he said

20   something along the lines of I would know better

21   than him.

22          THE COURT:  I don't know who "I" is.

23          MR. ERDMAN:  Me.  Myself.  Probably as I

24   was the one managing --

25          THE COURT:  Oh.

1                MR. ERDMAN:  -- and whatnot.

2                I think what's going to happen on a lot of

3     that is he's going to try and claim he doesn't have

4     something, and it's in a third-party's possession.

5     If I may suggest, if he does that, I would like to

6     depose or subpoena those custodians directly to try

7     and figure out what they actually --

8                THE COURT:  Well, no.  I'm not talking

9     about the third-party custodians.  I'm not talking

10    about that, third parties.

11               MR. ERDMAN:  Oh.

12               THE COURT:  That's a different issue.

13               I'm talking about the beginning of your

14    letter, what you're getting from the e-discovery

15    vendor, and your reasons -- and your not

16    understanding exactly what happened and what

17    accounts were searched and, you know, repositories

18    and different drives and so forth.

19               So, you know, ideally -- I mean, if Victor

20    is not involved in this, maybe the more efficient

21    thing is for there to be a meeting live, not on the

22    phone or video, live with you and the vendors and

23    the attorneys to answer everything in complete

24    detail as to exactly what was done and how.  Because

25    right now, I don't feel you have the information.

1          MR. ERDMAN:  I mean, I personally think --
2          THE COURT:  Maybe you think you have it.  I
3    don't know.  And maybe you think it's insufficient.
4    Tell me what's going on.
5          MR. ERDMAN:  So --
6          THE COURT:  Because from these letters,
7    it's just impossible for me to make any rulings.
8          MR. ERDMAN:  Understood.
9          From my perspective, it looks like they
10   didn't actually search any repositories besides what
11   a vendor may have had for some other actions, is
12   what it looks like to me.  And I think that explains
13   the cutoff in the privilege log because they didn't
14   search any of his e-mail accounts recently.  They're
15   not listed in this tracker.  And, I mean, there's a
16   list of --
17         THE COURT:  Okay.  Well, let's talk about
18   this "recent" thing.
19         You know, you have a complaint that's dated
20   a certain date, and we have the motion to dismiss
21   decision that limits what this case is about.  And
22   it's about things that were said to some list of
23   people, law enforcement, in a certain period,
24   obviously, preceding the date of the filing of the
25   complaint.  So that's the period we need to be

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    looking at, all right.  So let's talk about that

2    period.  What are you missing in terms of

3    information about the search for that period?

4            MR. ERDMAN:  Well -- so there's supposedly

5    forensics information that was collected and

6    provided to law enforcement.  I haven't seen

7    anything produced that would have been used for that

8    purpose.

9            THE COURT:  I don't understand the sentence

10   you just said.

11           MR. ERDMAN:  Sorry.

12           THE COURT:  Try it again.

13           MR. ERDMAN:  Several years ago, Mr. Victor

14   hired forensics firms to analyze hard drives and

15   devices.  And then Mr. Victor took the so-called

16   findings from that and then would send that to law

17   enforcement as justification for his claims.  Like

18   this Excel sheet shows that this happened and

19   there's been nothing -- like, nothing provided

20   substantively from that forensics review or really

21   any of Mr. Victor's research.

22           THE COURT:  Okay.  We're now getting onto a

23   different issue.

24           MR. ERDMAN:  Sorry.

25           THE COURT:  We're getting onto the issue of

1    what's missing, and I'm not ready to talk about

2    what's missing yet.  I want to talk about the

3    process of production to you.

4              MR. ERDMAN:  Okay.

5              THE COURT:  All right?  Do you see the

6    distinction?

7              MR. ERDMAN:  Understood.

8              THE COURT:  Okay.

9              MR. ERDMAN:  Like, as far as from

10   Mr. Victor's deposition after this case began, he

11   had talked about how he's texting an NYPD officer or

12   been calling him fairly recently.

13             THE COURT:  Well, again, "fairly recently"

14   is bugging me.

15             MR. ERDMAN:  Oh, sorry.  I mean, like, a

16   week or two before the deposition occurred.

17             THE COURT:  Hold on.  It's bugging me

18   because this case shouldn't be about what's going on

19   now.  The case is about what's alleged in the

20   amended complaint.  So the relevant discovery period

21   in terms of figuring out, you know, what defamatory

22   statements were made and the context for them is

23   going to be before the amended complaint.  Do you

24   see what I'm saying?

25             MR. ERDMAN:  Yes.  Understood.

```
 1              THE COURT:  Okay.  So you started
 2   talking -- his deposition obviously happened after
 3   that, right?  So I'm just trying to break this into
 4   pieces.  And the first piece, it seems to me, is
 5   you're saying that certain things weren't searched.
 6   Am I right or am I wrong about that?
 7              MR. ERDMAN:  Correct.
 8              THE COURT:  Okay.  So it seems to me we
 9   need to pin that down, because you're saying that in
10   a letter and him saying otherwise is not getting me
11   anywhere, and it seems to me you're lacking
12   information.  So I need facts before I can make any
13   rulings.  And I just don't know what on earth the
14   facts are in terms of what happened for the search.
15   And I don't think you know.  Maybe you do know.
16   Maybe you have all the information you need, and
17   somehow you're not presenting it to me in the form I
18   need it.
19              Do you have all the information you need or
20   not?
21              MR. ERDMAN:  From my view, I looked at what
22   he provided in this tracker of what was searched and
23   it's incomplete.  That was what I was basing it on.
24   And I believe I have a fairly --
25              THE COURT:  I don't even know what
```

1   this tracker is.  This is some report that the

2   e-discovery vendor gave you?  What is this?

3           MR. ERDMAN:  I think Mr. Rodriguez would

4   be --

5           THE COURT:  Well, no.  You're the one --

6   no.  See, but if you don't know, then this is my

7   point.

8           MR. ERDMAN:  Well --

9           THE COURT:  You need to be able to present

10  all this to me.  You need to be able to say to me,

11  you know, I made these discovery requests.  It

12  required searching these things which existed on

13  whatever dates, you know, and those things were not

14  searched.

15          And I don't know that this is proof of it.

16  I think I need you to talk to that e-discovery

17  vendor and the attorneys and Victor all in a room to

18  figure out exactly what happened.

19          MR. ERDMAN:  I think that would go a long

20  way towards resolving --

21          THE COURT:  Okay.  Because right now, you

22  know, I think you're just too buried in it; and it's

23  very hard for you to express to an outsider,

24  especially in the context of making specific

25  requests from a court, as to what it is you need

1   done.

2          MR. ERDMAN:  Yeah.  Yeah, I would agree

3   with that.

4          THE COURT:  Okay.  So, anyway, I'll hear

5   from the defendant just solely on the issue of

6   providing information to the plaintiff in reaction

7   to what you've heard so far.

8          MR. RODRIGUEZ:  Well, Your Honor,

9   everything from the time period that you talked

10  about, that's been produced.  If we had produced

11  documents that were --

12         THE COURT:  Again, I don't want to talk

13  about what you produced.  I want to talk about the

14  process.

15         MR. RODRIGUEZ:  That's what I'm about to go

16  into, Your Honor.

17         If we had just provided -- this is what we

18  did.  If we had just provided documents that were

19  solely responsive to what Mr. Erdman asked for, we

20  would have come out with only a couple of thousand

21  pages.

22         What we did, knowing that he was going to

23  say, oh, that there was -- based on our past

24  experiences with Mr. Erdman -- oh, we haven't

25  produced certain documents.  So what Mr. Polizzotto

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1    decided, we're going to give him everything we have.
 2              THE COURT:  Who decided?
 3              MR. RODRIGUEZ:  Mr. Polizzotto, my boss.
 4              What he decided, we're going to give him
 5    everything that Mr. Victor has, short of, of course,
 6    what's privileged.
 7              THE COURT:  Everything he has.  That's a
 8    very odd thing to say.
 9              MR. RODRIGUEZ:  Short of what's privileged
10    and what should be on the priv log.  So for the --
11              THE COURT:  By the way, that statement
12    makes me less confident in your process.  The notion
13    that you're going to give someone everything that a
14    person has, it makes no sense to me and also seems
15    improper.
16              MR. RODRIGUEZ:  It is proper according to
17    the rules.  We --
18              THE COURT:  To give --
19              MR. RODRIGUEZ:  To give everything that's
20    in our -- that's in the --
21              THE COURT:  No.  No.  You can give --
22              MR. RODRIGUEZ:  It's the defendant's
23    position it is in the rules.
24              THE COURT:  You have to respond to a
25    document request.  You can't say, I want a document,
```

```
1   and you'll say, I will give you every document in --
2   you know, I have 10,000 documents in my warehouse, I
3   will give you the 10,000 documents.  No.  Totally
4   improper.  Go ahead.
5           MR. RODRIGUEZ:  Well, that's what -- so, if
6   anything, we gave him more than what he had asked
7   for.  So definitely within the relevant time
8   period pertinent to the amended complaint, we
9   covered that time period.
10          THE COURT:  What do you mean by
11  "everything"?  You sent him every e-mail he sent to
12  any human being?  I don't even know what this means.
13          MR. RODRIGUEZ:  Yes, we sent everything
14  that he had in those hard drives --
15          THE COURT:  He didn't use search terms?
16          MR. RODRIGUEZ:  -- so that he would not be
17  able to say, oh, it wasn't -- that he didn't
18  receive -- we tried to de-dupe as much as --
19          THE COURT:  No.  No.  No.  De-duping has
20  nothing to do with search terms.
21          Did you use search terms?
22          MR. RODRIGUEZ:  Your Honor, yes, we did, to
23  try to, of course, eliminate as many duplicates as
24  possible.  And according to the vendor --
25          THE COURT:  Search terms doesn't eliminate
```

1    duplicates.  Do you know what search terms are?

2            MR. RODRIGUEZ:  I know what search terms

3    are, Your Honor.

4            THE COURT:  Okay.  So, again, imagine a

5    warehouse.  We search for all documents with the

6    word "red" in it, okay.  That's a search term.  That

7    has nothing to do with duplication.

8            Do you see what I'm talking about?

9            MR. RODRIGUEZ:  I see what you're talking

10   about, Your Honor.  I'm telling you the -- I'm

11   telling you the process that we underwent.

12           THE COURT:  So you produced entire e-mail

13   accounts regardless of who the e-mail was sent to?

14           I mean, do you have a problem with that?  I

15   suppose you can do your own searches once you get

16   it.

17           MR. ERDMAN:  If that's fine with -- I don't

18   have a problem with that.  It seems like what

19   they're trying to do is give me filler of things,

20   like an old hard drive from his daughter going back

21   to 2003 rather than giving me actual stuff so they

22   can point to --

23           THE COURT:  I mean, it's completely

24   improper.  But there may be some advantage to you

25   because you get to do your own searches and maybe

```
 1    you have that kind of technical expertise.  So if
 2    you're not complaining about it, then I'm not going
 3    to worry about it, I suppose.
 4         MR. ERDMAN:  I don't have much issue with
 5    that, but, you know, he acts as if I made these
 6    really voluminous requests going into the past.  And
 7    he had said, you know, he's given me everything, and
 8    he's extending the time frame beyond what I
 9    requested.  And I believe we even had a conversation
10    before we each produced of where we defined the date
11    range for this.
12         THE COURT:  So are they handing you --
13         MR. ERDMAN:  It's not like I'm trying to go
14    back --
15         THE COURT:  -- e-mail accounts?
16         What are they giving you?
17         MR. ERDMAN:  So what it looks like, it
18    looks like there were a couple hard drives which
19    didn't seem particularly relevant, like, one was a
20    backup of his daughter's computer.  There's some
21    e-mail accounts, but they don't seem like they're in
22    an entire account.
23         THE COURT:  I think we have to have the
24    conversation, a live conversation in a room with
25    Victor, both attorneys, the e-discovery vendor and
```

1    you, where you get to ask any question you want and
2    you get the answers to it.  At this point, I'm not
3    going to require it to be under oath, but if this
4    process doesn't work, people are going to start
5    being put under oath.  So we should need to do that
6    as soon as we can.  All right.
7           I can't reach any of the issues of the
8    process of the search without getting a full
9    description of it.  I did not get it from their
10   affidavits.  It was woefully inadequate.  It was
11   almost laughable.  So, you know, I want you to try
12   to get it.  If you can't get it, I'm going to have
13   you start putting people under oath and, hopefully,
14   that will lay the whole thing out.
15          MR. ERDMAN:  Yeah, I think that will work
16   because I think the affidavits are too easy to omit
17   details, and then we're going through motions over
18   and over again.
19          THE COURT:  Okay.  Now, having said that,
20   that puts off a number of things, but maybe not
21   everything; most obviously, the third parties.
22          So other than the third -- do you know what
23   I mean by "the third parties"?
24          MR. ERDMAN:  Yes.
25          THE COURT:  Other than the third parties,

1    are there any other issues we should be doing today?

2           MR. ERDMAN:  I think that would probably go

3    a pretty long way towards figuring this out.  I

4    mean, the priv log -- privilege log cutting off and

5    not having any e-mails with current counsel, I

6    think, is probably going to be figured out pretty

7    quickly with some questions.

8           THE COURT:  Okay.  So on the privilege log,

9    you know, I gather as part of this process, there

10    are some things you didn't produce on grounds of

11    privilege, Mr. Rodriguez; is that right?

12           MR. RODRIGUEZ:  That's correct.

13           THE COURT:  Okay.  So what's the problem

14    with putting a list of those together for a log?

15           Oh, you think you did?

16           MR. RODRIGUEZ:  Our priv log, we feel that

17    it's --

18           THE COURT:  Okay.

19           MR. RODRIGUEZ:  -- it's pretty

20    comprehensive, yes.  We feel we did.

21           And to address what he just said about

22    current counsel, we came in after he had filed the

23    complaint.  So why would we --

24           THE COURT:  Yeah, yeah.  We're not dealing

25    with any documents after filing of the complaint, so

1    I'm not requiring them to do a log for that.

2            MR. ERDMAN:  Well, their privilege log, I

3    believe at this point is around 26,000 entries.  It

4    appears --

5            THE COURT:  Well, see, we're now back to

6    the original problem, which is they're giving you

7    the warehouse of 10,000 documents instead of giving

8    you the documents that have the word "red" in them.

9            MR. ERDMAN:  Well, my concern specifically

10   with the privilege log is when I was working for Mr.

11   Victor, he would describe how he would try and make

12   things privileged that wouldn't otherwise be --

13           THE COURT:  I mean, right now, you have a

14   privilege log that, in fact, sounds like it may be a

15   privilege log that includes many irrelevant

16   documents.  But what is it you want me to do?

17           Now that you know you're not getting

18   privileged communications after the filing of the

19   complaint, what do you want me to do?

20           MR. ERDMAN:  Oh.  Well, some of the

21   requests -- just one request in particular, I had

22   asked for their documents related to efforts to

23   retrieve documents responsive to any document

24   requests in any litigation in which Victor claimed

25   they were in possession of his agents, such as

```
1    former attorneys.
2              THE COURT:  Boy, I didn't even understand.
3    You can try it again more slowly.
4              MR. ERDMAN:  Sure.  Sorry.
5              Any documents related to efforts to
6    retrieve documents responsive to document requests
7    in any litigation in which Victor claimed were in
8    the possession of his agents, such as former
9    attorneys.
10             THE COURT:  Okay.  I think I understand it.
11   Go ahead.
12             MR. ERDMAN:  My intent was, he's claimed in
13   this action and other ones that he doesn't have
14   documents because a former attorney had them or the
15   forensics people have them.  So I was hoping to get
16   those --
17             THE COURT:  But this doesn't seem to relate
18   to privilege though.
19             MR. ERDMAN:  -- copies of those efforts,
20   which should be --
21             THE COURT:  You seem --
22             MR. ERDMAN:  Oh, I'm talking about
23   the cutoff date.  Sorry.
24             THE COURT:  What are we talking about now?
25             MR. ERDMAN:  Just the cutoff as far as the
```

1   document request.

2           THE COURT:  I'm telling you the cutoff is

3   the filing of the complaint, so it needs to be

4   before that.

5           MR. ERDMAN:  Okay.  So my concern is I

6   believe there are responsive documents in there, and

7   they're just marked --

8           THE COURT:  In where?

9           MR. ERDMAN:  In -- listed in the privilege

10  log.

11          What it appears -- what it looks like is

12  Victor would take documents, responsive documents,

13  send it to his attorneys as an attachment, and he's

14  marking the attachment and the e-mails as privileged

15  and then claiming he doesn't have the document, even

16  though it's right there in his e-mails.

17          THE COURT:  What's your basis for that?

18          By the way, you're talking about e-mail or

19  whatever from before the filing of your complaint

20  that he then sends -- did this occur before the

21  filing of the complaint, that he would then send it

22  to the attorney?

23          MR. ERDMAN:  Right.  Correct.

24          So it would look like, you know, he's

25  working with his attorney, he would gather

        AMM TRANSCRIPTION SERVICE - 631.334.1445

1    responsive documents, attach them to an e-mail, send

2    them to the attorney.  And now, he's claiming to not

3    have those documents because the attorney has them.

4         THE COURT:  No one sends physical documents

5    anymore, right?

6         MR. ERDMAN:  No.  I mean like PDFs or

7    whatever --

8         THE COURT:  Okay.  So they're still

9    existing in an e-mail, but they're in an e-mail to

10   an attorney.

11        MR. ERDMAN:  Correct.  And then I think

12   he's acting as if he doesn't have possession of that

13   because he's claiming it's part of a privilege

14   family of e-mails.

15        THE COURT:  Okay.  Well, I'll have to look

16   at some privilege log entry that reflects this.

17        Well, okay.  Put whatever you want

18   together, but before you come to me, show them to

19   the other side because, obviously, you're right.

20   The fact that he sent it to an attorney doesn't

21   affect the privilege of the original document.  The

22   e-mail to the attorney might be privileged, but not,

23   obviously, the original document if it had a life

24   before that e-mail.

25        You agree with me, Mr. Rodriguez, right?

```
 1              MR. RODRIGUEZ:  I agree, Your Honor.
 2    You're right.
 3              THE COURT:  Okay.  So now the big question
 4    is, what can we do today, other than third-party
 5    custodians, or are we now up to third-party
 6    custodians?
 7              MR. ERDMAN:  Yeah, I think we're at a third
 8    party --
 9              THE COURT:  Okay.  So I gave them the
10    chance to see if they had custody or control over
11    any of these documents with third-party custodians.
12    Basically they said no.  You're going to have to go
13    to the third-party custodians.
14              So I think that's where we are.  Do you
15    have some other view, Mr. Erdman?
16              MR. ERDMAN:  No.  That's --
17              THE COURT:  Do you have some other view,
18    Mr. Rodriguez?
19              MR. RODRIGUEZ:  That's about right, Your
20    Honor.
21              THE COURT:  Okay.  On the other hand, I
22    don't want, you know, people unnecessarily annoyed
23    with this stuff.  So do you know where the -- you
24    know, these third-party custodians, if they're not
25    in New York, I believe you have to get a subpoena.
```

1    I'm trying to -- they keep changing the rule on

2    this.  Hold on a second.

3            Okay.  You can serve it anywhere, but if

4    there's a dispute, you're going to have to go to the

5    district where they occur.  I can't deal with it.

6            I assume you're asking only for documents,

7    not for testimony, right?

8            MR. ERDMAN:  There is one individual,

9    Ms. Bozak, that I would like to get testimony from.

10   The rest, I believe, are all going to be documents.

11           THE COURT:  Is she in this district?

12           MR. ERDMAN:  I believe she is.

13           THE COURT:  Okay.  Because you have to hire

14   a court reporter and everything else; you understand

15   that?

16           MR. ERDMAN:  Yes.  Would I be able to do

17   so at Mr. Victor's cost since he's, kind of, created

18   this whole issue with the third parties?

19           THE COURT:  He's created some issues, but I

20   don't think he's created it with the third parties,

21   so the answer is no.  All right.  But hold on.

22   We've got to talk about these third parties because

23   I have some powers to limit discovery.  And I think,

24   you know, given the fact that you're proceeding pro

25   se in this matter, there are certain limits that

1   have to be observed in proportionality.

2           So first of all, we need to make sure that

3   whatever you're trying to get information about is

4   tailored to what's relevant in this case.  So before

5   you issue any subpoenas, you need to provide a copy

6   to me, explain to me why you believe they have

7   relevant information, what kind of information it

8   is, how it relates to specific allegations that have

9   survived in the amended complaint in accordance with

10  the opinion and order.

11          So, for example, it can't be anything

12  relating to the co-op letter.  It has to be relating

13  to that specific period where you were being

14  defamed.  You understand that, right?

15          So I don't know that I'm going to let you

16  do everybody.  So when you're ready, give me a list

17  in the order of their importance.  Attach a copy of

18  the subpoena that you want to serve, and justify in

19  each case why you think it's proportional to the

20  needs of this case, okay?

21          MR. ERDMAN:  I have one other issue about

22  the --

23          THE COURT:  By the way, let me disclose

24  something.  Willie Brye, I worked with at the U.S.

25  Attorney's office 30 years ago.  He's not a friend

```
 1    or anything, but he was a colleague, work colleague.
 2    Every five or ten years, I run into him somewhere
 3    and we say hello and have a conversation.  I don't
 4    think it's a basis for recusal, but I want you to be
 5    aware of that.
 6              MR. ERDMAN:  Understood.
 7              MR. RODRIGUEZ:  Understood.
 8              MR. ERDMAN:  There's an issue --
 9    Mr. Rodriguez stated that there were e-mails from
10    Ms. Bozak that were added to the privilege log, and
11    he hasn't been able to provide me the control
12    numbers to prove that.  And he also has said in
13    multiple letters at this point that there are
14    e-mails from Timlin (phonetic) that are going to be
15    added to the log, but they still haven't.  And there
16    hasn't been any explanation as to why they haven't
17    at this point.
18              MR. RODRIGUEZ:  It's basically four
19    documents from each, four e-mails from each,
20    Your Honor.  We just haven't -- the reason they
21    haven't been added is that we're trying to figure
22    out -- we don't want to -- in terms of the vendor,
23    my clients already spent in the six figures.  We're
24    trying to -- I mean, I may just process
25    these entries myself just to try to --
```

1          THE COURT:  It's eight entries?

2          MR. RODRIGUEZ:  Eight entries.  That's it.

3          THE COURT:  Yes.  Do it within one week.

4          MR. RODRIGUEZ:  No problem.

5          THE COURT:  By the way, I have no sympathy

6   on the vendor because you did the 10,000 documents

7   in the warehouse, which was not the way this should

8   have been done.  Go ahead.

9          Okay.  Any other issues that we need to do

10  today, Mr. Erdman?

11         MR. ERDMAN:  I think the questioning would

12  resolve them or --

13         THE COURT:  I'll extend the discovery

14  period.  It sounds like we may need more time.

15  Maybe I'll do an extra month.

16         Mr. Rodriguez, anything else we should do

17  today?

18         MR. RODRIGUEZ:  Not that I can think of,

19  Your Honor.

20         THE COURT:  All right.  Thank you,

21  everyone.

22

23                        0o0

24

25

```
 1                    C E R T I F I C A T E

 2

 3       I, Adrienne M. Mignano, certify that the

 4   foregoing transcript of proceedings in the case of

 5   Erdman v. Victor; Docket Number: 20CV4162  was

 6   prepared using digital transcription software and is

 7   a true and accurate record of the proceedings.

 8

 9

10   Signature   _____
                  Adrienne M. Mignano

11               ADRIENNE M. MIGNANO, RPR

12

13   Date:       December 30, 2023

14

15

16

17

18

19

20

21

22

23

24

25
```