UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TYLER ERDMAN,

          *Plaintiff*,

against

ADAM VICTOR,

          *Defendant.*

Case No.: 1:20-cv-04162 (LGS)(GWG)

**AFFIDAVIT**

---

STATE OF NEW YORK
          ss:
COUNTY OF KINGS

1. I am counsel for the Defendant in the abovementioned action and I make this Affidavit in response to the Order to Show Cause why Mr. Polizzotto and I should not be sanctioned pursuant to FRCP 16(f)(1)(C) for failing to comply with a Court order and failing to timely apply to extend the Court-ordered deadline.

2. I was asked by the Court during the conference held on December 21, 2023 how much time would be needed for me to provide Plaintiff with the amended privilege log which would include documents supplied by custodians Timlin and Bozic. In retrospect, I should have thought better and asked for a slightly longer deadline due to the fact a document production is never as simple as it appears to be and, especially, because circumstances often arise which are unexpected and wreak havoc on the best-laid plans.

3. On December 24, 2023, in the early hours of the morning, my younger sister, along with my ten-year-old niece, had to be retrieved from her home due to the fact she was

being menaced, harassed, and ultimately threatened by the father of her child. After she was picked up and thus safe with my family, I spent the following two days with them, a household which includes my 75-year-old mother, an older sister, and an autistic nephew, in order to help protect them because it was unknown what form of retaliation he would attempt as a result. It was the consensus this individual was capable of anything in his present state and we were genuinely concerned for our safety.

4. On December 26, 2023, I accompanied my sister to the Family Court of Westchester County, where she filed for custody of her child as well as a family offense petition, seeking an order of protection requiring him to stay away and avoid her presence. At first, she did not wish for me to enter the court with her, even though I am an experienced family law attorney that has argued for and defended orders of protection, and therefore familiar with their prerequisites. This was due to the fact she feared for my safety should he see my name anywhere on the court papers. I refused to stay outside the courtroom and convinced her she stood a much better chance of getting it granted were I to accompany her, and that her safety, and that of my niece, was paramount.

5. As a result of the argument I presented, my sister obtained the stay away order of protection she needed. I will not include any of the court papers, nor the police report she made the day we helped her leave her home, due to the fact this affidavit is a public filing. However, I will include the file number of her cases with the Family Court of Westchester County (File No. 173776) should the Court wish to verify the existence of her filings.

6. Again, because her present household is comprised of herself, my ten-year-old niece, my older sister, an autistic nephew, and my 75-year-old mother, I have since that time

spent as much time with them as possible. I have had to pick up some of the slack when it comes to ensuring their safety from this deranged individual. As a result, I missed the December 28 deadline for providing the amended privilege log. Knowing one's life is in danger, or at least that one's safety could be compromised, is not an easy thing and I apologize to the Court for not handling it in a better way. I do not express to my family the degree to which I am concerned for my safety because it is vital to show them confidence everything is going to be all right, especially since my mother lost her husband of 57 years to cancer in December 2022. If she were to find out how worried I was, it is unknown what the ultimate effect would be due to the level of anxiety it would cause. Losing my father so recently was hard enough. I cannot contemplate how awful it would be to lose my mother soon afterwards, which often happens unfortunately to older couples.

7. The same reticence which keeps me from expressing my degree of concern to my family unfortunately also resulted in my failure to inform Mr. Polizzotto of the impending privilege log deadline. After the call with Mr. Erdman, during which the extension of the privilege log deadline was discussed, I then went to Mr. Polizzotto and explained what had occurred since December 24. I did not mean to place him in that kind of position and it was definitely not my intention to draw the ire of the Court. This is the "family matter" I referred to during the call with the Plaintiff and it is not surprising why I would want to avoid discussing the situation. Circumstances have turned out, unfortunately, in a way that requires me to openly discuss this horrible subject.

8. Even with all I had going on, I managed to request, and was granted by the Court, a four-day extension of the privilege log deadline. I was in constant communication

with my contact at the document vendor, Stephen Kaludis of TransPerfect. With his help, hundreds of records were inputted into the production database and the amended privilege log was submitted timely on January 9. During this process, I was also able to secure his availability for the vendor conference required by the Order of the Court dated January 4, 2024. He told me he would work around all our schedules, a fact which was expressed to the Plaintiff during the January 5 phone call that was required by the Court. During that call, Plaintiff also admitted how the biggest obstacle would be the availability of the vendors and that, most probably, the conference would not occur by January 12, 2024. However, due to the constant need to ensure my family's safety, I did not reach out to anyone at Setec until the early evening of January 9. The president of Setec, Todd Stefan, eventually acknowledged receipt of my email but unfortunately did so after his phone call with the Plaintiff on January 10 during which he expressed he had not heard from anyone at my firm.

9. After establishing contact with Mr. Stefan, I have spent most of January 10 and 11 in contact with him and Michael Kunkel, one of their forensic specialists, but as of the writing of this Affidavit late on January 11, I have not heard back from them as to possible dates for a conference with the Plaintiff. Unfortunately, also during this time, my family situation has exacerbated. My mother's youngest brother passed away after a long battle with cancer and she had to fly out immediately to Puerto Rico for the funeral and burial. She was accompanied by my nephew and my older sister who, due to the order of protection, serves as the intermediary between my younger sister and the father of her child. This meant his only means of communication with my niece would be out of touch until next week. Because it is uncertain what actions he will take as a result, and the fact my sister would be

alone with my niece, I have had to spend as much time with them as possible. The fact they live in Westchester County, and I live in Queens, creates another obstacle for me to overcome.

      10.     Even with my family concerns being what they are, the extension of the deadlines for submission of the privilege log resulted in a delay of only 12 days, with the vendors conference to occur soon afterwards. That means Plaintiff will have six weeks within which to continue his review of my client's documents, a review which was begun fifteen months ago. Considering the fact the deadline for party discovery is March 4, 2024, and that Plaintiff has already had fifteen months to search through the produced documents, the delay has been minimal and does not merit the imposition of sanctions. Regarding the issue of the vendors conference, during an early phone call I had with the Plaintiff on January 11, 2024, even before we had heard from any representative at Setec, he informed me he would be unavailable over the subsequent two days due to a trip to see family. Therefore, even if a Setec representative was available, which was still possible, however unlikely, we would never have been able to conduct the vendor conference in accordance with the deadline established by the Court. Everyone else, including my client, was available and yet Plaintiff took himself out of the picture. We have never begrudged Plaintiff his time with his family, and we have never complained or demanded an end to party discovery even though he has already had fifteen months to review his documents. My client has expressed at times his reluctance to grant extensions of discovery, and to his credit he listens when Mr. Polizzotto and I explain how it is just to give the Plaintiff the benefit of the doubt when it comes to time taken with discovery. We recognize that it is difficult when someone

represents himself and has no legal background. But even with that, the long period of time Plaintiff has taken with these documents has done more to delay the process than any of the recent requests for extensions.

11. In an ideal world, my sister would have her household intact had her household and my niece would not have to have witnessed the awful and threatening display of behavior from her father she did that night. However, that was not the hand I was dealt. Helping ensure my family's safety unfortunately led to a delay of 12 days for the provision of an amended privilege log and the slight delay of the vendors conference, and I apologize to Mr. Polizzotto and the court for that. I realize that even with this, I must take it upon myself to make further efforts to comply with the Court's rules so conferences like the one held on December 21 become unnecessary. Mr. Polizzotto and I will work on ensuring this is so. When taking all that into consideration, however, it is my belief that the imposition of sanctions, due to violations with the Court's order, that unfortunately occurred due to the circumstances noted above, are not warranted.

Dated: Brooklyn, New York
January 12, 2024

_____
EMILIO RODRIGUEZ

Sworn to before me on
January 12, 2024

_____
NOTARY PUBLIC

ALFRED POLIZZOTTO III
Notary Public, State of New York
No. 02PO4976096
Qualified in Kings County
Commission Expires January 14, 2027