Case No. CV-20-4162 (LGS)(GWG)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

TYLER ERDMAN,

        Plaintiff,

  Against

ADAM VICTOR,

        Defendant.

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF SANCTIONS PURSUANT TO FRCP 16(F)(1)(C) AND 37(B)**

**CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ..................................................................................................................... 1

    THE ORDER ................................................................................................................. 1

    DEFENDANT'S EXCUSES HAVE ALREADY BEEN FOUND TO BE IRRELEVANT ....... 2

    MR. POLIZZOTTO'S EXCUSE IS A MISREPRESENTATION ............................................ 4

    THERE IS NO GOOD FAITH ................................................................................................ 5

    THIS BEHAVIOR IS ENDEMIC TO ANY LAWYER REPRESENTING VICTOR ............... 7

    WHAT SANCTIONS ARE JUST ........................................................................................... 9

CONCLUSION ..................................................................................................................... 9

**TABLE OF AUTHORITIES**

**Cases**

Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d ....................... 6

*Daval Steel Products v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991)* ................................ 7

<u>Hart v. WESTCHESTER CTY. DSS</u>, 160 F. Supp. 2d 570 (S.D.N.Y. 2001) ....................................... 6

National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. .................................. 6, 7

National Hockey League, 427 U.S. at 643 ..................................................................................... 7

**Statutes**

Fed. R. Civ. P. 16(f)(1)(C) ............................................................................................................. 1, 9

Fed. R. Civ. P. 37(b) ...................................................................................................................... 1, 9

Local Civil Rule 83.6(c)(2-3) ............................................................................................................ 9

## **PRELIMINARY STATEMENT**

Plaintiff submits this opposition to Defendant's Memorandum of Law in support of their opposition to sanctions pursuant to Fed. R. Civ. P. 16(f)(1)(C) and Fed. R. Civ. P. 37(b).

This order to show cause is the result of Defendant's counsel's habitual disregard for the Court's orders. It is not the result of a single missed deadline but of many. It is not even their first motion as to why they should not be sanctioned. They have come up with a story that lets Mr. Rodriguez shoulder the blame, while Mr. Polizzotto merely expresses his disappointment in Mr. Rodriguez rather than contrition for his own actions. Counsel's submission merely displays further contempt for their obligations to the Court. They can't even get the caption right, listing Eastern District rather than Southern. Despite Mr. Polizzotto's sworn testimony that he did not know about Mr. Rodriguez's personal problems until January 4, they were referenced both in Mr. Rodriguez's December 29 email to Mr. Polizzotto and me as well as in my January 2 letter to the Court, which Mr. Polizzotto received via ECF. The Court should find that they are in contempt.

## **ARGUMENT**

## **THE ORDER**

The Court's Order to Show Cause ("OSC") clearly seeks both Mr. Rodriguez ("Rodriguez") and Mr. Polizzotto ("Polizzotto") to justify their collective failure to comply with a Court order and failure to timely apply to extend the Court-ordered deadline. The OSC points to the Court's August 23, 2022 Order (Dkt #159) in which it made clear that "all counsel are responsible for seeking an extension rather than violating the Court's order". The OSC reiterates the standard expected from Rodriguez and Polizzotto "It simply was not an option for the attorneys to ignore a Court order." Yet they did, again.

1

This was not Counsel's only warning. The Court's October 28, 2022 Conference focused on Rodriguez's habitual disregard of his obligations to the Court. The Court warned Polizzotto it would hold him responsible for Rodriguez's failures:

> "The Court: What have you done – it's not enough to just ask your client if a search was performed correctly. One needs to dig more as a lawyer." (See Dkt. 170 P.11 20-22)
>
> "The Court: Well, I mean, the conduct in front of me has been outrageous. I mean, also just the failure of the defendants to recognize that when they blow off court orders and blow off deadlines, that they shouldn't be responsible for it. I just don't understand that. You know, every now and then, something personal happens, but that usually happens once, and then someone else takes control. But to happen literally over and over and over again, you know, we've all been through personal matters. That's why we have colleagues. We don't blow off court orders. We don't take an accusatory attitude. The whole thing is just a complete mystery to me as to why people think they can get away with this. (See Dkt. 170 p.13 12-25)

Polizzotto was on notice from the Court as to what was expected from him and the more than a year since he has continued to ignore the Court's order. Contempt penalties were clearly alluded to and more then justified at this juncture:

> "…I believe the conduct has been contemptuous. I'm not saying I'm going to hold you in contempt, but I'm running out of tools in the toolbox." (See Dkt. 170 P. 10 17-19)

## **DEFENDANT'S EXCUSES HAVE ALREADY BEEN FOUND TO BE IRRELEVANT**

Both attorneys have received clear orders from the Court specially meant to avoid recurrence of their misconduct. While everyone can be sympathetic of Rodriguez's personal situation, it is no excuse for either attorney's inaction. Polizzotto only needed to read the emails Rodriguez and I sent him or ECF notices he received on this case to realize deadlines were missed or were going to be. It appears that Polizzotto actively ignored repeated emails on this case, despite the Court's instructions. It is also apparent that he even fostered an environment where Rodriguez felt more comfortable violating Court orders than asking for help. Rodriguez's

2

"reticence," which "resulted in [his] failure to inform Mr. Polizzotto of the impending privilege log deadline" is no excuse, particularly considering the Court's instruction to Polizzotto:

> "The Court: I required Mr. Polizzotto to be on this call because of my grave concerns about the way the defendants are litigating this case and whether they're doing what they should be doing in order to properly represent their client. They're on very thin ice right now."
>
> (See Dkt. 170 p. 4 18-25)

Despite these orders, from Plaintiff's perspective Polizzotto has been entirely absent from this action for at least two years. The last email Plaintiff received from him regarding this action was on 12/22/22 responding to an inquiry about the same discovery issues we are still dealing with. One pointed related to how Rodriguez stated during a phone call in November 2022 that he would be reaching out to SETAC to seek answers to questions about repositories yet an affidavit summarizing his discovery efforts made no mention of it. Polizzotto simply ignored all of Plaintiff's questions only stating that Rodriguez was out of the office due to the death of his father and he is out of the office himself. Given their recent admissions they admit to having never bothered to reach out to SETAC until this month.

Rodriguez wrote on December 5th, that Polizzotto "has been apprised of and involved with each step of the discovery process. Considering the extent to which Defendant has complied with all requests, it would be unjust to demand any separate submission on Mr. Polizzotto's part. Any such submission would serve only to distract from Plaintiff's inability to strength his case from the many documents produced." (See Dkt. 210). If Polizzotto was so well apprised, he should have seen that Rodirguez was yet again introducing irrelevant points into his arguments which the Court already pointed out as outrageous:

> "The Court: So, you know, the idea that Mr. Rodriguez, now in response to my question about what search was conducted, goes back to essentially an irrelevant point saying that there's something infirm about my order because he in fact opposed it is really outrageous.

3

Polizzotto: I understand your Honor's point" (See Dkt. 170 p.10 4-11)

The Court's January 10th order finding that Rodriguez's "utterly fails to address" the issues raised by Plaintiff while yet again noted on the 16th that "there was no effort by. Mr. Rodriguez or Mr. Polizzotto to comply with the Court order by arranging SETEC's appearance for a period of approximately two and a half weeks after the Court explicitly ordered defendant to make arranges for the conference "forthwith"…Such lack of effort is no justified by anything stated in the defendant's letter" (See Dkt. 230). This is sufficient notice to any casual observer of the docket, Rodriguez clearly is not doing what he should be. An attorney of record alongside him with an explicit order that this should not occur is simply in contempt of court. Plaintiff was able to get in touch with SETAC with a single phone call, Polizzotto has no excuse for not having done so. He should be reading Orders and ensuring they are followed.

Further compounding Polizzotto's failures is that he has had ample time to work for his client on other matters. On December 29th when they had already violated the deadline, he had time to attempt to serve an out of state subpoena on Plaintiff seeking his deposition as a third party. In one of his attempts to issue that subpoena he was admonished by the Court for having filed a motion without being admitted to practice law in the state. In the time since the 29th, he then found time to give Plaintiff unsolicited and dubious legal advice, stating that Plaintiff should "be guided accordingly" to it.

## **MR. POLIZZOTTO'S EXCUSE IS A MISREPRESENTATION**

In an attempt to exonerate himself, Polizzotto claims that he was unaware of Rodriguez's personal matters "until after the Court ordered this matter to be heard vis Order to Show Cause" on January 4th. (See Polizzotto Aff at 4). This is false.

4

Plaintiff emailed both attorneys regarding the issue of the missed deadline on December 29th, to which Rodriguez replied the same day to Mr. Polizzotto and Plaintiff stating "I have been attending to a personal matter regarding a family member and have not been able to complete it. Rest assured you will get it soon." (Attached as Exhibit 1) This was the same day Polizzotto was pursuing discovery from Plaintiff in other matters. Plaintiff's January 2nd Letter (Dkt. 215) also discusses how "Mr. Rodriguez states that he had a personal matter involving a family matter…However, he isn't the only attorney in this action. The Court had previously made clear that as counsel of record Mr. Polizzotto is responsible to follow the Court's orders if Mr. Rodriguez is unable to do so due to personal matters." It was raised again on January 3rd when Rodriguez's letter (Dkt. 216) stated "that more time was needed due to a family matter that had unfortunately arisen during the holidays".

In the event of Rodriguez claiming that "he was unable to make a timely application" both attorneys were ordered to include a "disclosure of any efforts by the signatory to communicate with the other attorney regarding the Court-ordered deadline and the need to obtain an extension" (See Dkt. 218). While Rodriguez did exactly that, not only did they not disclose anything about the December 29th email, instead they tell a story inconsistent with it. Their misrepresenting of the facts while flouting very another Court order is telling. Rodguez fails to even mention the email he sent, and Polizzotto offers no explanation as to why he fails to even read emails or filings in this action.

## THERE IS NO GOOD FAITH

Defendant's argument that there is a "lack of culpability and bad faith exists as to attorneys Rodriguez and Polizzotto", pointing to Mr. Rodriguez's "good faith belief that he would be able to comply".

5

Their argument states:"Mr. Polizzotto correctly points out how attorney Rodriguez still managed to not ignore or willfully disregarding his obligations to the Plaintiff and Court's deadline." It is impossible to square good faith with the fact that Rodriguez had promised Plaintiff control numbers prior to the Conference, claiming that some documents were already logged while that was not the case. At the December Conference, Rodriguez then suddenly claimed that there was nothing logged nor produced. He lied to Plaintiff about what he would do, mispresented to the Court what he had already accomplished, admitted he did nothing, then blew the deadline to do what he claimed to have already done. Claiming that there was minimal delay for them to comply after being caught lying does not absolve them. They recycled that same argument in their last motion as to why they should not be sanctioned. Having delayed yet another year, they cannot claim to be operating in good faith.

Their own case-law shows they are well deserving of sanctions. They *quote <u>Hart v. WESTCHESTER CTY. DSS</u>, 160 F. Supp. 2d 570 (S.D.N.Y. 2001)* in how harsher remedies are justified when there is "willfulness or faith, or is otherwise culpable", which is clearly present in this instance. Other case law points to how the full record of the action should be taken into consideration such as Defendant's constant obstructionism. "The court was therefore well within its authority in prescribing sanctions pursuant to Rule 37(b)(2), especially in view of defendants-appellants' generally obstructive behavior. See Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1068 (2d Cir. 1979) ("sanctions must be weighed in light of the full record in the case") (citing National Hockey League v. Metropolitan Hockey  Club, Inc., 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (per curiam))."

Beyond this action, sanctions are required to maintain deterrence for other violators. If Polizzotto and Rodriguez are allowed to conduct themselves this way without punishment it

6

opens the door for others to do the same. *Daval Steel Products v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991)* details the deterrent effect required for violators. "such orders are necessary on appropriate occasion to enforce compliance with the discovery rules and maintain a credible deterrent to potential violators. National Hockey League, 427 U.S. at 643, 96 S.Ct. at 2781; see also Update Art, 843 F.2d at 71.")"

This is a rare situation where both attorneys have already been warned that their behavior is "contemptuous" and that their personal matters specifically will not excuse either attorney of his responsibilities. There is no good faith or lack of culpability to be claimed when the Court's orders on this very point have been outstanding for more than a year and repeatedly violated. They have had ample notice and have done nothing to improve their behavior. The record fully reflects their contempt. Threats have not been a deterrent; only harsh sanctions will be.

## **THIS BEHAVIOR IS ENDEMIC TO ANY LAWYER REPRESENTING VICTOR**

Victor has a long history of engaging dilatory attorneys. Polizzotto and Rodriguez are representing Victor in line with the behavior of their predecessors in a plethora of cases. They will file frivolous counter claims, only to never produce evidence to support their claims. They will ignore motions and court dates only to make some excuse well after the fact or in others just take a default. In another instance an attorney showed up and a hearing had to be delayed because the attorney couldn't even say who he represented. They are not hired for competency but willingness to abuse the Court they are in to delay and add unnecessary costs. History has shown this will continue for as long as the Court or the attorneys' professional pride will allow.

7

Recently Victor and one of his companies were sued by an investor alleging Fraud.[1] One of their allegations described a call with Polizzotto in which he claimed almost all of the investor's money was still in the company, only to find out that "Counsel's representation was patently false." Presumably, Polizzotto was merely repeating his client's lies during that phone call, but as this Court has already pointed to him, an attorney has a duty to go look his client's representations.

Victor is undoubtedly satisfied with his attorneys' contempt. In one instance an audio recording captured him describing how to abuse small claims Court, outlining: "This is how you fuck with people…Go down to 111 Centre Street":

> "…what I would do, I'd basically immediately go down to small claims court right now and I'd sue for $5,000. It costs you $7 go sue for $5,0000. They have to have a lawyer…they have to show up with a lawyer, because it's a corporation. And if they show up without a lawyer, just say your honor, they're a corporation, they must be represented by a lawyer or it's a default judgement…You make them spend money. And they basically. It's going to be cheaper for them to give you $5,000 than to have a lawyer. And then when the lawyer shows up, you say 'oh, you know I wanted to have my own lawyer. So I basically want a postponement. And then you come back three weeks later and say my lawyer couldn't make it today. So they have to bring their lawyer down three times.
>
> They're going basically spend probably 15 hours, it's probably going be $1,000 a hour, close to $15,000 in legal fees".[2]

There are few people who would plot to abuse Small Claims Court, let alone have a casual conversation laying out how others can do so. The Court had discussed "The whole thing is just a complete mystery to me as to why people think they can get away with this. (See Dkt. 170 p.13 12-25)" The answer to that is simple, because Victor and his plethora of attorneys have largely gotten away with it for years.

---

[1] See NY Supreme Court: **DAVID G. MCWILLIAMS et al v. EMPIRE AGRICULTURAL SYSTEMS, LLC et al**

## WHAT SANCTIONS ARE JUST

Fed. R. Civ. P. 16(f)(1)(C) points to Fed. R. Civ.37(b)(2)(a)(ii)-(vii) sanctions as what remedies the Court has, VII, holding them in Contempt would appear to most justified for their current behavior.

Plaintiff also submits that monetary sanctions are justified. If they can spend "six figures" as claimed to produce "everything" they should be able to absorb monetary sanctions. In the normal course, if Platinff was represented by an attorney, Defendant's abhorrent behavior would have likely led to them having to pay substantial fees incurred by Platinff making the plethora of applications that has been required. As Platinff cannot bill for the substantial time spent dealing with these matters, monetary sanctions are no more punitive than the costs they likely would have been ordered to pay if the scenario was different. Local Civil Rule 83.6(c)(2-3) provides that such a fine can be issued.

Both attorneys had ample notice that sanctions were on the table if their behavior did not change, and they made no efforts to avoid them. It's time for them to suffer the consequences.

## CONCLUSION

WHEREFORE it is respectfully submitted that the Court impose sanctions against attorneys Rodriguez and more so against Polizzotto, and for such other and further relief this Court deems just and proper.

By: /s/ Tyler Erdman

Platinff Pro Se
(917) 301-0401
tyler@erdman.it

9