<u>**VIA ELECTRONIC FILING**</u>                                                                 March 18, 2024

The Honorable Gabriel W. Gorenstein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

                Re:      False Statements made by Defendant

                    <u>*Tyler Erdman v. Adam Victor, et al.*, No. 20 Civ. 4162</u>

Judge Gorenstein,

      Plaintiff writes to request that Defendant be ordered to explain his relationship with his former attorneys at Schlam Stone and Dolan ("SSD") as well as misrepresentations relating to his production. Defendant has admitted that he has a working relationship with SSD despite the lien they are asserting on responsive documents. Defendant spent weeks claiming they produced documents from SSD only to recant those claims. It appears that the lien is being selectively enforced to stop discovery in this action.

      The parties exchanged numerous emails after the conference regarding this issue and others. On March 1st, I spoke to Mr. Rodriguez for just over an hour regarding these issues and I informed him that I planned on moving for this relief. I spoke again with Rodriguez and Polizzotto on March 15th for around ten minutes.

## Victor's Relationship with Schlam Stone

      The Court already addressed threats made by SSD and how their lien would affect discovery. (See Dkt 159). Victor explained the basis for the lien when opposing SSD's withdrawal from a State Court action, stating:

"My issue with Schlam was with Jon Mazer and Niall, raising out of my California case - where Jon Mazer, in my opinion, fraudulently induced me to hire purposed "expert" in aviation (which resulted in the $166,000 Confession of Judgment in question in the first place) - when that purported "expert", in fact had no knowledge of aviation. As long as Schlam Stone has other personal other than Jon Mazer and Niall on this case, I see no conflict and would want your continued representation."

      Plaintiff had previously raised this issue with the Court in December 2020 (See Dkt. 40): "Jeffrey Eilender refused to provide a substantive response, asserting "our relationship with Mr. Victor is none of your business." and then threatened to go to the U.S. Supreme Court: "Make whatever motion you wish, and we will seek our attorneys fees. With a new supreme court majority now in place, we may even try to make new law as to whether it is appropriate for you to be pro se." Mr. Eilender's next email stated that "We have met and conferred; you try to remove me; I will try to change the law to get a caretaker for you."

      SSD's response (See Dkt. 42) explained "Mr. Victor confessed judgement in order to induce SSD to pay outstanding and future invoices owed to TNMS's damages expert.". They claimed that: "…Mr. Victor's purported response to that motion accusing SSD of "fraud" and

"malpractice". Each related only to *Pegasus*, which bears no relation to the instant action. As a party seeking disqualification, Plaintiff bears the burden to show how the events relating to the motion to withdraw in *Pegasus* creates conflict in the instant action"

Since claiming their dispute had no relation to this action, it appears that SSD has found their lien to be of use to stop discovery in this action.

## SSD continues to represent Victor

During the party's conference, Victor explained that he has continued to work with SSD. When asked about the status of the lien he stated it was "resolved to the extent that we're working together. That was the confession of judgment on if Pegasus settled and gave them cash, they would take the first cash. But that's not holding up Schlam from doing the work for me. And Schlam has done work for me." It appears that the lien was designed specifically incase of collection from the Pegasus action, rather than the result of a real break down in the relationship.

## Defendant invents a story about SSD

After Victor made that admission, counsel's story changed immediately. No longer was the lien stopping them from production, but instead they claimed to have received a hard drive from SSD. "As discussed at the vendors' conference, Schlam Stone forwarded whatever documents they had on a hard drive to me, and I sent it on to TransPerfect for inclusion in the document production" (See Exhibit 1). Defendant elaborated at length about this new claim:

"Tyler, there is no billing issue because Schlam made him pay a retainer up front for the work they recently did for him.  They reached some type of agreement.  In terms of us never having asked Schlam for documents, they were the ones who sent me the hard drive I sent to Setec.  So yes, we did request the documents, which they sent to us and we then forwarded to Setec." (Rodriguez 1/31/24 Email)

Polizzotto responded to questions about SSD on February 16th, claiming explaining that a hard drive was sent to his office by them which they then turned over to SETEC. He also clarified that SSD has physical files and stored documents related to Victor, and that their lien covered those files but not the hard drive they were sent.

When asked to explain why SSD would assert a lien while giving them documents Polizzotto stated "Schlam Stone did agree to do additional work for him unrelated to the case in which they are seeking fees. Their business decision to do so is of their own making and I cannot presume to know their reasons for agreeing to perform work for Adam. I do not know why you would think I would be privy to that information:".

Plaintiff reached out to Jefferey Eilender to see what the status of the lien was, to which he responded:: "Tyler, I am very much asserting a charging lien and looking forward to not hearing from you again." (See Exhibit 2). He also clarified that they are asserting both a charging and retaining lien.

## Defendant's story was false

When pressed on how the story didn't make sense, Polizzotto responded with a letter from SETEC dated June 3, 2021 that stated only "Enclosed within please find the return of the

devices concerning the above referenced matter". That matter being "Adam Victor". He also included a July 2021 FedEx slip showing a package sent from Polizzotto to TransPerfect.

They had never received a hard drive from SSD. They had instead received something from SETEC that they sent to TransPerfect, but no one can even explain what it was. SETEC has no records, Counsel has no recollection and TransPerfect hasn't responded.

It is ridiculous to think that there is a good faith basis for Defendant having made a series of detailed statements about their production over the course of weeks, only to realize there was no basis in fact for any of it. They either entirely failed to do any due diligence or fabricated a story as they went along.

## SSD knows details of Defendant's production

Since deciding that they never had received documents from Schlam Stone, Defendant seems to again started to use them a scapegoat. When asked to identify repositories on a collection log they provided that simply state hard drive or flash drive, he claims:

"Schlam Stone would have that information as they were the ones who supervised the process of the collection of data from the networks.  Adam merely followed their instructions but does not recall much regarding their instructions...three hard drives sent by Setec – pretty much the same as above – Adam to the best of his recollection followed the instructions of Schlam Stone…Schlam Stone drives - to the best of his recollection, the hard drives contained copies of all the information  harvested off the computer he used in his home office located in the C apartment – Braverman would ultimately know more as he just followed their instructions".(Rodriguez Email 3/14/24)

He cannot avoid simply questions about his production by pointing to attorneys that are currently working for his client in other matters and act as if they have no way of deterring that information. He should know the details of his own production, if he cannot determine it he should have never made the production in the way he did.

## Relief

Defendant's story about the lien just doesn't add up. Victor claims he was defrauded for $166,000 by Schlam Stone but is unbothered by it. SSD and Victor seem to agree their conflict was limited to expert testimony in another action. They are working together without issue in other matters, but their lien conveniently seems to apply only to the extent needed to stop discovery in this action.

If Defendant cannot explain what is in his production without talking to SSD, he is in no position to claim his production was done properly. He spent weeks inventing stories about it with no basis, he cannot be trusted without providing evidence to substantiate his claims.

Polizzotto claiming to not be "privy" to information underscores how little effort he is putting in to address these issues. If he doesn't know the answer to a question, he should figure it out. Acting ignorant of the facts is unacceptable at this juncture. Polizzotto and Rodriguez have a duty to ensure their statements have been accurate and they entirely failed to do so.

Defendant should explain what is going on under oath.

Mr. Rodriguez and Mr. Polizzotto should provide affidavits explaining:
1. Any efforts to communicate with SSD regarding the lien and or documents.
2. When they learned that Victor was continuing to work with SSD.
3. Their basis was for telling Plaintiff that they had received documents from SSD..
4. What documents and repositories that they believe are in the possession of SSD.
5. What they had received from SETEC and forwarded to TransPerfect.
6. Their efforts to verify claims made by Victor relating to SSD.
7. How they believe their production was sufficient if SSD is the only one privy to details of it.
8. Why they seem unbothered by making material misrepresentations regarding their production.

They have a duty to investigate, they should explain their failure to do so.

Victor should provide an affidavit explaining the nature of his relationship with SSD since their withdrawal from this action, including what work was performed by then, for what matters and when.

Plaintiff requests that Defendant be ordered to provide an affidavit from Jeffery Eilender from Schlam Stone. As he continues to have a working relationship this should be easily done. He should explain:

1. The nature of SSD's representation of Victor or his entities since their withdrawal from this action.
2. How he is able to represent Victor in other matters while asserting his lien.
3. How he believes his firm's continued representation of Victor does not present a conflict or other ethical issues, including if Victor waived any such conflicts.
4. Detail efforts to collect the judgment against Victor.
5. Detail which of Victor's repositories and documents he has in his firm's possession, and which are subject to their lien.

Defendant's explanations regarding his production are nearly always dubious at best. They fall apart with the slightest scrutiny. Defendant should explain the reality of this situation under oath before forcing Plaintiff to seek third party discovery from his own attorney. Particularly given Eilender's habit of making threats against Plaintiff for seeking it.

> Respectfully submitted,
>
> /s/Tyler Erdman
> Plaintiff Pro Se
> 917-301-0401
> Tyler@Erdman.it