**VIA ELECTRONIC FILING**  March 21, 2024

The Honorable Gabriel W. Gorenstein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

**Re:   Request for Conference**
**Tyler Erdman v. Adam Victor, et al., No. 20 Civ. 4162**

Dear Judge Gorenstein,

I write to request a conference regarding a proposed motion to compel Defendant to produce documents and provide an explanation of its production.

On January 4, 2024 the Court directed Plaintiff to confer with the Defendant, his counsel, and his vendors (the "Vendor Conference") to try to determine how Defendant's production was made. The Court advised the parties that if that did not work, "I'm going to have to start putting people under oath and hopefully that will lay the whole thing out. (Dkt. 213 at 15:7-14). After proceeding with the Vendor Conference and several "meet and confer" sessions in its wake, Plaintiff has found that the Defendant pieced together the vast bulk of his production from documents produced – by the Defendant or, remarkably, other parties -- in other actions predating the instant action by years.  Defendant never made an effort to conduct a good faith search for documents in this action. Not only did Defendant fail to search, he has no intention of doing so. Mr. Polizzotto made that clear in response to my effort to resolve this dispute: "I believe that the discovery efforts in this case have provided you with all available discovery." (2/16/24 Email). As discussed below, Mr. Polizzotto is objectively incorrect.

*The Vendor Conference*

The Vendor Conference was held over Zoom on January 29th for approximately an hour and forty minutes. The time was limited by the vendors' other commitments. No one on the Defendant's side was able to explain much despite having a month to prepare and Plaintiff giving them an outline of questions in advance. SETEC had little relevant knowledge, and Victor stated the SETEC employee appearing was not the one he had generally dealt with. TransPerfect's expert was similarly uninformative, as most of the TransPerfect personnel involved in the production had since left the firm. Counsel refused to speak about details, instead pointing to prior affidavits. He was not receptive to being shown that his affidavits didn't address many of the questions asked.

Mr. Victor explained that at least 3 other law firms had gathered ESI for other actions years ago.  "…I'm prepared to go in front of the magistrate and explain this to the magistrate if he wants and explain why I think you have everything five times." He expressed the belief that he produced duplicate documents because he had multiple collections done for other

1

cases dating back to about a decade ago, and those efforts should be enough for this action. His opinion is at odds with his counsel's descriptions of in depth "deduping."

### The Deficiencies of Victor's Document Collection and Search

Mr. Victor has tried to justify his search of appropriate repositories by producing a "tracker," created by TransPerfect (Dkt. 209). Mr. Rodriguez described the tracker in an affidavit (Dkt. 202) as a "collection log attached as Exhibit A lists all the repositories from which the documents were produced." At the Vendor Conference, he did not remember seeing it before, and refused to discuss details beyond reading the line on his affidavit I pointed him to. TransPerfect repudiated the tracker claiming, despite Mr. Rodriguez's affirmation, that it did not include all of the repositories searched for production.

Mr. Polizzotto summarized the discussion: "TransPerfect stated at the conference that the document you were referring to was not complete and the 'tracker' did not necessarily mean that the hard drive you are refereeing to was not produced to them and searched for document for production." (2/16/24 Email) TransPerfect took two weeks to update the tracker, which refutes Defendant's story of producing "everything."

The updated tracker still lacks detail with entries stating "hard drive" or "flash drive" rather than any specific identification. For the Court's convenience, I combined it with the prior tracker (See Exh. A) I analyzed it in conjunction with the dockets of the cases from which the repositories were drawn. The tracker indicates Defendant's production was limited to the following:

### 2019-Reproduced Documents

Defendant reproduced three document productions he received years ago from Plaintiff, Ms. Toktassynova and Ms. Khatskevich in three New York state court actions, alleging sexual harassment and retaliation. Metadata and the double Bates numbering of the documents clearly indicates their origin. The parties had previously agreed to incorporating other productions by reference to avoid this unnecessary duplication, which comprise 80% of the total data in the original production. Defendant's latest letter (Dkt. 237) misdescribes them as "ESI of Mr. Victor."

### 2020-Braverman Document Collection

The tracker reflects a 2020 "Export from Braverman case." The "Braverman" law firm represented Mr. Victor in an action by his former counsel brought against him. In August 2019, Braverman represented to the court that they had collected "over 900,000 documents," and needed to completely redo Mr. Victor's document production from scratch:

"Neither Mr. Victor nor the undersigning can confirm what information was produced to the Plaintiff by prior counsel because the original documents have not been returned to Mr. Victor. Moreover, the documents served upon the Platinffs on Mr. Victors behalf and the other defendants have not been provided to our office by either Plaintiff or Mr. Victor's prior

2

counsel, despite our requests for the same. These circumstances place the undersigned in the unenviable position of essentially starting over". (See Exh. B)

Schlam Stone & Dolan then selected 37,731 of the 900,000 documents to be added to the current database, and then only around half of those have been produced. Victor's counsel has repeatedly claimed to have produced "everything." In reality, Mr. Victor hasn't produce even 2% of this repository. When pressed, Mr. Rodriguez stated: "Braverman would ultimately know more as he just followed their instructions." (3/14 Email) Victor's counsel have still not provided any justification for the failure to produce documents from the Braverman "export."

More significantly, counsel could not justify relying for their production on databases that did not include documents within the limitations period for this case. Plainly, Mr. Victor's production was designed for failure.

*2021-SETEC Hard Drives*

The tracker's 2021 entries reflect four hard drives they received from SETEC. These are hard drives that I had turned over to SETEC in 2018 in connection with the state court litigation. Although four drives are listed, Defendant only produced documents from one drive and has not provided any explanation for the discrepancy.

The tracker does not include any reference to repositories that the Defendant has acknowledged need to be searched for production, including his "P-Drive" (which is the repository containing many of Defendant's documents), his personal desktop computer, the hard drives from the replaced computer in his office located in Unit 30C, the laptop used by Evgeniya Khatskevich during the time she worked for Mr. Victor, Emails show SETEC discussing the chain of custody but now they have no information about any repositories. SETEC likely collected data from other repositories at some point but there is no evidence of them.

Polizzotto's current position is, apparently, that repositories that do not appear on the tracker were somehow searched anyway: "The information that was supplied to Transperfect and SETEC consisted of the "P-Drive" and computers as per Adam Victor's statement during the conference and in our statement to you. *I cannot further detail the basis for that statement except that the volumes of discovery that were produced to you came from the sources set forth in the repository list*." (2/16/24 Email) (Emphasis supplied).

Counsel's strikingly unsupported statement is apparently false. Victor produced a list of the P-Drive's contents. I searched the production for a good number of the listed documents and they have not been produced. In short, Defendant's actual production belies counsel's reassurances.

*2022-Defendant's Latest Production*

Defendant's most recent production was extremely limited. The count of documents in the tracker match a Rodriguez affidavit explaining that after his "deduping"

3

process, 73,769 "non-duplicate documents and/or records were compiled" from the two TGDS email accounts and "certain Dropbox accounts". (See Dkt. 183 Feb 8, 2023). This is reflected by the original accounts being on the log and then merged into an entry for "TLS network." There wasn't a search of a single of Victor's own email accounts.

Mr. Rodriguez claimed this entry was instead from Victor searching his own devices and providing documents to TransPerfect. Beyond Defendant's word, there is no evidence of this having occurred. Nor is there a plausible way Victor could have conducted a search on his phone and provided that many files to TransPerfect.

The only other entries on the tracker relate to 4 sets of documents provided by Counsel, totaling 219 documents from 2022 to this January.

*Keywords*

Defendant has offered inconsistent explanations  as to how his production was made. Mr. Rodriguez told the Court that keywords were used to: "eliminate as many duplicates as possible". (See Dkt. 213 12:22-24), This is unsupported by evidence and at odds with his prior affidavit:

> "Our efforts expended during the document review involved the identification of what to include in the coding panel. The coding panel is how the reviewers "mark" the documents reviewed, for want of a better term. Coding is undertaken to identify what is response to the document requests, what is privileged, any foreign language documents, "Hot" documents to be immediately brought to the attention of the attorneys, and other such markers. Plaintiff listed thirty-nine requests in his discovery request to the Defendant. Finalizing a coding panel that would satisfy that many requests took days in and of itself." (See Dkt. 183)

When I asked, Defendant advised the following keywords were used:
**Tyler, Erdman, Eve, Yevgeniya, Khatskevich, Nazym, Toktassynova, and Brennan.**
Mr. Polizzotto rejected my advice that those keywords were insufficient disagreed. "The keywords used for the search appear to be more than adequate to have determined any discovery material to be produced."(2/16/24 email)

*Summary of Production*

Defendant has not made a good faith effort to produce documents.  His failure to search appropriate repositories shows that he did not produce responsive documents because he never looked for them. A minimum level of candor to the Court would have required the Defendant and his counsel to have described the Frankenstein nature of his production in the various affidavits they filed without requiring Plaintiff to search the dockets in other cases to piece it together. Platinff should not be the one having to explain how they made their own production.

Accordingly, Plaintiff respectfully requests a pre-motion conference to discuss his intended motion to compel.

*Party Conversations*

On March 1st, I spoke to Mr. Rodriguez for over an hour. He believes to have provided a proper production. We agreed there was an impasse that required this application. I asked questions regarding repositories. Defendant noted them in a letter filed later that day and another on March 8th stating they are "still in the process of gathering information". On March 13th he realized he couldn't provide answers "until Monday as Stephen Kaludis is away until Sunday and I just found out no one else at TransPerfect can help me on this except him" (3/13 Email). It is now Thursday and he has yet to provide an answer.

I spoke again with him and Polizzotto on March 15th for around 10 minutes. No further progress was made.

*Request for Relief*

This action needs its own production, not the scraps from others. Braverman's description of why they needed to start their production from scratch is near identical to the current situation. Victor should follow his own precedent.

Plaintiff requests a conference with the Court to force Defendant to start his production from scratch and discuss methods to ensure proper compliance. Platinff requests that Victor, counsel, and vendors attend in person. When put together, the Court will find their combined responses telling.

Victor requested the opportunity to tell the Court all about how he made his production. He should be given the opportunity to explain himself and why he does not take this Court's discovery orders are as seriously as in other actions.

In the alternative if the Court does not wish to hold a conference, Platinff requests leave to make a motion to compel production including conditions that might force compliance and repositories to be searched.

Lastly Platinff requests that Victor and Counsel provide affidavits explaining how the decision was made to avoid production at any cost, even if they had to perjure themselves. It is clear it was a conscious choice; the Court should know whose it was. They should explain if Victor resisted a search or Counsel never wanted to make one.

Platinff did not attach all the cited documents due to the voluminous amount of them. If they Court wishes to review them, Platinff is happy to provide them.

Respectfully submitted,

/s/Tyler Erdman
Plaintiff Pro Se
917-301-0401
Tyler@Erdman.it