

**6911 18ᵀᴴ Avenue**
**Brooklyn, New York 11204**
**Telephone (718) 232-1250**
**Fax (718) 256-0966**

ALFRED POLIZZOTTO (1935-2001)
ALFRED POLIZZOTTO III*
_____
EMILIO RODRIGUEZ
_____
*(ADMITTED NEW YORK, NEW JERSEY)

LONG ISLAND OFFICE
1129 Northern Boulevard, Ste 404
Manhasset, New York  11030

<u>**VIA ELECTRONIC FILING**</u>     April 5, 2024

The Honorable Gabriel W. Gorenstein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

              Re:    Joint letter required by Order dated April 3, 2024
                      <u>*Tyler Erdman v. Adam Victor, et al.*, No. 20 Civ. 4162</u>

Dear Judge Gorenstein,

      This letter is written as required by the Order of the Court dated April 3, 2024, in which you requested the parties submit a joint letter summarizing our position as to certain document sources.

      <u>*Export from Braverman Case*</u>

<u>Plaintiff's Position</u>
1. The Braverman law firm represented Victor in an action for unpaid legal fees.
2. They were unable to reuse prior collections because they were unable to determine how they were done and could not get assistance from prior counsel. They were "in the unenviable position of essential starting over".
3. In August of 2019 they collected documents from Victor resulting in "over 900,000" documents.

*PLEASE RESPOND TO BROOKLYN OFFICE*

4. Defendant is unable to explain what was collected or any details of what was done. Mr. Rodriguez stated "Braverman would ultimately know more as he [Victor] just followed their instructions." (3/14 Email)
5. Schlam Stone & Dolan used search terms to select a subset of documents for a production in another action. Defendant has been unable to explain how those documents were selected.
6. The results were then imported into the Defendant's current database. 35,769 documents were imported on 4/22/2020, and 1,962 on 7/30/2020.
7. Of those documents approximately half here produced.
8. Plaintiff's second amended complaint is dated August 18, 2021, and document requests were served on October 4th, 2021. Braveman's collection and culling of documents was done with no consideration for requests in this action.
9. Defendant's claim of having produced "everything" is impossible given that only 2% of the collected documents made it into his current database.
10. This appears to have been the only collection from Victor's email accounts. The Court ordered Defendant to explain why the privilege log relating to this collection cut off on August 14, 2019. (Dkt. 200) He never did so. The unexplained cutoff is roughly contemporaneous with the timing of Braverman's collection activities.
11. Defendant is avoiding the production of documents within the limitations period by never having searched for documents within it.

Defendant's Position

TransPerfect painstakingly identified and describes how they came into the possession of all documents and ESI belonging to Mr. Victor. From 2019 to 2020, they received documents from Schlam Stone, which included exports from litigation during which Mr. Victor was represented by the Braverman firm. Again, we reiterate that everything in the possession of the document vendor from the Braverman firm was produced, except for duplicates and privileged documents.

### *2021-Setec Hard Drives*

**Plaintiff's Position**

1. In 2018, Plaintiff turned over 5 hard drives to SETEC in response to a State Court Order. One was inoperative. SETEC conducted a forensic review of the remaining four.
2. Victor had SETEC draft affidavits regarding their review so that they could be provided to law enforcement to encourage them to target Plaintiff.

3. The original tracker reflected a "GDrive 2", (one of the 4 hard drives) as being imported on July 8, 2021.
4. The updated tracker reflects log entries for three additional hard drives the next day. Presumably they are the remaining three of the four drives.
5. There is no evidence in the production that these drives were produced from. This is likely why they were not in the original tracker.
6. SETEC, Counsel and TransPerfect all acknowledge they had physical possession of these drives at some point, but none could identify which drives they had or what were their contents.
7. Defendant claimed: "three hard drives sent by SETEC – pretty much the same as above – Adam to the best of his recollection followed the instructions of Schlam Stone".
8. Schlam Stone was not representing Victor when the drives were given to SETEC nor do they appear to have involvement thereafter.
9. Invoices show that SETEC created forensic images of these hard drives as well as other devices in Victor's possession. This appears to have been done remotely so that Victor retained the physical devices.
10. Defendant has claimed that "everything" that SETEC had was sent to them and then TransPerfect. There is no evidence of SETEC transferring anything beyond the drives Plaintiff had given them, despite their invoices reflecting other data existing.
11. Defendant has only produced individual files rather than the forensic images that were created. Defendant's failure to produce the forensic images prevents Plaintiff from disproving Victor's theft claims.
12. The forensic images are responsive to Plaintiff's Document Requests No. 17 seeking: "Copies of data extracted, reports, and discussion of findings resulting as part of any forensic examination relating to Plaintiff, Khatskevich or Toktassynova."

**Defendant's Position**

In referring to the tracker provided by TransPerfect, it is unknown why Plaintiff says, "Although four drives are listed, Defendant only produced documents from one drive and has not provided any explanation for the discrepancy." In fact, according to our liaison at TransPerfect, there were only three hard drives received from our firm in July 2021. The "fourth drive" listed on Plaintiff's submission is an invention on his part. Mr. Kaludis, the liaison, has spent hours searching through all the records they have and has found no evidence of having received any documents in July 2021, except for what was sent by us. These hard drives contained different types of files such as movies recorded by the defendant (movies as in general release films) and photographs. These were not produced, namely because none of them were about or included anything having to do with anyone listed in Mr. Erdman's document requests. Duplicates were certainly removed. Finally, documents that were included in the privilege log were not produced. Aside from those examples, every document on those drives was produced to the Plaintiff.

### Mr. Victor's P-Drive

**Plaintiff's Position**

1. Plaintiff had configured a device containing multiple hard drives in Victor's 30C office in around 2013. It was referred to as the P-Drive. It contained the vast majority of office documents, and at Victor's request was kept segregated from his other computers.
2. Victor claimed it was turned over to the NYPD for an investigation claiming that it had evidence of Plaintiff stealing files from it.
3. Victor testified that he retained a copy of the P-Drive before giving it to the NYPD. The NYPD attempted to return it to him, but he declined.
4. Emails that Victor did not produce in this action show that SETEC had attempted to retrieve the P-Drive from the NYPD in fall of 2017.
5. Victor confirmed that on 9/18/2017 the NYPD "has 4 hard drives vouchered from the laptop and the server. How can the chain of custody be maintained for you to get them. They cloned them in early 2015 right after we learned we were hacked."
6. The NYPD voucher reflects four hard drives as having been received on 5/14/2015, and the same items being moved on 10/5/2017. It lists disposition as being approved on 11/3/2017 and the disposition completed 3 days later. (Dkt. 181-3) It would appear that SETEC was ultimately successful at retrieving the drives.
7. At the Vendor Conference, SETEC could not answer questions about the P-Drive. Victor stated: "Mike, this is a separate thing. This is what I worked with, Todd Stefan. Todd Stefan had somebody go to the NYPD. We have communications."
8. Defendant claims the drives were destroyed (Dkt. 181, 181-1, 181-3) because the disposition listed stated "11/06/2016 DESTROYED/DISPOSED", even though the rest of the document clearly reflects that they were disposed of rather than destroyed.
9. Victor's claim that the NYPD destroyed the P-Drive is designed to mislead the Court. Another email, which Victor withheld from production in this action, shows that he has had possession of copies of the P-Drive at all times.
10. A 9/26/2017 email from Victor to SETEC stated: "I don't understand why the person who went to get the hard-drive didn't simply give the Property Clerk the Tracking number…Having said that, I have the laptop and 4 disks from the Server. Can you send packing contained for a 17 inch iMac Laptop and 4 Hard Drives". Emails show Victor making arrangements to provide them to SETEC.
11. Victor explained: "I stored those hard drives clones until I turned them over to SETEC for forensic analysis. The clones were turned over to SETEC, because the NYPD either lost or destroyed the original hard drives. Any files in their possession were turned over to our document production vendor and, subsequently, previously produced to the Plaintiff." (Dkt 185)
12. There is no entry on the tracker reflecting the P-Drive or copies of it were searched.

13. Victor produced a document listing some files that were found on the P-Drive as part of an analysis. However, those files are absent from Victor's production, bolstering the inference, corroborated by the Tracker, that Victor did not searched for production in this action.
14. Defendant has claimed to have searched the P-Drive for production, but cannot provide any evidence supporting his claim:

 "The information that was supplied to Transperfect and SETEC consisted of the "P-Drive" and computers as per Adam Victor's statement during the conference and in our statement to you. *I cannot further detail the basis for that statement except that the volumes of discovery that were produced to you came from the sources set forth in the repository list*." (2/16/24 Email from A.Polizzotto to T. Erdman) (Emphasis supplied).

15. Victor claims that used "Dropbox to assist with retention of documents". Copies of the files from another source are insufficient. A forensic image of the drive is required to disprove his claims of Plaintiff having stolen files from it.

**Defendant's Position**

The "P-Drive" consisted of a group of hard drives that were turned over to the New York Police Department years ago due to allegations on the part of the defendant that Mr. Erdman, prior to leaving Mr. Victor's employ, improperly and illegally removed these files from his offices. We have documented in previous submissions to the court how the NYPD was approached to return those drives, and we were informed they no longer had them. As a result, the defendant began using Dropbox to assist with the retention of documents. If it is true the files on these drives were turned over to Setec, then, as we stated before, everything Setec had was turned over to us, and then handed over to our document vendor. Disproving defendant's claims about the Plaintiff has nothing to do with the present case.

### *Mr. Victor's Personal Desktop Computer*

**Plaintiff's Position**
1. Defendant makes a distinction between Victor's 30C Office computer and his personal desktop computer; he appears to have confused the two.
2. The 30C office computer as described is the one that was located in Victor's kitchen. The other does not have a replaceable hard drive. It is an Apple Mac Pro.
3. The 30C office computer was an Apple iMac that was located in Victor's living room.
4. Victor made claims to law enforcement that Plaintiff had illegally accessed his computer.

5. Defendant has indicated that he has not conducted a search of that computer for this action, but rather its contents were collected for other actions and produced.
6. Defendant claims that his computer was searched "numerous times" by former attorneys and "most recently by our [Mr. Rodriquez's] firm during the production late in 2022 when he was order to search his devices by an order of this Court".
7. Defendant was ordered to detail his search efforts in late 2022, which he did. (Dkt. 181). There is no mention of any computer being searched, only a cell phone.
8. No one has any knowledge of prior collections or where such documents may be.
9. No one has been able to provide evidence of documents from the computer as having been produced.
10. Defendant claimed:
    "The information that was supplied to Transperfect and SETEC consisted of the "P-Drive" and computers as per Adam Victor's statement during the conference and in our statement to you. *I cannot further detail the basis for that statement except that the volumes of discovery that were produced to you came from the sources set forth in the repository list*." (2/16/24 Email) (Emphasis supplied).
11. There is no entry in the tracker reflecting his computer as having been searched.
12. Victor had his computer forensically imaged, production of which would be necessary to disprove his claims.

**Defendant's Position**

In terms of Mr. Victor's personal desktop, it has been searched for documents numerous times – by his attorneys at Davidoff Hutcher, Schlam Stone, and most recently by our firm during the production late in 2022 when he was ordered to search his devices by an order of this court. If any documents responsive to his requests were found, they were either produced or included in the privilege log. The privilege log ends at a certain date because there are simply no documents to be included in the log containing a later date. Disproving defendant's claims about the Plaintiff has nothing to do with the present case.

### *Mr. Victor's Computer Located in His Unit 30C Office*

**Plaintiff's Position**
1. This computer is an Apple iMac.
2. Victor allowed it to be forensically imaged remotely.
3. There is no evidence of any data from this computer having been produced.
4. Defendant explained:

"Schlam Stone drives - to the best of his recollection, the hard drives contained copies of all the information harvested off the computer he used in his home office located in the C apartment – Braverman would ultimately know more as he just followed their instructions."

5. Defendant claims that data from this computer was included on the drives sent to TransPerfect. There is no evidence of that being the case.
6. The facts are similar to those made regarding his other computer. A copy of the forensic image must be produced to test the truth of Victor's theft claims.

**Defendant's Position**

From Plaintiff's own submission, the Braverman firm would be the ones to have knowledge regarding what data was pulled from this computer. He even mentions in Docket #238 that he himself sent drives from this computer in 2018. Aside from the fact he is seeking documents here he cannot use to further his cause of action because they are time-barred, this computer was also searched by Mr. Victor when ordered to do so in 2022. If any documents responsive to his requests were found, they were either produced or included in the privilege log. Disproving defendant's claims about the Plaintiff has nothing to do with the present case.

### *Ms. Khatskevich's Computer*

**Plaintiff's Position**

1. Victor claims that the Davidoff Hutcher firm provided Ms. Khatskevich's laptop to a forensic firm, RVSM, who then sent it to SETEC. Victor has been unable to explain where it is now.
2. Victor misidentified the firm, it is RVM.
3. Defendant has made interrogatory responses indicating that RVM still possesses data. (See Dkt. 130-1 No. 12, 20).
4. Victor claims certain files from this laptop were turned over to Plaintiff's former attorney.
5. Based on Plaintiff's conversation with his former attorney and his review of records, Victor's claim is false.
6. The sole production my former counsel received from Davidoff Hutcher was limited to 100 PDF documents, and that production was made to Khatskevich rather than myself.
7. One of those documents was an invoice from RVM for over $5,000, that mentioned creating forensic images of multiple computers and an unexplained entry about them having "Forensically wiped hard drives".
8. An email that was not produced in this action, from RVM to Victor in March of 2015, claimed that they had "five forensic images currently stored in our forensic safe at RVM", and asked if they are required to retain it for litigation. They offered to send them to Victor, destroy them or keep them for a fee.

9. There is no indication of Victor's response or what resulted.
10. There is no evidence of anything from the computer having been produced.
11. Victor claims to have received all records from Davidoff Hutcher, after previously claiming they were withheld due to litigation that has now been resolved.

**Defendant's Position**

      The laptop utilized by Evgeniya Khatskevich was last used in 2014, when she left Mr. Victor's employ.  It was handed over to defendant's lawyers at the time, Davidoff Hutcher, who then produced them to the forensics firm Mr. Victor was using at the time, RVSM (possible name of the firm could be RVM).  To the best of defendant's recollection, the forensics firm sent what they had to Setec.  The files were also turned over to John Brennan, Plaintiff's lawyer in state litigation pending between the parties.  Same as before, it does Plaintiff no good to be finding issue with documents from repositories that were last used in 2014.  His cause of action limits the documents he can use for his case.

<u>*Why Plaintiff Feels Defendant's Search is Insufficient*</u>

**Plaintiff's Position**

      Plaintiff believes that the Defendant's search was insufficient because he never did one for this case as ordered. Instead, he just produced documents that had been collected and search for other, older, actions. At the Vendor Conference, Victor confirmed as much:

"Tyler, if you want to find out who what was on there and what was served, I would suggest you contact Schlam Stone and Braverman and ask them what they told Setac, what they told TransPerfect to harvest. Those are the people that know. Al and Emilio were not part of that harvesting…I never dealt with TransPerfect…You have Jeff Schlam Stone phone number…You could contact him and you could ask him what he instructed TransPerfect….they are the ones that have it. **Emilio and Al were not part of that search…they were just basically the repository of everything that has been done in the past**"

      Victor is relying on a production that he and his attorneys know nothing about. Counsel didn't even review documents as TransPerfect hired contract attorneys for that and neither Victor, his counsel, nor TransPerfect could identify those attorneys.  Likewise, Kunkel, who attended the Vendor Conference on behalf of SETEC could not speak to many details. He explained that he hasn't worked on Victor's matters since 2018. Victor then admitted that Kunkle should not have been at the conference:

"So Todd Stefan is the person who would have the he's the most knowledgeable person to ask. Because the emails were all between me and Todd Stefan"

Setec, *a professional forensics firm*, apparently has no information about what repositories they may have currently or have had in the past, nor what they mailed to Victor. This seems remarkable given the same firm was stressing the importance of chain of custody with Victor in emails.

Similarly TransPerfect's representative, Kaludius was far from "painstaking" identifying anything.

"I'm based out of our Washington, DC office and this other this other case I believe was handled out of our New York office from what I recollect when I was doing the searching because I had to search on a New York processing server for the Braverman data that got ported over to this particular case."

It took him two weeks to provide an updated tracker to identify repositories, as described he had to sort through years of internal tickets and try to piece together what occurred.

Defendant is flouting the Court's orders by recycling prior productions that he and his counsel can not vouch for. Falsely claiming to have produced "everything" from a limited number of documents already in a database is unacceptable. The Court ordered that Counsel needs to investigate matters, particularly what their client tells them. Instead they blindly parrot Victor's claims of having searched something that with no evidence to back up his claims. They need to do the search they've been trying to avoid for years.

Defendant's search is foundationally deficient as it excludes nearly the entirety of the period, he now claims is the only relevant one. He needs to conduct the search he has been ordered to do. Plaintiff requests that the Court revisit its prior directive and make him search to the present day as it had previously ordered. Allowing him to seize a date cutoff will likely be used to try and omit documents as he appears to be attempting now.

**Defendant's Position**

In a previous letter, Plaintiff says: Plaintiff should not be the one having to explain how they made their own production."  It is our position we have never needed him to explain it.  We have done more than enough, through meetings and conferences held, and the information provided, to fully explain what our production has been comprised of and how we went about it. The tracker issued by our document provider, and the information we have disseminated, show what has been compiled, by whom, when it was compiled, the size of the compilations (except for the entry in the tracker for the network data collection that took place in July 2021), and who may still be in possession of documents belonging to the defendant.

   Despite all our efforts, Plaintiff's letter of March 21, 2024, indicates: "This action needs its own production, not the scraps from others." We have supplied everything in Mr. Victor's possession, except for privileged documents, and described all efforts expended in doing so. Plaintiff indicates an alleged "restriction" by us of a time period for produced documents. We have imposed no such restriction and, as stated before, have produced all documents that were in the possession of Setec, which comprised all the defendant's documents prior to the searches done on his devices in 2022. When the court ordered additional searches in 2022, they were conducted on all his devices and only responsive documents were produced, along with the updated privilege log. By illustrating the fact Plaintiff's cause of action places its own limits on the documents he can use, it is our wish the Court will impose its own restriction on the Plaintiff and prevent needless searches for documents that are time-barred.

Yours faithfully
**Polizzotto & Polizzotto, LLC**

*Emilio Rodriguez*
Emilio Rodriguez

*Alfred Polizzotto III*
Alfred Polizzotto III