# **EXHIBIT A**

## Defendant has invented a time frame to limit his production

### Plaintiff's Position

1. Defendant has taken a position that the Court at it's December 21, 2023 conference ordered that he doesn't need to produce any documents before June 1, 2019 or after the filing of the Second Amended Complaint in August of 2021.
2. The Court stated:
"the relevant discovery period in terms of figuring out, you know what defamatory statements were made and what the context for them is going to be before the amended complaint." (See Dkt. 213 atp.7:17-23).

    "…preceding the date of filing of the complaint. So that's the period we are looking at…" (See id. at p.5:19-6:3).
3. Defendant spent years trying to gin up false charges against Plaintiff, based on analysis he did well before the filing of the complaint. It is vital context. I quoted the transcript to him and he would not change his position.
4. I reviewed the transcript and explained to Mr. Rodriguez that I believe he is misinterpreting it, and that the Court did not allow him to cut off his production in 2019. He disagreed.
5. Defendant's latest privilege log has a gap between May 9th, 2019 and August 27th, 2022. One of the last entries in 2019 was for "3.16.19 Memo Re Erdman Perjury.docx". It resumes with a document that appears to be a memo for an official in the district attorney's office, as well as timelines relating to Sonja Bozic.
6. At the vendor conference I asked for the gap to be explained, Mr. Rodriguez claimed that the limitations period was "…why the Priv Law cuts off".
7. I explained that he did the opposite and excluded everything from the limitations period, he responded "Maybe there's nothing responsive after that date."
8. Counsel and Victor both jumped on the idea that they don't have to discuss their production if a document was dated prior to June 1, 2019.
9. Victor questioned: "What was the date and was it sent to my attorney and copied the law enforcement? Who was it sent to and what was the date?" Victor believed he could avoid production if a document was copied on an email to law enforcement and if it predated 2019.
10. Prior to serving initial document requests, both parties conferred and agreed that requests would go back years. Defendant requested documents going back to 2010, and Plaintiff produced as requested.
11. Defendant's new "Post-EBT" request that was served after the conference still requests documents going back to 2010.
12. Defendant claimed that he had a defense about the time frame that allowed him to avoid production, but Plaintiff was not able to avail himself of the same.
13. The Court ordered Defendant on 10/28/22 to "…search for documents since then up to the present day that relate to the allegations in the Complaint. Now, maybe that's prohibitively expensive or a big problem, but you created this mess and you're going to have to get yourselves out of it" (Dkt. 170 at 14:11-17)
14. Defendant has entirely failed to so yet again.

2

Defendant's search is foundationally deficient as it excludes nearly the entirety of the period, he now claims is the only relevant one. He needs to conduct the search he has been ordered to do. Plaintiff requests that the Court revisit its prior directive and make him search to the present day as it had previously ordered. Allowing him to seize a date cutoff will likely be used to try and omit documents as he appears to be attempting now.

## Victor's Email accounts

## Plaintiff's Position

1. At the vendor conference, Victor spoke about a list of his accounts that was produced to Plaintiff (Dkt. 198-2), admitting that he put together that list to provide to his attorneys for data collection being done for another action. This was likely for Braverman.
2. There is no evidence of any of those accounts having been searched since August 2019, and no evidence of what was even searched at that time.
3. Defendant has claimed that Victor searched his iPhones for emails and detailed a small amount of which accounts that would have included: "For the more recent production order by the Court, Mr. Victor searched his current and prior iPhones. All the email accounts contained on the phones were searched".
4. Defendant now claim that Victor used keywords, primarily Plaintiff's name to conduct that search and then sent the results to TransPerfect. There is no evidence of that having been done.
5. A Victor affidavit says he did no such thing:
"I searched neither the emails nor Dropbox because they were synced to my Mac computer and as such, were all turned over to our document vendor to be reviewed and included in the upcoming document production. I reviewed all texts and found none that were responsive to requests". (Dkt. 185)
6. Documents provided by custodians show Victor on all the email chains, but he didn't produce those same emails.
7. He didn't produce the same emails as custodians since he never conducted a search during the time frame they did.

Victor knows how a collection should be done, and it wasn't done for this action. He should be ordered to search all the accounts listed in Dkt. 198-2 as he had done in other actions.

## Office Email Accounts

## Plaintiff's Position

Defendant has misled the Court about other email accounts he maintains for various employees.
    1. In relation to Khatskevich and Toktassynova's email accounts, Rodriguez had told Plaintiff "he was no longer in possession of them". This is despite Plaintiff being able to prove that accounts were still active. (See Dkt 156 at p. 2)
    2. A November 2015 email between Bozic and Victor explained that Davidoff Hutcher was "…we were ordered to search all TGDS emails for certain keywords…Search

3

should be done tomorrow – then we can all reset our passwords…they were looking into my, your, Nazym's, Eve's, Tiffany's etc emails." (See Dkt 176-11).

3. This appears to have been done by the RVM firm. Defendant claimed to have received the case file from Davidoff Hutcher but the production did not reflect any such collection

4. Victor provided an affidavit (Dkt. 201) about what emails were searched. Suddenly he was able to access Khatskevich and Toktassynova's email accounts but stated "sonja@tgds.com and tiffany@tgds.com were replaced by newer accounts over time".

5. Plaintiff pointed that this phrasing was designed to "imply he doesn't have the data without saying as much." (See Dkt. 209). That analysis was correct.

6. At the discovery conference Victor explained that when an employee was replaced, he would retain the account but change the email address to the name of the new employee. That new employee would then be able to use the account normally while retaining their predecessor's data. While the email address might be changed, the data has been fully under his control this entire time. Sonja@TGDS.com might have changed to Karla@TGDS.com but he surely knows that the data is still there.

7. There are approximately ten office email accounts that may have changed names multiple times, Victor admitted to having administrative access to all of them that would allow him or others to export the data.

8. Victor should be ordered to search all of his office email accounts, regardless of what he may have changed the email address to.

## **Repositories relating to Victor's claims**

## **Plaintiff's Position**

Victor has made varying claims to law enforcement about Plaintiff and pointed to repositories that he has not produced. Some of those being:

## **"Film Computer"**

### **Plaintiff's Position**

1. He claimed that Plaintiff had illegally accessed a Apple iMac, "film computer", that was used to edit footage he was attempting to create a reality show with. This computer was connected to a "Pegasus" external hard drive where footage was stored.
2. Victor had SETEC conduct analysis of the "film computer" to try and prove his claim that Plaintiff accessed it to take footage from the Pegasus drive that he claimed to be extremely valuable.
3. He told them "I have to retrieve to Pegasus raid unit and we have to file something by Friday – so I don't think it's necessary that we look at the Pegasus Raid unit".
4. There is no indication of him having produced data from the "film computer" or "Pegasus" drive.
5. He should produce forensic images of the "Film computer" and "Pegasus" drive as it would be dispositive of his claims against Plaintiff.

## **Find My Phone**
**Plaintiff's Position**
1. Khatskevich had made claims that Victor had stalked her using the "Find My Phone" function on the iPhone he provided to her. (See Second Amended Complaint at 5)
2. He had instructed me to lock the iPhone in a way that would conceal it's use and prevent it from being disabled to keep her unaware of it. Victor accessed it many times per day.
3. Victor claims that Khatskevich and Plaintiff made up our allegations against him in an effort to extort him, and told law enforcement the same. (See SAC at 95.)
4. He has denied having tracked Khatskevich.
5. Victor produced a single screenshot showing him using it for this purpose. It shows him tracking a device to a small city in Kazakhstan, where both Khatskevich and Toktassynova's families reside.
6. Each time Victor activated the tracking, it would send him an email detailing the time it was used among other information. This should have been to one of the 3 Apple accounts on lines 26-28 on Dkt 198-2.
7. Victor also told law enforcement that Plaintiff had "hacked" his cell phone, to track him to serve him process.
8. Such activity would have also generated an email that he would possess.
9. Emails regarding Find My Phone are responsive to Plaintiff's document requests and should be produced. A simple keyword search for "Find My" should find them.

.

    Defendant claims to have produced "everything" yet in the next paragraph shows that is not true. "Aside from those examples, every document on those drives as produced to the Plaintiff." He never produced everything, repeating that constantly does not make it true.

    He claims that the Tracker thoroughly identified what was produced, while claiming there were other things produced that aren't on it. They did not "supplied everything in Mr. Victor's possession", they didn't even supply everything they had in their production database.

    Victor's claims of custodians having documents appear designed to hide the inadequacy of his own searches. He also tries to invent a date range to justify producing nearly nothing from the limitations period.

    His claims cannot be trusted. He never did a proper production and it's time that he did.