UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------:

TYLER ERDMAN,                      : Case No.: 20-cv-4162

               Plaintiff,    :

    v.                            :

ADAM VICTOR, et al.,               : New York, New York

            Defendants.   : April 17, 2024

----------------------------:


TRANSCRIPT AND STATUS CONFERENCE HEARING

BEFORE THE HONORABLE GABRIEL W. GORENSTEIN

UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:       TYLER ERDMAN
                     Plaintiff Pro Se
                     241 W 200 S
                     Apartment 630
                     Salt Lake City, Utah 84101


For Defendant:       POLIZZOTTO & POLIZZOTTO
                     BY: Alfred J. Polizzotto, III, Esq
                         Emilio Rodriguez, ESQ.
                     6911 18th Avenue
                     Brooklyn, New York 11204

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

AMM TRANSCRIPTION SERVICE - 631.334.1445

1          THE COURT:  We're here based on a number of

2     disputes.  We got a little bit of a late start due

3     to some technical issues, but I think we're okay

4     now.

5          The letters, I guess, amount to 238, 243,

6     246, 247, 248, regarding the substance of the

7     original dispute.  Then there's two separate

8     matters, one regarding conflict 249, 252, 256, and

9     the other regarding a defendant request, 257, 258.

10    Give me one second.

11         Okay.  So let me just deal with the other

12    two requests since I don't think it will take very

13    long.

14         On the conflict issue -- 249, 252, 256 --

15    this is not a situation where, even if plaintiff's

16    allegations were true, the Court would have power to

17    disqualify counsel in this case.

18         Disqualification occurs when there's

19    concurrent representation of adverse parties in a

20    single case.  There's also potential for

21    disqualification where there's successive

22    representation of an adverse party, but such a

23    motion has to be brought by the former client who

24    wants the party to not represent the new client in

25    the other case.

1          So Mr. Erdman doesn't have standing to do
2     that.  So that application is denied.
3          MR. ERDMAN:  Your Honor, can I just address
4     one part of that?
5          THE COURT:  Sure.
6          MR. ERDMAN:  I have a section in there that
7     they didn't address about the effect on this case.
8     It looks like they had trimmed out a section of the
9     priv log during the limitations period, and they
10    have yet to explain why that happened.
11         THE COURT:  Okay.  Well, that's a discovery
12    issue.  And that, you need to use my normal process
13    for dealing with.  I can only do one thing at a
14    time.
15         On the defendants' request, I'm certainly
16    concerned about delays in this case, obviously, but
17    this request seems to not require any "search" as
18    that term is normally understood by the plaintiff.
19    It's asking, essentially, to identify things that
20    are referenced in the complaint.
21         So, putting aside issues of timeliness,
22    compliance with rules, Mr. Erdman, I assume this is
23    stuff readily available to you.
24         MR. ERDMAN:  Correct.
25         THE COURT:  Okay.  So, understanding your

1    legitimate concerns about the defendants' conduct,

2    delays and everything else, I'm going to direct you

3    to produce it within two weeks because it's

4    basically zero burden to you.

5              All right.  That brings us to the main

6    event.

7              Mr. Erdman, let me give you the big picture

8    here from my point of view.  There is the need to

9    get you to the discovery you're entitled to, and

10   then there is the issue of whether defendants'

11   attorney or the defendants' conduct is sanctionable.

12             Certainly, you've heard my many complaints

13   about these attorneys and things they've done in the

14   past.  That's all on the record.  Whether it is

15   deserving of a sanction or not, you know, I'm not

16   going to certainly deal with today, or perhaps even

17   in the very near future.

18             One thing that does come up when there are

19   problems is sometimes attorney's fees are the

20   appropriate sanction.  The problem is you can only

21   award those to a licensed attorney.  So I recognize

22   the unfairness.  I'm sure these problems have caused

23   you a lot of unnecessary expenditure of time.  But

24   attorney's fees are not an option.  Compensation to

25   you for your time, under the case law, is also not

1   an option because it's essentially the equivalent of

2   attorney's fees.  So that's for another day.

3        My goal is to get you the documents you

4   need.  And to do that, you need information about

5   what's out there and what has been done and all of

6   that.  So that is certainly a critical need on your

7   part.

8        Once you have that -- it's been like

9   pulling teeth to get that information from the

10  defendants.  Once you have that, then you can

11  decide, well, what more needs to be done?  Has it

12  been done sufficiently?  Has it been done (audio

13  distortion) --

14       So my goal recently has been to think of

15  every possible way to get you the information.  And,

16  you know, you're not a lawyer, and I'm certainly not

17  blaming you, but your letters are not putting it

18  together for me in any way I can understand.  And it

19  may be because you don't have the information.  And

20  maybe what's needed is for you to get more

21  information.

22       And I think all that's left at this

23  point -- and I don't know if you've done it -- is to

24  depose Mr. Victor about the document production

25  process.  And to the extent he says, I don't know,

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    my attorneys know, potentially a deposition of an

2    attorney about this process.

3              Have you deposed Mr. Victor?

4              MR. ERDMAN:  I deposed him much earlier in

5    the case, before they made their motion.

6              THE COURT:  Okay.  You are certainly

7    welcome to depose him again about this process.  And

8    see if that gets you what you need, because it's

9    all -- I mean, no one has put this together for me

10   in any way that's comprehensible.

11             The way a document production works is

12   first you decide what are the sources of documents.

13   Now, in a corporation, we talk about custodians.

14   That means, you know, people who have documents

15   within a corporation.  Here, we don't have a

16   corporation, we have a single person.

17             So a single person, there's only one

18   custodian that's within the power of -- well, we can

19   talk about that, but from my point of view, there's

20   only one person that we're now figuring out what

21   their sources of documents are.

22             So step one is figuring out, like, what are

23   their sources?  Usually, the answer is, it's this

24   laptop, it's that phone, it's, you know, this PC,

25   you know, whatever it is.  There are objects that

```
 1    have -- it's this filing cabinet if it's not
 2    electronic.  Those are what we call "sources."
 3           And then the next step is, how are you
 4    going to search?  What's the reasonable way to
 5    search those sources?  If it's a filing cabinet, it
 6    may be enough to look under, you know, contracts.
 7    For example, if you're looking for contracts, that's
 8    what you're looking for.  It may require looking
 9    through more folders, okay.
10           If it's electronically stored information,
11    "ESI," as we call it, then you need some kind of
12    program that's going to do the searching, which
13    invariably uses search terms of some kind.  So
14    that's step two.
15           And then step three is, do you apply these
16    search terms to the entire filing cabinet?  Bad
17    example.
18           Do you apply these search terms to the
19    entire set of ESI, or, two, you limit it by dates.
20    And going through that process, you come up with
21    responsive documents.
22           There are nuances to this, which I don't
23    know if I want to get into right now.  But that's
24    the start of it.  And then somehow, whatever gets
25    results from that has to, obviously, be put to you
```

1    in a form that you can look at.

2          So if you come to me and say, they haven't

3    done what they're supposed to do, I need it, kind

4    of, structured in that way.  And if you don't know

5    what they've done, I don't know that -- I'm not

6    really prepared to have a little mini trial about

7    that.  I'd really rather you took depositions of the

8    parties involved and present it to me what's there.

9          Now, if you think there are things that we

10   can accomplish today based on what we have, I'm

11   ready to have you try me.  But I did read all these

12   letters and there was just too much for me to be

13   able to, sort of, make rulings, and too many

14   unknowns in terms of how it fits into the structure

15   that I just gave you.

16         So what's your ideas, Mr. Erdman?

17         MR. ERDMAN:  I think one of the main issues

18   is Mr. Rodriguez thinks that the Court had put a

19   time limit that limits discovery past, I believe,

20   June of 2019 onward to the filing of the amended

21   complaint.  And he now thinks he doesn't need to

22   provide anything before that date.

23         THE COURT:  Okay.  So this is great.  This

24   is something I can deal with, what's the appropriate

25   time period of the search?

AMM TRANSCRIPTION SERVICE - 631.334.1445

1        So let me hear from defendant -- well, let

2   me hear from you, what you think the appropriate

3   time period is, and then I'll hear from the

4   defendant.

5        MR. ERDMAN:  Yeah.  When we were initially

6   serving document requests to each other, we spoke

7   about this.  I believe I requested until around

8   2012, and he requested back to 2010.  We both agreed

9   it was a long time, but that would be the relevant

10  time period.

11       THE COURT:  2012.  Okay.  Or 2010?  I'm

12  sorry, which?

13       MR. ERDMAN:  He had gone for 2010.  I

14  believe I went for 2012.

15       THE COURT:  Well, that seems ironic

16  considering you would think he would want the later

17  date.

18       MR. ERDMAN:  Yeah.

19       THE COURT:  Okay.  By the way, who's "he"?

20       MR. ERDMAN:  Sorry.  Mr. Rodriguez.

21       THE COURT:  And you have this in writing,

22  or is this an oral conversation?

23       MR. ERDMAN:  I believe it was a telephone

24  call.

25       THE COURT:  Okay.  And then what is the

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    cutoff date, or was that not discussed?

2            MR. ERDMAN:  You had ordered previously

3    that they were to search everything to the present

4    day for documents that relate to allegations in the

5    complaint.

6            THE COURT:  Present.  And I did this when?

7            MR. ERDMAN:  It was October 28 of '22.

8            THE COURT:  Okay.  I have an order from

9    July 26th of '22 that says, "Produce all documents

10   up to the present day."  So I would think that in

11   October I might have been referring back to that

12   order; is that possible?

13           MR. ERDMAN:  I was referencing Docket 170,

14   page 14, slide 11.

15           THE COURT:  Hold on.  Hold on.  Hold on.

16           Yeah, again, I'm referring to this July 26

17   order.  So I think July 26, 2022 is the date that I

18   said it had to go up until.

19           Okay.  So that's the dispute from your

20   point of view, you think that's not their vision of

21   the time period; is that right?

22           MR. ERDMAN:  I don't think it's their

23   vision.  And just as you might have saw, their

24   motion to compel, that was based on document

25   requests they served in February.  And they were

1    also asking for going back to 2010 at that point as
2    well.
3           THE COURT:  Hold on.  Hold on.
4           Their document request --
5           MR. ERDMAN:  The post-EBT requests.  I
6    believe they were an exhibit to their last letter.
7           THE COURT:  Didn't seem to be time period
8    dependent.
9           MR. ERDMAN:  It's on line --
10           THE COURT:  I mean, the substance of the
11    request.  Just tell us what you were referring to in
12    your complaint.  Is there some date in this request
13    as well?
14           MR. ERDMAN:  I'm referencing just the -- I
15    believe the definition section of those post-EBT
16    requests.  And I've spoken to Mr. Rodriguez
17    about how --
18           THE COURT:  Okay.  The time period is 2010
19    through the present.  Yeah.  Okay.
20           So that's certainly evidence of your 2010
21    period.  I don't know that that binds them of saying
22    they have to produce things to the present,
23    considering it was irrelevant to the actual request
24    that was being made in that document request.  But
25    certainly backs you up on the 2010 thing.

1          MR. ERDMAN:  And the other issue I'm seeing

2     is they have been claiming that they don't need to

3     produce before that 2019 date, but it looks like

4     they've gone the opposite way and they cut out

5     everything in around 2019 onwards for a lot of

6     stuff, or at least until 2022.  And their excuses

7     for that just don't make any sense.  Like, they

8     said, maybe there's nothing responsive after that

9     date.  They never say there isn't anything

10    responsive.  They just say vaguely or it's their

11    position that there's nothing there.  And it never

12    sounds like they did a search for that period.

13         THE COURT:  Okay.  So let me hear from the

14    defendants on the date issue.

15         MR. RODRIGUEZ:  Well, Your Honor, you're

16    exactly right.  His characterization of the phone

17    call is absolutely incorrect.  I never would have

18    gone back and maybe enlarge the time period.  Quite

19    the opposite.

20         During that phone call, I wished for a much

21    more constrictive time period because I'm well

22    aware of --

23         THE COURT:  But when of do you think it

24    should start at?

25         MR. RODRIGUEZ:  It just start at -- it has

1    to start at June 1, 2019.

2        THE COURT:  So why are you requesting

3    documents from him from 2010?

4        MR. RODRIGUEZ:  Because I'm requesting

5    documents from 2010 because that has to do with our

6    defense.

7        The only remaining remarks, according to

8    the opinion order that partially granted our motion

9    to dismiss, were five remarks in which, allegedly,

10    our client referred to him as a felon or that he

11    committed a felony, according to the Judge's opinion

12    and order.  And the five remaining remarks, they're

13    all beyond the statute of limitations, so that's

14    actually part of our defense.

15        THE COURT: Hold on.  Hold on.  Hold on.

16    Hold on.

17        I read her opinion.  I didn't see a listing

18    of remarks.  Where is that?  Just tell me what page.

19        MR. RODRIGUEZ:  I don't have the opinion

20    order in front of me, but the only remaining remarks

21    that survived the motion to dismiss were remarks in

22    which my client referred to him as a felon.

23        THE COURT:  I mean, maybe it's in the

24    papers somewhere.

25        Mr. Erdman, do you know what he's talking

1  about?

2          MR. ERDMAN:  I haven't reviewed that order

3  recently.  But I think the reason he went back to

4  2010 is because --

5          THE COURT:  No, no, no.  Answer my

6  question.

7          Do you know, is it a specific five remarks

8  that are referenced?

9          MR. ERDMAN:  I haven't reviewed that order

10  recently.

11          THE COURT:  I mean, she talks about,

12  "during the course of litigation, defendant made

13  statements accusing plaintiff of criminal activity,

14  including theft of documents, computer hacking,

15  extortion, and trespass."

16          Somehow, those are five remarks of --

17          MR. RODRIGUEZ:  At the deposition, we asked

18  about five of them, but they were somewhere --

19          THE COURT:  Wait, wait, wait.  This is a

20  deposition of Mr. Erdman?

21          MR. RODRIGUEZ:  A deposition of Mr. Erdman.

22          THE COURT:  That took place after this

23  order?

24          MR. RODRIGUEZ:  That's correct.

25          THE COURT:  Oh.  I thought you told me that

AMM TRANSCRIPTION SERVICE - 631.334.1445

1   Judge Schofield referred to five remarks.

2           MR. RODRIGUEZ:  Excuse me.  Judge Schofield

3   referred -- again, in the opinion order she gave,

4   the only remarks that survived our motion to

5   dismiss -- she dismissed some of his claims, or some

6   of them.  And the only ones that remained, that

7   survived the dismissal of the complaint, were the

8   ones in which, allegedly, my client referred to him

9   as having committed a felony or referred to him as a

10  felon.

11          THE COURT:  So what is Judge Schofield

12  talking about when she says, "Defendant made

13  statements accusing plaintiff of criminal activity,

14  including theft of documents" --

15          MR. RODRIGUEZ:  That's the one.

16          THE COURT:  -- "computer hacking, extortion

17  and trespass"?

18          She's not talking about felony.  She's

19  talking about something much more specific.

20          MR. RODRIGUEZ:  Maybe much more specific, a

21  better wording would be having accused him of a

22  crime.

23          THE COURT:  So why is that five remarks?

24          MR. RODRIGUEZ:  Well, no, it's not.  We

25  asked about five remarks in our post-EBT.

1          THE COURT:  Okay.  Well, don't represent to

2    me that Judge Schofield made some decision about

3    five remarks.  You're making an inference that

4    that's what's left in this case.

5          MR. RODRIGUEZ:  I apologize, Your Honor.

6    That was incorrect.

7          THE COURT:  Yeah.  Okay.

8          So, Mr. Erdman, again, I haven't read the

9    papers underlying the motion to dismiss, which I

10   guess amounts to the complaint, but is there some

11   agreement as it were on what specific remarks are at

12   issue in the case?

13         MR. ERDMAN:  With the Court or between the

14   parties?

15         THE COURT:  Well, what's your view?

16         MR. ERDMAN:  My view is he spent -- from

17   around 2013 onwards, he had conducted several

18   forensic analysis of various computers and devices.

19   He then used those reports to go to law enforcement,

20   and he did so for years, trying to reach out to

21   anyone he could think of.

22         THE COURT:  Okay.  I think what I need you

23   to do is point to the allegations in the complaint

24   that you believe survive and about which you are

25   suing in this lawsuit.

1            Do you have a copy of the amended
2    complaint, by any chance?
3            MR. ERDMAN:  I do not have it with me.
4    Sorry about that.
5            THE COURT:  I have one.  I mean, I have it
6    here.  That's your advantage.  I think we're going
7    to have to do this now, otherwise we're never going
8    to get anywhere.
9            Is our printer up and running?
10           THE DEPUTY CLERK:  It is.
11           MR. POLIZZOTTO:  Your Honor, if I may add
12   one more thing?
13           THE COURT:  Go ahead.
14           MR. POLIZZOTTO:  Your earlier question was
15   regarding the dates for production.  The complaint
16   that's the subject of this action was filed
17   originally in 2020.  And since the statute of
18   limitations is a one-year statute for libel, that's
19   why the position is that anything prior to 2019, any
20   statement that was made by the defendant prior to
21   2019 would be time-barred.
22           THE COURT:  Right.  But the issue is not
23   merely a statement.  It's also for defendants' state
24   of mind, which might be informed by documents before
25   or after that, right?

                AMM TRANSCRIPTION SERVICE - 631.334.1445

1          MR. POLIZZOTTO:  Ostensibly, state of mind
2     is certainly going to be relevant to the statements
3     made within the relevant statute-of-limitations
4     period; however, I think that the discovery requests
5     that are being made are going way beyond trying to
6     establish his state of mind.
7          THE COURT:  Well, that doesn't mean you
8     just get to stop searching because you think some go
9     beyond.  I mean, obviously, some are within.
10         MR. ERDMAN:  I mean, also, too, they didn't
11    object to any of the requests because they had said
12    they were giving me everything.  They never --
13         THE COURT:  I do recall that.
14         Yeah, I think I went through all this.  You
15    guys had done -- had so messed this up that I said
16    you're going to have to do everything.  I don't
17    remember the specific discussion about the earlier
18    date, but I ordered up until July 26, 2022.  That's
19    it.  That's the order of the Court.
20         How do you just ignore that and say -- I
21    mean, I guess you had some fantasy that I had made
22    some early cutoff date of 2019.  But, I mean, we
23    have to scour the record to talk about when the
24    early cutoff date was.
25         MR. ERDMAN:  I have the records that

1  they're pointing to for that.

2        THE COURT:  No, no.  When does it start is

3  the question.

4        MR. ERDMAN:  Oh.  Mr. Rodriguez started

5  mentioning it after our last conference.

6        THE COURT:  All right.  My computer froze.

7        THE DEPUTY CLERK:  Okay.

8        THE COURT:  So can you call up the Erdman

9  case file.

10        THE DEPUTY CLERK:  Oh, I already have it

11  up.

12        THE COURT:  And you see number 68, Second

13  Amended Complaint, it's one of the more recent

14  documents.

15        THE DEPUTY CLERK:  You said, "68"?

16        THE COURT:  It's a document in the case

17  file.

18        THE DEPUTY CLERK:  Oh, case file.

19        THE COURT:  I mean, you can get it off the

20  docket sheet, too.  It doesn't matter.

21        MR. RODRIGUEZ:  May I add something in the

22  meantime, Your Honor?

23        THE COURT:  No.

24        Do you have it?

25        THE DEPUTY CLERK:  Yeah.  Second.  Yep, I

1   see it.

2            THE COURT:  Okay.  See if you could print

3   it.

4            THE DEPUTY CLERK:  Okay.

5            THE COURT:  Go ahead.

6            MR. RODRIGUEZ:  Subsequent to that date,

7   we've produced everything we've had, so

8   defendants --

9            THE COURT:  Don't.  Stop.  Stop.  Stop.

10           Don't just tell me you've produced

11   everything you had because, honestly, I'd put you

12   under oath right now, and if I turned out to be

13   wrong, I would refer you.  So don't just say things,

14   I produced everything I have.

15           We're going through a process here to

16   figure out whether you, in fact, conducted this

17   properly, not whether, in your mind, you think you

18   produced everything you had.

19           MR. RODRIGUEZ:  It was better when I

20   just --

21           THE COURT:  All right.  Now, hold on.

22   Stop.

23           We're on the topic of whether I ever

24   addressed what the start date of this production

25   was.

1          So, Mr. Erdman, you have anything on that?

2          I mean, I'll address it right now if I have

3    to, but ...

4          MR. ERDMAN:  I don't think we ever

5    addressed it because I think the parties were in

6    agreement on our document requests and the start

7    dates there.

8          THE COURT:  Right.  Well, the problem is

9    they're denying the agreement.  So if you had

10   something in writing or anything, it would be a big

11   help.  I mean, the fact that they're asking you for

12   2010 is a little bit damning.

13         Okay.  I'm going to show you the Second

14   Amendment Complaint.

15         It stopped at 134.  Did we run out of

16   paper?

17         THE DEPUTY CLERK:  Which one?

18         THE COURT:  Did it run out of paper?

19         THE DEPUTY CLERK:  No.  I don't think so.

20         Why wouldn't we have more paper here?

21         THE COURT:  There's no --

22         THE DEPUTY CLERK:  No more paper here or --

23         THE COURT:  Did the machine run out of

24   paper?

25         THE DEPUTY CLERK:  Yes.

```
 1                THE COURT:  Oh, okay.  Let me see how much
 2     more pages are left.
 3                Oh, it's frozen.  I can't tell.
 4                It's missing five pages.  Are there
 5     chambers on this floor?
 6                THE DEPUTY CLERK:  I'm not entirely sure,
 7     but I'll look.
 8                THE COURT:  I think that there may be.  Or
 9     just see if you can --
10                THE DEPUTY CLERK:  Find paper?
11                THE COURT:  Borrow.  Beg.  Borrow.
12                In the meantime, I want you to start going
13     through this, mark the defamatory statements.  I'll
14     let the defendants do the same thing.
15                I will be sitting here doing some other
16     matters, if everyone can just sit tight for a bit.
17                (Pause in proceedings.)
18                THE COURT:  I wonder if we shouldn't just
19     get it from our stock.  If we had done it that way,
20     we would have it by now.
21                THE DEPUTY CLERK:  Oh, Judge Ramos on the
22     fourth floor.
23                THE COURT:  You might as well bring the
24     extra just in case.
25                THE DEPUTY CLERK:  We're on the record, by
```

1  the way.

2         UNKNOWN SPEAKER:  Do you remember when you

3  appeared in the --

4         THE COURT:  I'm sorry.  We're on the

5  record.

6         How much longer do you think, Mr. Erdman?

7         MR. ERDMAN:  I think I have it.  I think

8  it's starting right at paragraph 113.

9         THE COURT:  Okay.  And continues?

10        MR. ERDMAN:  Continues to 115, and then

11 picks up at 118 through 124.

12        THE COURT:  Okay.  So there are a number of

13 statements here.  Why don't you show them.  Did you

14 mark it?  I think you should hand to them the pages

15 where the defamatory statements are.

16        I'll give you a chance to look at that.

17        MR. POLIZZOTTO:  Thank you.

18        MR. ERDMAN:  I also think paragraph 98 is

19 going to be relevant for this argument as well.

20        THE COURT:  Make sure you give that to

21 the ...

22        Okay.  Do you folks need more time to look

23 at the --

24        MR. POLIZZOTTO:  Just two more minutes,

25 Your Honor.

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              THE COURT:  Just let me know when you're
 2     done.
 3              MR. POLIZZOTTO:  Okay.
 4              I've reviewed them.
 5              THE COURT:  All right.
 6              So, right now, all we're trying to do is
 7     figure out what the subject matter of this action is
 8     by figuring out the defamatory statements and when
 9     they were made.
10              Now, the complaint does not identify when
11     they were made, and that certainly could have been
12     the subject of a motion.  I gather it wasn't, or
13     Judge Schofield would have ruled on it.  So it's
14     certainly legitimate to find out when they were made
15     by conducting a deposition.
16              Is it the defendants' contention that a
17     deposition was done that identified what statements
18     were at issue and the dates on which the statements
19     were made?
20              MR. RODRIGUEZ:  Can I take a look at this?
21              MR. POLIZZOTTO:  Yes, Your Honor.  The
22     deposition was held, and it's those documents that
23     we were seeking in the request.
24              THE COURT:  Hold on.  Hold on.  Hold on.
25              MR. POLIZZOTTO:  Yes, Your Honor.
```

```
1              THE COURT:  I don't want to talk about a
2    document request.  Try to answer my question.
3              MR. POLIZZOTTO:  Okay.
4              THE COURT:  The question is, did you depose
5    the plaintiff to identify the specific statements,
6    the universe of statements that are at issue,
7    defamatory statements that are at issue in this
8    case, and the dates on which they were made?
9              MR. POLIZZOTTO:  Yes.
10             THE COURT:  Okay.  And what are the dates
11   in which was claimed those statements were made?
12             MR. POLIZZOTTO:  The dates were not
13   specifically identified by the plaintiff as such.
14   The plaintiff instead stated that the defamatory
15   statements were contained in documents that were
16   written, and demand for production of those
17   documents was made.
18             So, as we sit here right now, I cannot tell
19   you with any certainty because plaintiff has not
20   identified them with such dates.
21             THE COURT:  And that's -- hold on.
22             And that's going to be rectified when you
23   get these documents?
24             MR. POLIZZOTTO:  Yes, Your Honor.
25             THE COURT:  Go ahead, Mr. Erdman.
```

 1              MR. ERDMAN:  I was going to ask if they
 2    have the transcription that they're summarizing.
 3              THE COURT:  The transcript of what?
 4              MR. ERDMAN:  The deposition.
 5              THE COURT:  Oh, with them right now?
 6              Do you have it with you?
 7              MR. POLIZZOTTO:  I don't have it with me
 8    right now.
 9              THE COURT:  Why do you want the transcript?
10              MR. ERDMAN:  Oh, no, I just wanted to check
11    what they were referencing.
12              THE COURT:  Okay.  We cannot move forward
13    without figuring -- I'm surprised the case got this
14    far without the defendants making a motion on this
15    point.
16              But in a defamation case, you need to be
17    very specific about the statements, and you need to,
18    I believe, give dates on which they were made.  I
19    could be wrong, but certainly that's something one
20    should determine, not three years into a case, but
21    immediately through an interrogatory or something
22    else.  So how we got here without knowing the answer
23    to this most basic question is beyond me, but
24    nothing surprises me anymore in this case.  And
25    that's where we are now.

1          So do you know now, Mr. Erdman, what dates

2     are going to be reflected in whatever documents you

3     produce?

4          MR. ERDMAN:  For the statements themselves,

5     I believe he started making those in 2013.  And as I

6     had mentioned in one of my applications, he produced

7     a -- he cut off a privilege log around the statute

8     of limitations that indicated it was ongoing to

9     around at least 2022.

10          Sorry.  I'm just trying to find that.

11          THE COURT:  So I guess at the time you

12     filed this complaint, did you have those statements

13     from as late as the time you filed in 2020, or when

14     you filed the amended complaint in 2021?

15          MR. ERDMAN:  I believe I had some of them,

16     but there was others I anticipated getting in

17     discovery that I have yet to receive.

18          THE COURT:  All right.

19          MR. ERDMAN:  And for that privilege log I

20     mentioned, there was a gap.  This is the one from

21     Silverseal, who was --

22          THE COURT:  I have to do this in my pace,

23     so let's just try to deal with things one piece at a

24     time.

25          Okay.  So let me throw something out here

1    in case it helps.  If all we're talking about is,

2    you know, finding statements about Erdman, that's

3    going to be relatively easy and might be

4    circumscribed, but only if the defendants' defense

5    in this case is truth.

6         If he's saying that, in fact, he was

7    lacking in malice, if he wants to say, well, even if

8    it all is false, in fact, you know, I didn't know it

9    was true and I didn't act with reckless disregard

10   and all that, then we're going to have to open up

11   discovery to before the period of the defamatory

12   statements to figure out the defendants' attitude

13   towards the plaintiff.  And that's all going to have

14   to be the subject of discovery.

15        If, however, the only defense is going to

16   be truth, then we could avoid all that, but you'd

17   have to, obviously, put that in writing, and I would

18   issue an order of inclusion about that.

19        Do you already know the answer to that

20   question?  Do you want to consult with your client?

21        MR. POLIZZOTTO:  I would like the

22   opportunity to confer with my client, but I believe

23   that the response will be that we would be willing

24   to agree with Your Honor in saying that we would

25   waive the defense with respect to malice and only

```
 1   rely on truth.
 2           THE COURT:  Okay.  Theoretically, it's not
 3   a defense.  It's an element --
 4           MR. POLIZZOTTO:  I'm sorry.  I apologize.
 5           THE COURT:  You have to say you will not
 6   contest his contention that there was actual malice.
 7           MR. POLIZZOTTO:  I apologize and stand
 8   corrected.
 9           THE COURT:  Okay.  All right.
10           So, Mr. Erdman, do you understand what I
11   was just saying?
12           MR. ERDMAN:  Yes.
13           THE COURT:  Okay.
14           MR. ERDMAN:  If I may --
15           THE COURT:  If that's taken out of the
16   case, do you have need for any documents prior to
17   whatever the one-year statute of limitations period
18   is?
19           MR. ERDMAN:  Yes, I believe I would.
20           THE COURT:  Tell me the basis.
21           MR. ERDMAN:  If you look at paragraph 98,
22   Victor told the SEC these complaints are --
23           THE COURT:  Hold on.  Hold on.
24           Go ahead.  What are you saying about 98?
25           MR. ERDMAN:  Yeah.  Victor had told the
```

1    SEC, these complaints are embedded within a much

2    larger context.  And then he goes on to describe all

3    the things he was accusing me of.

4            This was back in 2016, and he had been

5    using these forensic examinations and making these

6    claims going back years.  It was far before the one

7    year --

8            THE COURT:  Okay.  No.  But there's a

9    one-year statute of limitations for defamation.

10   Now, you agree with that?

11           MR. ERDMAN:  Yes, I agree.

12           THE COURT:  Okay.  So you can't sue for a

13   defamation that occurred in 2018, right?

14           MR. ERDMAN:  Oh, yes, I understand that.

15           My concern is he had done the analysis much

16   earlier in time and was recycling it for years.

17           THE COURT:  "He had done the analysis."

18   What do you mean by that?

19           MR. ERDMAN:  He had given devices to

20   various forensic firms to try and come up with data

21   to bolster his claims to law enforcement.  And he

22   had done that, I believe, in 2014 onwards.  So

23   that --

24           THE COURT:  But what does that have to do

25   with anything I'm talking about?

1          MR. ERDMAN:  Oh.  As far as the truth of
2    Victor's statements, the evidence he was pointing to
3    went back further than that one year.
4          THE COURT:  Oh, okay.  So for some
5    statements, you're saying, I guess -- let me try to
6    piece this together.
7          For some statements, you're saying that
8    they relate to -- let me think about this.
9          He is saying that you did a hacking or
10   something?
11         MR. ERDMAN:  Correct?
12         THE COURT:  Okay.  And the hacking occurred
13   many years previously.
14         MR. ERDMAN:  Yeah.  I believe he said it's
15   either 2012 or '13.
16         THE COURT:  Whatever.  Whatever it is.
17         And, I guess, not for purposes of malice,
18   but for purposes of proving the truth of falsity of
19   the claim of your hacking, you might need some
20   information prior to 2019.
21         MR. ERDMAN:  Correct.
22         THE COURT:  Okay.  That, at least, I
23   understand.  I assume you don't need it for any
24   other type of allegation.  I mean, I can't remember
25   what he was saying about you.

1          I think we need to have more comprehensive

2     listing of these, of what's at issue in this case

3     and the dates they were made.  I think you need to

4     put that in writing, Mr. Erdman.

5          Basically, it's a contention interrogatory,

6     or maybe -- it's really a bill of particulars, is

7     what it is.  We need to know what the defamatory

8     statements are that Victor made and what dates they

9     were made.  And they need to, you know, come within

10    this complaint that exists now.

11         MR. ERDMAN:  In the alternative, if the

12    defendant would agree, I could also amend the

13    complaint to take into consideration

14    Judge Schofield's order and firefly this because

15    it --

16         THE COURT:  If they agree, that's fine, but

17    I'm not going to allow any motions to amend the

18    complaint at the stage of the case.  It's way too

19    late for that.

20         But we do need to figure out the dates of

21    these statements and what exactly they are.  Again,

22    I'm flabbergasted this hasn't happened by now in

23    this case.  I assumed that everyone was simply on

24    board.  I mean, I had no reason to look at the

25    complaint in this kind of detail.

1                How soon can you put that together?
2                MR. ERDMAN:  I think I can do that within
3     two weeks.
4                THE COURT:  Maybe one week.
5                MR. ERDMAN:  I can try.  Yeah.
6                THE COURT:  This shouldn't be very hard.  I
7     mean, in a way, you're a little bit limited by what
8     you said.  And I don't know what you said in the
9     deposition, but you shouldn't start adding things
10    that you already identified in the deposition.
11    We've got to cabin this case.  All right.
12                Now, we're still back on the issue of the
13    time period.  So I guess your contention,
14    Mr. Erdman, is, in order for you to prove the
15    falsity of the statements that Victor made, you're
16    going to need his documents?
17                MR. ERDMAN:  So he had various devices sent
18    to these forensic firms, and there's no evidence
19    that they've ever searched or produced anything
20    from --
21                THE COURT:  Hold on.  Hold on.  Hold on.
22                Again, I'm trying to focus on the
23    defamatory statements.  Are you bringing up these
24    devices because they were being tested to see
25    whether you hacked them, which is one of the

1    defamatory statements?

2            MR. ERDMAN:  Correct.  He --

3            THE COURT:  That's why you're bringing it

4    up.

5            MR. ERDMAN:  Yes.  He had reports made from

6    those analysis, and then he would be forwarding

7    those to law enforcement and pointing to them --

8            THE COURT:  Well, I mean, if we're going to

9    preclude him -- if he's precluded from using -- I

10   mean, you can take your gamble on this, but if

11   there's an order of preclusion about using documents

12   from before, that he doesn't have to produce

13   documents from before, you know, 2019, whatever the

14   date is, one year before the filing of the

15   complaint, then he's not going to be able to use any

16   of those documents to show you did any of these

17   things.

18           So if people want to just wash their hands

19   of all that and go into this afresh with only

20   post-2019 documents, what's sauce for the goose is

21   sauce for the gander.  So not only will you not get

22   them the discovery, they're going to be precluded

23   from using any documents from that period too.

24           Now, again, they haven't agreed to this yet

25   anyway, but that's the way it would go.  So it seems

1  to me it might help you that they're not going to be
2  using documents before 2019.  Is that possible?
3          MR. ERDMAN:  Potentially.  But I would
4  prefer to have the data the forensics people were
5  working off of so I can just put all these claims to
6  bed and prove them to be false.
7          THE COURT:  All right.  Well, we could do
8  it with some limited exceptions that would then
9  allow them to use these documents as well.
10          MR. ERDMAN:  And, I mean, I'm not asking
11  them to search everything back all that time.  They
12  have specific hard drives and devices they gave to
13  these vendors they claim to have produced from, and
14  there's no evidence that ever happened.
15          THE COURT:  Okay.  Well, now, we're getting
16  into the larger picture, which I haven't even gotten
17  there.  You asked me to try to deal with the
18  time-period thing, which I'm trying to deal with.
19          If there's no agreement specifically, then
20  you are going to be entitled to go before 2019,
21  certainly, in order to figure out the malice issue
22  and perhaps with respect to, for example, this
23  hacking allegation.  In order to get evidence, you
24  need to show falseness.  But, you know, it all
25  depends upon what you end up agreeing and what the

1    actual claims are and what the search terms have

2    been and so forth.

3              So I think step one is you putting together

4    this list.  I'm trying to think how to phrase this.

5              It's either you're responding to a

6    contention interrogatory or it's a bill of

7    particulars.  Let me see what the rule on bill of

8    particulars says.

9              Motion for more definite statement.  That's

10   what we call it in federal court.

11             Yeah, I'm ordering a more definite

12   statement under 12(e), okay.

13             So I want a more definite statement of the

14   specific defamatory statements, with quotations if

15   possible, and the dates.  Now, I'm not going to

16   preclude you from relying on what's come up already

17   in discovery.  And it's possible that, if other

18   items come up, you might be allowed to include them.

19   We're not going to deal with that now.  But based

20   upon what you know now, all right.

21             So I'd like you to get that together in a

22   week.  And if there's some problem with that, the

23   defendant should write me a letter saying why, for

24   whatever reason, those statements are not within the

25   scope of the complaint or Judge Schofield's order.

1     And then once we have dates and so forth for that,
2     maybe we can move forward.
3              Are you going to be able to do this?  I
4     mean, do you have statements and the dates?  Are you
5     relying on discovery for this?
6              MR. ERDMAN:  Partially relying on
7     discovery, but I think I can put some stuff
8     together.
9              THE COURT:  Yeah, but is it a complete
10    list?
11             MR. ERDMAN:  I don't think I could get the
12    whole complete list.
13             THE COURT:  So what's missing?
14             MR. ERDMAN:  From what I can tell is they
15    basically didn't search anything after --
16             THE COURT:  You need to know what he said
17    to others from his discovery.
18             MR. ERDMAN:  Correct.
19             From what I can tell is Victor's e-mail
20    accounts were never searched after 2019, any of
21    them.  You know, like, I have a huge gap from what
22    they're claiming is the limitations period.  They
23    reversed it and only produced outside of that.
24             THE COURT:  Well, maybe we do need to solve
25    the discovery problem because to the extent you're

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    relying on discovery for this, which I think you are

2    entitled to, we really can't make any progress.

3         I guess it would help to know the earliest

4    dates, but you might get that from discovery too.

5    You still may not have gotten what you need from

6    discovery, right?

7         MR. ERDMAN:  Yeah.  Correct.

8         THE COURT:  All right.  Maybe this pathway

9    is not going to solve our problems.

10        MR. ERDMAN:  And, I mean, I also had tried

11   to bring up this date-range issue in the joint --

12        THE COURT:  The what?

13        MR. ERDMAN:  I had tried to raise this

14   date-range issue that we're working --

15        THE COURT:  What issue?

16        MR. ERDMAN:  As far as what the relevant

17   time period is in the joint letter.

18        THE COURT:  Oh, date range.

19        MR. ERDMAN:  Yes.

20        THE COURT:  Okay.  I couldn't understand

21   you.

22        MR. ERDMAN:  And they deleted it from my

23   joint letter when they submitted it to the Court.

24        THE COURT:  Well, I mean, you sent me about

25   that.

1          MR. ERDMAN:  Yeah.

2          THE COURT:  I mean, I don't blame them.  I

3    had a specific request, but we certainly have to

4    deal with the date problem.  All right.

5          I don't think we should hold up our

6    discovery problem in order for you to do this more

7    definite statement.  I don't think it would hurt to

8    at least know what we're dealing with right now that

9    you know about.  So go ahead and do it, but I will

10   certainly understand if you have a sentence that you

11   reserve to add to it based on the discovery.

12         So that's not going to take us terribly

13   far.  So let's go back to where we were.  I think I

14   have to deal with the start date.  I still have to

15   deal with the start date of this.  I mean, 2010

16   seems ridiculously long, given that the actual

17   statements are going to have to be from 2019 and

18   later.

19         When is the alleged hacking?  When is that

20   alleged to have occurred?

21         MR. ERDMAN:  I believe it was in 2013.

22         THE COURT:  I see.  Now, with respect to

23   the hacking, then we might have a thing, you know,

24   an issue of, you need to go back to 2013, I guess.

25   Or do you see anything before that, though?

1          MR. ERDMAN:  Yeah, I don't think there's
2   much need for before then, personally.
3          THE COURT:  Okay.
4          MR. ERDMAN:  The disagreement between me
5   and Victor happened around that timeframe.  The
6   stuff prior, I don't think is necessary for this.
7          THE COURT:  All right.  So let me hear from
8   defendants on this.
9          Barring any agreement about actual malice
10  and some exceptions for, like, this hacking thing,
11  why shouldn't it be 2013?
12         MR. POLIZZOTTO:  I mean, we raised the
13  arguments earlier.  I think that this is going to be
14  resolved with an agreement; however, should, for
15  some reason, there not be an agreement for his state
16  of mind, it's really the only -- and I guess, as
17  Your Honor indicated, with respect to the issue on
18  him obtaining information on the truth as to certain
19  items, if limited to those, if it's with respect to
20  these two issues, then 2013 seems appropriate for
21  the hacking, if that's the allegation.  But that may
22  not be the same date that's appropriate for other
23  issues that he maybe raised in -- (audio
24  distortion).
25         THE COURT:  What else were you accused of

1   doing?

2        MR. ERDMAN:  Like, breaking in the

3   apartment, tracking him through his phone, taking

4   files that he claimed were worth many millions of

5   dollars.  And there was a couple more, extortion,

6   perjury.

7        THE COURT:  Okay.  You don't need his

8   documents to show that none of that happened, right?

9        MR. ERDMAN:  I believe there will be some

10  e-mails where he's trying to sell this idea to

11  various law enforcement that may go back a while.

12       THE COURT:  But you can't sue on those,

13  so -- right?

14       MR. ERDMAN:  Yeah.

15       My main concern is the data that he's using

16  to make these accusations.

17       THE COURT:  But if he's precluded -- it

18  seems to me if you can make an agreement that he

19  can't use any of this stuff, any of those documents,

20  you can testify that you never extorted anybody,

21  never did this, you never did that, and he'll have

22  nothing from that time period to contravene that

23  because he'll be precluded from using any documents

24  from that period.

25       MR. ERDMAN:  Oh, well, there's also another

1    set of hard drives that I believe he did an analysis

2    of in 2018.

3              THE COURT:  He did analysis of for what

4    purpose?

5              MR. ERDMAN:  The same thing, to make

6    accusations against me for stealing or perjury and

7    all of those kind of things.

8              THE COURT:  Okay.  We can't assume any

9    agreements at this point, so --

10             MR. POLIZZOTTO:  Your Honor?

11             THE COURT:  Yes.

12             MR. POLIZZOTTO:  I guess you've indicated a

13   week for plaintiff to provide a more definite

14   statement.  If we're given the same time to consult

15   with our client, the defendant, I'm fairly confident

16   we're going to be able to get to the point that

17   Your Honor has indicated where there would be this

18   preclusion on both sides.  And I think that would

19   address most, if not all, of these discovery issues.

20             THE COURT:  All right.  Well, I'm not as

21   sanguine as you are.  I'm certainly happy to let you

22   try it.

23             I think the next step, Mr. Erdman, is for

24   you to do these depositions I'm talking about.

25             MR. ERDMAN:  So I had already deposed

1   Victor, and we also had the vendor conference.  And

2   I've also asked counsel to provide answers to

3   questions about discovery.  And he basically always

4   will blame a former attorney or another vendor

5   because, from what I can tell, they did pretty much

6   nothing for this production.  Victor described them

7   as being basically a repository of what was done in

8   the past.

9         THE COURT:  Well, if you feel you have

10   evidence that they have not done a proper search, I

11   think you can marshal that.  I mean, if you don't

12   need the depositions, then you don't have to take

13   them.

14         MR. ERDMAN:  I'm very confident they didn't

15   do a search, based on what they gave me.

16         THE COURT:  The issue is not confidence.

17   The issue is whether, when presented to me, am I

18   going to make a finding that they didn't do a proper

19   search?

20         MR. ERDMAN:  So they had given me a tracker

21   of the repositories they claimed to have produced

22   from, and supposedly that's everything, despite them

23   claiming there are other things that were produced

24   from that aren't on this tracker, and they have

25   absolutely no basis for claiming they are.

```
1              THE COURT:  I have no idea what you just
2    said.  Try it again.
3              MR. ERDMAN:  So there's a tracker, which is
4    238-1.
5              THE COURT:  It's that single page.
6              MR. ERDMAN:  Correct.
7              I went through all of these repositories
8    and compared them to the production to figure out
9    what was what.
10             The first three items in 2019 were my
11   production, Ms. Kashkevich (phonetic) and
12   Ms. Toktesanova's (phonetic).  We had made
13   productions in the state action, and he did a
14   privilege review of it and then produced it back to
15   me.  That was 80 percent of his initial production.
16             THE COURT:  Let's see.  This is not the way
17   I like to think about it.  The way I like to think
18   about it is not examining his production.  The way I
19   want to think about it is, what are the sources he
20   should have looked at?  What did he do to do a
21   search of those sources?  And then what was
22   produced?
23             That's the way I want to look at it.  So
24   the fact that he gave to you something you gave to
25   him, you know, it seems stupid, but I don't care
```

1    about that.

2            MR. ERDMAN:  Sure.

3            THE COURT:  Because you're not saying

4    that's something that you were seeking to have him

5    search for.

6            MR. ERDMAN:  Understood.

7            THE COURT:  You know, so that's the way we

8    need to think about this.

9            MR. ERDMAN:  Well, so it seems like there

10   was this Braverman action where they found 900,000

11   documents.  Of those, Schlam Stone & Dolan had taken

12   around 37,000 to move into the database for

13   production.

14           THE COURT:  Is the Braverman action

15   documents that were produced to him?

16           MR. ERDMAN:  No, it was his own documents.

17   They did a collection of his devices and put it into

18   that database.  And then they've been claiming they

19   produced everything to me, but they had taken out

20   just a small fraction of what they had collected.

21           THE COURT:  They've "taken out", meaning

22   given to you?

23           MR. ERDMAN:  So they took -- there was a

24   separate database with 900,000 documents that were

25   collected from Victor.  I think his e-mail accounts

1    and computers.  No one can actually tell me what

2    made it up.

3          Schlam Stone & Dolan, for another action,

4    did some sort of search, exported the documents from

5    that database into the current database they're

6    using for production.  And from what I can tell, the

7    search terms were made for another case because this

8    one wasn't even filed at the time.  So the grand

9    total of documents they could be producing is only

10   37,000 out of 900,000.

11         THE COURT:  I'm not sure I'm following.

12         So they took a set of documents that had

13   been gathered by Schlam Stone.

14         MR. ERDMAN:  This Braverman firm had

15   collected 900,000 documents.

16         THE COURT:  The Braverman firm.  Okay.

17         MR. ERDMAN:  Correct.  This is for an

18   action against the former attorney.

19         They had told the court they were in the

20   unenviable position of essentially starting over

21   because they couldn't make --

22         THE COURT:  Who is "they"?

23         MR. ERDMAN:  Victor and the Braverman

24   attorneys representing him.

25         THE COURT:  Go ahead.

 1          MR. ERDMAN:  So they found that the prior

 2    productions.  They had no idea what was done, what

 3    was produced.  So they had to start from scratch and

 4    gather all this data from his computers, e-mails and

 5    whatever else they searched.

 6          No one can actually tell me what happened

 7    there.  But from whatever they gathered from those

 8    900,000 documents, their vendor had run search terms

 9    and narrowed the 900,000 to around 37,000.  That

10    37,000 was then taken and put into the database for

11    review in this action.

12          THE COURT:  Okay.  So what is your point on

13    that one?

14          MR. ERDMAN:  That there is, you know, 800

15    and something thousand documents that were never

16    searched or they've done anything with.  They don't

17    know what was collected.  They don't know what was

18    moved over.

19          THE COURT:  So you feel that that 900,000

20    encompasses sources that are worth looking at?

21          MR. ERDMAN:  Yes.

22          And as an example, like, their privilege

23    log cuts off in around 2019.  They were supposed to

24    describe why that happened and they never did.

25          THE COURT:  Where is this dataset of

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    900,000 documents?

2              MR. ERDMAN:  That, I don't know.  I believe

3    the vendor, TransPerfect, has it in some form

4    separate from what they're producing.

5              THE COURT:  Does the defendant still have

6    whatever these sources are?

7              Do you know the answer to that question?

8    It's for defense counsel.

9              MR. RODRIGUEZ:  From what we understand,

10   the vendor has them.  They were collected.

11             THE COURT:  Victor does.  Usually people

12   don't take originals, they take copies.

13             MR. RODRIGUEZ:  And according to our

14   vendor, the gentleman that we've dealt with --

15             THE COURT:  No.  Does Victor still have

16   whatever the originals, whatever this thing it was

17   taken from is?

18             MR. RODRIGUEZ:  My client should.  A lot of

19   the -- from what I understand from my client, these

20   were documents.  He should have the originals, but I

21   would need to ask him because there was so much that

22   was going on before we took over documents.

23             So there's one firm that's holding on to

24   documents as part of a charging lien.  There's

25   another -- so it's uncertain whether he has the

1    originals or not.  We think that he does.

2          THE COURT:  Well, how are we three years in

3    this case and you don't know where the documents

4    are, what the sources are?

5          MR. RODRIGUEZ:  Well, we know where the

6    documents are with the vendor.

7          THE COURT:  Well, you need to know where

8    all these documents are and you need to run searches

9    on them.  Why is this complicated?

10         MR. RODRIGUEZ:  We did, Your Honor.

11         THE COURT:  You personally ran a search

12    with chosen search terms?

13         MR. RODRIGUEZ:  Mr. Victor ran the search

14    terms under the order that came down in 2022 of the

15    sources that he had, his phone.  He had his e-mail

16    accounts.

17         THE COURT:  That's the 900,000 documents

18    that the --

19         MR. RODRIGUEZ:  No, those aren't the

20    900,000 documents.

21         THE COURT:  That's what I'm asking about.

22         MR. RODRIGUEZ:  The vendor, TransPerfect,

23    ran the search terms on those documents.

24         THE COURT:  What's the source of those

25    documents?

```
 1              MR. RODRIGUEZ:  Source of the documents are
 2    various drives that were -- various drives of
 3    documents that were collected over the years by
 4    Schlam Stone, by Braverman, by his previous law
 5    firms.
 6              THE COURT:  And do you have access to that
 7    set, the 900,000?
 8              MR. RODRIGUEZ:  We believe, yes, we have
 9    access to that set.
10              THE COURT:  So you need to run the search
11    on that set.
12              MR. RODRIGUEZ:  And according to our
13    vendor, we did.
14              THE COURT:  On search terms you guys agreed
15    to?
16              MR. ERDMAN:  So they never searched the
17    900,000.  From my talk with the vendor, the 37,000
18    were exported from the main repository of what
19    they've collected.  They moved it over, and then
20    they only --
21              THE COURT:  And how did they choose those
22    37,000?
23              MR. ERDMAN:  That was Schlam Stone, and no
24    one's been able to tell me how they did it.
25              THE COURT:  You have to run search term on
```

1    the original documents.  Do you understand that?

2            MR. RODRIGUEZ:  Yeah.  Vendor did,

3    Your Honor.  He's making --

4            THE COURT:  You don't even know what the

5    search terms are, though.  I just asked you, do you

6    know what the search terms are.

7            MR. RODRIGUEZ:  I do not have them in front

8    of me, Your Honor, but our vendor does.

9            THE COURT:  And have you shared them with

10   the plaintiff so that he can see that the 900 were

11   searched properly for purposes of this case?

12           MR. RODRIGUEZ:  I don't think we shared

13   them.

14           THE COURT:  Well, how could you not have

15   done that?  I don't understand.

16           I told you to share everything with him so

17   that he knows exactly what was done to produce the

18   documents that you're producing.

19           How could you not have done that?

20           MR. RODRIGUEZ:  He never asked for them,

21   Your Honor.

22           MR. ERDMAN:  I did.

23           THE COURT:  I issued an order telling you

24   to say absolutely every single thing that was done

25   to do the production in this case.

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              I don't know.  Maybe I need to do that one
 2      more time.  And this time, if you omit something and
 3      it's material, there will be personal consequences
 4      to you.  I imagine a 50-page document that both of
 5      you sign under oath saying exactly what was done to
 6      search all of these things, what search terms were
 7      used, when it was done, who had custody, and where
 8      it all came from.
 9              It will probably be 50 pages because when
10      I've asked you to do this in the past you've
11      produced these absurdly short affidavits without any
12      detail, and I don't know what else to do.
13              I mean, maybe sanctions are the thing I
14      should do now.  I mean, it's sanctionable to not
15      even just know these things and to not have shared
16      it with the plaintiff when I specifically issued
17      orders requiring you to describe in detail all of
18      the search efforts that have been made in this case.
19              Should I move to sanctions now, or do you
20      want one last chance to do this?  You tell me.  If
21      you want to stand on your prior affidavits and have
22      me rule about whether those were sufficient, I'll do
23      it.
24              MR. POLIZZOTTO:  No, Your Honor.  I would
25      certainly like an opportunity to --
```

1        THE COURT:  I mean, you need to find out

2   what's going on here, and quickly.  You need to know

3   the search terms.  You need to know the databases.

4   You need to know the dates.  You need to know

5   everything that was done.  And if you can't find the

6   answer, then the result will be you're going to have

7   to do it yourself again.  So to say you don't know,

8   that means I'm going to require a new search.

9        The burden is on you to show you did a

10  reasonable search.  Right now, you haven't met that

11  burden.  You need to lay this out.  You need to show

12  that all of the sources that were appropriately

13  searched in this case, things in Victor's control,

14  they were gathered and they were searched with the

15  appropriate search terms and an appropriate date

16  range, consistent with my orders in this case, which

17  required you to search through 2022, July 2022.

18        By the way, you were stuck with that date

19  because of your failures in the past.  I probably

20  wouldn't have ordered that if there hadn't been so

21  much recalcitrance on the defendants' part.

22        My only goal here -- believe me, if this

23  was in the hands of any other group of lawyers, we

24  would not be here.  I never have this problem.  This

25  case is unique.  It's unique in the recalcitrance of

AMM TRANSCRIPTION SERVICE - 631.334.1445

1  the attorneys to get the information needed to

2  determine whether a reasonable search was conducted.

3          I'll give you one last shot.  After this, I

4  think I'm just going to look at those past

5  affidavits and whatever you gave me here, and if

6  it's not sufficient, just start issuing sanctions

7  that go to the merits of the case.  Because if you

8  can't produce documents -- they're the most basic

9  things -- then, you know, I can't expect the

10  plaintiff to proceed with that handicap.

11          MR. POLIZZOTTO:  Your Honor, in addition to

12  what you're indicating now, are we still going to be

13  proceeding with the more definite statement and --

14          THE COURT:  Yeah, I want to.  I mean, it

15  would help to know at least what's going on with

16  what he knows.

17          MR. POLIZZOTTO:  And that's to the Court

18  with respect to the malice issue?

19          THE COURT:  You folks are welcome to

20  bargain anything you want.  You don't get back to me

21  on that.  If you work something out with the

22  plaintiff, you let me know jointly, if both of you

23  have approved the text of.  In fact, it needs to be

24  a stipulation signed by both of you.  So there's no

25  point in reporting to me.  You can just file a

1  stipulation.

2          All right.  So the burden is on you to show

3  Victor did a reasonable search on all the documents

4  for the time period that we spoke about, which is up

5  to July 26, 2022.  I don't know what your start date

6  was for any of these, but you'll say in your

7  affidavit -- this is going to be sworn, by the

8  way -- whatever search was conducted.  You'll give

9  the search terms, and you'll give the dates that

10 were run.  You'll explain what all the sources were.

11 You'll explain how you know that those are the

12 complete set of sources or whether or not you know

13 they're the complete set of sources.  If the

14 affidavit shows that it's an incomplete search, then

15 you'll have to live with that, but whatever it is,

16 it's what it is.

17         Again, I've done this before.  The

18 affidavits were completely lacking any detail.  It

19 did not meet your burden of showing you conducted a

20 reasonable search.  So that's the way we need to

21 think of this.  This is your last chance to show

22 you've conducted a reasonable search.  And if it

23 doesn't have the detail to show it, if it's

24 conclusory, I'll find you didn't conduct a

25 reasonable search, and then the question is what I'm

1    going to order.

2            I think at this point, it may be too late

3    to do other searches, but I don't know.  If you have

4    any proposals you can have a letter that accompanies

5    your affidavit that says, you know, we recognize

6    that we still need to do A, B and C, and here's our

7    proposal and how long it will take.  You can try

8    that.

9            You have two weeks for that.  May 1st.

10            Anyway, serve that on -- you should file

11    that with the Court and, obviously, the plaintiff

12    will get it.

13            And then once you get that, Mr. Erdman,

14    come up with whatever plan you have for what you

15    think should happen next.

16            MR. ERDMAN:  Okay.  I mean, just to give

17    you an idea of what I've been dealing with to try

18    and get them to tell me about their keywords, they

19    say in one of --

20            THE COURT:  What I call "search terms."

21            MR. ERDMAN:  Yes, "search terms."

22            They claim they've even listed the search

23    terms utilized during that process, terms that were

24    generated to produce documents responsive to

25    plaintiff's document requests.  They sent me those,

```
 1   and it was my first name and last name, as well as
 2   Kashkevich, Toktesanova, (phonetic) and the last
 3   name of my former attorney.  That was it.  And then
 4   they previously put in an affidavit --
 5            THE COURT:  Okay.  And you think those are
 6   not sufficient?
 7            MR. ERDMAN:  It's not even what they were
 8   using to do the review because there's an affidavit
 9   that says -- it describes our efforts expended
10   during the document review involved identification
11   of what to include in the coding panel.  He goes on
12   to say, "Plaintiff listed 39 requests in his
13   discovery requests of defendants.  Finalizing a
14   coding panel that would satisfy that many requests
15   took days in and of itself."
16            THE COURT:  I have no idea what you just
17   said.  Give me the gist.
18            MR. ERDMAN:  They had provided keywords for
19   some contract attorneys to do this review, and they
20   have been unable to tell me who those people were or
21   any of the terms they used.  Instead, they just told
22   me they searched for my last name, basically.
23            THE COURT:  Well, maybe that's the only
24   term they used.  I don't understand.
25            MR. ERDMAN:  They've also said that this
```

1    coding panel the attorneys used --

2            THE COURT:  I don't know what "coding

3    panel" means.

4            MR. ERDMAN:  The search terms the vendor

5    was using was more expansive than this, and they

6    can't tell me what that means, what would have been

7    included.

8            THE COURT:  Okay.  Well, I mean, again, we

9    need to see what -- well, what is your point right

10   now?  And, therefore, what?

11           MR. ERDMAN:  I can't get any honest answers

12   out of them.  And whenever I press on a topic, the

13   story changes, and --

14           THE COURT:  Okay.  Well, let's not worry

15   about the past right now.  I mean, if there's

16   something you want to make sure is included in the

17   affidavit, tell me now, I'm happy to talk about it.

18           MR. ERDMAN:  I would like a list of search

19   terms.

20           THE COURT:  Well, I certainly made that

21   clear.

22           MR. ERDMAN:  And --

23           THE COURT:  There's no way to describe how

24   you did a reasonable search without giving search

25   terms and the sources and the time period.  So

1    that's impossible to describe without giving all

2    those things.  So if they fail to do it, I would

3    find it was an unreasonable search.

4         MR. ERDMAN:  They had also provided a list

5    of all the repositories they supposedly searched,

6    and they've been unable to identify any of those

7    specifically.  Like, it will just say "hard drive"

8    with no identification beyond that.  So I'd like

9    them to be more specific.

10        THE COURT:  Certainly, you have to be

11   specific as to what the sources are.  And, again, if

12   you have no way of knowing because the original

13   source has disappeared, then you have to say that.

14   Certainly, you have to consult with Mr. Victor to

15   put this affidavit together.

16        MR. ERDMAN:  Such as I asked about some of

17   the repositories they listed.  They asked

18   Mr. Victor, and he said Braverman would ultimately

19   know more if he just followed their instructions.

20   And I've gotten that response time and time again.

21        THE COURT:  Well, again, this is the moment

22   of proof.  You cannot prove a reasonable search by

23   saying some other firm did something.  I have no

24   idea what they did.  That would not be reasonable.

25   You would have to redo the search if that's all you

1   knew.

2          So whatever they say about that, if they

3   say, we don't know, that is going to make it quite

4   clear that there's not been a reasonable search.

5   You can only do a reasonable search if you know what

6   was done.

7          So they're going to supply this by May 1st,

8   and then you need to talk to them and then come back

9   to me and tell me what we need to do.  I'm having

10  déjà vu.  I feel like I ordered this exact same

11  thing a year ago.

12         But at this point, this is going to be --

13  you know, if it's not original search, then I'll

14  decide whether we do sanctions or we do new

15  searches.  I don't know what I'll do at that point.

16         Any questions, Mr. Erdman, or issues that

17  we need to deal with today?

18         MR. ERDMAN:  Just one thing.

19         I was promised he was conducting a

20  privilege review of certain documents.  At the last

21  conference, we dealt with an issue where log entries

22  weren't justified or were marked as privileged just

23  because they were attached to a privileged e-mail.

24  I provided a list of e-mails with those problems, I

25  believe, about a month ago.  I was promised to get

1    something regarding that yesterday.  They sent me
2    nothing, and then just told me today that it's all
3    outside the timeframe, so they're not giving me any
4    of it.
5         THE COURT:  I think I can't deal with that
6    now, Mr. Erdman.  We have bigger fish to fry.  I
7    mean, we know something about the time period here,
8    which is that, at least, from 2019 to 2022 is at
9    issue, but how much before 2019, I don't know.
10        MR. ERDMAN:  And I was basing that just off
11   their priv log going back that far because they had
12   already chosen to search that --
13        THE COURT:  Yeah.  No, I'm not blaming you.
14        Anything else from your end, Mr. Erdman?
15        MR. ERDMAN:  No.  I think this will be fine
16   to get us moving.
17        THE COURT:  Any questions or anything else
18   we should do today from the defense side?
19        MR. POLIZZOTTO:  No.  Thank you,
20   Your Honor.
21        MR. RODRIGUEZ:  No, Your Honor.
22        THE COURT:  All right.  Thank you,
23   everyone.
24
25                           0o0

C E R T I F I C A T E

    I, Adrienne M. Mignano, certify that the foregoing transcript of proceedings in the case of Erdman v. Victor, et al.; Docket Number: 20CV4162 was prepared using digital transcription software and is a true and accurate record of the proceedings.


Signature  ___*Adrienne M. Mignano*_____
                  ADRIENNE M. MIGNANO, RPR


Date:     April 19, 2024