<u>**VIA ELECTRONIC FILING**</u>                                          May 1, 2024

The Honorable Gabriel W. Gorenstein

Daniel Patrick Moynihan

United States Courthouse

500 Pearl Street

New York, NY 10007

Re:   Court's Order For A More Definitive Statement

<u>*Tyler Erdman v. Adam Victor, et al.*</u>, No. 20 Civ. 4162

Dear Judge Gorenstein,

    I write to provide a more definitive statement of my claims as ordered by the Court at the April 17th, 2024 Conference. Defendant has been claiming for years that he agreed to produce all responsive non-privileged documents. He only takes issue with the time frame after having been caught misrepresenting his production.

    Defendant had no difficulty answering the complaint or responding to its allegations without having asked for a more definitive statement. Years ago, Defendant urged the Court that he need not even file a response to my document requests because he was waiving any objections – objections he now wishes to assert, after his fraudulent claims of production have been exposed. He claimed to be producing documents without needing any clarification. Most significantly, Defendant has, to date, avoided producing documents within the limitations period. He has always known what is at issue in this action and is hiding discovery relating to it. He should not be allowed to revisit his prior discovery undertakings after having flouted so many Court orders relating to them.

**<u>The Court's Order</u>**

    The Court's Order denying the Defendant's motion to dismiss in part (Dkt. 110) states:

"For clarity, the defamation claim related to Victor's accusations that Plaintiff committed certain crimes survives, but as related to the Letter is dismissed."

    Defendant gave the Court an inaccurate description of what allegations remain after the Court's order: "…the only remaining remarks that survived the motion to dismiss were remarks in which my client referred to him as a felon" (See Transcript at p.13:20-22)

    The Court's order was not limited to "five remarks" as Defendant explained. Per the Court's Order the cause of action that remains relates to:

"First, Plaintiff alleges that Defendant defamed him by falsely claiming that Plaintiff committed several criminal acts, including perjury, theft of computer files and extortion. These allegations stem from court filings in previous litigation between Plaintiff and Defendant, complaints, and informal communications to law enforcement by Defendant about Plaintiff, audio recordings of Defendant and accusations made to colleagues of Defendant." (See Dkt. 110 at 4)

"The Complaint sufficiently pleads a claim of defamation based on Defendant's accusing Plaintiff of criminal activity. The Complaint alleges that Defendant made numerous statements to law enforcement agencies and government officials and in court filings, claiming that Plaintiff committed several criminal acts, including breach of national security, theft of computer files and extortion. The Complaint alleges a sufficient claim of defamation per se based on Defendant's statements to law enforcement and government officials about Plaintiff's purported crimes. The Complaint alleges that Defendant falsely claimed to third parties that Plaintiff committed crimes, such as theft and harm to national security. Defendant does not argue that these statements were privileged. Even if Defendant had, the Complaint sufficiently pleads common law and actual malice by alleging that Defendant acted out of spite and with reckless disregard for the truth."(See Dkt. 110 at 5)

In summary, the Court upheld allegations relating to defamatory statements that accused Plaintiff of committing criminal acts such as perjury, theft of computer files, extortion, and breaching national security. These allegations were made in Court filings, complaints and informal communications with law enforcement, accusations made to federal officials and Defendant's colleagues.

**Plaintiff's Complaint**

Plaintiff's complaint summarizes the years-long campaign by Victor to try to prosecute me. Victor has been on this malicious crusade for over a decade as he outlined that he would never settle with Platinff. (See Complaint at ¶151). Claiming that I was disloyal to him, he decided to make "all types" of claims against me. (See Complaint ¶ 139, 140).

Victor had spent years poisoning various dockets with false claims of my criminal conduct, so that he could point law enforcement and others to them to support his false claims. (See Complaint ¶7, 16, 90, 91, 94,95, 144, 155). He has enlisted the help of lawyers, computer forensic firms and private investigators to try to gin up evidence against me. (See Complaint ¶ 112). At his behest, investigators have surveilled me, stolen others' mail in a quixotic attempt to collect my fingerprints. On multiple occasions, he has sponsored forensic analyses in an attempt to justify charges against me.

Victor has several times outlined his plan to elicit deposition testimony from me that he could take to that law enforcement to secure a charge against me for perjury. (See Complaint ¶ 101). Defendant has been making such claims for years.

Victor has defamed me to several law enforcement agencies, including the NYPD, police in my erstwhile home town, district attorneys, ICE, and the Department of Justice. (See Complaint ¶ 113). He has also hired third parties to make similar statements on his behalf.

Victor has been in contact with an NYPD detective (See Complaint ¶118), testifying that he had been discussing me with him as recently as 2021, and claiming he would be a trial witness. Victor has also been in contact or hired third parties to contact other NYPD officers and the district attorney's office. (See Complaint ¶ 123).

Emails show this has been ongoing as of April 16, 2019 but it appears that Defendant has withheld documents relating to it within the limitations period. In that instance, Silver Seal, an investigative firm, was discussing taking possession of a letter delivered to one of Victor's employees and proposing that the DA might "issue subpoenas for writing samples, fingerprints or DNA."  A large portion of that email was redacted with no explanation provided. Defendant has avoided production of documents in the limitations period, complicating Plaintiff's efforts to determine the extent of his defamation and the specific instances of it. The very specific cutoff in documents around the limitations period indicates that this is a purposeful effort.

Victor has continued to claim that I have somehow harmed United States national security (See Complaint ¶ 119, 121). Testimony from Victor outlines how he raised this with law enforcement officials in his efforts to have them target me. As recently as last week, he has continued to do so.

**<u>The beginning of the time frame for responsive documents</u>**

I started working for Defendant around December 2008 and continued until August 2013. The issues between the parties began in around 2013 after I started dating Khatskevich (another Victor employee) and learned what Victor had been subjecting her to. Since then, Victor has continually attempted to retaliate against me for assisting her, including attempting to have me targeted by Law Enforcement.

Victor produced a "TYLERTimeline" that outlined what appears to be his interpretation of what the relevant time frame for the events at issue are and was authored to be provided to law enforcement. (Attached as Exhibit A.)

It lists the dates relating to allegations made to law enforcement. Those include:

- January 2013 in which I formed a company.
- "Tyler hacks in my computer on May 15th (2013) and copies a Privileged Client Attorney File".
- "July 2nd (2013) at 1:00AM, about 100 files are copied and stolen to USBs and then erased from my computer. THIS IS WHEN TYLER ILLEGALLY BROKE IN AND ENTERED MY OFFICE APARTMENT".
- February 27th (2014), 4:30 AM, Tyler Hacks into my computer and Modified/copies a file with Attorney Client Information. Many "Airplane" folders are hacked on February 27th, Khatskevich files her lawsuit later that day (February 27th, 2014)."
- May 2014-"I asked my attorneys to find a qualified Expert to see if Tyler is continuing to enter my computer"
- July 2014-"We hire a forensic expert"

- February 2015-"Tyler personally serves me with Nazym lawsuit at 12:10am by hacking into my phone to track my location".
- "July 7th (2016), Tyler submits 5000 pages of stolen/hacked documents to Discovery".

The bulk of Victor's claims to law enforcement were based on acts he claimed occurred in 2013 and 2014. In the time since, he has continually based his defamatory statements on those acts. He has hired attorneys, computer forensic experts, and private investigators to try to find a way to invent evidence to support his claims.

My request for documents asked that: "Unless otherwise indicated, the relevant time period for answering these requests from the period of January 1, 2012 until the present." In comparison, Defendant's document requests sought documents going back to 2010. The parties met and conferred on the appropriate timeframe for discovery, and Victor agreed to produce on the timeframe provided in my requests.

Victor had assigned me to work relating to a lawsuit involving his two aircraft. He later claimed that I stole privileged documents relating to it. See the July 7, 2016 entry on the Victor timeline quoted above. The January 2012 period would include those instructions and documents relating to it, which would show that I didn't steal documents, but rather had authored many of them.

I requested documents from January 1, 2012 to the present. Victor agreed to produce documents within that timeframe and made no timely objection. He has no basis for raising an objection now, years after his production should have been complete.

**Defendant is avoiding production of documents within the limitations period.**

There has been no evidence supplied by Defendant showing that he searched for documents created after 2019 (with the minor exception of his belated search of 2 office email accounts and 3 Dropbox accounts.) In doing so he has avoided production of nearly all documents in the limitations period. (See Dkt.247-1 at 2).

The absurdity of this cutoff is clear in privilege logs such as the latest that included entries from Silver Seal, a investigative firm hired to assist Victor in contacting law enforcement. (Dkt.247-1 p.2 at 5). That log cut off between May 9th, 2019 and August 27th, 2022. Conveniently right at the start of the limitation period for this action, which starts on May 28, 2019, a year before I filed my complaint on May 28, 2020. One of the last entries in 2019 was "3.16.19 Memo Re Erdman Perjury.docx" and it resumed in 2022 with a memo for the district attorney's office. When asked about this gap, Mr. Rodriguez shrugged, guessing "Maybe there's nothing responsive after that date". That appears to be false.

One of the emails from Silver Seal was a September 25, 2019 email from Victor stating: "I don't know why we didn't go to the DA with this PROOF of perjury…Can we go back to the DA – perhaps right after we depose Erdman We are deposing Erdman in a few weeks. What questions should Jonathan be asking him? Can you ask you forensic guys for some good

questions that will show he perjured himself" (See Exhibit B). While Victor had sent that email, he did not produce it himself, nor explain his failure to do so.

Just last week, Victor tried to enact that plan. When my deposition in another action was scheduled to take place, Victor contacted law enforcement in order have them attend the deposition and review the transcript. There have been multiple instances where he has outlined how doing so would assist him in convincing law enforcement to bring perjury charges.

"It's my belief from putting what I heard together so that if there was evidence of perjury, which there is obviously, going forward they would prosecute you."

Victor also testified on December 9th, 2021 that he had been in communication with Detective Bradish of the NYPD regarding me "It could be months. I don't think it was years". He also stated that Bradish would be called as a witness to this action, however he has failed to produce any documents relating to contact with Bradish within the limitations period.

## Conclusion

Defendant has failed to raise any timely objection to the date range of documents asked for by Plaintiff, while misleading the Court as to what was being produced.

He was long since waived any objections and as such should produce documents from January 1, 2012 onward.

The Court had ordered that Defendant produce documents to the "current day", being July 2022. There is little evidence to show that Defendant had ever done so. He should not benefit from his delay. Plaintiff requests that he be ordered to produce to the present day rather than the time of the Order he ignored.

Further, Defendant's productions have exhibited issues with the date information, with many being incorrect, generally being based on when they are collected rather than the document itself. If Defendant is allowed to withhold documents from July 2022 until today, that improper data would result in improperly withheld documents while also giving the opportunity for further deception.

Respectfully submitted,

/s/Tyler Erdman

Plaintiff Pro Se

917-301-0401

Tyler@Erdman.it