UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TYLER ERDMAN,

                *Plaintiff*,

against

ADAM VICTOR,

                *Defendant*.

Case No.: 1:20-cv-04162 (LGS)(GWG)

**AFFIDAVIT**

---

STATE OF NEW YORK
                ss:
COUNTY OF KINGS

1. We are counsel for the Defendant in the abovementioned action and we make this Affidavit as required during the conference with the court held on April 17, 2024 directing us to describe the sources of all documents in our production, as well as what exactly was searched and how any searches were conducted.

2. In order to illustrate to the Court the process that was undertaken in the production of discovery and ESI to the Plaintiff in this action, a background of the computer network of the Defendant is required. The Defendant initially used an iMac computer in his office to produce and save business and personal documents. This was true from in or about 2012 and continues to date. This computer contained the only hard drive on which files were saved and retained by Adam Victor. Adam Victor would not save any files on removable storage devices nor on any cloud-based file management platform.

3. When this iMac computer aged and became in need of replacement, a Mac

laptop was purchased from Apple, and the retiring iMac was brought to an Apple Store and all files from the iMac were transferred onto the Mac laptop. As such, all of the files which were originally saved in the iMac were duplicated on the replacement laptop. This laptop is the Laptop which is maintained to date.

4.  Other employees utilized their own separate computers. These computers in the office were standalone PCs whose files saved onto a networked computer which operated as a centralized file server for these PCs. As set forth previously, only computers of the employees utilized this file server. This file server's hard drives were referred to as "P Drives." Employees were instructed and directed not to save anything on their own hard drives and to save all documents on the P Drives so that they were accessible by Mr. Victor for his business purposes when needed and therefore, he would not need any employee to email him or otherwise send him files they were working on and that might be needed.

### UPLOAD OF ADAM VICTOR COMPUTER

5.  During the course of discovery, the hard drives from his IMac were uploaded to TransPerfect, the document vendor used by Mr. Victor during the document production, on two separate occasions. One such upload of information was in connection with litigation by the defendant against Davidoff Hutcher & Citron LLP while being represented by Braverman Greenspun, P.C. Another upload of his information was done by his former attorneys in this action, i.e. Schlam Stone LLP. The uploads referred to herein are further detailed in the Document Collection section of this affidavit.

### UPLOAD OF P-DRIVES

6.  As was set forth previously to the Court, with respect to the P Drives, the

original drives were initially removed from his offices by the NYPD, who retained possession of those drives. They were removed as a result of allegations by the defendant that Mr. Erdman and other parties had hacked into his computers and stolen the files. Clones of these drives were made and were in the initial possession of SETEC, a forensic analysis firm, to determine if there was any evidence of tampering with them. These drives were sent by Setec in June 2021 to our firm who in turn sent them to TransPerfect for the purpose of the harvesting of the files for discovery in this action. The uploading of this material is further detailed in the Document Collection section of this affidavit.

## UPLOAD OF DROPBOX

7. As such, the repository for all of his computer files, whether related to this action or not, were contained in his hard drive and the employee file server P Drives, with some additional files being located in his Dropbox account. All of the contents of these repositories were given to TransPerfect in connection with this litigation. The date range of the files given to them in the discovery uploads to TransPerfect, their size and page count are detailed later in this affidavit. This range evidences the scope and breadth of the discovery searched and provided to the Plaintiff.

## UPLOAD OF EMAIL ACCOUNTS

8. In addition to the files saved by Mr. Victor and his office, a search was also done of various email accounts mentioned in Plaintiff's document requests, namely nazym@tgds.com and yevgeniya@tgds.com. The sonia@tgds.com and tiffany@tgds.com email accounts were replaced by newer accounts over time, and the defendant had a limit of 10 accounts for the "tgds" domain and therefore, recycled accounts to remain under that

threshold.

## UPLOAD OF iPHONE

9. Lastly, the defendant's iPhone was searched in late 2022, as a result of a court order, for files in this matter. From 2012 to the present day, he has always used an iPhone. During the upgrades of his iPhone, all files (other than the operating system and program files) were always transferred from the outgoing phone to the new phone, such that his current iPhone has all of his files from 2012 to the present day. This is the only instance of his use of any search terms for documents. The search terms used were "TylerErdman", "Tyler", "Erdman", "Yevgeniya", "Khatskevich", "Eve", "Nazym" and "Toktasynnova". The uploading of this material is further detailed in the Document Collection section of this affidavit.

## OVERALL DOCUMENT PRODUCTION

12. During the inception of this litigation, the decision was made by counsel to provide the responsive files to the Plaintiff pursuant to FRCP 34(b)(1)(E) which provides that:

> "(E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."

13. All files were searched and produced to the Plaintiff as they were kept in the

usual course of business. This was done to be overly inclusive and avoid any claims by the Plaintiff that material and other ESI were being withheld.

## DOCUMENT COLLECTIONS

14. On February 24, 2019, two hard drives and a flash drive were sent to TransPerfect by defendant's attorneys at the time, Schlam Stone LLP. These drives were comprised of 126,232 files (by files we mean individual documents which can consist of any size), or 141.19 GB of data. Attached as Exhibit 1 is a spreadsheet from TransPerfect with the relevant data that will be discussed in this section, and will illuminate what has been collected and when.

15. On April 22, 2020, a group of documents was exported from a previous repository of defendant's documents, namely the documents that came from the Braverman firm, to the online database which held the documents comprising the production for this case. The software that maintains this database is known as Relativity. Another export occurred on July 22, 2020 from this same repository to Relativity. Between the two exports, after the elimination of many duplicates, 37,731 files or 9.87 GB of data was sent to the online database.

16. On July 8, 2021, a network collection of data was made by TransPerfect from Mr. Victor's iMac. The email accounts searched as a result of this collection were adam@tgds.com, adamvictor@tgds.com, adam@777.aero, tnallc@aol.com, and adamvictor@transgasdevelopment.com. These were all the accounts that had been previously used by the defendant. Approximately 181.8 GB of data was collected from Mr. Victor.

17. On July 9, 2021, three hard drives were received by TransPerfect from this firm which had been sent to us from Setec, the firm that had done forensics work on computer drives of Mr. Victor's. A copy of the letter from Setec regarding the drives has been attached as Exhibit 2. These drives were the clones mentioned previously in this Affidavit. Between the network data collection and the hard drives provided by Setec, 200,503 files, or 24.4 GB of data was uploaded to the Relativity database, with a date range from June 26, 1997 to July 9, 2021. No search terms were used, except as stated before. When the documents were reviewed by a team of attorneys, they were only reviewed to determine which were privileged, and therefore needed to be added to the privilege log.

18. As a result of an order of the Court dated July 26, 2022, Mr. Victor was ordered to search his devices for any emails responsive to the document requests of the Plaintiff. In November 2022, after providing TransPerfect with the necessary passwords, emails were collected from the yevgeniya@tgds.com and nazym@tgds.com email addresses. Emails from his Dropbox account came from the adam@tgds.com, adamvictor@tgds.com, and 77@77av.cc accounts. This resulted in the collection of 73,769 records after duplicates were eliminated, or 369 GB of data, with a date from June 22, 1996 to November 11, 2022. These were all uploaded to the Relativity database.

19. On December 22, 2022, March 27, 2023, January 5, 2024, and January 9, 2024 emails were collected from certain third parties, namely Sonia Bozic and Patrick Timlin. These emails comprised 220 records, or 80 MB of data, and were uploaded to the Relativity database.

20. In total, the Relativity database, which is how the Plaintiff accesses the

document production, contains 438,454 files or documents (again, each of differing page lengths), encompassing a date range from June 22, 1996 to January 5, 2024. Attached as Exhibit 3 is a spreadsheet from TransPerfect indicating each collection of documents (or "batches" as they referred to them) along with their corresponding date ranges.

**WHEREFORE**, it is respectfully submitted that this Court deem this Affidavit sufficient towards the purpose of what was directed during the conference with the court held on April 17, 2024, namely, our requirement to describe the sources of all documents in our production, as well as what exactly was searched and how any searches were conducted.

Dated: Brooklyn, New York
      May 1, 2024

_____
ALFRED POLIZZOTTO, III

_____
EMILIO RODRIGUEZ

Sworn to before me on
May 1, 2024

_____
NOTARY PUBLIC

JONATHAN AZUA
NOTARY PUBLIC-STATE OF NEW YORK
No. 01AZ6426494
Qualified in New York County
My Commission Expires 05-09-2026