<u>**VIA ELECTRONIC FILING**</u>  July 17, 2024

The Honorable Gabriel W. Gorenstein

Daniel Patrick Moynihan

United States Courthouse

500 Pearl Street

New York, NY 10007

      Re:    Request for Sanctions

    <u>*Tyler Erdman v. Adam Victor, et al.*</u>, **No. 20 Civ. 4162**

Dear Judge Gorenstein,

    I write to request that Defendant be sanctioned for his contempt of this Court's discovery orders and his repeated false statements to the Court. The Court gave Defendant a final opportunity to try and justify his search and production. He has failed to demonstrate he has ever conducted a thorough search at any point for this action. He is in contempt of several of this Court's Orders, has submitted false statements under oath and entirely failed to uphold his discovery obligations. Defendant must be sanctioned for his misconduct.

    Platinff will be making a separate application to compel production, separating the issues will likely make it easier for Defendant to respond to and the Court to address. Platinff apologizes for the delay in making these applications. Defendant's inconsistent statements and lack of clarification has made it extremely tedious to determine and describe what has occurred.

## Meet and Confer Efforts

    My efforts to resolve this discovery issue and convince the Defendant to voluntarily conduct a good faith search have resulted in an impasse, requiring the Court's intervention. The parties spoke on June 5, 2024 with a plan to follow up on June 11, 2024 after counsel could speak to Victor. However, on the 11th, Mr. Polizzotto was not available and would not be for a week, stating "If you can do this without me on the call, this will be able to be done much faster." He was not available until June 18th, when we spoke for 45 minutes. I informed counsel that I would be moving after discussions have not seemed to result in any progress. We also discussed potential ways to deal with third party discovery relating to TransPerfect and SETEC. I had an impromptu in person meeting with Mr. Rodriguez on June 20, 2024 and another phone call on July 17th at 1 PM for approximately 15 minutes.

    Defendant's position is, and has been all along, that he has produced "everything." But that is provably false. Defendant's vendor produced a log that counsel affides identifies all of the sources actually searched for production. The log is at odds with what they claim to have searched and generally shows they have failed to search. Instead, he cobbled together his production in this case from his prior productions in other cases.

1

## The Sources Victor Searched For Production

Mr. Rodriguez's September 3, 2023 affirmation provides at Exhibit A a "collection log [that] lists all the repositories from which documents were produced." (Dkt 202). That document identifies six repositories: (i) a "GDrive 2 (S/N: YAHE1HWT)" collected on July 8, 2021; (ii) three "DropBox Collections," collected on November 9 and 10, 2022; and (iii) two individual mailboxes for Victor employees Yevgeniya Khatskevich and Nazym Toktassynova collected on November 9, 2022.

The Court will recall that prior to collecting items (ii) and (iii) above, Mr. Rodriguez represented that Victor had already produced "everything" plaintiff had requested:

> "The documents were also electronically produced on two hard drives which were delivered to the Plaintiff. He was also informed he would be receiving all documents held by the Plaintiff not subject to privilege, therefore he would be receiving everything he requested, and much more, that was not subject to privilege, and in the Defendant's possession."

Doc 130, Mr. Rodriguez's February 1, 2022 letter to the Court, at 2.

The listed repositories do not square with Mr. Rodriguez's May 1, 2024 Affirmation (the "Rodriguez Aff.") Since the time I served document demands in this action, Mr. Rodriguez claims to have only searched produced from the following: (i) an iPhone in "late 2022" (see Rodriguez Aff. at ¶ 9), there is no evidence of this occurring;  (ii) two office email accounts (id. at ¶ 18); (iii) three Dropbox accounts (id. at ¶ 18);  and (iiii) emails collected from two non-parties (id. at ¶ 19). There is no evidence provided to show he ever conducted a search as ordered.

## Plaintiff's Findings of What was produced:

To determine what was produced I relied on my knowledge of many of Victor's repositories, a review of the productions and privilege logs from this action and four others. In addition, I also reviewed the dockets of approximately 20 actions in which Victor is a party to find discussion of discovery issues.

Plaintiff was able to piece together what was produced in this action despite Defendant's failure to detail it. Platinff found it to consist of:

1. Copies of Plaintiff, Toktassynova and Khatskevich's productions in other actions;
2. 37,731 documents exported from 900,000 document Braverman database created in 2019, selected for responsiveness for another action in 2020.
3. The "GDrive 2" hard drive that Plaintiff had turned over to SETEC in 2018.
4. Two Office email accounts and three Dropbox accounts; and
5. Approximately 250 files collected from, Sonia Bozic and Patrick Timlin.

The Court found on July 26, 2022 that Defendant had never conducted a search and was ordered to do one. He then waited until November to search 2 office email accounts and three Dropbox accounts. Victor failed to search several office email accounts that he admitted to have access to as well as the Dropbox account Victor claimed was illegally accessed.

A review of Defendant's production and privilege log in 2019 shows cutoff in Defendant's emails resulting from him not searching his own email accounts. This is confirmed by emails produced from Timlin to and from Victor which Victor did not produce his own copy of.

Although counsel repeatedly advised that Victor had produced "everything," analysis shows counsel's definition of "everything" was limited to documents Victor reused from productions in other actions. Victor's repeated obfuscation of this point, after repeated judicial instruction to provide a detailed account of how his production was crafted, warrants sanctions.

## Defendant's Affidavit

Defendant relies on an affidavit (Dkt. 266) by counsel who had no involvement in the collection of documents or selection which ones to produce, his representations should be accorded no weight. The review process was done by 5 attorneys who have not been named using processes that have not been explained. "TransPerfect has engaged a team of five attorneys to review these records…", Mr. Rodriguez explained that he did not review documents but "...Instead I oversee the review team, perform quality control of the documents reviewed, and conduct periodic meetings or conference calls with the vendor to ensure everything is running smoothly". (See. Dkt 183 at 2). He lacks the knowledge to be able to speak about his production and his affidavit reflects that.

### A. February 23, 2019 Collection

Mr. Rodriguez references two hard drives and a flash drive, sent to TransPerfect by Schalm Stone LLP on February 23, 2019. This collection pre-dated this action and my document requests. Despite the Court's order, Mr. Rodriguez does not identify what was on these drives or any of the production process.

Plaintiff found those three devices contained Plaintiff, Toktassynova and Khatskevich's document production from the state court actions. Rather than incorporate by reference as the parties had agreed, Defendant added extra Bates numbers, reproduced them and then points to this hand-me-down production as evidence of a voluminous search.

### B. April and July 2020 Collection

Mr. Rodriguez affides that "a group of documents was exported from a previous repository of defendant's documents, namely the documents that came from the Braverman firm, to the online database which held the documents comprising the production for this case." When asked for details, Mr. Rodriguez stated "Braverman would ultimately know more as he [Victor] just followed their instructions."

On April 17, 2024, the Court asked if Defendant had access to the 900,000 documents Braverman collected. Mr. Rodriguez claimed, "We believe, yes, we have access to that set". (See Transcript 50:8-9) When the Court instructed him to search them all he claimed, "according to

3

our vendor, we did." In fact, his vendor said the opposite. During the court-ordered conference (the "Vendor Conference") with Mr. Victor, his attorneys and his vendors, I tried to ascertain this very point. The vendor described how he searched the Braverman database at the direction of Schlam Stone in 2020 to select documents responsive to requests *in another action*. 37,731 documents were exported from the 900,000 and put into the database that was reused for this action. The only things they have been searching is the 37,731 documents and they are unable to identify what those even consist of or the search terms used select them from the original database.

### C.   July 8 and 9, 2021 Collection

Mr. Rodriguez affides to a July 8, 2021 "network data collection of data was made by TransPerfect from Mr. Victor's iMac" and email accounts on it. When asked about such a collection, counsel claimed "…the Braverman firm would be the ones to have knowledge regarding what data was pulled from this computer". Counsel now claims it was another computer, but conveniently the iMac has absolutely no documents on it so they don't need to search it. (They did know explain how they could know that without conducting a search.) There is no evidence to support their claim of either computer having been searched at that time.

Their original collection log lists the July 8, 2021 import as "Network Data Collection" from "GDrive 2 (S/N: YAHE1HWT)". That was a hard drive I provided to SETEC for analysis in 2018. Although this drive was extensively discussed in the various meet and confer discussions between the parties, Mr. Rodriguez simply omitted it from his affidavit purportedly identifying "the sources of all documents" searched for Victor's production in this action.

Mr. Rodriguez's affidavit references three July 9, 2021 entries on the log that are described only as "hard drive". He still has not provided identifying information for those drives, despite having been specifically ordered to do so. "Certainly, you have to be specific as to what the sources are…" (Transcript p. 59:10-11). Plaintiff believes these drives are hard drives Plaintiff provided to SETEC along with "GDrive 2" based on an earlier description:

> *"The hard drives contained different types of files such as movies recorded by the defendant (movies as in general release films) and photographs. These were not produced, namely because none of them were about or included anything having to do with anyone listed in Mr. Erdman's document requests. Duplicates were certainly removed." (Dkt. 246)*

Despite having admitted they withheld documents, they now claim not to:

"No search terms were used…the documents were reviewed by a team of attorneys; they were only reviewed to determine which were privileged…".

Defendant's statements cannot be trusted as they are at odds with their own evidence and statements. Even the most basic details are suspect. He cannot be taken at his word.

### November 2022 Collection

Mr. Rodriguez explains that Victor did not conduct a search for four months after the July, 26, 2022 Order. This appears to be the first collection conducted specifically for this action.

4

The tracker shows yevgeniya@tgds.com and nazym@tgds.com email accounts as having been collected by TransPerfect as well as three Dropbox accounts.[1] The tnallc@aol.com Dropbox account that Victor claimed Plaintiff illegal accessed was inexplicably excluded as well as several office email accounts.

Mr. Rodriguez fails to explain Victor's deduplication efforts, that he had previously addressed in Dkt 181 claiming to have used "custom hashing" to "eliminate more potentially non-responsive documents and reduce the number of documents that need to be individually reviewed." Clearly, Mr. Rodriguez is confused. Search terms are used to search repositories for responsive documents. They are not used for deduplication. The result is the Defendant yet again presenting the Court with misleading and contradictory representations.

## Defendant's contempt for this Court

Defendant has demonstrated his contempt for this Court's orders as well as his willingness to mislead the Court to try and hide his lack of compliance. The Court not only gave him an opportunity to explain himself but also to rectify any issues found. He did no such thing.

> *"THE COURT: I issued an order telling you to say absolutely every single thing that was done to do the production in this case. I don't know. Maybe I need to do that one more time. And this time, if you omit something and it's material, there will be personal consequences to you. I imagine a 50-page document that both of you sign under oath saying exactly what was done to search all of these things, what search terms were used, when it was done, who had custody, and where it all came from." (Dkt. 259 51:23-52:8)*

The Court was extremely clear about the burden Defendant's had to prove about the details of their production and the consequence if they don't comply. Not only did he omit information, he lied under oath about the most material of issues. The Court made clear that Defendant has an obligation to know the facts:

> *"I mean, it's sanctionable to not even just know these things and to not have shared it with the Platinff when I specifically issued orders requiring you to describe in detail all of the search efforts that have been made in this case" (Dkt. 259 at 52:13-18)*

Defendant makes little attempt to explain much of any involvement with his production nor does he seem to even talk with his vendors to gather details. When Platinff made inquiries, Mr. Rodriguez was often quick to state that would be a question for Braverman or a vendor. It is his duty to know the answers, or at the very least try and figure them out. His quickness to try and avoid questions by pointing Platinff to his own agents shows how unserious he is.

As part of the detail, he was to provide, he was to identify all the sources of his production. Platinff raised this in concern to the 3 hard drives collected on July 9th, 2021.

---

[1] Mr. Rodriguez mistakenly identifies these Dropbox accounts as email accounts. Id. at ¶ 18.

> *Certainly, you have to be specific as to what the sources are. And, again, if you have no way of knowing because the original source has disappeared, then you have to say that. Certainly, you have to consult Mr. Victor to put this affidavit together. (Dkt. 259 at 59:10-15)*

Not only did he fail to identify those hard drives, but he lied about the process involved. He previously discussed reviewing documents on them for responsiveness, now he makes claims to the contrary.

Defendant clearly told the Court that they had searched the 900,000 documents collected by Braverman. He told the Court his vendor claimed to have done such a search, while the vendor said the documents were only a subset selected for another action in 2020. His affidavit should have discussed this in detail, but it does not.

Above all, Defendant has failed to meet his burden to prove he ever did a search for this action or produce as he should have. They have been ordered to provide all details to explain their production. Rather than do so, they have said whatever convenient to avoid discovery.

## Requested Relief

Resolving these issues between the parties is impossible if Defendant cannot be trusted on the most basic details. Counsel was ordered to investigate statements from their client rather than accept them at face value. Instead of pushing back on their client so they can be honest with the Court they blindly accept whatever he says. In party discussions, when presented with clear evidence of issues with their production, they simply point to their threadbare affidavits that Platinff already explained were insufficient.

The Court has made clear that Defendant was to disclose everything about his production, and he always resists doing so. The weekly letters he has been ordered to provide might mention a party discussion and how they are to talk to their client or vendor. The letters constantly fail to say anything about that process or much of any substance. They avoid any and all transparency.

Platinff requests that Mr. Rodriguez and Mr. Polizzotto both be sanctioned. They have a duty as officers of the Court to be truthful and they have violated that duty. The Court has given them clear orders and they knowingly flout them. Their behavior is simply unacceptable.

> *THE COURT: Don't. Stop. Stop. Stop. Don't just tell me you've produced everything you had because, honestly, I'd put you under oath right now, and if I turned out to be wrong, I would refer you. So don't just say things, I produced everything I have. (Dkt. 259 at 20:9-14)*

The Court warned them of "personal consequences" for omitting material facts, how their lack of knowledge was "sanctionable", and how lying about producing everything was at their own peril. They tried to explain themselves under oath and had to lie in the attempt. They should suffer the consequences for doing so.

Neither attorney has demonstrated that they take their professional responsibilities seriously nor the good character one would expect from a member of the Bar. They have demonstrated an unwillingness to follow orders and chronic dishonesty in their statements to the Court.

Mr. Polizzotto was clearly ordered to make sure the Court's standards of behavior and rules were followed and he did nothing to do so. Platinff believes the Court should consider a referral for disciplinary action would be appropriate. As officers of the Court, they should be furthering the Court's interests not hindering them.

Platinff requests that Victor be sanctioned for his lack of participation in discovery. He has been a party to dozens of lawsuits, he knows how discovery is supposed to work. I know because he outlined on multiple occasions how to avoid production. He has no excuse for not even searching his own emails for this action.

This is not a case of Victor being improperly represented, but getting the exact representation he seeks. Historically, when his attorneys are in a similar situation, they withdraw citing a medical condition or unpaid bill. Their successor then comes in claiming to right the wrongs and the cycle repeats. Counsel in this action are simply more willing to endure more risk then their predecessors. They would rather be in contempt of Court then contempt of client.

They have decided that there is no punishment worse than producing documents producing documents. Platinff will be making a separate application forthwith to compel production. That process will be futile if Defendant and counsel both don't start obeying this Court's orders and being honest while doing so. To that end Platinff requests that the Court sanction them severely enough to dissuade them from continuing as they have been.

The Court had raised how potential sanctions for attorney's fees could not be awarded to Plaintiff because he is not an attorney. (Dkt 259 at 4:18-5:2). Plaintiff requests that the Court consider instead awarding costs incurred because of Defendant's behavior. Their delay and non-compliance have caused Plaintiff to spend $430.06 for his eDiscovery platform every month. The recurring need to review their production to compare to their statements has necessitated it.

Plaintiff originally served his document requests in October of 2021. Defendant's production should have been completed 32 months ago. At the $430.06/month, that reflects $13,761.92 in expenses Plaintiff incurred to date in order to determine that Defendant has not made a search of his repositories to produce documents in this action.

In the alternative, the Court could base the start date on its July 26, 2022 conference where it found that no search was done and ordered production. Plaintiff has incurred $10,321.44 in vendor costs in the 24 months since that conference. Whichever start date the Court deems appropriate, it is fair to compensate Plaintiff for the unnecessary costs he incurred due to Defendant's vexatious and frivolous discovery misconduct.

Plaintiff requests that the Court order Defendant to pay $13,761.92 in costs to Plaintiff as a sanction for non-production.

Respectfully submitted,<br>
/s/Tyler Erdman<br>
Plaintiff Pro Se<br>
917-301-0401<br>
Tyler@Erdman.it

7