**<u>VIA ELECTRONIC FILING</u>**                                    **August 13, 2024**

The Honorable Gabriel W. Gorenstein

Daniel Patrick Moynihan

United States Courthouse

500 Pearl Street

New York, NY 10007

          **Re:**     **Motion to Compel production**

               **_Tyler Erdman v. Adam Victor, et al._, No. 20 Civ. 4162**

Dear Judge Gorenstein,

Defendant still has not conducted a good faith search of repositories. Defendant has utterly failed to provide evidence to back up his claim of having produced "everything."

As the Defendant's IT provider during the period 2009 to mid-August 2013, I am in a unique position of having in depth knowledge of his repositories and practices. I have additional familiarity from being in litigation with him in New York State Supreme Court since he sued me in October of 2013 and conducting reviews of documents produced in that case and several others.

Set forth below is a list of repositories that Defendant should have searched, but did not, as well as specific documents that should be produced. I respectfully request that the Court compel him to search and produce them all. Victor had a duty to preserve all of these repositories as a result of their relevance to the many actions to which he has been a party in the last fifteen years or so.  He has no excuse for his failure to produce.

## Meet And Confer Efforts

My efforts to resolve this discovery issue and convince the Defendant to voluntarily conduct a good faith search have resulted in an impasse, requiring the Court's intervention. The parties spoke on June 5, 2024, on June 18th, when we spoke for 45 minutes, on July 17th for 15 minutes and on July 24th for 9 minutes, and August 2nd for 10 minutes. I had an impromptu in person meeting with Mr. Rodriguez on June 20, and we have corresponded regularly. I informed counsel that I would be moving.

Defendant's position is, and has been all along, that he has produced "everything." But that is provably false. Defendant's vendor produced a log that counsel affides identifies all of the sources actually searched for production. The log is at odds with what they claim to have searched and shows the many repositories left unsearched. Instead, Victor cobbled together his production in this case from his prior productions in other cases. The result is wholly unsatisfactory. Even when some of the repositories at issue in this motion were searched for the prior productions, only a fraction of the documents contained in them were produced in those other actions. Accordingly, the vast bulk of the repositories Victor concedes are relevant have gone unsearched for this case.

1

## Brief Summary of Plaintiff's Defamation Claim

Beginning in 2013 and continuing through the present, Adam Victor repeatedly claimed that I had stolen documents from him in the 2012-2013 time period. Starting in 2013, Victor hired "forensic" specialists to investigate and provide proof of my supposed theft of his documents. He has claimed that these allegedly stolen documents have a value in excess of $100 million. His story about the purpose or details of these thefts has varied over the years. On some occasions, he has claimed that I might intend to open a coal-gasification plant in Kazakhstan or sell the documents to foreign interests. On other occasions, he has claimed that I illegally entered his premises to steal these documents. He has also repeatedly claimed that I somehow tried to extort him. Time and again, between 2013 and the present, he has peddled these false claims to law enforcement in an effort to get me arrested. His primary motivation for fabricating these claims and trying to prosecute me, is that since 2013 I have aided various people suing him for sexual harassment.

## Plaintiff's Findings Of What Victor Produced

I compared Defendant's production in this action to statements and productions made in other actions. I found that Defendant has never conducted a proper search for this action. Prior to the Court's July 2022 conference, the only sources I was able to identify as being produced from are

1. Copies of Plaintiff, Toktassynova and Khatskevich's productions in other actions
2. 37,731 documents exported from a 900,000-document set in the Braverman database.[1]
3. The "GDrive 2" hard drive that Plaintiff had turned over to SETEC in 2018.

At the July 2022 Conference, the Court found that Defendant had never conducted a proper search and ordered that he do so. Since then, the searches Victor has conducted are limited to:

5. Two of 11 Office email accounts
6. Three Dropbox accounts; and
7. Approximately 250 files collected from Sonia Bozic and Patrick Timlin.

Defendant never searched and never produced "everything," as he frequently claims. His own list of what was searched shows this is impossible (See Dkt. 277-2). Plaintiff's attempts to have Defendant willingly fix the deficiencies of his search have proven pointless as Defendant simply claims to have searched everything despite having no evidence to support his claim.

Defendant has been ordered to explain why his production and privilege log had a clear cutoff in 2019, which he has not. It would appear the explanation is simple; he hasn't conducted a search since then. The result is that Plaintiff has been deprived of getting discovery of documents within the limitations period.

The only way to resolve this impasse is by having the Court order that Defendant yet again failed to search and that it needs to be remedied by a thorough search and production.

---

[1] Defendant has not demonstrated he has ever searched those 900,000 documents for this action or even has access to them despite telling the Court they had been searched.

## Plaintiff's Document Requests

The Court had found that Defendant waived any objections to document requests by his lack of written response. Defendant agreed to search for and produce documents responsive to all 39 of Plaintiff's document requests from January 1, 2012 to the present. Those requests are attached as Exhibit 1. In summary, those requests seek documents:

- Relating to Plaintiff, Khatskevich & Toktassynova (See DR 1,2,5,6,7,8,9,10,12,13,19, 32, 36)
- Relating to claims of criminal acts (DR 11,16), calculation of damages relating to them (DR 32) and Victor's net worth (DR 31)
- Related to Forensic examinations (DR 15,17,18) & Private Investigators (DR 14)
  - "Copies of data extracted, reports, and discussion of findings resulting as part of any forensic examination..." (DR 17)
- Identifying Victor's employees (DR 34) and their immigration status (DR 33)
- From office email accounts (Dr 21)
- Relating to affidavits drafted, executed or planned that relate to 9 persons.
  - 7 of them worked for Victor,
  - One is Victor's daughter who Victor claimed motivated Plaintiff's criminal acts (DR 20) and who Victor coerced into submitting an affidavit on his behalf.
  - One of Victor's mistresses who submitted an affidavit on his behalf. (See DR 37)
- Relating to offers of compensation related to testimony, affidavits or cooperation. (See DR 38)
  - Bozic emailed Victor about her receiving 10% of money collected from Plaintiff, she subsequently signed two provably false affidavits.
  - Agreements were made that conditioned payments on assisting in litigation.
    - Financial records relating to 4 of those people. (DR 35)
- Relating to legal fees Victor or his entities paying other persons' legal expenses, including those relating to Karla and Louis Castellar.
  - Victor had made claims to the NYPD relating to the Castellar's and claimed to be conducting forensics relating to them. (DR 18) Victor funded litigation against the Government for them to receive a visa.
- Relating to Victor's condominium ("MPC").
  - Defendant's defamation was driven in part in the hopes that criminal prosecutions would force lawsuits against Victor and MPC to be withdrawn.
  - Documents relating to disclosure of those litigations to MPC (DR 23, 25).
  - Documents relating to claims he would indemnify MPC in exchange for being allowed to pursue his attempts at having criminal charges brought. (DR 26), obtain insurance to fund his plan (DR 28) and communication with staff including one whom Victor claimed was responsible for retaining repositories. (DR 29,30)
- Efforts to retrieve responsive documents from custodians Victor claimed had possession in any litigation (DR 22).

## Sources Requiring Review

### 1. Defendant's unsearched hard drives

During my employment by Victor, I was to make sure data was retained regardless of cost. Victor has testified to similar in a 2018 Affidavit (Attached as Exh. 2) stating:

> *"To my knowledge, each time a computer was retired, and its data transferred to another computer, the hard-drive from the retired computer was stored in a specific cabinet in my office. The computer itself was stored in the building for a certain period of time, during which it might be sold; if it was not sold, it would be disposed. That was my standard operating procedure". (Exh. 2 at 10)*

> *"I routinely retain old hard-drives at my office. Consistent with that routine, I still have what I believe to be all of the old computer hard-drives I have used since meeting Mr. Erdman in 2009. My possession of these hard-drives, which I can demonstrate at an evidentiary hearing, severely undermines Mr. Erdman's assertion that he has old hard-drives of mine." (Exh. 2 at 5-6)*

Victor's "standard operating procedure" is to have a cabinet full of hard drives that he knows are relevant to his many pending litigations. He swore he retained those hard drives in his 2018 affidavit. Even so, he has not searched them. Nor has he explained why he did not do so. Indeed, in this action he has pretended they don't exist. He should be ordered to explain his failure, catalog all the referenced hard drives, and produce them.

### 2. Forensic Images & Vendor collected data

Victor had forensic images made of various of his computers and devices, supposedly to help prove that I had "hacked" them to steal documents. Nonetheless, despite demand, Victor has refused to produce the forensic images. They should be produced now.

Further, Many of Victor's interrogatory answers claim various forensics firms have possession of certain of his repositories. But there is no evidence that those repositories have been searched for production. Despite these firms' professional focus on chain of custody, Defendant hasn't provided any evidence that they provided "everything" for production. While they likely have the most important data related to this action, it would appear Defendant is withholding it.

Data from these forensic firms is vital. They created forensic images, copies of computers and devices in their entirety that they used to try and support Victor's false claims. Searching for a keyword such as Plaintiff's name isn't going to find documents Defendant claimed were stolen nor the data to disprove that claim. Production of these forensic images is vital so that Plaintiff can pursue this action. There is no substitute.

Beyond the forensic images, it is clear that the various forensic firms & vendors Victor has used over the years have data that has not been produced.

### *RVM*

One of those firm's is RVM, whom Victor has called RVSM. They appear to have been the first firm that Victor retained. They collected data from multiple computers and at least one cell phone. Victor claims that Khatskevich's laptop computer was given to them:

*"It was handed over to defendant's lawyers at the time, Davidoff Hutcher, who then produced them to the forensics firm Mr. Victor was using at the time, RVSM. To the best of defendant's recollection, RVSM sent what they had to Setec. The files were also turned over to John Brennan, Plaintiff's lawyer in state litigation pending between the parties." (Dkt 243)*

Defendant offers no proof that RVM turned over anything to Setec or anyone else. Victor has no excuse for not producing documents from the laptop it in this action. Emails to Victor from RVM asked for instructions as to whether data should be turned over to him or destroyed. He should show where it ultimately ended up and produce from it.

### SETEC

SETEC had done substantial work for Victor. Invoices reflect them having created forensic images and collected data from several computers and devices.

*"Prior to this motion, I sent my hard drives to a computer forensics company known as SETEC…SETEC informs me that an examination of the six hard-drives I sent to them reveals that collectively they were in use from 2010 to 2014, which is almost the entire time that Mr. Erdman worked for me (2009 to 2013). This examination is consistent with my standard procedure described above, whereby I would retain used hard drives". (Exh. 2 at 11)*

There is no evidence showing SETEC provided six hard drives that Victor had provided to them. Instead the evidence shows, only 4 hard drives were sent TransPerfect most of which was withheld. Those drives weren't even Victor's but rather ones from Plaintiff. Emails show Victor wanted another forensic firm to conduct an analysis as SETEC was unable to find information on them to support Victor's claims. There is no evidence that Victor ever requested his own data or devices from SETEC for production.

Victor should retrieve all of his data and devices from SETEC and produce them.

### TransPerfect

The logs provided by Defendant show at least 3 hard drives that were received by TransPerfect but no production was made from them. Defense counsel have been evasive about what repositories they have. Defendant should investigate all of the repositories that he has in his possession and any that have disposed of or transferred to others. All should be produced.

## 3.  Records from Davidoff Hutcher & Citron

Victor's January 7, 2022, interrogatory responses named Davidoff Hutcher & Citron ("DHC") as a custodian of responsive documents, despite having settled his dispute with them in March 2021.  (See Dkt. 130-1 at 5-9, 17-18). This is inexplicable, Victor has admitted, DHC returned his records to him. (See. Dkt 172 at 24). Mr. Rodriguez confirmed to me that he had received a hard drive from DHC, but couldn't recall details of providing it to TransPerfect for review. His affidavit and collection log ignore it. It should be searched for production.

## Victor Computers

Victor contends that the only computer on which he "saved and retained" documents was an iMac computer and its iMac laptop replacement. Rodriguez Aff. at ¶ 3. This is false.

### 4. *Victor's Mac Pros*

During my employment, Victor primarily used his kitchen computer for work and that appears to have continued. There is no mention of it having been searched. This screenshot from a June 14, 2015, video shows Victor using his Apple Mac Pro in his kitchen to review a photo of Khatskevich taken on one of his private jets.



Victor told law enforcement that his Mac Pro and the four hard drives within it were "hacked" by Plaintiff. Invoices show Victor had forensic images created from them. Despite being central to Victor's defenses, he did not produce the forensic images of his Mac Pro, its hard drives or documents stored on them. Now, in responding to the Court's order, Victor he attempts to hide the existence of the Mac Pro and its four hard drives from the Court.

That Mac Pro was replaced by a newer model between December 2013 when that model was released and the July 2015 photo. Screenshots appearing to be from the newer Mac Pro show that it is a repository of certain emails that were removed from the "cloud" and would not be accessible elsewhere. In the time since that Mac Pro likely been replaced as well. Defendant must produce the forensic images of all of his Mac Pros and all responsive documents on them.

### 5. *Victor's iMac*

Victor's production shows he had forensic images of the iMac created in 2014 and 2017, but they have not been produced. These are directly relevant to his claims that I "hacked" his computers. They should be produced.

### 6. *Victor's Laptops & iPads*

Victor claims that an iMac laptop was his primary computer as of an unspecified date (*see* Rodriguez Aff. at ¶ 3) but he provides no details about it nor of any search conducted from it. Further, Victor omits reference to the multiple laptops he used during my employ. It is implausible that he had a single laptop. Additional he makes no mention of having searched his iPads. They should all be searched.

### 7. *External Hard Drives*

Victor's claim that his iMac is the only hard drive on which he saved documents is false. An August 3, 2016 screenshot shows Victor reviewing a set of documents related to his allegations of "hacking." It shows him using DropBox, a "cloud-based file management platform," as well as "removable storage devices," such as the "STORAGE" drive. All of his external hard drives should be searched for production.

### 8. *Victor's Cell Phones*

Victor claimed that I "hacked" his cell phone to find his location, but he failed to search the phones at issue. His search of an iPhone in 2022, appears designed to avoid responsive documents. He didn't search text messages and the like, but rather only some email accounts, "Adobe" and "Dropbox". See Rodriguez Aff. at ¶ 9. Further, the search terms used – my name and that of two plaintiffs suing him for sexual harassment in state court – are woefully inadequate to capture responsive documents even on the limited iPhone repositories he searched.

There is no evidence of any production resulting from this search as there is nothing on the collection log reflecting it, nor documents produced that appear to be from it. Victor's "search" succeeded in finding no documents. In his other cases, he has turned over his phones for professional collection but chose not to do so in this case.

Further, Victor has long had a plethora of phones at any given time. He generally carried 2 phones daily and would have approximately six he would pick from. Despite this, he failed to search any of his other phones for production and has inexplicably hidden them from the Court. Accordingly, all of Victor's cell phones should be searched for production.

## Online Accounts

### 9. *Victor's Email Accounts*

Victor produced a document listing his email accounts, presumably for Braverman's document collection in 2019 (See Dkt. 198-2). That collection was reused for this action despite Defendant not knowing anything about the efforts relating to it. As a result from 2019 onward there is a gap in his production and privilege log where he failed to produce emails. Emails produced from Patrick Timlin between himself and Victor after 2019 demonstrate that the gap is not for lack of documents but due to a failure to search.

The accounts listed by Victor in Dkt. 198-2 should be searched and produced from to the current day. Those accounts are set forth below:

1. tnallc@aol.com
2. avictor@transgasenergy.com
3. adamvictor@transgasdevelopment.com
4. adamvictor@tgds.com
5. adam@tgds.com
6. adam@777.aero
7. adam@transnational.aero
8. adam@77xav.com
9. 77@77av.cc
10. adamvictor@adamvictor.cc
11. adamvictor@adamvictor.net
12. adamhvictor@gmail.com
13. adamvictorsr@gmail.com
14. avictor@avictor.com
15. adam@771av.com
16. adam@9176008000.com
17. mrmusclemanson
18. sargonthegreat1
19. gasorange
20. transgasds@gmail.com
21. tgds77@gmail.com
22. transnationalms@gmail.com
23. tgds777@gmail.com
24. adam@gasalternativesystems.com
25. transgas@tutanota.com
26. adamvictor@protonmail.com
27. avictor@nyc.com
28. adam.victor@me.com
29. tnallc@me.com

### 10. *Employee Email Accounts*

Victor explained that only 2 office email accounts were searched because they were named in document request, rather than searching all accounts in his custody and control as requested.

Victor maintained two sets of 5 email accounts for his office. He told the Court "accounts were replaced by newer accounts over time," but explained at the vendor conference that was not the case. He didn't "replace" accounts but rather renamed them. An email account might change from tiffany@tgds.com to karla@tgds.com but all the data would remain within it. He has access to all of those accounts; they should be searched regardless of what they may have been renamed. Additionally, a separate account, baysideenergy@aol.com, was used for much of the office's daily operations. That should also be searched.

### 11. *Apple Accounts*

Victor maintains several Apple accounts which contain responsive information. The "Find My" or "Find My Phone" functionality of these accounts were central to Victor claiming that Plaintiff had "hacked" his phone as well as his claim of being extorted in part by false claims that Victor used the same to stalk Toktassynova and Khatskevich. Each account contains emails detailing any time "Find My Phone" was used and would be dispositive of Victor's claims relating to them.

These accounts also contain notes, photos and other data that should be searched. Any search should include the entire contents of the accounts.

Dkt. 198-2 also listed "APPLE" accounts that were used by Victor. These being:

1. adam@777.com
2. adamhvictor@gmail.com
3. adamvictor@icloud.com
4. adam@tgds.com
5. adam.victor@me.com
6. adam@tgds.com
7. adam@777.com
8. Adam.victor@me.com
9. Tnallc@me.com

### 12. *Dropbox Accounts*

In a 2018 Affidavit Victor filed claimed:

*"I have also discovered that Mr. Erdman likely 'hacked' into a 'Dropbox' account I maintained under the email address tnallc@aol.com."* (Exh. 2 At 16).

TransPerfect searched 3 Dropbox accounts but not this tnallc@aol.com account. Its glaring omission should be explained, and the Dropbox account should be searched. Any employee accounts should also be identified and searched. Victor also subpoenaed information from Dropbox in a litigation that Plaintiff is not a party, that should also be produced.

8

## Office Computers and Devices

### 13. *P-Drive*

The Court has previously dealt with the issue of the "P-Drive". Even so, Victor still has not produced from it. Emails show Victor kept copies of it and that SETEC was tasked with retrieving it from the NYPD in 2017. Without evidence, Defendant now claims he received it from SETEC in June 2021 and forwarded it to TransPerfect. Mr. Polizzotto's response to my inquiry was equivocal:

> *"The information that was supplied to Transperfect and SETEC consisted of the "P-Drive" and computers as per Adam Victor's statement during the conference and in our statement to you. I cannot further detail the basis for that statement except that the volumes of discovery that were produced to you came from the sources set forth in the repository list."* (2/16/24 Email)

There has been no evidence to show that the P-Drive was searched for production. Defendant's naked assertion that it was produced lacks credibility. The Court has made clear orders that the P-Drive is to be searched, those should be followed.

### 14. *iMac & Hard Drive for Film Editing*

During Plaintiff's employ, Victor claimed to have spent over half a million dollars to film and edit video footage with the hopes to create a reality TV show about himself. Victor claimed that Plaintiff had illegally accessed the iMac computer that was used to store and edit that footage, and had a forensic analysis conducted in the hopes of supporting his claim. (See Exh. 2 at 14)

A hard drive, a "Pegasus R6," was attached to that computer and contained the files Victor claimed were accessed. Victor should produce a forensic image of both the Film Editing iMac and the Pegasus R6 drive that stored the footage.

### 15. *Office Computers*

Victor's longtime assistant, Nana Wolfe used an iMac computer as her office computer. She stored documents on that computer that were not stored on the P-Drive. It should be searched and the responsive documents on it should be produced.  There were several other computers in the office, including one dedicated to document scanning. They should be searched for production.

## Request for Relief

### *Compel Production of Documents*

Victor has already been ordered to ordered to search all repositories in his custody and control and he has entirely failed to do so. The Court should find that he has failed to prove that he conducted a search as ordered.

The Court should order that Defendant respond to Plaintiff's document requests in full and conduct a search including but not limited to the repositories listed in this application. Those being:

1.  Unsearched hard drives

2.  Forensic Images & vendor collected data

3.  Records from DHC

4.  Victor's Mac Pros

5.  Victor's iMac

6.  Victor's Laptops & iPads

7.  External Hard Drives

8.  Victor's Cell Phones

9.  Victor's Email Accounts

10. Employee Email Accounts

11. Apple Accounts

12. Dropbox Accounts

13. P-Drive

14. iMac & Hard Drive for Film Editing

15. Office Computers

### *Increased Transparency*

The Court ordered weekly letters be sent to Plaintiff detailing Defendant's efforts to comply with his discovery obligations. They have entirely lacked any substantive information about what he has done. This has resulted in Defendant claiming to be working to answer questions but instead doing nothing for weeks at a time. Plaintiff needs increased transparency into any efforts to complete discovery and ensure anything is being done.

If the Court orders Defendant to conduct a new search, Plaintiff requests that as he works to locate all repositories in his custody and control that he have to report the progress of those efforts daily until complete. Any repository located should be inventoried with details sent to Plaintiff. Those details should include serial numbers, photographs of the device, chain of custody information, and a description of what device each repository may have been used with. This would serve to ensure compliance and reduce Defendant's ability to create delay.

Plaintiff also requests he be included in communications with Defendant's vendors going forward so that he can be aware of what instructions are being given and what repositories are provided to them. Further, Plaintiff should be allowed question those vendors during the process.

### *TransPerfect should be replaced*

Defendant has recently admitted that his vendor, TransPerfect, has gone unpaid since an insurance policy was exhausted. As a result, they have entirely blocked his access to Relativity, his eDiscovery platform. Without it he cannot review or produce documents. Presumably they would

also not do any further work for Defendant. Defendant claims to be working with another insurer to get coverage, but he has claimed to have been doing so since 2021 so that claim is dubious.

Beyond that dispute, TransPerfect has failed to be transparent about anything relating to this production. At the vendor conference they knew little of what they had done for Victor, as many of those involved have since left the company. As a result, they were able unable to describe what repositories they have access to, or much of any detail of what was done in relation to this production.  This is exacerbated by them having retained several contract attorneys to conduct the document review. No one has been able to identify who they were or details of what they did. The production and privilege logs TransPerfect provided withheld important information in an apparent hide Defendant's failure to search, such as by removing date information from the privilege log. Rather than positively contribute to discovery, they have hindered it. They cannot be trusted to resolve the issues which they helped create.

As such, Plaintiff requests that Defendant be ordered to replace TransPerfect with a different vendor agreed to by the parties that affides to its intention to comply with the tasks this Court orders with the necessary transparency.  As the relationship has already soured, and a new search would require the same work whether done regardless of which vendor is involved, the burden of this change should be minimal particularly as Defendant stated that his insurer will be paying for it.

### *Transcript Cost*

Plaintiff had spent $452.60 to order the transcript from the prior Court conference. Defendant agreed to reimburse that expense and Plaintiff provided him with a copy of the transcript. Since April I have been unable to have them do so. Mr. Polizzotto stated during a phone conversation that I should resend the invoice, and he would send the payment. I have done so on several occasions. Plaintiff requests that the Court order them to tender that payment as agreed.

### *Time to Response*

Lastly the parties discussed how additional time would be required to respond to this this letter due to the detail required. The parties agreed that a week would likely be required, making their response due on August 20th.

Respectfully submitted,

/s/Tyler Erdman
Plaintiff Pro Se
917-301-0401
Tyler@Erdman.it

11