

**6911 18TH AVENUE**
**BROOKLYN, NEW YORK 11204**
**TELEPHONE (718) 232-1250**
**FAX (718) 256-0966**

ALFRED POLIZZOTTO (1935-2001)
ALFRED POLIZZOTTO III*
_____
EMILIO RODRIGUEZ
_____
*(ADMITTED NEW YORK, NEW JERSEY)

LONG ISLAND OFFICE
1129 Northern Boulevard, Ste 404
Manhasset, New York  11030

<u>**VIA ELECTRONIC FILING**</u>                                                         August 21, 2024

The Honorable Gabriel W. Gorenstein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:  **Response to Erdman ltr dated August 13, 2024**
         <u>*Tyler Erdman v. Adam Victor, et al.*, **No. 20 Civ. 4162**</u>

Dear Judge Gorenstein,

  This letter is written in response to the letter of the Plaintiff dated August 13, 2024, in which he requests the Court compel the defendant to search repositories that were allegedly not searched.

  Initially, Plaintiff raises issues with the parties' efforts to meet and confer, specifically an inability of Mr. Polizzotto to meet on or around June 11, 2024.  On that date he had an appearance in the Surrogate's Court of Kings County.   On June 12, 13 and 18, he attended hearings in divorce cases in the Supreme Court of Kings County, with days full of appointments in between, as well as time needed to prepare for those hearings.  Mr. Erdman tends to request meetings upon 24 hours' notice, which can be problematic for busy attorneys.  His letter also describes how there was no meeting held between June 20 and July 17, mostly because we heard nothing from him during that time.

  *The Sources Victor Searched for Production*

*PLEASE RESPOND TO BROOKLYN OFFICE*

As indicated in our Affidavit of May 1, 2024, ordered by the court (Docket #266), which has been attached as Exhibit A, Mr. Victor stored his files originally on an iMac computer, which was replaced by an iMac laptop. All the files which were on the desktop were transferred to the laptop. Servers where employee files were stored were known as the "P Drives". As shown on the trackers attached to Docket #266, the hard drives from the laptop were uploaded to the document vendor. Two other law firms which had previously represented Mr. Victor, Davidoff Hutcher and Schlam Stone, also uploaded documents to the document vendor in their possession. The source of these documents was the iMac mentioned above.

The P Drives mentioned previously were removed by the NYPD, who retained possession of those drives. Our Affidavit of May 1, 2024 states this was done as a result of an investigation into whether the Plaintiff and others had hacked into Mr. Victor's computers. Clones of these drives were made by Setec, the forensics firm employed by the defendant, and sent to our firm in June 2021. Upon receipt, we forwarded them to our document vendor.

Another source of documents was Mr. Victor's Dropbox account, as also described in Docket #266. The collection of documents, as well as its size and scope, is best described in the section labelled "Document Collections" in our Affidavit of May 1, 2024.

*PLAINTIFF'S DEFAMATION CLAIM*

Plaintiff's assessment of his own claim is flawed and, as such, we have no need to address it for the purposes of this letter.

*PLAINTIFF'S FINDINGS OF WHAT DEFENDANT PRODUCED*

Again, we refer to previous submissions and our attached Exhibit A regarding the sources of the Victor production, what was searched, and what was produced. We have attached as Exhibit B a list of email accounts created and used by the defendant over the years. In fact, paragraph 16 of Exhibit A indicates the only email accounts on that list which contained documents responsive to plaintiff's requests, and from which emails were produced, with the exception of a sixth email account, namely adam@gasdevelopmentsystems.com. The other 22 accounts on that list were created but never used by Mr. Victor and, therefore, contained no emails.

*SOURCES REQUIRING REVIEW*

As was stated in previous submissions, and especially our Affidavit of May 1, Mr. Victor's production has totalled over 438,000 files or documents. The total size encompasses over a million pages and hundreds of gigabytes of data. Plaintiff alleges there were numerable hard drives not included when, after many duplicates were removed, he still received over 438,000 files. Forensic images would have resulted in duplicates which, as stated, were removed as part of the process. His allegations regarding Setec and any other forensics firm utilized by Mr. Victor were addressed in Exhibit A.

The allegations regarding TransPerfect almost read as a wilful ignorance of plain data. For the Court's convenience, I am including a "tracker" submitted by our vendor as Exhibit C to this letter that was previously submitted by this office as Exhibit 1 to Dkt #266, which is the May 1 Affidavit. In it, data clearly shows how many files were pulled by the vendor from the hard drives he mentions in this section. At this point, Mr. Erdman is just making the same allegations over and over again without any substance behind them.

### *RECORDS FROM DAVIDOFF HUTCHER & CITRON*

Mr. Erdman makes reference to interrogatory responses (namely Dkt. 130-1 at 5-9, 17-18) involving, according to the responses mentioned, documents that were in the possession of Davidoff Hutcher from 2015. Not only were any hard drives sent to this firm handed to our document vendor, as shown by our submissions, but it should be noted Plaintiff has expended many pages battling over data from time periods such as those involved here that are well beyond the statute of limitations of his own complaint. Any data from Davidoff Hutcher would be from well before June 2019. Even if Mr. Victor were made to produce this data yet again, none of it comprises data that Plaintiff would be able to use to prosecute his case as it would all be time-barred.

### *VICTOR COMPUTERS*

Paragraphs 3-5 of our Affidavit of May 1, again included as Exhibit A, discuss the process involved in gathering data from Mr. Victor's computers. The trackers received from our document vendor support our allegations. Plaintiff continues to make baseless assertions that contradict our data to further delay the progress of this case.

### *ONLINE ACCOUNTS and OFFICE COMPUTERS AND DEVICES*

Our exhibits to this letter both discuss, as stated before, the process undertaken regarding the email accounts created and used by the defendant. These exhibits also describe the process involving employee email accounts, apple accounts, the Dropbox accounts, the P-Drives, any other computers utilized by Mr. Victor in his office, and the extensive efforts undertaken by our document vendor. The vendor has done an excellent job in not only describing the process of collection of the data from all the different sources over the years, but also in answering Mr. Erdman's numerous questions. Plaintiff chooses to act oblivious when it comes to the answers provided and keep insisting to the court there are pages and pages of hidden documents, when as shown by the data provided there are none.

Mr. Erdman makes reference to a gap in our production and privilege logs. The explanation for our privilege log containing no documents past 2019 is simple: there are no documents we choose to protect after the last document in our log. Our data clearly shows there were documents in the productions with dates as recent as 2022, but the list of documents we chose to protect ends with documents dated 2019.

*REQUEST TO COMPEL*

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). Motions to compel, pursuant to Fed. R. Civ. P. 37, are left to the sound discretion of the court. See United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000).

The Second Circuit in the case of Mirza v Orange Regional Med. Ctr., 2024 U.S. App. LEXIS 14748, clearly stated the proper standard for review of a motion to compel: "We review the denial of a motion to compel discovery for abuse of discretion. See In re 650 Fifth Ave. and Related Props., 934 F.3d 147, 156 (2d Cir. 2019). A district court abuses its discretion in this context "only when the discovery is so limited as to affect a party's substantial rights." *Clark v. Hanley*, 89 F.4th 78, 91 (2d Cir. 2023) (quoting In re Agent Orange Prod. Liab. Litig., 517 F.3d 76, 103 (2d Cir. 2008))."

In the instant case, there has been no limit placed on discovery. Plaintiff's experience throughout this entire process has been quite the opposite, as our data has shown the provision of over 438,000 files and over a million pages to Mr. Erdman, encompassing a time period from 1996 to 2022 as stated in Exhibit A. More than twenty years of the data provided is time-barred according to his own Amended Complaint. The Court would not be abusing its discretion in denying his motion to compel and, instead, would be furthering the cause of fairness and equity in doing so. In fact, if any party has had their substantial rights affected in a negative way it is the defendant as, to this day, we still do not have access to Plaintiff's responses to our document responses. Since the expiration of the link to his document production a long time ago, a link

that expired quickly, Plaintiff has failed to follow up with the provision of access to his responsive documents. Instead, he inundates the court with requests for sanctions and applications to comply with discovery when we have provided all the information and data showing what sources documents were collected from, how they were collected, and the search terms used to find them when necessary.

*CONCLUSION*

We therefore ask the Court deny his motion to compel in its entirety, require him to make it possible for us to regain access to his document production, and for any and all relief the Court deems just and proper.

Yours faithfully
**Polizzotto & Polizzotto, LLC**

*Emilio Rodriguez*
Emilio Rodriguez

*Alfred Polizzotto III*
Alfred Polizzotto III