```
                     UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
         -----------------------------:

         TYLER ERDMAN,                 : Case No.: 20-CV-4162

                         Plaintiff, :

              v.                       :

         ADAM VICTOR,                  : New York, New York

                         Defendant. : September 6, 2024

         -----------------------------:
```

            TRANSCRIPT OF STATUS CONFERENCE HEARING

        BEFORE THE HONORABLE GABRIEL W. GORENSTEIN

              UNITED STATES MAGISTRATE JUDGE

```
         APPEARANCES:

         For Plaintiff:          TYLER ERDMAN, PLAINTIFF PRO SE
                                 241 W 200 S
                                 Apartment 630
                                 Salt Lake City, Utah 84101

         For Defendant:          POLIZZOTTO & POLIZZOTTO
                                 BY:  Alfred J. Polizzotto, III
                                 6911 18th Avenue
                                 Brooklyn, New York 11204
```

```
         Proceedings recorded by electronic sound recording;
         Transcript produced by transcription service.
```

            AMM TRANSCRIPTION SERVICE  631.334.1445

1    THE DEPUTY CLERK:  Good afternoon.  This is

2 in the matter of Erdman v. Victor, et al.; Case

3 Number: 20-cv-4162.

4    Starting at plaintiff's counsel, please

5 state your appearance for the record.

6    MR. ERDMAN:  Tyler Erdman.

7    THE COURT:  Okay.

8    MR. POLIZZOTTO:  For the defendant, Adam

9 Victor, Alfred Polizzotto.

10    MR. RODRIGUEZ:  Also for the defendant,

11 Adam Victor, Emilio Rodriguez.

12    THE COURT:  Okay.

13    All right.  You can be seated if you're not

14 speaking.

15    We're here based upon two letters, I guess,

16 Dockets 279 and 281.  I have to say there's not a

17 lot of clarity in my mind about what is going on.

18 There's also not a lot of clarity in my mind about

19 what we're looking for and even what defamatory

20 statements we're talking about.  All this makes it

21 very hard to deal with this discovery dispute.  I

22 mean, we're going to have to slog through it.

23    I mean, you know, the only statements that

24 can be the subject of the defamation claim have to

25 have occurred a year before filing the complaint,

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1   which I guess would be sometime in June 2019 to June
 2   2020.  That doesn't mean that there might not be
 3   relevance.  If the defamatory statements are about
 4   things that happened beforehand, then I gather
 5   that's the basis for which plaintiff is seeking
 6   discovery from the earlier period.  That's not
 7   unreasonable to do so.
 8              I realize -- you know, it's not going to
 9   happen.
10              THE DEPUTY CLERK:  I know.
11              THE COURT:  You're going to send a message
12   to someone.
13              Sorry about the blinking light.  There's
14   one out, and there's one blinking.  Two out.  Three
15   out.
16              THE DEPUTY CLERK:  I just fixed the lights,
17   too, but I'll --
18              THE COURT:  There's five out -- six out --
19   seven, and then one blinking.  So --
20              THE DEPUTY CLERK:  Yep.  I'll send an
21   e-mail right now.
22              THE COURT:  That's a big project.
23              THE DEPUTY CLERK:  I'll send an e-mail
24   right now.
25              THE COURT:  Okay.
```

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1              But, you know, the basic thing before you
 2      do anything is figure out, you know, what databases
 3      or custodians or files you're searching or
 4      producing, and then, you know, what gets searched in
 5      what years.  I mean, I don't know how this has
 6      gotten so out of control.
 7              But, you know, the letters, you know,
 8      they're not in a form that allow me to say do X, Y,
 9      or Z, so maybe we can try to do that today.  But,
10      you know, there's some value, I would think,
11      Mr. Erdman, in ending this case and bringing
12      whatever evidence you have and just going to trial
13      or make a summary judgment motion.
14              So there's a value in that.  And there's
15      also a principle of proportionality, which is you
16      don't get every last possible 50 e-mail accounts
17      that you think someone might have used.  You know,
18      this is not that sort of case.
19              For all you know, Mr. Erdman, do you have
20      any solutions, other than the asking for the world,
21      which is what you've asked for?
22              MR. ERDMAN:  Yes, I understand that there
23      are a lot of repositories in there, and I don't
24      expect all of those.  They just never negotiate over
25      what they would like -- what would be reasonable to
```

1    search.  They just say they provided everything, and

2    there's no evidence they ever have done that.

3    And --

4              THE COURT:  Well, I mean, they have an

5    affidavit saying what it is.  I don't know.  That

6    was -- I'm sure you know about it.  It was an

7    affidavit from May, signed by Mr. Rodriguez, you

8    know, listing these things, and in not terribly

9    clear terms, suggesting that they had been, you

10   know, made available to you.

11             So do you have some solution short of, you

12   know, starting this over?  Because I don't think

13   that's going to happen.

14             MR. ERDMAN:  Okay.  I believe one of the

15   most important things are these forensic images that

16   were created of various computers.  Those would be

17   pretty dispositive of his claims of me hacking,

18   taking files, et cetera.  I believe those should be

19   fairly easy to produce.  I have invoices showing

20   they were created a long time ago.

21             THE COURT:  Okay.  So hold on.  Hold on.

22             Can you translate this into terms that they

23   will understand?  In other words, they say they had,

24   you know, certain P drives.  I don't know if that's

25   what you're talking about, or something else, but we

AMM TRANSCRIPTION SERVICE  631.334.1445

1  need to start talking the same language.

2       MR. ERDMAN:  Your Honor, at the last

3  conference, ordered that they identify the hard

4  drives on their list of repositories, which they did

5  not.  So I --

6       THE COURT:  Okay.  Stop.

7       "Identify the hard drives on their list of

8  repositories."  What does that mean?

9       MR. ERDMAN:  They had -- I believe they

10 called it a collection log.

11      THE COURT:  Okay.

12      MR. ERDMAN:  And it would list hard drive,

13 but that would be all that they identified the

14 repository by.  They wouldn't say what it's from,

15 anything about it.

16      THE COURT:  All right.  So this is what

17 document?

18      MR. ERDMAN:  I believe that was one of the

19 exhibits to their affidavit.

20      THE COURT:  I assume you're looking this up

21 for me.

22      MR. ERDMAN:  It's double-printed.  I

23 believe it is 266-1 or -3.

24      THE COURT:  That's the affidavit I've been

25 talking about.

1          MR. ERDMAN:  It was an attachment to that.

2          THE COURT:  Okay.  Sounds like -- yes,

3    these little, tiny Excel spreadsheets.  I have these

4    here.

5          MR. ERDMAN:  Okay.  I made a copy where I

6    compiled that information, where it was more

7    readable, and identified what I believe each one to

8    be, if you'd like to see that.

9          THE COURT:  Well, hold on.

10         Just so I understand.  Am I looking at page

11   1, 2, or 3 of the exhibits to the May 1st affidavit?

12         MR. ERDMAN:  I had them as separate pages.

13   It's the longer of the two Excel sheets.  This one.

14         MR. POLIZZOTTO:  I believe that's 266-1,

15   Your Honor.

16         MR. ERDMAN:  I think 266-1 is the list of

17   e-mail accounts.

18         THE COURT:  Yeah, I think it's 2 -- dash 2.

19   No?

20         MR. POLIZZOTTO:  No, Your Honor.

21         THE COURT:  Oh, yeah, it is dash 1.

22         MR. RODRIGUEZ:  It may be dash 1.  Yes.

23         THE COURT:  Okay.  So before we get

24   anywhere, are these the P drives?  What are these,

25   from your point of view?

```
 1              MR. POLIZZOTTO:  No.  No, Your Honor.  Some
 2     of it is the P drives.
 3              In the affidavit, the first six paragraphs
 4     identify that there had been two computers, an iMac
 5     and a Mac Pro, and that the documents had been
 6     transferred from one computer to another prior to
 7     the commencement of this action, and that what's
 8     detailed on that spreadsheet are the importing of
 9     the documents from those hard drives and the
10     P drives.  The P drives were separate --
11              THE COURT:  I don't understand what you
12     just said.
13              MR. POLIZZOTTO:  Okay.
14              THE COURT:  I read your affidavit twice --
15     three times, probably, trying to understand what was
16     going on and how it related to this.
17              So you talk about files going from an iMac
18     to a laptop -- I'm not going to worry about that --
19     and then being transmitted to TransPerfect.
20              So is one or all five of these that?
21              MR. POLIZZOTTO:  On 266-1 ...
22              THE COURT:  There's five things listed.
23              MR. ERDMAN:  And, Your Honor, I believe I
24     identified all of those.
25              THE COURT:  You know what these are?
```

```
 1                    MR. ERDMAN:  Yes.

 2                    THE COURT:  What are they?

 3                    MR. ERDMAN:  They're hard drives that I had

 4     turned over to Mr. Victor in another action for him

 5     to do a forensic analysis of.  Mr. Rodriguez had an

 6     affidavit where he said that they didn't believe the

 7     documents to be responsive on some of those hard

 8     drives, so they just weren't produced.

 9                    THE COURT:  You think this is not described

10     in Mr. Rodriguez's affidavit?

11                    MR. ERDMAN:  Not at all.  And I checked.

12     They did --

13                    THE COURT:  You think they are?

14                    MR. POLIZZOTTO:  Yes, after consulting with

15     Tribble, TransPerfect and Setec.

16                    THE COURT:  I mean, hold on.  Back up.

17                    Are you producing hard drives to them of

18     your stuff or --

19                    MR. ERDMAN:  This was a year --

20                    THE COURT:  Let me finish my sentence.

21     We're on the record.

22                    When you describe producing hard drives to

23     them, are those hard drives of your materials or

24     Victor's materials?

25                    MR. ERDMAN:  I believe they were primarily
```

1    mine, but some mixed with Victor because I used them

2    for work purposes and had a little bit of everything

3    on them.

4          THE COURT:  And you think that -- something

5    else?

6          MR. POLIZZOTTO:  No.  The way that the --

7    when we had consulted in a conference with

8    Mr. Erdman and the companies that had imported the

9    data, it was explained that there was a computer

10   that Mr. Victor used and then hard drives that were

11   in a file server.  Those hard drives that were in

12   the file server were referred to as the P drives.

13   And what's on 266-1 was imported from the hard drive

14   from Mr. Victor's computer and were clones of the

15   P drive.  After the --

16          THE COURT:  Is one of the entries the

17   computer and other entries the P drives?

18          MR. RODRIGUEZ:  Yes.

19          THE COURT:  Which is which?

20          MR. POLIZZOTTO:  So there were some -- I

21   believe that the P drives were the ones from --

22          MR. RODRIGUEZ:  That's correct.

23          MR. POLIZZOTTO:  -- from TLS Forensics.

24          THE COURT:  The last two?

25          MR. POLIZZOTTO:  There are three.  One is

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1   in dark gray.
 2           THE COURT:  Oh, I see.  I can't even --
 3   now, I see it.
 4           MR. RODRIGUEZ:  Yeah.  Apologize for the --
 5           THE COURT:  I was saying five.  In fact,
 6   it's --
 7           MR. RODRIGUEZ:  Yeah.
 8           THE COURT:  -- 12, maybe.
 9           MR. ERDMAN:  Your Honor, would you like --
10           MR. POLIZZOTTO:  12 entries.
11           THE COURT:  Okay.
12           All right, so you're saying some of these
13   are the P drives?
14           MR. RODRIGUEZ:  Yes.
15           MR. POLIZZOTTO:  Yes.
16           THE COURT:  And you're saying they're not?
17           MR. ERDMAN:  They're not.  They have
18   produced a list --
19           THE COURT:  How am I supposed to resolve
20   this?
21           MR. ERDMAN:  So to identify it, they had a
22   list of things that they said were on the P drive.
23   I checked the files on that list to their
24   production, and they're nowhere to be found.
25           In one of their collection logs, they
```

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1    provided a serial number of a hard drive that I had
 2    provided to them.  That's the one from 7-8-21.  And
 3    I had also seen e-mails where they were talking
 4    about three other hard drives I had turned over to
 5    them at the same time.  And I had checked the amount
 6    of files on there and various documents to see what
 7    they were talking about on that.
 8              MR. POLIZZOTTO:  Your Honor, if I might?
 9              THE COURT:  Yeah.
10              MR. POLIZZOTTO:  After our last conference,
11    we had a meeting with Mr. Erdman and the companies,
12    the two companies that were involved in importing
13    the files.
14              THE COURT:  Yep.
15              MR. POLIZZOTTO:  These issues, if they were
16    even addressed -- and that was not addressed -- to
17    them when they were online with us, could have been
18    easily addressed if he had that issue.  But I did
19    tell him at the time that there was nothing held
20    back from them, that they had the drives that were
21    these "P drives," and they had imported the
22    documents from Mr. Victor's computer.
23              THE COURT:  I mean, do the P drives still
24    exist in the material world, Mr. Erdman?
25              MR. ERDMAN:  I believe that --
```

```
1              THE COURT:  Actually, I'll ask you guys
2    first.  Do they still exist, or is this all that's
3    left of them?
4              MR. POLIZZOTTO:  No.  The police department
5    had taken the originals.  Those were subsequently
6    destroyed or disposed of by the police department.
7    And that documentation had previously been provided
8    to Mr. Erdman.  So the only thing that existed were
9    these clones of the drives that the police
10   department --
11             THE COURT:  The clones still exist?
12             MR. POLIZZOTTO:  They were given over to
13   Setec and TransPerfect.
14             THE COURT:  Where are they now?
15             MR. POLIZZOTTO:  TransPerfect.
16             THE COURT:  They have these.  But you still
17   have a relationship with TransPerfect or not?
18             MR. POLIZZOTTO:  We still have a
19   relationship with TransPerfect.
20             THE COURT:  Okay.  So there's physical
21   copies of the P drives sitting with TransPerfect?
22             MR. POLIZZOTTO:  They were delivered to
23   TransPerfect.
24             THE COURT:  And you think, Mr. Erdman, that
25   TransPerfect -- it is not reflected on this listing
```

1    by TransPerfect, right?

2              MR. ERDMAN:  Correct.  What I believe --

3              THE COURT:  So you think they're just

4    sitting on them?  I don't understand.

5              MR. ERDMAN:  I believe they might still be

6    with one of the forensic companies, likely Setec.

7    Setec was sent to get the original drives from the

8    NYPD and provided copies from Mr. Victor.

9              What I believe happened is Mr. Victor

10   wanted to analyze the hard drives I had given him

11   to --

12             THE COURT:  By the way, have you deposed

13   Victor about all this?

14             MR. ERDMAN:  He doesn't recall pretty much

15   anything of substance when asked.

16             THE COURT:  So the answer is, yes, but he

17   doesn't recall.

18             Okay.  Go ahead.

19             You deposed him?

20             MR. ERDMAN:  Yes, I did.

21             THE COURT:  Or you talked to him?

22             MR. ERDMAN:  Deposed.

23             THE COURT:  Go ahead.

24             MR. ERDMAN:  Mr. Victor wanted to continue

25   making claims to law enforcement, and he had hired a

1    new forensics company to do an analysis of the hard
2    drives I provided.  And I believe that's why Setec
3    had only provided those four hard drives I had given
4    them without providing additional material.
5            THE COURT:  Okay.  Well, you know, maybe
6    we're in the land of spoliation.  So if you think
7    there are drives out there that they say they no
8    longer have custody of, either personally or -- you
9    know, obviously, they have the ability to get back
10   hard drives from their contractors, like Setec and
11   TransPerfect.
12           If you think you can prove that, when this
13   is all over, you can make a motion for spoliation,
14   but I can't order someone to produce something if
15   they claim they don't have it.  That's the problem.
16           MR. ERDMAN:  They're also --
17           THE COURT:  Even if you have -- if you have
18   evidence, you know, that they once had it or they
19   lost it or whatever, you can make a spoliation
20   motion.  That's at another time.
21           So, with that in mind, let's talk about
22   what they actually have, that they admit they
23   have -- because, you know, again, if you say they
24   have it and they say they don't, that's spoliation
25   land.  I can't order them to do something with a

1    hard drive or anything else that they say they don't

2    have.  Now, if you end up proving that they had it

3    when they claim they didn't, then you get spoliation

4    sanctions, okay?

5          So let's, now, confine this entire

6    application to things that they say they have, and

7    this may end at the whole application.  I don't

8    know.  Confine it to things that they admit that

9    they have and that you say has not been searched or

10   has not been produced.

11         Do you understand what I'm telling you to

12   do now?

13         MR. ERDMAN:  Yes, I do.

14         THE COURT:  Okay.  So now that we're doing

15   that, what, if anything, is left?

16         MR. ERDMAN:  Okay.  I had raised the issue

17   of the forensic images in my application, and they

18   didn't make any claim that they do not have those

19   images.  Instead, they said, "Forensic images would

20   have resulted in duplicates, which, as stated, were

21   removed by part of the process."

22         THE COURT:  And what are you quoting from?

23   I'm sorry.

24         MR. ERDMAN:  281, their response to my

25   letter.  And that's on page 3.

          AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1                THE COURT:  Okay.  I'm not sure I even
 2    understand it, but let me just read it.
 3                What paragraph are you reading from?
 4                MR. ERDMAN:  It's the first paragraph.
 5    Three lines up from the end of the paragraph.
 6                THE COURT:  Forensic images -- okay.
 7                I have no idea what that sentence means.
 8    Maybe whoever wrote it wants to explain it:
 9    "Forensic images would have resulted in duplicates,
10    which, as stated, were removed as part of the
11    process."
12                MR. RODRIGUEZ:  After speaking to my
13    client, Mr. Victor indicated that those images would
14    have been of data that was already produced.
15                THE COURT:  I don't know what images we're
16    even talking about.
17                MR. RODRIGUEZ:  That's a good question
18    also, Your Honor.
19                THE COURT:  Well, you wrote the sentence.
20    What are you referring to?
21                MR. RODRIGUEZ:  When I wrote the sentence,
22    I was trying to go by what Mr. Erdman was referring
23    to, saying that they use forensic images on these
24    drives.  And then I went to my client and that's the
25    best answer that he could give.
```

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1                 THE COURT:  Okay.  Does he still have the
 2      forensic images or not?  Or don't you know?
 3                 MR. POLIZZOTTO:  Your Honor, my
 4      understanding is that these images, whatever images
 5      do exist, were all given to the two vendors.  And
 6      the two vendors had performed the searches and --
 7                 THE COURT:  Okay.  So the forensic images
 8      were given to the vendors.  You say the vendors
 9      didn't produce them.
10                 MR. POLIZZOTTO:  And then --
11                 THE COURT:  Okay.  Hold on.  Hold on.
12                 MR. POLIZZOTTO:  I'm just trying to explain
13      the sentence, Your Honor.
14                 THE COURT:  Go ahead.
15                 MR. POLIZZOTTO:  And that when the experts
16      had done their reviews they eliminated duplicates.
17                 THE COURT:  I'm sorry.  "When the experts"?
18      What are you referring to?
19                 MR. POLIZZOTTO:  When the experts had
20      reviewed the --
21                 THE COURT:  When you say "experts," do you
22      mean the vendors?
23                 MR. POLIZZOTTO:  I'm sorry.  The vendors.
24                 MR. RODRIGUEZ:  The vendors.
25                 MR. POLIZZOTTO:  I apologize.
```

```
1              The vendors had done their review of all
2    the import of the data.  They eliminated duplicates.
3              THE COURT:  Okay.
4              MR. POLIZZOTTO:  And that the forensic
5    images were part of the duplicates.
6              THE COURT:  All right.
7              So, again, I think we're still in -- we're
8    back where I was, Mr. Erdman, which is, they're
9    claiming whatever they have they gave to the
10   vendors, that their vendors gave everything to you.
11   You deny that.  So if you can show you didn't get
12   something, then you get spoliation sanctions.  I
13   can't make them produce something that they say they
14   don't have.
15             MR. ERDMAN:  Okay.
16             THE COURT:  All right.
17             MR. ERDMAN:  One note on these hard drives
18   they're talking about.  That's from 2021.  It
19   doesn't look like they ever searched for anything,
20   really, other than a couple e-mail accounts and
21   Dropbox accounts since you ordered them to do so.
22   There's --
23             THE COURT:  Again, try to present this to
24   me in the terms that I talked to you about.
25             So what is it that they admit exists that
```

1    has not been either produced to you or searched for

2    you?

3              MR. ERDMAN:  I think one of the problems

4    with that is they claim -- anytime I ask them about

5    something, they claim it went to a vendor and was

6    produced.

7              THE COURT:  Okay.  So if you can produce --

8    I think, then, we keep ending up back in the same

9    place, which is, if you -- I don't know what more to

10   order.

11             MR. ERDMAN:  Okay.

12             THE COURT:  If you can prove that they had

13   a piece of evidence or repository of information and

14   then, you know, destroyed it, lost it, failed to

15   search it, you know, claimed it didn't exist, that's

16   where spoliation comes in.

17             Do you know what spoliation is?

18             MR. ERDMAN:  Yes, I do.

19             THE COURT:  Okay.  So, you know, if

20   something's lost or destroyed -- and this all comes

21   within that -- even if you think it still exists, if

22   they say it doesn't exist, then that's the same as

23   it were -- if you can prove it once existed, that

24   it's now lost.  Do you see what I'm saying?

25             MR. ERDMAN:  Yes, I do.

1          THE COURT:  So then if you show that, then
2     you meet the first step of spoliation sanctions and
3     can see if you can get any sanctions for that.  I'm
4     not guaranteeing you will, but there's nothing -- I
5     don't see what I can order.
6          MR. ERDMAN:  I think what we might be able
7     to resolve is as far as e-mail accounts.
8          THE COURT:  Okay.  I mean, that's something
9     where, if we know something exists, we can talk
10    about whether an adequate search was done or not.
11    So I think you're, now, understanding what I'm
12    getting at.
13         So tell me what part of your letter I
14    should look at to see what we should talk about.
15         MR. ERDMAN:  So on my letter, 279, at
16    page 7.
17         THE COURT:  Okay.  So you have a listing of
18    29 accounts that you believe was used by the
19    defendant; is that right?
20         MR. ERDMAN:  Correct.
21         THE COURT:  Okay.  And you want a search --
22    or whatever that's been involving.  I don't know --
23    of those accounts because you think it hasn't
24    previously been done?
25         MR. ERDMAN:  Yes.  They had said they only

                AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1    searched a subset of accounts and that there's no
 2    responsive documents in other accounts, but I have a
 3    screenshot from Mr. Victor's computer showing those
 4    other accounts and there's clearly e-mails within
 5    them.
 6               THE COURT:  Okay.  So we're talking about
 7    these -- did you folks investigate each of these 29
 8    e-mail accounts?
 9               MR. RODRIGUEZ:  Yes.
10               THE COURT:  And if so, how?
11               MR. RODRIGUEZ:  Yes.  Victor only used six
12    of those accounts.  He's created all of those
13    accounts, but he only used six of them.
14               THE COURT:  Okay.
15               MR. RODRIGUEZ:  Only six of them provided
16    had -- according to our vendor, they were only able
17    to pull e-mails from six of those accounts because
18    only six of them had any information.
19               THE COURT:  Are you telling me the vendor
20    actually went to all of these accounts?
21               MR. RODRIGUEZ:  The vendor, when he did the
22    pull from Adam's computer, when they did the
23    collection --
24               THE COURT:  Okay.
25               MR. RODRIGUEZ:  -- there was only e-mails
```

```
 1    in six of the accounts.

 2              THE COURT:  Got it.

 3              So I guess the question is, where does this

 4    get pulled from?  It's getting pulled from his

 5    computer, not from some web repository; is that

 6    right?

 7              MR. RODRIGUEZ:  That is correct.

 8              THE COURT:  Okay.

 9              Go ahead.

10              MR. ERDMAN:  In their collection log, they

11    had searched Eugenia and Nazeem's office e-mail

12    accounts, and they're very clearly delineated on the

13    log when they did so.  There's no evidence that they

14    searched these --

15              THE COURT:  Wait, wait.  What log?  I'm

16    sorry.

17              MR. ERDMAN:  In one of their -- they

18    provided a log of what repositories they searched.

19              THE COURT:  Okay.

20              MR. ERDMAN:  And this was in November of

21    2022.  They had searched two e-mail accounts, and it

22    very clearly says they did an e-mail collection.

23    There's nothing else indicating that for these

24    accounts.  I believe they're trying to reuse a

25    search that was done in 2019 by the Braverman firm.
```

```
 1   And I don't believe they even have access to that
 2   anymore or know any details.  And, like, their
 3   privilege log pretty much omits the entire
 4   limitations period.  It's just blank because the
 5   Braverman search was done in August of '19 and it
 6   just stops.  There's no Victor e-mails after that
 7   point.
 8            THE COURT:  Okay.  So is it your
 9   contention, defendants, that this was searched after
10   2019, these 29 -- I'm sorry -- the six e-mail
11   accounts that you say were used?
12            MR. RODRIGUEZ:  That's correct, Your Honor.
13   The two e-mail accounts that he's referring to are
14   two employee accounts.  That's not part of this
15   list.
16            MR. ERDMAN:  Not --
17            MR. RODRIGUEZ:  Of this -- I'm speaking.
18            Of this list, all of these e-mails were
19   searched.  And Mr. Victor already knew that he only
20   used six of them.  He created all of them.  But for
21   his business and for himself, he only used --
22            THE COURT:  Can you tell me which six?
23            MR. RODRIGUEZ:  It's the six that had
24   company names on them, actually.  The TransEnergy
25   one, TransGas Development, TransNational.  Matter of
```

```
 1   fact, and I list those six in my response to his
 2   letter.  This should be in my letter of 8-21, the
 3   exact six that produced e-mails.  And I've also
 4   referred to that --
 5            THE COURT:  Hold on.  Hold on.
 6            They're attached as an exhibit, the list of
 7   e-mail accounts.
 8            MR. POLIZZOTTO:  Your Honor, it's a
 9   combination of Docket 266 and 281.  Five of them are
10   listed in paragraph 16 in Docket 266.  And the other
11   e-mail is listed in Docket 281 on page 205.
12            THE COURT:  Okay.  So now what do I do?
13            Again, they claim they've searched this
14   thing, and you say you think they haven't.
15            What am I supposed to do?
16            MR. ERDMAN:  Would I be able to show you a
17   document from his computer?
18            THE COURT:  Sure.  Should you have a copy
19   for the other side?
20            MR. ERDMAN:  I believe I sent you guys that
21   one.  It's from his -- a screenshot from his
22   computer.
23            THE COURT:  Is it in something previously
24   supplied to me?
25            MR. ERDMAN:  No.  No.
```

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1              THE COURT:  Well, let them see.  And after
 2   they've looked at it, I'll look at it.  Tell them
 3   what it is.
 4              MR. ERDMAN:  It's a screenshot that was
 5   from Mr. Victor's computer, and it shows the e-mail
 6   accounts that were in use on it.  And then it also
 7   shows the amount of e-mails in each account.
 8              MR. POLIZZOTTO:  Your Honor, I --
 9              THE COURT:  Give it to my clerk.
10              MR. POLIZZOTTO:  I don't know where that
11   was taken from.  I don't know what it is.  It could
12   have been made anywhere.  I'm not saying it's not
13   accurate.  I'm not saying it is accurate.  It's the
14   first time I've seen this purported screenshot.
15              MR. ERDMAN:  Here's another one.  Here's
16   another one with similar information on it.
17              MR. POLIZZOTTO:  It would be the same
18   argument I'd have to both.
19              THE COURT:  Well, you're going to have to
20   look, at least, into this e-mail issue.
21              What year was this photograph taken?
22              MR. ERDMAN:  I believe that one was 2015.
23              Your Honor, I have an idea of how --
24              MR. POLIZZOTTO:  Your Honor, if I might, on
25   the issue of this additional discovery, as the Court
```

AMM TRANSCRIPTION SERVICE  631.334.1445

1    had found in the motion to dismiss, the statements

2    regarding the -- that are at issue here pertain to

3    crimes and defamation per se.

4           The documents that are being sought right

5    here -- he doesn't have to prove that the statements

6    were not true.  To the contrary, I have to prove

7    that they were true if there's going to be a

8    defense.  These e-mail accounts, if they do contain

9    anything, predate the statements -- he indicated

10   that's from 2015 -- and would only hurt my client if

11   they existed and weren't produced because then I

12   couldn't use them in theory to show that the

13   statements were true.

14          My client would only be hurting himself if

15   he failed to produce anything in these e-mail

16   accounts.  Because they're defamatory per se, I have

17   to show they're untrue or they are true.

18          THE COURT:  So, Mr. Erdman, he says you

19   don't really need this stuff from these e-mail

20   accounts.

21          MR. ERDMAN:  And that's false because I

22   don't have any of Victor's e-mails past August of

23   2019.  And they exist because they had retrieved a

24   few e-mails from Patrick Timlin, who was --

25          THE COURT:  Okay.  But now you -- okay, so

                 AMM TRANSCRIPTION SERVICE  631.334.1445

1    you're talking about post-2019 e-mails.

2            MR. ERDMAN:  Yes.  I'm saying I --

3            THE COURT:  Okay.  So the issue is what he

4    was using post-2019.  This, you said, is years

5    before, right?

6            MR. ERDMAN:  Okay.  Yeah.

7            THE COURT:  Well, it doesn't mean he was

8    using it in 2019.

9            How about if we get a sworn statement from

10   him saying what e-mails he used in 2019?

11           MR. ERDMAN:  I have extensive knowledge of

12   his affidavits and --

13           THE COURT:  No, no, but in 2019?  What

14   e-mail accounts he was using in 2019?

15           MR. ERDMAN:  I don't think that response to

16   be credible.

17           THE COURT:  No, but -- I know, but why does

18   the fact that he was using something five years

19   earlier show what he was doing in 2019?

20           MR. ERDMAN:  Oh, I understand your point on

21   that.  I'm just saying, from their collection log

22   and their information provided, there's no evidence

23   they ever did a search as they were ordered to for

24   this action, regardless of which e-mail accounts.

25   Even if we're just limiting it to those six, they

```
 1   never searched them for this action.
 2              THE COURT:  Okay.  Now, we're talking about
 3   the six.
 4              MR. ERDMAN:  Correct.
 5              THE COURT:  Did you search them post-2019
 6   for this action?
 7              MR. RODRIGUEZ:  Yes, Your Honor, as our --
 8              THE COURT:  Who did it and how?
 9              MR. RODRIGUEZ:  Mr. Victor did the
10   searches.  Matter of fact, our submissions have
11   shown that we even submitted documents holding a
12   date range from 1996 to 2022.
13              THE COURT:  So did you submit e-mails from
14   those six accounts?
15              MR. RODRIGUEZ:  Yes, we did, Your Honor.
16              MR. ERDMAN:  It's very easy to prove that
17   wrong.  You can just go on the privilege log, search
18   for --
19              THE COURT:  Again, let's not go over this.
20   They claim they weren't claiming privilege.
21              MR. ERDMAN:  So for Mr. Victor's e-mail --
22              THE COURT:  Did you get any e-mails from
23   those accounts after 2019 -- after June 1, 2019?
24              MR. ERDMAN:  No.  And I can tell because
25   I --
```

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1              THE COURT:  Do you think there are such
 2    e-mails that you gave to him post-June 1, 2019?
 3              MR. RODRIGUEZ:  We have submitted e-mails,
 4    like I said, all the way to 2022.  I don't know from
 5    which accounts exactly --
 6              THE COURT:  You don't know if it's from
 7    those six accounts?
 8              MR. RODRIGUEZ:  I don't know if it's in
 9    those six accounts exactly, but --
10              THE COURT:  Did you do a search?
11              Do we know what the search was done on the
12    e-mail accounts, or you just gave everything?
13              MR. RODRIGUEZ:  We know that Mr. Victor
14    indicated there was a search done.  And, like I
15    said, TransPerfect did make a network collection.
16              THE COURT:  No, no, no.  But that
17    wouldn't -- is that getting these six e-mail
18    accounts post --
19              MR. RODRIGUEZ:  Yes.
20              THE COURT:  -- post-2019?
21              MR. RODRIGUEZ:  Yes, Your Honor.
22              THE COURT:  Okay.  Well, maybe now we're
23    back where we were, which is you say -- well, no.
24              Okay.  This is a little different because
25    they're saying, yes, we have access to e-mails with
```

1    those e-mail accounts, but whatever you got, or if

2    there was nothing, there was nothing responsive.  I

3    think that's what's going on right now.

4          MR. ERDMAN:  I think one thing I'd like to

5    figure out is when they went to search the two

6    office e-mail accounts, TransPerfect was given

7    access, and they collected --

8          THE COURT:  The two office e-mail accounts?

9    Just so I know what I'm talking about.

10          MR. ERDMAN:  Which is Eugenia@TGDS and

11   Nazeem@TGDS.

12          THE COURT:  What numbers in 1 through 29?

13          MR. RODRIGUEZ:  That's not part of that

14   list, Your Honor.  Those are two employee accounts.

15          MR. ERDMAN:  They had multiple lists.

16          THE COURT:  I thought we were talking --

17   this whole time, I thought we were talking about 1

18   to 29.

19          MR. RODRIGUEZ:  No.  That's why I said he's

20   referring to two employee e-mail accounts.

21          THE COURT:  How did we get off 1 to 29?

22   That's what I thought I was talking to you the whole

23   time about this.

24          MR. ERDMAN:  They had provided multiple

25   versions of the collection log, which sometimes omit

                AMM TRANSCRIPTION SERVICE  631.334.1445

1    and sometimes add to.

2            THE COURT:  Okay.  Well, now, we have to go

3    back 15 minutes.

4            What I said to you was, let's focus on the

5    things that you can prove they still have and

6    haven't done something with.  And I explained to you

7    why you hadn't done -- we're, now, not doing that

8    anymore with the P drives or anything else.

9            And then you said to me, oh, the e-mail

10   accounts.  And I said, what e-mail accounts?  And

11   you said, 1 through 29.

12           MR. ERDMAN:  Oh, these were not on that

13   list.  Those are just Victor's own accounts.

14           THE COURT:  Hold on.  I haven't finished

15   where I was going.

16           So let me go back and say, are there --

17   first of all, is this not an exhaustive list?  Is

18   that the problem?

19           MR. ERDMAN:  That list is based on an Excel

20   sheet they had given to Braverman to do a collection

21   in 2019.

22           THE COURT:  Okay.  Are we done talking

23   about this or not?  I don't even know where we are

24   anymore because you --

25           MR. ERDMAN:  Well, the point I wanted to

        AMM TRANSCRIPTION SERVICE  631.334.1445

1    make is they had a professional collection done

2    where they gave TransPerfect access to those e-mail

3    accounts.

4            THE COURT:  What e-mail accounts?

5            MR. ERDMAN:  The office e-mail accounts,

6    Eugenia and Nazeem@TGDS.com.

7            THE COURT:  And that's not on 1 through 29.

8            MR. ERDMAN:  No, it is not.

9            THE COURT:  Okay.  So I'm not done

10   talking -- are we, now, done talking about the --

11           MR. ERDMAN:  No.  I'm trying to get back to

12   it.

13           THE COURT:  Okay.  Go ahead.

14           MR. ERDMAN:  Just instead of having a

15   professional do this collection and search, they had

16   Mr. Victor do it.  And there's no evidence he ever

17   gave anything to Setec or even found anything.

18           THE COURT:  Okay.  Well, now, this, at

19   least, I'm understanding.  So we can talk about the

20   accounts that -- I mean, I think it's not fulfilling

21   their lawyerly duties to say to their clients,

22   search the e-mail accounts and let me know what you

23   find, without any oversight, and there's plenty of

24   case law on that.

25           So maybe that needs to be redone if that's

                AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1    really what happened here.  And it sounds like that
 2    is what happened here.  So if you tell me which
 3    e-mail accounts we're talking about that are active
 4    in 2019, then I'll discuss with them whether they
 5    need to, now, supervise a search in that.
 6              MR. ERDMAN:  So the list of accounts that I
 7    quoted, that are on here, these 29, are from Victor
 8    in 2019 because he had provided these for a
 9    collection to Braverman that they did in August of
10    2019.
11              THE COURT:  Okay.  So --
12              MR. ERDMAN:  So presumably they would
13    exist, as he thought them relevant enough to provide
14    the Braverman.
15              THE COURT:  And yet defendants are telling
16    me that he provided them to --
17              Do you deny they were provided to
18    Braverman?
19              MR. ERDMAN:  So --
20              THE COURT:  No, no.  I'm asking defendants.
21              MR. RODRIGUEZ:  They were provided to
22    Braverman because he was asked to provide a complete
23    list of e-mail accounts that he has.
24              THE COURT:  Okay.  But you're saying he
25    didn't use --
```

1              MR. RODRIGUEZ:  He created a lot of them --

2              THE COURT:  And then used six of them.  Got

3     it.

4              Okay.  Back to where we were.

5              So if you can identify some e-mail accounts

6     that he used, that you have reason to believe were

7     not properly searched, either because they gave no

8     oversight to it -- which it sounds like -- or some

9     other reason, then I'm willing to talk about that,

10    though I think I'm probably going to limit it to the

11    ones that, at this point, he's claiming he actually

12    used.  So --

13             MR. ERDMAN:  Well, I think --

14             THE COURT:  Go ahead.

15             MR. ERDMAN:  I just think they're not

16    saying that they don't have these e-mail accounts.

17    They're just saying that they didn't feel like

18    searching them based on their client saying he

19    didn't use them.  I don't see why he should be taken

20    at face value similarly to him saying he searched.

21             THE COURT:  I mean, I don't think it's

22    unreasonable.  It's not that many.

23             I mean, how do people search, you know,

24    e-mail accounts?  I mean, Gmail, we all know how to

25    do that.

```
 1              MR. ERDMAN:  So they could provide the --
 2              THE COURT:  17, 18, 19, I don't even know
 3      what that is.  Those aren't e-mail addresses.
 4              Anyone know?
 5              MR. ERDMAN:  I believe you just left off
 6      the @gmail part for that.
 7              MR. RODRIGUEZ:  That's possible.
 8              MR. ERDMAN:  I mean, to do a search, as
 9      TransPerfect probably did, they would provide, like,
10      a list of passwords such as this.  The vendor would
11      then just be able to put that login information into
12      their software, collect whatever they're collecting,
13      and then do a search and production from it.  It's
14      not a difficult process.
15              MR. RODRIGUEZ:  Your Honor, he keeps saying
16      that it was something just, like, haphazardly
17      Mr. Victor did, but he did it in conjunction with
18      the vendor.  The vendor did a network collection of
19      data.
20              MR. ERDMAN:  Can you --
21              MR. RODRIGUEZ:  So there was over --
22              THE COURT:  In 2019?
23              MR. RODRIGUEZ:  After 2019.
24              THE COURT:  After 2019.  For this case?
25              MR. RODRIGUEZ:  Yes.  That was a search
```

```
 1     that was ordered by you back in 2022.
 2               THE COURT:  And of which e-mail accounts?
 3               MR. RODRIGUEZ:  Of these same e-mail
 4     accounts.
 5               MR. ERDMAN:  So I only --
 6               THE COURT:  Is that right, Mr. Erdman?
 7               MR. ERDMAN:  I'm looking at their
 8     collection log; there's only one entry for 2022.  It
 9     says it was for e-mails and it was for --
10               THE COURT:  You're talking about a
11     collection log, not a privilege log.
12               MR. ERDMAN:  Correct.
13               THE COURT:  And where are you getting this?
14               MR. ERDMAN:  This was the one attached to
15     his affidavit, this table.
16               THE COURT:  Okay.  Is that a collection
17     log?  Why does that not reflect all these e-mail
18     accounts?
19               I'm asking defendants.
20               MR. RODRIGUEZ:  It does reflect those
21     e-mail accounts, Your Honor.  As I said, you ordered
22     that search.
23               THE COURT:  Okay.
24               MR. RODRIGUEZ:  Mr. Victor did that search
25     in conjunction with the vendor.
```

```
 1                THE COURT:  Again, it's --
 2                MR. RODRIGUEZ:  He simply says that they
 3      don't cover those accounts, but they did.
 4                MR. ERDMAN:  So the --
 5                THE COURT:  They don't list the actual
 6      accounts in --
 7                MR. RODRIGUEZ:  No, they do not.
 8                THE COURT:  I see.
 9                MR. ERDMAN:  The December '22 entry list is
10      an e-mail collection.  It was for five items.
11      That's it.  It's --
12                THE COURT:  What do you mean, "for five
13      items"?
14                MR. ERDMAN:  No.  They only imported five
15      items.  When I talked to Mr. Rodriguez previously,
16      he indicated that was getting documents from a
17      custodian from --
18                THE COURT:  You know what the five items
19      are?
20                MR. RODRIGUEZ:  Yes.  From Sonja Bozek, one
21      custodian.  That's not a network collection from the
22      vendor.
23                MR. ERDMAN:  But it says "e-mail."
24                MR. RODRIGUEZ:  Yeah, but those are e-mails
25      that I had gotten from Sonja Bozek.  That's not what
```

```
 1   those -- I'm telling you what they were.
 2            MR. ERDMAN:  Well, then there's nothing in
 3   2022 indicating that they searched and gave anything
 4   to TransPerfect.
 5            MR. RODRIGUEZ:  It's indicated up there on
 6   the --
 7            THE COURT:  Hold on.
 8            Go ahead.
 9            MR. RODRIGUEZ:  Your Honor, if we go to
10   Exhibit -- it should be 266-4.
11            MR. POLIZZOTTO:  No.
12            MR. RODRIGUEZ:  Oh, I'm sorry -3.  I
13   apologize, Your Honor.
14            It shows -- it's a batch collection, and it
15   shows three days.
16            THE COURT:  Hold on.
17            MR. RODRIGUEZ:  Sure.
18            THE COURT:  Mine only goes up to 266-3.
19            MR. RODRIGUEZ:  It is -3, Your Honor.
20            It is -3, Your Honor.  So I apologize that
21   I said "4."
22            If you go to last date, there's three
23   collections that were done in November 2022.
24            MR. ERDMAN:  And that's not --
25            MR. RODRIGUEZ:  I'm not done speaking.
```

1          And he keeps saying that, oh, these were

2     never done, but our vendor keeps showing that they

3     were collected.  There were three batch collections

4     in response to the order that you gave.

5          THE COURT:  And you're saying that covers

6     these e-mail addresses?

7          MR. RODRIGUEZ:  That is correct.  And if

8     you look at the record count, the record counts are

9     pretty sizable.  A couple of thousand --

10         THE COURT:  What's your view, Mr. Erdman?

11         MR. ERDMAN:  He had provided a different

12    collection log that --

13         THE COURT:  "He"?

14         MR. ERDMAN:  Mr. Rodriguez -- that listed

15    those collections as being from those two office

16    e-mail accounts and two Dropbox accounts.  Those

17    weren't collections from Mr. Victor.

18         THE COURT:  What are you referring to?

19         MR. ERDMAN:  It was another log he had

20    provided to me earlier.

21         THE COURT:  You're going to have to show it

22    to me.

23         Do you know what he's talking about,

24    Mr. Rodriguez?

25         MR. RODRIGUEZ:  No.

                AMM TRANSCRIPTION SERVICE  631.334.1445

1          MR. ERDMAN:  I have the data copy and

2    pasted to make it more readable.  It's the same

3    data, if that --

4          THE COURT:  Well, show it to him.

5          MR. RODRIGUEZ:  I mean, our collections are

6    perfectly --

7          MR. ERDMAN:  And I provided that to you.

8          THE COURT:  But this is a document that you

9    say shows that this particular entry does not relate

10   to Victor's e-mails?

11         MR. ERDMAN:  Correct.

12         And I also reviewed those documents to see

13   where they came from.  And they had file path

14   information that indicated they were from Dropbox or

15   those two e-mail accounts.  And there was a pretty

16   clear indication of where they were all from.

17         MR. POLIZZOTTO:  No.  Your Honor, this

18   is -- what he's handed me is his analysis of 266-1

19   and -3 --

20         THE COURT:  You know, I think we're back

21   where we were, which is, if you're claiming that you

22   have evidence that they didn't produce this, I'm

23   willing to count that as lost for purposes of

24   spoliation.

25         I don't see -- you know, there's nothing

1    they could say.

2            I gather you're not going to say in

3    response to the motion, oh, yeah, we have this, he

4    never asked for it.  Am I right?

5            MR. POLIZZOTTO:  Correct.  Depending what

6    he asked for, but correct.  I would assume that that

7    would be the answer.

8            THE COURT:  Okay.  Because, you know, at

9    this point, I'm just getting two different views

10   about what you searched.  So, at this point, you

11   know, if you didn't search -- if he can prove that

12   you didn't search something that you claim you have

13   searched, then, I mean, either it's spoliation or

14   it's just a regular -- I would do the exact same

15   sanction under Rule 37, having now delayed it for,

16   you know, years because it never got done.

17           So it's all a question of what you're going

18   to be able to prove.

19           MR. ERDMAN:  Would it make sense if I am

20   allowed to depose those vendors under oath and just

21   figure out exactly what they had, when they had it,

22   what happened to it, what was searched?

23           THE COURT:  I mean, I'd rather you just

24   talk to them.  Has that not been made available to

25   you?

         AMM TRANSCRIPTION SERVICE  631.334.1445

1              MR. ERDMAN:  They don't provide any

2     details.

3              MR. POLIZZOTTO:  I'm sorry.  We had a

4     conference, Your Honor, with myself, Mr. Rodriguez,

5     Mr. Erdman and both vendors.

6              THE COURT:  Right.

7              MR. POLIZZOTTO:  And we were on for well

8     over an hour to two hours.  For Setec, Mr. Erdman

9     asked approximately five questions and finished with

10    them.  He spent most of his time on TransPerfect.

11    He indicated he was going to come up with some kind

12    of list of questions they had afterwards, but he was

13    not curtailed in how long he could ask them

14    questions, what questions he could ask.  The

15    individuals who were involved answered his

16    questions.  He's, kind of, already done that.

17             THE COURT:  Yeah.  Why do we need to do it

18    again?

19             MR. ERDMAN:  One of the witnesses had a

20    hard cutoff and had to go, and I was being rushed

21    off.  And the people provided didn't know details.

22    I would ask -- there was e-mails of Setec going to

23    retrieve the P drives.

24             THE COURT:  There was what?

25             MR. ERDMAN:  Setec was hired to go to the

              AMM TRANSCRIPTION SERVICE  631.334.1445

1  NYPD and retrieve the P drive.  There's e-mails

2  showing that, but when I asked the person there,

3  they had absolutely no idea of that whole situation.

4  Same with TransPerfect.  When I asked him to tell me

5  more about what's on these logs, he's just unable to

6  do so.

7        THE COURT:  You think there's someone else

8  there who knows?

9        MR. ERDMAN:  I think if there's someone who

10  can actually review stuff -- like, there should be

11  someone who could go in the closet and see what hard

12  drives they have there.  It doesn't seem like

13  there's been any effort to identify what these hard

14  drives were.

15        MR. RODRIGUEZ:  Your Honor, can I answer

16  that?

17        THE COURT:  Sure.

18        MR. RODRIGUEZ:  It's absolutely not true.

19  He dealt with Mr. Todd Stefan from Setec, who was

20  the one who worked with Mr. Victor on collecting the

21  Victor hard drives, and the person at TransPerfect

22  who has worked with Mr. Victor's database from the

23  time that we came into the case.  So it's absolutely

24  not true.  He was the perfect person, and he had all

25  the information, and he did answer his questions.

```
 1              THE COURT:  I mean, I'm certainly willing
 2   to give you another session if someone said they had
 3   to leave.
 4              MR. RODRIGUEZ:  Your Honor, may I say he
 5   literally had five minutes of questions for
 6   Mr. Stefan from Setec.
 7              THE COURT:  That's the one who had to
 8   leave?
 9              MR. POLIZZOTTO:  No.  And he
10   acknowledged -- we asked him, do you have any other
11   questions for him?  And he said no.
12              MR. ERDMAN:  Well, Setec, for example,
13   wasn't able to define what hard drives they had sent
14   to Mr. Rodriguez.
15              THE COURT:  Why don't you get a list of
16   questions so that they're not blindsided by this.
17   Get a list of very specific and not-hard-to-answer
18   questions that you feel you need the answer to, and
19   then let's have another session where they answer
20   those questions, if they can.
21              I would rather not -- you know, I don't
22   want to start torturing discovery vendors with
23   depositions under oath.  It seems to me perfectly
24   adequate for you to talk to them about what happened
25   here.
```

```
 1              MR. ERDMAN:  Yeah, I can definitely do
 2   that.
 3              THE COURT:  I mean, unless -- I mean, if
 4   the defendant's going to object that, you know,
 5   he's -- if he brings up things they say -- usually,
 6   in discovery, it's not an issue.  He brings up
 7   things they say.  You're going to say, oh, that's
 8   not under oath.  You should reject it.  Then maybe I
 9   need to have a deposition.
10              I mean, are you willing to accept that the
11   answers given by these individuals reflect the facts
12   as Setec and TransPerfect understand them, or do I
13   need to order a deposition?
14              MR. RODRIGUEZ:  Are you speaking to us,
15   Your Honor, or Mr. Erdman?
16              THE COURT:  Yes.  No, to you.
17              MR. POLIZZOTTO:  I'm willing to accept
18   their answer.
19              MR. RODRIGUEZ:  We'll accept it.
20              MR. ERDMAN:  I'm reviewing the transcript
21   from that conference.  Just as an example, I asked
22   Mr. Rodriguez to explain why that privilege log
23   cutoff existed in 2019, which he was also ordered to
24   do and did not.  He said, "It's no good because
25   that's before the relevant time period for you.
```

1    June is anything after June."

2              So he was taking the position that anything

3    after the cutoff would be undiscoverable.

4              MR. RODRIGUEZ:  Your Honor, I have answered

5    that question many times.  We believe that's -- the

6    last document on that log is the last document we're

7    claiming privilege on.  We're not going to go and

8    claim privilege on extra documents just to be able

9    to satisfy his curiosity.  The last document on the

10   log is the last document we're claiming privilege

11   on, period.

12             THE COURT:  I feel like we've done this 50

13   times, Mr. Erdman.

14             MR. ERDMAN:  I mean, my problem isn't that

15   it's not on the log.  There's also no e-mails

16   produced after that time.  There's just -- when

17   Braverman did their collection in August of 2019 --

18             THE COURT:  Okay.  But the reason -- can

19   you just accept the reason has nothing to do with

20   privilege at this point?

21             MR. ERDMAN:  Oh, yeah.  I'm not arguing

22   that it is.  I'm just saying it demonstrates that

23   they just didn't search e-mails after that point.

24   The easiest way to show that is off of their

25   privilege log.

AMM TRANSCRIPTION SERVICE  631.334.1445

1          THE COURT:  Well, no, it's not the easiest

2     way if they say they're not claiming privilege after

3     2019.

4          MR. ERDMAN:  Well, I'm saying if there's

5     also -- if I review the production, I see that same

6     gap.  There's just no documents in -- after August

7     2019.

8          THE COURT:  Well, okay.  That's a different

9     question.  Let's not mix it up with privilege, okay?

10         So you think there should be documents out

11    there.  They say that they did their search and it's

12    not there.  So, you know, I don't know what else to

13    tell you.  You can't order someone to produce

14    something they say isn't there.  If they didn't do a

15    proper search and you can prove that, then we're --

16    I'm willing to give you -- there will be sanctions

17    for that because, at this point, you know, having

18    been through this a million times, I'm not going to

19    send them back to redo a search.  If they didn't do

20    a proper search, there will be a consequence for

21    that.

22         So, again, we're back to where we were

23    before, which is:  Is there something that they

24    admit they have that you know you can prove is not

25    properly searched and that there's something they

AMM TRANSCRIPTION SERVICE  631.334.1445

1    can do now?

2                If there isn't anything, then I think we

3    may be done.

4                MR. ERDMAN:  I believe it's just -- the

5    easiest ones for that would be e-mail accounts.

6    There's also office e-mail accounts.

7                THE COURT:  Okay.  One at a time.  I tried

8    to do this before.  E-mail accounts.

9                So let's talk about what e-mail accounts

10   we're talking about specifically.

11               MR. ERDMAN:  Mr. Victor used a corporate

12   version of Gmail.

13               THE COURT:  Is this within 1 through 29 or

14   somewhere else?

15               MR. ERDMAN:  It's going to be some of those

16   accounts, but I can't tell definitively which ones.

17               THE COURT:  Okay.  Well --

18               MR. ERDMAN:  He changes the user names

19   frequently.

20               THE COURT:  Okay.  You're interested in

21   e-mail accounts that he used that are somehow not

22   reflected on -- I mean, they have a contention as

23   to -- that there's only six e-mail accounts he used,

24   notwithstanding the creation of addresses, at least

25   in the relevant time period, which is now, for this

                AMM TRANSCRIPTION SERVICE  631.334.1445

1    purpose, 2019 -- June 1, 2019 to June 1, 2020.

2         Your answer to that, if I recall, was that

3    the vendor did the search or that Victor did the

4    search?

5         MR. RODRIGUEZ:  Mr. Victor did the search,

6    and the vendor did the collection of the e-mails.

7         THE COURT:  Okay.  So Victor picked out the

8    e-mails.

9         Mr. Erdman, the only thing so far that

10   raises questions with me -- and I'll now address it

11   with the lawyers -- is you can't just go to your

12   client and say, search these terms and let me know

13   what you find.  You have to do something to monitor

14   that when this individual is not a professional or

15   anything else.  So that means sitting down with him,

16   seeing what he did, and making sure he did it

17   properly.  If that didn't occur, that needs to be

18   redone.

19         Did that occur, or did you completely rely

20   on what he told you?

21         MR. RODRIGUEZ:  We relied on what he told

22   us.

23         THE COURT:  So that needs to be redone for

24   2019 to 2020, for the six e-mail accounts that he

25   claims he used, all right.

AMM TRANSCRIPTION SERVICE  631.334.1445

1          And then when you get whatever it is, you
2    need to either give it directly to Mr. Erdman or
3    send it in through the vendor.  So I'll give you two
4    weeks to do that, all right?  September 20th.
5          Is there anything else of that ilk,
6    Mr. Erdman?
7          MR. ERDMAN:  I think most of it -- I will
8    have to send the questions for the vendors.  If they
9    say they produced everything and it's not on their
10   collection log, I think I need to have someone with
11   knowledge address that.
12         THE COURT:  Well, I'm letting you do some
13   questions for the vendors.
14         MR. ERDMAN:  Yeah.
15         The other problem is Mr. Rodriguez has been
16   claiming to be reviewing privilege log entries that
17   I had given him a few weeks before our last
18   conference.  He said he no longer has access to
19   Relativity through TransPerfect because their bills
20   have gone unpaid.
21         THE COURT:  Is that true?
22         MR. RODRIGUEZ:  That is true.  The
23   reinsurer -- well, it was being paid by Travelers.
24   They're the ones that had the original policy.  So
25   that limit has been -- has been already used up.  So

```
 1    Chubb, who's the reinsurer, is supposed to be
 2    picking up the coverage of the costs.  And we're
 3    going back and forth with Chubb now because Chubb
 4    keeps asking for more information, more information
 5    before they go and officially decide to cover the
 6    costs.
 7              THE COURT:  How much cost are we talking
 8    about?
 9              MR. RODRIGUEZ:  It's pretty significant.
10    It's --
11              THE COURT:  You have the bill?
12              MR. RODRIGUEZ:  I think it's close to six
13    figures, if I'm not -- or over it.  Just over it.
14    I'm not sure, Your Honor, but it's significant.
15    It's a lot.
16              THE COURT:  So did you once have access to
17    Relativity, or only you have access?
18              MR. RODRIGUEZ:  Well, he had access to --
19              MR. ERDMAN:  I have --
20              MR. RODRIGUEZ:  -- production, right?
21    Yeah, that's correct.
22              MR. ERDMAN:  I have my own software.  They
23    would give me production.  I put it into my own, so
24    it's unrelated to their predicament.
25              THE COURT:  Okay.  So you have your own
```

```
1    predicament because you need to get to what?
2              MR. ERDMAN:  They can't --
3              THE COURT:  No, no, no.
4              MR. RODRIGUEZ:  What he's referring to, he
5    questions a batch of documents -- actually, three
6    groups of documents.  So for me to be able to go
7    over them and be able to review --
8              THE COURT:  You can't see the original
9    documents anymore?
10             MR. RODRIGUEZ:  I cannot see the documents
11   anymore, that's correct, because I don't have access
12   anymore.
13             THE COURT:  How many documents are there?
14             MR. RODRIGUEZ:  A couple hundred.  I would
15   say it's about 400, just about.
16             MR. ERDMAN:  Could be.
17             MR. RODRIGUEZ:  It's about 400.
18             MR. ERDMAN:  But I think the bigger issue
19   is, if they're unable to access the e-discovery
20   platform, I don't see how they're producing anything
21   if they can't even review a single one of their own
22   documents.  Nor is TransPerfect likely to be very
23   helpful in anything if their bills are going unpaid.
24             MR. RODRIGUEZ:  Well, that's a situation
25   we're trying to remedy.  We should be able to remedy
```

```
 1    within the next --

 2              THE COURT:  Next what?

 3              MR. POLIZZOTTO:  We don't know.  We don't

 4    know the answer to that.  We're working with them --

 5              THE COURT:  He claims you've been trying to

 6    do this for years.

 7              MR. POLIZZOTTO:  -- trying to get.

 8              THE COURT:  How long has it been you've

 9    been without --

10              MR. POLIZZOTTO:  Chubb?

11              THE COURT:  Let me finish.

12              How long has it been you've been without

13    access?

14              MR. RODRIGUEZ:  Since the end of -- when

15    was the last conference, Your Honor?  Was it April?

16    The end of April?

17              THE COURT:  Probably.

18              MR. RODRIGUEZ:  That's about when we lost

19    access.

20              MR. POLIZZOTTO:  After that conference.

21              MR. ERDMAN:  And Mr. Rodriguez has been

22    claiming he's working on the privilege review

23    multiple times, asked for extensions, and then only

24    recently admitted he could never see any of it the

25    entire time.
```

 1            THE COURT:  Well, not to me, because I
 2    haven't seen him since April.
 3            Well, that's a separate issue right now, is
 4    the rereview of the privilege.  So if it impacts
 5    something else, then we can talk about, you know,
 6    whether Victor needs to be responsible for paying
 7    the bill or doing what you need to do to at least --
 8    even if they're not going to host the platform, to
 9    get access to the raw documents.  Might be something
10    that wouldn't be unreasonable for me to just order
11    and then you'd have to deal with them without the
12    platform.
13            Okay.  So we got distracted by the
14    privilege log questioning.
15            So I think we have something of a track.
16    I'm basically denying your application in terms of
17    requiring them to, you know, undertake acts, other
18    than what I said just now about redoing the e-mail
19    search for the accounts that Victor uses.
20            I mean, he better be accurate on these,
21    which accounts he used, at least in 2019, because if
22    it turns out that he lied about that, and, in fact,
23    there are other accounts, that's going to be a basis
24    for other sanctions.  So you better make sure those
25    are really his only e-mail accounts where any

                AMM TRANSCRIPTION SERVICE  631.334.1445

1    discoverable information could be located.

2              MR. RODRIGUEZ:  He was pretty clear on

3    that, Your Honor.

4              THE COURT:  Well, you better warn him about

5    the potential consequences if some e-mail comes up

6    from someone else that he used, from some other

7    account.  He's going to have a great Rule 37 motion.

8              MR. ERDMAN:  Your Honor, would we be able

9    to address just some statements they made in their

10   affidavit that seem to be relying on Victor's say

11   rather than facts?

12             THE COURT:  I'm not sure what that meant,

13   but go ahead.

14             MR. ERDMAN:  Like, they say he only had a

15   single computer, and that's just false.  He had

16   several this entire --

17             THE COURT:  I'm not going to go over

18   statements that you think might be incorrect.  What

19   matters to me is, are there documents that you can

20   prove -- actually, let me back that up.

21             What matters to me is whether there's

22   something I can order at this point that would

23   advance discovery in this matter.  As I keep telling

24   you, if they say X is true about what they have

25   access to, and you think they have access to

AMM TRANSCRIPTION SERVICE  631.334.1445

1    something else, that doesn't do anything right now

2    because, even if I believed you, what good would it

3    do for me to order them to produce something they

4    say they don't have?

5           The only way you can get relief for that is

6    if you actually do prove it, then they get a

7    sanction, either spoliation or just regular old 37.

8    It's the same analysis.  It's basically the same

9    analysis, spoliation and a complete failure to

10   produce at any time.  Under Rule 37, it's the same

11   factors, the same considerations.

12          So the answer is, no, I don't want to go

13   over statements you think are incorrect.

14          All right.  So we're going to have some

15   reproduction by September 20th.  You know, if this

16   privilege thing is still not solved within the next

17   few weeks, Mr. Erdman, you know, you can write to me

18   and -- first, talk to them.  Write to me, and then I

19   will -- I don't know what I can order.  It's

20   possible I could order TransPerfect to supply them

21   with the raw documents.

22          You might want to talk to TransPerfect

23   about that, saying that, you know, I'm considering

24   doing that.

25          Obviously, I'm not -- I'm sorry.  Not

```
 1   TransPerfect.  Relativity, right?
 2              MR. RODRIGUEZ:  Yes.
 3              THE COURT:  Those are the people who have
 4   the bill.
 5              It's possible, you know, their real expense
 6   may be, kind of, the hosting and the bells and
 7   whistles.  And they may have some understanding that
 8   some raw document you gave to them they have to give
 9   back to you.  You understand what I'm saying?
10              So it may not need an order from me in
11   order for you to just get back the raw document.
12              Are you both following this?
13              MR. POLIZZOTTO:  Yes.
14              THE COURT:  So when he contacts you, you
15   need to talk that out with Relativity.
16              All right, Mr. Ehrman, I think we've
17   covered what we're going to do today.
18              MR. ERDMAN:  There's one other really minor
19   issue.  I had ordered a transcript.
20              THE COURT:  Oh, yes, I remember that.
21              Did you agree to pay the transcript costs
22   or not?
23              MR. POLIZZOTTO:  The transcript of?
24              THE COURT:  The court conference.
25              MR. ERDMAN:  The prior conference.
```

```
1                 MR. POLIZZOTTO:  Yes.

2                 You didn't receive it?

3                 MR. ERDMAN:  You never said that -- never

4      said --

5                 MR. POLIZZOTTO:  I'd be happy to.

6                 THE COURT:  It's in his letter.  You didn't

7      see it?

8                 MR. POLIZZOTTO:  I had told my staff to

9      send out the check.  If it didn't go out, I will

10     personally take care of it.

11                THE COURT:  Okay.

12                Anything else, Mr. Erdman?

13                MR. ERDMAN:  No.

14                THE COURT:  All right.  I think we're done.

15     Thank you.

16                MR. POLIZZOTTO:  Thank you.

17                MR. RODRIGUEZ:  Thank you, Your Honor.

18

19                          0o0

20

21

22

23

24

25
```

1

2                       C E R T I F I C A T E

3

4        I, Adrienne M. Mignano, certify that the

5    foregoing transcript of proceedings in the case of

6    Tyler Erdman v. Adam Victor, Docket #20CV4162 was

7    prepared using digital transcription software and is

8    a true and accurate record of the proceedings.

9

10

11   Signature    *Adrienne M. Mignano*
                  _____

12                ADRIENNE M. MIGNANO, RPR

13

14   Date:        September 17, 2024

15

16

17

18

19

20

21

22

23

24

25

                AMM TRANSCRIPTION SERVICE  631.334.1445