**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TYLER ERDMAN,                                          :
            Plaintiff,                             :
                                              :  Case No. 1:20-cv-04162 (LGS) (GWG)
      -against-                                       :
                                              :  ECF Case
ADAM VICTOR, et al.,                                  :
            Defendants.                         :  Hon. Gabriel W. Gorenstein
                                              :
                                              :
                                              :
-------------------------------------------------------------

# DECLARATION OF TYLER ERDMAN IN SUPPORT OF MOTION FOR

# SANCTIONS

      I, TYLER ERDMAN, hereby declare under penalty of perjury pursuant to 28 U.S.C. §
1746:

## I.     PERSONAL KNOWLEDGE AND BACKGROUND

1. I am the Plaintiff in this action. I make this declaration based upon my personal knowledge, review of documents produced in this litigation, review of court filings, and my participation in discovery proceedings including the January 29, 2024 vendor conference.

2. I commenced this action on June 2, 2020, asserting claims including defamation arising from Defendant Adam Victor's false accusations that I engaged in criminal conduct including extortion and "hacking." Discovery has been the central battleground of this litigation because of Defendant's systematic refusal to produce documents.

3. This declaration sets forth facts within my personal knowledge demonstrating discovery obstruction since Plaintiff served Document Requests in October 2021 and the resulting

prejudice to my case. I attach forty exhibits, identified as Exhibit 1 through Exhibit 40 (Exh-1 through Exh-40). Each exhibit is a true and correct copy of the document described below.

4.   The exhibits attached to this declaration are:

- **Exh-1** — November 17, 2021 Opinion and Order (Docket #110)

- **Exh-2** — February 1, 2022 Letter from Rodriguez to Court (Docket #130)

- **Exh-3** — December 7, 2022 Discovery Order (Docket #180)

- **Exh-4** — January 10, 2022 Sanctions Order, *Victor v. Khatskevich*, Index No. 158981/2014 (NY County Supreme Court)

- **Exh-5** — February 11–18, 2020 Email Correspondence Between Adam Victor and Deanna Paul, The Wall Street Journal

- **Exh-6** — July 13, 2022 Interrogatory Responses of Adam Victor (Docket #150-2)

- **Exh-7** — December 9, 2021 Deposition Transcript of Adam Victor

- **Exh-8** — July 26, 2022 Discovery Order (Docket #153)

- **Exh-9** — April 5, 2024 Joint Letter (Docket #246)

- **Exh-10** — March 21, 2024 Letter from Braverman Firm Regarding Document Collection (Docket #238-2)

- **Exh-11** — May 1, 2024 Affidavit of Emilio Rodriguez (Docket #266)

- **Exh-12** — October 4, 2021 Document Requests (Docket #279-1)

- **Exh-13** — July 31, 2024 Letter from Rodriguez to Court (Docket #277)

- **Exh-14** — Repository Tracker Chart (Docket #238-1)

- **Exh-15** — September 6, 2024 Conference Transcript

- **Exh-16** — November 7, 2024 Privilege Log

- **Exh-17** — May 14, 2015 Voicemail Transcript, Detective Richard Bradish, NYPD

- **Exh-18** — July 31, 2014 RVM Enterprises Invoice No. 31565

- **Exh-19** — March 30, 2015 Email from Gordon Stephens (RVM) to Adam Victor

- **Exh-20** — June 7, 2017 SETEC Investigations Invoice No. 10657

- **Exh-21** — Defendant's Weekly Status Letters

- **Exh-22** — Confessed Judgment, *Schlam Stone & Dolan LLP v. Adam Victor*, Index No. 655235/2020 (NY County Supreme Court)

- **Exh-23** — Complaint, *Corporate Collections LLC v. Polizzotto & Polizzotto, LLC*, Index No. 653547/2025 (NY County Supreme Court)

- **Exh-24** — Reply Memorandum, *Corporate Collections LLC v. Polizzotto & Polizzotto, LLC*, Index No. 653547/2025 (NY County Supreme Court)

- **Exh-25** — April 17, 2024 Conference Transcript (Docket #259)

- **Exh-26** — June 27, 2025 Letter to Court (Docket #317)

- **Exh-27** — August 3, 2022 Letter from Rodriguez to Court (Docket #156)

- **Exh-28** — Complaint, *McWilliams v. Empire Agricultural Systems, LLC*, Index No. 655727/2023 (NY County Supreme Court)

- **Exh-29** — Sanctions Order, *McWilliams v. Empire Agricultural Systems, LLC*, NYSCEF Doc. 144

- **Exh-30** — July 25, 2019 Conference Transcript, *Khatskevich v. Victor*, Index No. 151658/2014, NYSCEF Doc. 690

- **Exh-31** — September 6, 2019 Deposition Transcript of Adam Victor, *Khatskevich v. Victor*, Index No. 151658/2014, NYSCEF Doc. 845

- **Exh-32** — Affirmation of John Brennan, *Victor v. Khatskevich*, Index No. 158981/2014, NYSCEF Doc. 381

- **Exh-33** — January 25, 2024 Memorandum Opinion and Order (Docket #233)

- **Exh-34** — October 2024 Order to Show Cause (Docket #301)

- **Exh-35** — October 2024 Endorsed Order (Docket #306)

- **Exh-36** — April 10, 2024 Order, NYSCEF Doc. 396 (NY County Supreme Court)

- **Exh-37** — November 9, 2021 Letter to Court (Docket #101)

- **Exh-38** — FEC Conciliation Agreement, MUR 7005

- **Exh-39** — August 1, 2024 Order (Docket #278)

- **Exh-40** — Oct 28, 2022 Conference Transcript (Docket 170)

## II.    THE DISCOVERY CHRONOLOGY

### a.   The Court's Orders and Findings (July 2022–January 2024)

5. On July 26, 2022, this Court ordered Defendant to search the P-Drive, office email systems, forensic devices, cell phones, and cloud storage by August 3, 2022. (Exh-8.) The deadline passed with no search results, no explanation, and no extension motion.

6. On October 28, 2022, I was present when Rodriguez admitted no search had been conducted. I heard Judge Gorenstein call this "outrageous" and state "We don't blow off court orders." (Exh-40 at 10:4-9, 13:12-23.)

7. On December 7, 2022, the Court found "clear" failure to comply with the July 26 order and held sanctions "open pending completion of the discovery process." (Exh-3 at 3.)

8. On January 25, 2024, the Court found that Defendant's attorneys' conduct was "willful" in that "they have no processes in place to ensure compliance" and warned that "any future violations of court orders or discovery obligations will result in additional sanctions, including but not limited to a fine." (Exh-33 at 6-9.)

### b.   The April 17, 2024 Warning and May 1, 2024 Response

9. On April 17, 2024, I was present when Judge Gorenstein told Rodriguez: "If you omit something and it's material, there will be personal consequences to you." (Exh-25, Tr. 52:1-3.) The Court added: "It's sanctionable to not even just know these things and to not have shared it with the Plaintiff." (Exh-25, Tr. 52:13-16.)

4

10. On May 1, 2024, Rodriguez filed a new affidavit (Exh-11). That affidavit failed to properly detail how his production was made, often pointing to a collection log that did not support the claims he was making.

### c.   September 6, 2024 Status Conference

11. On September 6, 2024, following the Court's August 1, 2024 deferral of my sanctions motion (Exh-39 at 1), the Court convened a status conference. (Exh-15.) I was present.

12. Rodriguez admitted defense counsel exercised no oversight of Victor's email search: "We relied on what he told us." (Exh-15, Tr. at 50:19-22.) Victor self-selected which 6 of 29 known email accounts to search. (Exh-15, Tr. at 22:11-13.)

13. Rodriguez admitted defense counsel lost access to Relativity—the document review platform at TransPerfect—since approximately April 2024. (Exh-15, Tr. at 51:21-22.) Rodriguez estimated the unpaid bill at "close to six figures, if I'm not—or over it. Just over it." (Exh-15, Tr. at 52:12-13.) The actual bill per the TransPerfect collection lawsuit is $68,107.36. (Exh-23.) I stated at the conference: "Mr. Rodriguez has been claiming he's working on the privilege review multiple times, asked for extensions, and then only recently admitted he could never see any of it the entire time." (Exh-15, Tr. at 54:21-25.)

14. Rodriguez did not mention that his firm was the one that had stopped payments that resulted in the access being lost. His claims of working towards insurance coverage meant that he wanted a policy for another action to pay for this action's costs. (Exh-23, 24). They were ordered to produce, that naturally would incur costs. They have provided no evidence that it would be a hardship.

15. Victor had told New York Magazine in 2005 that his net worth was "A hundred million".[1] During my employment Victor owned 7 apartments, maintained an office in the Helmsley building, two Gulfstream IV aircraft he purchased with cash, race horses, and approximately half a dozen Hummer H2s. While he may act as a deadbeat, whenever required he never appears to have problems materializing money as required.

16. When the Court read aloud a statement Rodriguez had written in Docket #281 about forensic images, Rodriguez responded: "That's a good question also, Your Honor." The Court replied: "Well, you wrote the sentence. What are you referring to?" Rodriguez admitted: "I went to my client and that's the best answer that he could give." (Exh-15, Tr. at 17:6-25.)

17. Rodriguez initially claimed December 2022 "batch collections" covered Victor's email accounts. When pressed, he admitted: "From Sonja Bozic, one custodian. That's not a network collection from the vendor." (Exh-15, Tr. at 38:20-22.)

18. Polizzotto stated the P-drive originals were "subsequently destroyed or disposed of by the police department." (Exh-15, Tr. at 13:4-6.) This contradicts Victor's deposition testimony that the originals were returned to him (Exh-7, p. 237:21-25) and the vendors conference account that they were "lost."

19. As mentioned at the Conference, my analysis had found that Victor had produced no emails after August 2019 cutting off right at the actionable time frame for the action. (Exh-15, Tr. at 27:22-23.)

---

[1] https://nymag.com/nymetro/news/people/columns/intelligencer/12346/

### d.    Correspondence (October–November 2024)

20. On October 23, 2024, Rodriguez sent me a six-document email production. I asked about search terms. Rodriguez revealed: "Private AND Investigator," "Bradish," "Eve," "Tyler," "Yevgeniya," "Erdman," "Khatskevich," "Nazym," "Toktasynnova," "FEC," and "Forensics." I emailed Rodriguez on October 24: "We need to talk about this. There are tremendously obvious issues with your production beyond it having 6 pages." Rodriguez responded: "We will get back to you." He never did. I wrote directly to the Court. (Exh-35.)

21. On November 7, 2024, Rodriguez shared a Google Drive folder labeled "Erdman production." I reviewed the production and identified deficiencies: improperly exported emails, no load files, no bates numbers, no native files, and an insufficient privilege log.

### e.    The Vendors Conference (January 29, 2024)

22. On January 29, 2024, I attended the vendors conference. Rodriguez had represented that "the vendor searched all 900,000 Braverman documents." The actual number processed by TransPerfect was 37,731. The 862,269 remaining documents were never reviewed, searched, or produced.

23. No search terms were used. The approach was to "load all the data into the database" without attempting to "cut it down." Victor personally conducted searches using only name-based queries, looking for "anything that your name came up"—without reviewing document requests.

24. Rodriguez had certified his collection log listed "all the repositories from which documents were produced." At the vendors conference, testimony revealed the tracker

"only reflects the forensic collection of data. It does not reflect data that would have been sent from the law firm or the data that we ported over from the [Braverman] case."

25. Rodriguez admitted: "Do I remember what's in the affidavit? No."

26. Hard drives from the Park Avenue office were described as "lost or taken." Victor admitted: "all the electronic stuff I had is missing from the fourth floor." The fourth floor being a storage room at his Condominium.

## III. THE WEEKLY STATUS LETTERS

27. On January 25, 2024, this Court ordered Defendant to provide weekly letters "detailing their efforts to provide discovery." (Exh-33, ¶13.b.) I received and reviewed all that I have received.

28. None reveal much in the way of details of what is being done as little was being put in. As of July 18, 2024 I had told the Court that I found "no mention of them having interacted with their client or any vendors or any much of any efforts to further discovery beyond summarizing phone calls."

29. A compilation of these letters are attached as Exh-21.

### a. The Frozen Letters

30. Rodriguez repeatedly attributed TransPerfect's access suspension to "the insurance provider ensuring the proper payments are made to the vendor." However, at his January 24, 2022 deposition, Victor was asked whether he had "any insurance that is paying for any of these legal actions" and answered: "No."

8

31. From December 27, 2024 through March 14, 2025, Rodriguez sent me twelve more weekly status letters. They are virtually identical copy-pasted verbatim with only the date changed. Every letter repeated that TransPerfect access "remains suspended."

## IV. THE MISSING REPOSITORIES

32. On October 4, 2021, I served my first federal discovery requests. (Exh-12.) The requests specifically sought forensic examination materials (Requests 15, 17), communications with law enforcement (Requests 8, 10), and email account documents (Request 21). On July 26, 2022, the Court ordered Defendant to search the P-Drive, office email systems, forensic devices, cell phones, and cloud storage. (Exh-8.) On December 7, 2022, the Court found that search "was insufficient." (Exh-3 at 2-3.)

### a. Forensic Images

33. Documents show Victor has retained multiple lawyers, investigators and forensic efforts as part of his efforts to target Plaintiff. (See Exh-18, 19, 20)

34. In his July 13, 2022 interrogatory response (Exh-6), Victor identified two forensic firms—"RVM Enterprises" and "Setec". There is no evidence or explanation as to Victor receiving forensic data generated by RVM. I have reviewed an email dated March 30, 2015, from Gordon Stephens (RVM Computer Forensic Engineer) to Adam Victor stating: "We have five forensic images currently stored in our forensic safe at RVM." (Exh-19.) RVM offered three options: send the images to Victor at no charge, destroy them at no charge, or continue storage at $150 per six months. I have not seen any such images produced nor documents that would lead me to believe their contents were searched.

### b. The Hard Drives: Three Contradictory Stories

35. Victor testified that the NYPD returned hard drives to him after making copies: "The police came, they took it, they made copies and they returned the original to me and they kept the copies." (Exh-7, p. 237.) Victor also testified the NYPD retains copies at the property clerk's office. (Exh-7, p. 239.) At the September 6, 2024 conference, Polizzotto stated the drives were "destroyed or disposed of by the police department." (Exh-15, Tr. at 13:4-6.) At the vendors conference, they were described as "lost." The representative from SETEC who was tasked with retrieving the drives from the NYPD at one time did not know anything about those efforts.

36. In the State Actions, Victor's attorney at Davidoff Hutcher & Citron was subpoenaed and produced documents. Included was a May 14, 2015 voicemail to that attorney from Detective Bradish left: "I have the hard drives back. I wanna know if it's alright with you if we voucher them and keep them here. They'll be in police custody until the trial is over. Um, so I just wanna make sure that was all right with you guys, you guys didn't need them for the civil case." (Exh-17.)

37. Victor admitted communicating with Bradish "very frequently" (Exh-7, p. 226) and stated he intends to call Bradish as a trial witness (Exh-7, p. 231). My Document Request 10 specifically requested: "Any communications to and documents relating to Richard Bradish." (Exh-12 at 4.) These communications would include phone calls and text messages that have not been produced.

### c. TGDS Email Accounts

38. My Document Request 21 requested documents concerning email accounts including nazym@tgds.com, yevgeniya@tgds.com, sonja@tgds.com, and tiffany@tgds.com. (Exh-12 at 5.) Only Nazym's and Yevgeniya's were produced.

39. Victor had claimed in state court on September 9, 2021, he certified that nazym@tgds.com was "deleted when she quit" (*Toktassynova v. Victor*, Index No. 162327/2014, Response to Doc. Demand No. 13); at the vendors conference, Victor admitted the accounts were "deactivated, not deleted" and that "nothing has ever been deleted."

### d. The 862,269 Unsearched Documents

40. Rodriguez certified under oath in November 2022 that "the vendor searched all 900,000 Braverman documents." (Docket #173.) At the vendors conference, the actual number processed by TransPerfect was 37,731.

41. Of those many were productions made in the related State Actions. The parties had a conversation about omitting such documents to avoid duplicative documents, but Defendant produced them anyway. A review of Defendant's production shows custodians as Toktassynova and Khatskevich. Those documents contain their productions original bates stamp and a second one added by Victor.

## V. THIRD-PARTY DISCOVERY BARRIERS

### a. TransPerfect: $68,107.36 Unpaid

42. Polizzotto & Polizzotto have been sued by Corporate Collections LLC seeking collection of money due to TransPerfect. Polizzotto then defaulted in response. That case included

invoices showing that TransPerfect was owed $68,107.36 from their April 30, 2024 bill onward (Exh-23, 24).

### b. Schlam Stone & Dolan: $166,000 Confessed Judgment

43. Schlam Stone obtained a confessed judgment against Defendant for $166,000 (Index No. 655235/2020). (Exh-22.) At the vendors conference, Victor claimed the judgment was "resolved" and that Schlam Stone "has done work for me since then." The confessed judgment was enforced, not resolved, and Schlam Stone asserts retaining and charging liens over Defendant's case files.

### c. SETEC

44. SETEC performed forensic acquisition and analysis for Defendant, including forensic imaging of a MacPro, two loose hard drives, and a Mac, as well as Dropbox analysis. (Exh-20.) The TransPerfect tracker "only reflects the forensic collection of data" and "does not reflect data that would have been sent from the law firm or the data that we ported over from the [Braverman] case." In their February 9, 2024 status letter, Rodriguez and Polizzotto reported: "After various communications with Setec, we were informed they currently have no information regarding Mr. Victor's documents, and any information would be contained in the drives sent to TransPerfect." (Exh-21) TransPerfect has also failed to properly identify what drives they received.

### d. The Custodians

45. Defendant's February 9, 2024 status letter (See Exh-21) listed custodians of responsive documents. The majority didn't respond or claimed to not have any documents. Victor has not explained why he believed those persons to have documents they didn't have.

## VI. PRIVILEGE LOG DEFICIENCY

46. Defendant had provided several deficient privilege logs over the course of discovery. Ultimately TransPerfect's lack of cooperation made it impossible to resolve issues involving them as Defendant couldn't access any documents for review.

47. On November 7, 2024, Defendant produced a second privilege log covering 805 entries spanning June 1, 2019 through June 1, 2020. (Exh-16.) Subject lines of withheld emails include: "Tyler Erdman TEAMVIEWER hack," "Tyler Erdman stolen Hard Drive files from SETEC," "Tyler Erdman DROPBOX Theft," "A FEW QUESTIONS FOR TYLER ERDMAN. THIS KID IS SICK," "Memo re Erdman perjury," and "Forged Contract."

48. Log entries also show that Victor contacted the local police department in Plaintiff's home town of Weston, CT.

49. The privilege log designates each entry as either "Attorney-client" or "Work Product"—675 entries carry the "Attorney-client" tag and 130 carry the "Work Product" tag. They did not properly justify those claims. It appears that Victor is marking any document he sent to attorneys as privileged by virtue of being sent to an attorney, while also claiming attorneys have his documents and won't cooperate with discovery.

50. I identified 136 entries involving David Katz at PJN Strategies, a public relations firm. Defendant has not disclosed having had communications with Katz about Plaintiff beyond the log entries. The log shows Katz edited legal briefs, with files titled "2019.10.28 T-Visa Appeal Brief DK Markup.docx." Seventeen entries were sent between Victor and Katz without any attorney on the email—including entries with subject lines referencing the T-Visa appeal, case service notifications, and fee discussions.

13

51. Victor also communicated with Garry Coulter, a former employee about case matters, including forwarding appellate decisions and case filings. These entries are tagged "Attorney-client" despite Coulter not being an attorney.

### a. The Wall Street Journal Emails

52. The November 7, 2024 email production contained several emails between Victor and Deanna Paul, a reporter at The Wall Street Journal, dated February 11-18, 2020. (Exh-5.) These were never produced in any prior production.

53. On February 11, 2020, Victor wrote to Paul: "this is a partial list of files stolen from my Server, that these folks admitted to stealing, with no consequences. Despite the recommendation of the NYPD to prosecute, Cy Vance's office refused to prosecute. The total amount of stolen computer files was in excess of 300,000 files." Victor attached several documents which do not appear to have been produced.

54. On February 15, Victor confirmed a meeting between the reporter and Jeff Eilender at Schlam Stone: "Lets meet at Jeff's office at 6pm." On February 18, Paul confirmed.

55. My Interrogatory No. 22 requested: "Fully identify any documents and the recipients of any communications regarding Plaintiff, Khatskevich, or Toktassynova that mentions extortion, 'hacking', theft or other criminal acts." (Exh-6.) The WSJ emails were not produced until November 2024.

56. When deposed about reporter contacts, he claimed to have only communicated with a New York Post reporter and Jeff Shapiro of the Washington Times. (Exh-7 at 171:14-24.) Plaintiff was aware of his contact with the Post as he was quoted and it reached the front page. Shapiro was Victor's attorney. He concealed his contact with Deanna Paul when

14

those communications were extremely relevant to this action and he avoided production of those communications for years.

57. The State Court ordered that Victor was restricted from personally possessing a copy of Khatskevich's T-Visa paperwork, to prevent Victor from retaliating against her by contacting law enforcement or others as he had done prior. (Exh-30) His attorneys were only to allow him to review those documents at their office. To work around this restriction, he arranged for the reporter to come to Eilender's office so he could show her copies and explain them as he "knows the facts better" while Eilender knew the "law".

### b. Accusations Map to Concealed Repositories

58. Victor accused me of copying files from a USB drive to Eve Khatskevich's computer—yet Eve's computer has never been provided for forensic analysis. He accused me of hacking his cell phone—yet that phone was not retained. Its replacement was searched only for Adobe and Dropbox applications. (Exh-3 at 2-3.) He accused me of stealing files from his office server—yet the P-Drive has never been searched or produced. He told the NYPD I "deleted" approximately 700 files from these devices—yet the drives have been claimed destroyed, returned, and lost in three different versions.

59. Victor's cell phone would contain text messages and call logs with Detective Bradish, whom Victor contacted "very frequently" (Exh-7, p. 226) as well as other law enforcement officials.

60. Victor explicitly told me that he maintained relationships with law enforcement officials that could only be contacted by phone. As such his phone would contain the only evidence of some of his communications.

15

### c.  Law Enforcement and Investigative Apparatus

61. The November 2024 privilege log documents a sustained investigative campaign during the statute of limitations period. On September 11, 2019, Victor sent his attorney a document titled "FBI.pdf." On September 25, 2019, Victor forwarded "Delivery of Investigative Findings - Victor v Erdman". On August 10, 2019, Victor emailed with the subject "Criminalizing Pegasus." An action in which Victor claimed Plaintiff had committed a crime by way of responding to subpoena. Documents produced ultimately showed Victor failed to produce and he was sanctioned for it.

62. On December 4, 2019, Victor directed counsel to prepare a "Nazym Criminal complaint" targeting Plaintiff's wife. On February 5, 2020, SilverSeal invoiced Victor for their continuing work.

63. On May 22, 2020, Victor forwarded to counsel a "Jordan and Timlin memo to Sachs", referring to Michael Sachs, Manhattan's district attorney.

64. Victor has claimed privilege over these documents, seemingly involving his attorneys to assist his campaign against Plaintiff and to shield it from discovery.

## VII. THE MCWILLIAMS CASE

65. The *McWilliams v. Empire Agricultural Systems* case (Index No. 655727/2023, NY Supreme Court, Commercial Division) involves the same defendant, the same counsel, and similar discovery conduct. (Exh-28 ¶¶ 28-34.) In that action Defendant delayed discovery for months, requiring two motions to compel. Ultimately the Court awarded McWilliams Costs for Victor's lack of compliance. (Exh-29)

16

## VIII. VICTOR'S PERSONAL LIABILITY

66. Victor was sanctioned $3,333 in each of three related state court actions for selective production and discovery violations. (Exh-4.) The Court issued those sanctions after the production in this action revealed that Victor had failed to produce documents such as those from Toktassynova and Khatskevich's email accounts. Victor then failed to pay the sanctions until around April 2024 when the Court threatened a judgement with accompanying financial discovery (Exh-36).

67. During Plaintiff's employment, Victor had attempted to have Plaintiff participate in a scheme that his family and employees took part in where they would donate to a politician and be reimbursed by Victor to circumvent campaign finance law.

68. Plaintiff had reported this to the Federal Election Commission who opened an investigation. Victor then solicited and submitted false affidavits from the participants to try and avoid responsibility.

69. Victor's daughter had texted me when this occurred, outlining how "Tubby", Victor, was threatening her and her sister with being cut off financially if they did not agree to be represented by Victor's attorney and sign the statements provided to them.

70. She also expressed a concern that Victor would physically threaten her. She believed him to be capable of this as she and witnesses described to me how Victor had once grabbed her by the neck and held her against a wall. Emails produced between her and Victor also document this same event.

71. The FEC found the affidavits unconvincing and eventually voted to issue subpoenas for financial records. Victor then admitted to what he did and paid a $65,000 civil penalty.(Exh-38)

72. Around the same time the FBI and DOJ investigated his conduct which ultimately resulted in him on April 19, 2017 pleading guilty to a felony: one count of making political contributions in the names of others, in violation of 52 U.S.C. § 30122. *United States v. Victor*, No. 1:17-cr-00053 (D.D.C.).

73. Victor's pattern of non-payment includes Schlam Stone ($166,000) and TransPerfect ($68,107.36). Victor has used at least five law firms since the events underlying this case: Davidoff Hutcher & Citron, Schlam Stone & Dolan, Conrad Jordan, Jon Silveri, and Polizzotto & Polizzotto. Each accumulated case files during its representation, and Victor claimed each had not returned documents to him.

## IX. PREJUDICE AND COSTS

74. My surviving defamation claim requires me to prove that Victor's accusations were false. The documents that would prove falsity—communications with law enforcement, internal communications about the accusations, and documents showing the basis for those accusations—are precisely the documents that have been concealed, destroyed, or made inaccessible.

75. As a direct result of Defendant's discovery violations, I have maintained a Logikcull eDiscovery subscription at approximately $430.06 per month since October 2021 to review productions and identify discrepancies. I am prepared to submit detailed billing records if the Court requests. I have also had to purchase a computer and devices to be able to process the data and avoid retaining an expert to do so.

76. I respectfully request non-monetary sanctions—establishing facts, precluding defenses, and directing adverse inferences—together with monetary sanctions.

18

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 17, 2026, at Stamford, CT

_Tyler Erdman_

Tyler Erdman