UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
TYLER ERDMAN, :

Plaintiff, : OPINION & ORDER

-v.- : 20 Civ. 4162 (LGS) (GWG)

ADAM VICTOR, :

Defendant. :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Pro se plaintiff Tyler Erdman has moved for discovery sanctions.[1] For the reasons stated below, the motion is granted.

I. BACKGROUND

For background, we describe the procedural history of the instant motion and the facts relevant to its disposition.

A. Procedural History

After a discovery period that lasted several years and was marked by frequent disputes and requests for extensions, discovery in this case came to a close on May 12, 2025. See Order, dated May 28, 2025 (Docket # 313). Under the Court's initial order in this case, the time to raise any discovery disputes ended 30 days later. See Order, dated Nov. 2, 2021 (Docket # 97) ¶ 4.

[1] See Notice of Motion, filed Feb. 17, 2026, annexed to Memorandum of Law in Support in Motion for Sanctions, filed Feb. 17, 2026 (Docket # 335-1) ("Mot."); Memorandum of Law in Support in Motion for Sanctions, filed Feb. 17, 2026 (Docket # 335) ("Mem."); Affidavit of Tyler Erdman in Support of Motion for Sanctions, filed Feb. 17, 2026, annexed to Mem. (Docket # 335-2) ("Aff."); Memorandum of Law in Opposition to Motion for Sanctions, filed Mar. 23, 2026 (Docket # 340) ("Opp."); Reply Memorandum of Law in Support of Motion for Sanctions, filed Apr. 7, 2026 (Docket # 343) ("Reply").

The parties suggested that discovery should be reopened to allow for third party discovery, see Letter from Emilio Rodriguez and Tyler Erdman, filed June 13, 2025 (Docket # 314), but neither moved to reopen discovery, and plaintiff subsequently sought leave to bring the instant motion, see Letter from Tyler Erdman, dated June 27, 2025 (Docket # 317).

The Court had already contemplated that plaintiff might wish to bring a sanctions motion, inasmuch as the Court held in August 2024 that "[o]nce discovery is completed, plaintiff may request permission to file a motion for sanctions. Plaintiff will be free to raise all past conduct at that time."[2] Order, dated Aug. 1, 2024 (Docket # 278) ("Aug. 1, 2024 Order") (emphasis added). Similarly, at the final discovery conference held in this case, the Court indicated that it would entertain such a motion. See Transcript of Sept. 6, 2024 Hearing, filed Sept. 23, 2024 (Docket # 289) ("Sept. 6, 2024 Tr."). At that conference, the Court explained to plaintiff the difference between a motion for sanctions premised on "spoliation" of evidence and a motion for sanctions for "failure to produce." Id. at 57:7, 9-10.

In granting leave to bring the instant motion, the Court reminded the parties that their submissions must "describe[] all pertinent facts" and that "any factual statement in a memorandum of law must followed by a citation that provides evidentiary support for that statement (normally to a sworn statement or other documents in the record). Any factual statement unaccompanied by such a citation will not be considered." Memorandum Endorsement, dated July 1, 2025 (Docket # 320) ("July 1, 2025 Endorsement"); Order, dated Dec. 11, 2025 (Docket # 328) ("Dec. 11, 2025 Order").

[2] Because the Court has expressly authorized plaintiff to bring this motion, we place no stock in defendant's argument that the motion is "duplicative of prior sanctions applications." Opp. at *10.

After several rounds of extensions, plaintiff filed the instant motion on February 17, 2026. See Mot. Plaintiff seeks no spoliation sanctions in his motion, either under the case law applicable to spoliation or under Fed. R. Civ. P. 37(e). Instead, he confines himself to a request for sanctions under Fed. R. Civ. P. 37(b), see Reply at *8, and cites to a leading case discussing discovery sanctions under that rule, Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298 (2d Cir. 2009), see Mem. at 16.

B. Allegations in Plaintiff's Motion

Plaintiff's moving brief is quite confusing as to the facts he is relying on to support the instant motion. Not all factual statements in plaintiff's papers are supported by citations — and of plaintiff's citations, not all are to competent evidence. A separate but equally consequential problem is that plaintiff's papers assume the Court retains a memory of certain past proceedings and filings in this case, and thus plaintiff fails to describe "all" facts pertinent to the instant motion, even though the Court specifically stated that any submissions must contain all such facts. See July 1, 2025 Endorsement; Dec. 11, 2025 Order.

Nonetheless, we will briefly examine the allegations of misconduct in plaintiff's papers to the extent that we can understand them and to the extent they are followed by evidentiary support, as the Court had specifically directed.

First, plaintiff raises issues with two sources of defendant's productions: namely, ESI collected by defendant's former counsel (Braverman Greenspun, P.C.) for use in a separate proceeding, see Mem. at 5-6, and other documents collected in "related State Court actions," id. at 6. The Court does not quite follow plaintiff's discussion of these sources. Perhaps he intends to reprise in part a previous motion for sanctions, see Letter from Tyler Erdman, filed July 17, 2024 (Docket # 269), on which the Court deferred ruling, see Aug. 1, 2024 Order. Plaintiff's

previous motion for sanctions challenged an affidavit of defendant's counsel, see Affidavit of Alfred Polizzotto III & Emilio Rodriguez, filed May 1, 2024 (Docket # 266) ("May, 1 2024 Aff."), which the Court had requested at a discovery conference, see Transcript of Apr. 17, 2024 Hearing, filed Apr. 19, 2024 (Docket # 259) ("Apr. 17, 2024 Tr."). At that conference, the Court told defendant's counsel:

> The burden is on you to show that you did a reasonable search. Right now, you haven't met that burden. You need to lay this out. You need to show that all of the sources . . . were appropriately searched . . . with the appropriate search terms and [within] an appropriate date range, consistent with my orders in this case.

Id. at 53:9-16. We added, "This case is unique . . . in the recalcitrance of the [defendant's] attorneys to get the information needed to determine whether a reasonable search was conducted." Id. at 53:24-54:2. The affidavit of defendant's counsel seems to refer to the sources plaintiff is now discussing. See May 1 2024 Aff. ¶¶ 14, 15. Notably, it fails to explain whether and how these sources were searched "with the appropriate search terms and [within] an appropriate date range." Apr. 17, 2024 Tr. at 53:14-16.

Next, plaintiff alleges that defendant failed to produce plaintiff's own hard drives, see Mem. at 7, which plaintiff turned over to defendant in 2018 pursuant to "a State Court Order," Letter from Alfred Polizzotto III et al., filed Apr. 5, 2024 (Docket # 246) ("Apr. 5, 2024 Letter") at *2. It appears that plaintiff sought these hard drives via a 2021 request for "[c]opies of data extracted . . . as part of any forensic examination relating to Plaintiff" under Rule 34. See Plaintiff's Request for Production of Documents, dated Oct. 4, 2021, annexed as Ex. 12 to Aff. (Docket # 335-14) ("2021 RFPs") ¶ 17. Plaintiff now claims defendant never produced "full forensic images" of the hard drives. See Mem. at 7. The Court had previously ordered production of responsive documents stored on "any devices that underwent forensic analysis." Order, dated July 26, 2022 (Docket # 153) ("July 26, 2022 Order"), at 1. Plaintiff does not

indicate when (if ever) the Court ordered production of "full forensic images" of his hard drives. Mem. at 7. In a 2024 letter, defendant's counsel stated that defendant did not produce "movies," "photographs," or privileged documents stored on the hard drives. Apr. 5, 2024 Letter at *3.

Plaintiff then turns to longstanding problems with defendant's production of emails. See Mem. at 7-8. On December 7, 2022, the Court found that defendant had violated a July 26, 2022 order to produce emails (among other documents) responsive to plaintiff's discovery requests. See Order, dated Dec. 7, 2022 (Docket # 180) ("Dec. 7, 2022 Order"). Later, the Court found that defendant's counsel willfully failed to produce a privilege log detailing emails they asserted were protected from disclosure. See Erdman v. Victor, 345 F.R.D. 60, 62 (S.D.N.Y. 2024). On September 6, 2024, the Court discovered that defendant's counsel did not supervise defendant's search of six accounts for responsive emails. See Sept. 6, 2024 Tr. 50:9-22. The Court ordered another search of these accounts. See id. at 50:53-51:3. Three further orders were required before defendant disclosed the results of this search. See Memorandum Endorsement, dated Sept. 25, 2024 (Docket # 293); Order, dated Oct. 2, 2024 (Docket # 299); Order to Show Cause, dated Oct. 18, 2024 (Docket # 301). In the end, defendant produced just six emails, while apparently omitting "over a thousand documents that were included in . . . earlier productions." Letter from Tyler Erdman, filed Oct. 24, 2024 (Docket # 305) ("Oct. 24, 2024 Letter") at *2-3. Defendant did not contest this. In November 2024, defendant made a supplementary production which attached, in plaintiff's view, "an insufficient privilege log." Aff. ¶ 21. The privilege log detailed 805 emails, id. ¶ 47, some of which were neither to nor from an attorney, see id. ¶¶ 50-51. Plaintiff claims that the privilege log also "shows further examples of Victor claiming not to have documents because he had given them to his attorney." Mem. at 8. Plaintiff also asserts without contradiction that defendant's supplementary production in November 2024 included,

inter alia, emails with a Wall Street Journal reporter directly responsive to his earlier discovery requests. See Aff. ¶¶ 52-55.

Plaintiff also alleges that defendant failed to produce "forensic images" of defendant's office server, variously referred to as the "P-Dive" or "P-Drives." Mem. at 8. As defendant's counsel previously explained:

> [T]he original drives were initially removed from [defendant's] offices by the NYPD, who retained possession of those drives. They were removed as a result of allegations by [defendant] that Mr. Erdman and other parties had hacked into his computers and stolen the files. Clones of those drives were made and were in the initial possession of SETEC, a forensic analysis firm, to determine if there was any evidence of tampering with them. These drives were sent by [SETEC] to our firm who in turn sent them to TransPerfect for the purpose of the harvesting of the files for discovery in this action.

May, 1 2024 Aff. ¶ 6. Plaintiff states that "Victor produced a document listing files contained on the P-Drive" that, when compared with files produced to him, revealed defendant did not produce anything from the P-Drive. Mem. at 9. Plaintiff does not include this document or the comparison he references in his papers, however. Nor does he state when (if ever) the Court ordered production of "forensic images" of the P-Drive. Id. at 8.

Plaintiff challenges the adequacy of defendant's search of his cell phone. See Mem. at 9-10. The Court held that defendant's initial search of his cell phone was inadequate, and on December 7, 2022, the Court ordered defendant to conduct another search "of any and all cell phones in his possession, custody, or control, including as to text messages and voicemails as well as any other documents responsive to plaintiff's discovery requests." Dec. 7, 2022 Order at 3. One such request concerned "[a]ny communications to and documents relating to Richard Bradish," a police officer. 2021 RFPs ¶ 10. Following the Court's December 7, 2022 order, defendant affirmed, "I further searched [my] phones for any text messages and voicemails responsive to Plaintiff's discovery requests and did not discover any such text messages and

voicemails on the phones." Affidavit of Adam Victor, dated Dec. 22, 2022 (Docket # 181) ¶ 5 ("Victor Aff."). Plaintiff does not credit defendant's affirmation. Plaintiff notes that defendant testified in 2021 that he spoke with Bradish "very frequently." Excerpts from Deposition of Adam Victor, dated Dec. 9, 2021, annexed as Ex. 7 to Aff. (Docket # 335-9), at 226:4. Thus, plaintiff contends that defendant would have uncovered "calls and text messages" with Bradish when searching his phones. Aff. ¶ 37. The Court does not understand, however, how any "calls" could be produced in response to a search. Further, in the deposition testimony cited by plaintiff, defendant did not testify that he exchanged text messages with Bradish.

Next, plaintiff alleges that defendant failed to produce "forensic images" of defendant's office computers. Mem. at 10. Defendant apparently had these computers imaged at least twice. See id. 10-11. We had previously ordered defendant to produce responsive documents on "any devices that underwent forensic analysis." July 26, 2022 Order at 1. But plaintiff does not state when (if ever) the Court ordered production of "forensic images" of these computers. Mem. at 10.

Lastly, plaintiff links the above allegations to a series of obfuscatory "strategies" on defendant's part, including selectively identifying custodians of responsive material, see id. at 11-12, and entrusting discovery material to attorneys and vendors only to stop paying their bills, see id. at 12-13. But plaintiff's discussion of these "strategies" is too thinly sourced to allow any consideration.

In the end, plaintiff's allegations of discovery violations are confusingly presented and often unsupported by citations to record evidence. We thus find violations only with respect to the Court orders summarized in Section III below.

## II. LEGAL STANDARDS

Plaintiff asserts that "[t]his motion is brought under Rule 37(b)."[3] Reply at 8.

"Federal Rule of Civil Procedure 37 governs the district court's procedures for enforcing discovery orders and imposing sanctions for misconduct." World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 158 (2d Cir. 2012). Rule 37(b)(2)(A) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders," which may include adverse inference instructions, precluding evidence, and striking pleadings. See Fed. R. Civ. P. 37(b)(2)(A). "The two predicates to the imposition of sanctions under Rule 37(b) are (1) a 'court order directing compliance with discovery requests,' and (2) 'non-compliance with that order[.]'" In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., 673 F. Supp. 3d 345, 356 (S.D.N.Y. 2023) (quoting Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp., 2017 WL 2840279, at *9 (S.D.N.Y. June 27, 2017)) (alteration in original).

The Second Circuit has articulated four factors to guide a court's consideration of sanctions under Rule 37: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." Agiwal, 555 F.3d at 302 (citation omitted). The four Agiwal factors "are not exclusive, and they need not each be resolved against" a party to warrant sanctions. S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010).

[3] As a result, we do not consider defendant's citations to cases arising under Fed. R. Civ. P. 37(c), 37(d), and 37(e).

Under Rule 37, "a district court has wide discretion in sanctioning a party for discovery abuses." Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 267 (2d Cir. 1999) (citation omitted). Nonetheless, because "Rule 37 permits the imposition of 'just' sanctions[,] the severity of sanction[s] must be commensurate with the non-compliance." Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007). Further, the court should be guided by the purposes of discovery sanctions, namely, "(1) to ensure that a party will not benefit from its own failure to comply; (2) to obtain compliance with the particular order issued; and (3) to serve as a general deterrent effect on the case and on other litigants as well." Erdman, 345 F.R.D. at 62 (citation and internal quotation marks omitted); accord Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979). Because the instant motion is brought following the conclusion of discovery, the second purpose is not at issue here.

"For purposes of determining whether to impose sanctions, we analyze the conduct of parties and their attorneys separately." Ransmeier v. Mariani, 718 F.3d 64, 71 (2d Cir. 2013). "The rule that the sins of the lawyer are visited on the client does not apply in the context of sanctions," and a court must "specify conduct of the client herself that is bad enough to subject her to sanctions." Id. (citation and internal quotation marks omitted).

## III. DISCUSSION

We begin by ascertaining whether and when defendant failed to comply with the Court's discovery orders. See In re Keurig, 673 F. Supp. 3d at 356. While plaintiffs brief makes it difficult to answer this question, the record is clear that defendant was in violation of three such orders.

First, at an April 17, 2024 discovery conference, we ordered defendant to "show that all of the sources [of defendant's production] . . . were appropriately searched . . . with the

appropriate search terms and [within] an appropriate date range." Apr. 17, 2024 Tr. at 53:9-16. The responsive affidavit of defendant's counsel fails to explain whether and how these sources were appropriately searched. See May 1 2024 Aff. Thus, defendant violated this order.

Second, we have already found that defendant violated a June 16, 2022 order to produce responsive emails. See Dec. 7, 2022 Order. While we declined to sanction defendant at the time, we held "the potential for sanctions open pending completion of the discovery process." Id. at 3.

Third, and finally, at a September 6, 2024 discovery conference, the Court ordered defendant to search (and produce responsive emails from) various accounts. See Sept. 6, 2024 Tr. 50:9-22. The Court's intervention was again required before defendant made a patently inadequate production of six emails, omitting "over a thousand documents that were included in . . . earlier productions." Oct. 24, 2024 Letter at *2-3. Thus, defendant violated this order.

We must now determine who is responsible for these failures. Plaintiff alleges that defendant "personally controlled every critical decision point" throughout discovery, stating, "Victor is not a passive client whose attorneys failed him." Mem. at 19. His reply emphasizes, "The motion is against Victor." Reply at 4.

The order issued at the April 17, 2024 discovery conference was clearly directed at defendant's counsel, not defendant personally. See Apr. 17, 2024 Tr: at 51:14-54:10. Plaintiff's evidence is insufficient to show that defendant personally had a role in violating this order.

By contrast, the record indicates defendant's personal involvement in violating our orders of July 16, 2022 and September 6, 2024 by failing to produce responsive emails. Defendant's counsel disclosed that in 2022, "Victor did the search" for responsive emails. Sept. 6, 2024 Tr. at 50:5. An affidavit of defendant's counsel indicates that Victor personally identified the

accounts to be searched. Affidavit of Alfred Polizzotto III, filed Sept. 27, 2024 (Docket # 294) ¶ 3. Defendant has made no effort to show his lack of personal involvement in, or knowledge of, these violations.

We now turn to the Agiwal factors.

First, we find that defendant's conduct was willful. "Willfulness is typically inferred from the violation of multiple court orders." Icon Int'l, Inc., 347 F.R.D. at 288 (collecting cases). On July 26, 2022, the Court ordered production of responsive emails. See July 26, 2022 Order. Yet, defendant did not make this production until at least November 2024. The Court's intervention was required on numerous occasions in order to finally effectuate production of responsive emails. See Memorandum Endorsement, dated Aug. 23, 2022 (Docket # 159); Transcript of Oct. 28, 2022 Hearing, filed Nov.1, 2022 (Docket # 170) (Oct. 28, 2022 Tr."); Order, dated Nov. 28, 2022 (Docket # 169); Dec. 7, 2022 Order; Order, dated Aug. 25, 2023 (Docket # 200); Transcript of Dec. 21, 2023 Hearing, filed Jan. 2, 2024 (Docket # 213); Order, dated Jan. 4, 2024 (Docket # 217); Erdman, 345 F.R.D. 60; Order, dated Mar. 27, 2024 (Docket # 240); Order, dated Mar. 29, 2024 (Docket # 242); Order, dated Apr. 3, 2024 (Docket # 244); Apr. 17, 2024 Tr.; Aug. 1, 2024 Order; Sept. 6, 2024 Tr.; Memorandum Endorsement, dated Sept. 25, 2024 (Docket # 293); Order, dated Oct. 2, 2024 (Docket # 299); Order to Show Cause, dated Oct. 18, 2024 (Docket # 301). The failure to comply with multiple court orders by itself shows defendant's willfulness and bad faith.

Second, lesser sanctions have already proven ineffective. The Court has exhibited extraordinary patience with defendant, opting only to admonish him and his attorneys thus far. See, e.g., Erdman, 345 F.R.D. 60. "[D]eliberate and persistent noncompliance render[s] lesser sanctions inappropriate." Embuscado v. DC Comics, 347 F. App'x 700, 701 (2d Cir. 2009).

Third, defendant's non-compliance spanned not days, weeks, or months, but years. Courts have found that noncompliance for a period of such a length warrants the harshest of sanctions, including dismissal or default. See, e.g., id.

Fourth, this Court has warned defendant of the consequences of non-compliance. As early as October 2022, the Court indicated that his conduct "has been contemptuous." Oct. 28, 2022 Tr. at 10:17-18. As late as September 2024, the Court stated that defendant himself "better be accurate" in searching his accounts or else he would face sanctions. Sept. 6, 2024 Tr. at 55:20. The Court told defendant's counsel, "Well, you better warn [Victor] about the potential consequences if some email comes up . . . from some other account. [Plaintiff]'s going to have a great Rule 37 motion." Id. at 56:4-7.

In sum, each of the Agiwal factors favor sanctions. As to the specific sanctions to be imposed, plaintiff requests (1) that defendant's affirmative defenses be stricken; (2) that some twenty adverse inferences be drawn against defendant; and (3) costs. See Mem. at 20-22.

A. Striking Defendant's Affirmative Defenses

Defendant's answer purports to raise four affirmative defenses premised on: (1) lack of subject matter jurisdiction; (2) the statute of limitations; (3) "the doctrine of unclean hands"; and (4) "the truth of the assertions made by the Defendant." Answer, filed Dec. 1, 2021 (Docket # 116) ¶¶ 162-65.

As one case observed, "Since the subject matter jurisdiction of the court may be raised at any time, even by the court sua sponte, I do not understand what striking the defense [of lack of subject matter jurisdiction] would accomplish." Brill v. Prudential-Bache Sec., Inc., 1985 WL 8037, at *6 (S.D.N.Y. July 29, 1985).

As for the statute of limitations: plaintiff himself has recognized that he brings a claim subject to a one-year limitations period that runs from May 28, 2019 to May 28, 2020. See Letter From Tyler Erdman, filed May 1, 2024 (Docket # 265), at *4. Plaintiff provides no indication that he has claims outside this period.

Because plaintiff is not seeking equitable relief in this case, see Second Amended Complaint, filed Aug. 18, 2021 (Docket # 68), at 28-29, "the doctrine of unclean hands" has no application, see Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 607 (2d Cir. 2005) (doctrine does not apply when a party "seeks damages in an action at law").

Lastly, truth is not an affirmative defense to the claim at issue in this case (defamation); rather, falsity —the lack of truth — is an element of plaintiff's claims. See Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 236, 243-47 (2d Cir. 2017).

Consequently, no purpose would be served by striking these defenses.

B. Adverse Inferences

A party seeking adverse inferences under Rule 37(b) on the basis that "evidence was not produced in time for use at trial" must show (1) that the party controlling the evidence was obliged to produce it; (2) that the party failed to do so with "a culpable state of mind"; and (3) that the evidence was "relevant" to a claim or defense such that "a reasonable trier of fact could find that it would support" the claim or defense. Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002).

Plaintiff has not made this showing. In particular, he has failed to establish the relevance of the evidence in defendant's control to the twenty adverse inferences he seeks. See Mem. at 21-22. In other words, he does not connect specific evidence withheld by defendant to each instruction he wishes this Court to issue. Thus, we cannot issue adverse inference instructions.

C. Costs

Rule 37(b)(2)(C) provides that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" to comply with discovery orders. Fed. R. Civ. P. 37(b)(2)(C). While pro se litigants "are not entitled to counsel fees," there is no "authority or principle of law which prevents pro se litigants from recovering their expenses in a Rule 37 motion." Walker v. Tri-Tech Plan. Consultants, Inc., 149 F.R.D. 22, 23 (E.D.N.Y. 1993); see Warren Publ'g. Co. v. Harris Publ'ns, Inc., 2002 WL 987270, at *1 (S.D.N.Y. May 14, 2002); Freydl v. Meringolo, 2011 WL 724674, at *1 (S.D.N.Y. Feb. 4, 2011); Gibson v. Heary, 2020 WL 1244653, at *2 (W.D.N.Y. Mar. 16, 2020).

Plaintiff provides unrebutted evidence that he has "maintained a Logikcull eDiscovery subscription at approximately $430.06 per month since October 2021 to review productions and identify discrepancies." Aff. ¶ 75. Plaintiff seeks for sanctions in the amount of $430.06 per month "to recoup costs incurred from his eDiscovery software." Mem. at 22. Plaintiff seeks these monthly discovery vendor costs for the entire "discovery period." Id.

While plaintiff has not shown that the monthly charges for the entire discovery period were "caused by" defendant's failure to search for and produce responsive emails, Fed. R. Civ. P. 37(b)(2)(C), defendant's failure clearly delayed discovery for some portion of the discovery period. In particular, it is clear that defendant made no effort to produce responsive emails as ordered on July 26, 2022, until sometime in early November 2022, a delay of some three months. See Oct. 28, 2022 Tr. at 14:6-10; Affidavit of Adam Victor, filed Nov. 4, 2022 (Docket # 172) ¶ 6. Further, plaintiff sought (and was granted) several extensions of fact discovery in his efforts to resolve issues with defendant's belated production of responsive emails in November 2024,

dragging out discovery for roughly five more months until it closed on May 12, 2025. See Memorandum Endorsement, dated Nov. 19, 2024 (Docket # 308); Memorandum Endorsement, dated Jan. 21, 2025 (Docket # 310); Memorandum Endorsement, dated Mar. 25, 2025 (Docket # 312). Therefore, it is appropriate to award plaintiff his monthly discovery vendor costs for eight months, which total $3,440.48.

CONCLUSION

Plaintiff's motion for sanctions is granted to the extent of requiring Adam Victor to pay to plaintiff the sum of $3,440.48. Such payment shall be made within 14 days of this Order. Defendant's counsel shall file a letter to the Court within 14 days of this order indicating that the Order has been complied with.

SO ORDERED.

Dated: August 20, 2026
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge